# EXHIBIT

# 1




**POLICYHOLDER NOTICE - OHIO**

## IMPORTANT INFORMATION

## NOTICE OF TERRORISM COVERAGE;

## DISCLOSURE OF PREMIUM

**THIS NOTICE DOES NOT FORM A PART OF THE POLICY, GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

As used herein, 1) "we" means the insurer listed on the Declarations or the Certificate of Insurance, as applicable; and 2) "you" means the first person or entity named on the Declarations or the Certificate of Insurance, as applicable. Notwithstanding the definitions set forth in this Policyholder Notice of Terrorism Coverage, Certified Acts of Terrorism coverage to all new applicants and existing insureds shall be provided under the same amounts, terms and conditions applicable to losses arising from events other than acts of terrorism, pursuant to the *Terrorism Risk Insurance Act, 15 U.S.C 6701, Section 103(c)*.

Coverage for "acts of terrorism" is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as extended and reauthorized ("Act"), you have coverage for losses arising out of "acts of terrorism", as defined in Section 102(1) of the Act, subject to all applicable policy provisions. The Terrorism Risk Insurance Act established a federal program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks.

This Notice is designed to alert you to coverage restrictions and to certain terrorism provisions in the policy. If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply.

CHANGE IN THE DEFINITION OF A CERTIFIED ACT OF TERRORISM

The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. Originally, the Act provided that to be certified, an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States. However, the 2007 re-authorization of the Act removed the requirement that the act of terrorism must be committed by or on behalf of a foreign interest, and now certified acts of terrorism may encompass, for example, a terrorist act committed against the United States government by a United States citizen, when the act is determined by the federal government to be "a certified act of terrorism."

In accordance with the Act, we are required to offer you the ability to purchase coverage for losses resulting from an act of terrorism that is certified under the federal program. The other provisions of this policy will still apply to such an act.

DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The Department of the Treasury will pay a share of terrorism losses insured under the federal program. Beginning in 2020, the federal share equals 80% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

LIMITATION ON PAYMENT OF TERRORISM LOSSES

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

Form No: CNA81758OH (01-2021)                                    Policy No: 6052060736
Policyholder Notice; Page: 1 of 2                                 Policy Effective Date: 12/18/2024
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 Policy Page: 1 of 138

© Copyright CNA All Rights Reserved.

Further, this coverage is subject to a limit on our liability pursuant to the federal law where, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

PREMIUM DISCLOSURE

The portion of your annual premium that is attributable to coverage for acts of terrorism is $0 and does not include any charges for the portion of losses covered by the United States government under the Act.

CONFIRMATION OF COVERAGE

In accordance with the Act, we confirm your coverage for losses resulting from an act of terrorism that is certified under the federal program.

The policy's other provisions will still apply to such an act.

Form No: CNA81758OH (01-2021)
Policyholder Notice; Page: 2 of 2
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 2 of 138

© Copyright CNA All Rights Reserved.



**Epack 3**
Policy Declarations

| GENERAL TERMS AND CONDITIONS |
| --- |
| DECLARATIONS |

### NOTICE:

THE LIABILITY COVERAGE PARTS PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.

| NAMED INSURED AND ADDRESS | | PRODUCER |
| --- | --- | --- |
| Item 1. | CaaStle Inc.<br>5650 GREEN POINTE DR N,<br>GROVEPORT, OH 43125-1054 | NFP PROPERTY & CASUALTY SERVICES INC<br>Jennifer DaCunza<br>45 EXECUTIVE DR,<br>PLAINVIEW, NY 11803 |
| Attn: | CaaStle Inc. | |
| **CUSTOMER NUMBER** | | **INSURER** |
| 5000437060 | | Continental Casualty Company |
| **POLICY NUMBER** | | 151 N Franklin St |
| 6052060736 | | Chicago, IL, 60606 |

Item 2.  **Policy period:** 12/18/2024 to 12/18/2025 *12:01 a.m. local time per address Item 1.*

Item 3.  Notices to Insurer

**Claims:**
CNA – Claims Reporting
P.O. Box 8317
Chicago, IL 60680-8317
Email: SpecialtyNewLoss@cna.com
Fax Number: 866-773-7504

**All other notices:**
CNA Global Specialty Lines
395 North Service Road,
Suite 400,
Melville, NY 11747

Item 4.  **Extended Reporting Period**
Period: 1 Year                                    150% of Policy Premium

Item 5.  **Liability coverage parts:**        Directors and Officers and Entity Liability Coverage Part
Fiduciary Liability Coverage Part
Employment Practices Liability Coverage Part

**Non-liability coverage parts:**   Crime Coverage Part
Kidnap, Ransom and Extortion Coverage Part

Item 6.  Combined Maximum Aggregate Limit of Liability for all **liability coverage parts** (including **defense costs**):

Yes ____                                    No __X__

---

Form No: CNA92839XX (01-2019)
Policy Declarations; Page: 1 of 2
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 Policy Page: 3 of 138

Policy No: 6052060736
Policy Effective Date: 12/18/2024

© Copyright CNA All Rights Reserved.

**Epack 3**
Policy Declarations

These Declarations, along with the completed and signed **Application**, the policy, and any written endorsements attached shall constitute the contract between the **Insureds** and the Insurer.

Authorized Representative:                                          Date: 03/25/2025

Form No: CNA92839XX (01-2019)                          Policy No: 6052060736
Policy Declarations; Page: 2 of 2                          Policy Effective Date: 12/18/2024
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 Policy Page: 4 of 138

© Copyright CNA All Rights Reserved.



**Epack 3**
Policy Schedule

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Form Name | Form Number | Form Edition Date |
|---|---|---|
| Amend Exclusion D Endorsement | CNA107359XX | 11-2023 |
| Specific Litigation Exclusion Endorsement | CNA92880XX | 01-2019 |
| Board Observer Endorsement | CNA92929XX | 01-2019 |
| Amend Loss Endorsement (Sox 304/Dodd-Frank 954 Costs) | CNA92935XX | 01-2019 |
| Asset Protection Expenses Endorsement | CNA92941XX | 01-2019 |
| Regulatory Claim Coverage Endorsement (Defense Costs Coverage - Sublimit / Retention / Coinsurance) | CNA92943XX | 09-2019 |
| Employed Lawyers Endorsement (Add Sublimit) | CNA92946XX | 03-2023 |
| Professional Services Exclusion (Management Carveback) | CNA92954XX | 01-2019 |
| Amend Definition of Employee (Contractual Employee Coverage) | CNA92955XX | 01-2019 |
| Amend Definition of Wrongful Act Endorsement (Controlling Person / Selling Shareholder) | CNA92963XX | 01-2019 |
| Jobs Act Exclusion Endorsement | CNA92966XX | 01-2019 |
| Cap On Losses From Certified Acts of Terrorism Endorsement - Ohio | CNA92970OH | 04-2019 |
| Amend Executive Endorsement (Specific Title/Position) | CNA96395XX | 08-2019 |
| Amend Definition of Loss Endorsement (Section 11, 12 or 15 of The Securities Act of 1933) | CNA96396XX | 08-2019 |
| Amend Demand Response Costs Endorsement (Add Class Certification Event Study Expenses) | CNA96397XX | 08-2019 |
| Amend Pollution Exclusion Endorsement (From Absolute to For) | CNA96398XX | 08-2019 |
| Amend Limit of Liability, Sublimits and Retentions Endorsement (Recognition of Dic Payment in Retention) | CNA96399XX | 08-2019 |
| Amend Executive Endorsement (Partner) | CNA96418XX | 08-2019 |
| Amend Definition of Loss Endorsement (UK Bribery Act Penalties With Sublimit) | CNA97686XX | 01-2020 |
| Administration Coverage for Multi-Employer Plans Endorsement | CNA93051XX | 01-2019 |
| E-Discovery Consulting Costs Endorsement | CNA93053XX | 01-2019 |
| Specific Litigation Exclusion Endorsement | CNA92880XX | 01-2019 |
| Chosen Counsel Endorsement | CNA92890XX | 03-2020 |
| Wage and Hour Defense Costs Sublimited Coverage Endorsement | CNA92988XX | 01-2019 |
| Workplace Violence Act Expenses Sublimited Coverage Endorsement | CNA92989XXC | 09-2023 |
| Immigration Claim Defense Costs Sublimited Coverage Endorsement | CNA92990XX | 01-2019 |

Form No: CNA92863XX (04-2019)
Policy Schedule; Page: 1 of 2
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 5 of 138

© Copyright CNA All Rights Reserved.



**Epack 3**
Policy Schedule

| Form Name | Form Number | Form Edition Date |
|---|---|---|
| Crisis Event Expenses Sublimited Coverage Endorsement | CNA92991XX | 01-2019 |
| Amend Claim Definition to add Extradition Endorsement | CNA93007XX | 01-2019 |
| Biometrics Privacy Exclusion Endorsement | CNA96392XX | 06-2020 |
| Amend Definition of Executive (Partner) | CNA96394XX | 08-2019 |
| Amend Executive Endorsement (Specific Title/Position) | CNA96395XX | 08-2019 |
| Risk Mitigation Retention Credit and Pre-Claim Engagement of Counsel Retention Credit Endorsement | CNA96706XX | 08-2019 |
| Threat Response Endorsement | CNA93170XX | 01-2019 |
| Child Abduction Endorsement | CNA93179XX | 02-2023 |
| Express Kidnap Endorsement | CNA93182XX | 01-2019 |
| Disappearance Endorsement | CNA93183XX | 01-2019 |
| Hostage Crisis Endorsement | CNA93184XX | 01-2019 |
| Business Interruption Loss Endorsement (Exclude E-Commerce Extortion Coverage) | CNA93186XX | 01-2019 |
| Amendatory Endorsement - Ohio (Kidnap, Ransom and Extortion Coverage Part) | CNA93291OH | 04-2019 |
| Amend Executive Endorsement (Partners) | CNA96394XX | 08-2019 |
| Amend Executive Endorsement (Specific Title/Position) | CNA96395XX | 08-2019 |
| Cyber Extortion Exclusion Endorsement (Kidnap, Ransom and Extortion Coverage Part) | CNA99101XX | 07-2020 |
| Include Personal Accounts of Specified Persons | CNA93122XX | 01-2019 |
| Amend Executive Endorsement (Partners) | CNA96394XX | 08-2019 |
| Amend Executive Endorsement (Specific Title/Position) | CNA96395XX | 08-2019 |
| Amend Other insurance Endorsement (Crime - Primary and Non-Contributory) | CNA98273XX | 04-2020 |
| Conditional Renewal Endorsement- Ohio | CNA88892OH | 06-2017 |
| Amendatory Endorsement - Ohio | CNA93281OH | 04-2019 |
| Cancellation Endorsement - Ohio | CNA93283OH | 01-2019 |
| Amend Definition of Subsidiary Endorsement (Add Subsidiary with Effective Date) | CNA93307XX | 01-2019 |
| Amend Definition of Application Endorsement (12 Month Limit) | CNA96402XX | 08-2019 |

© Copyright CNA All Rights Reserved.



## GENERAL TERMS AND CONDITIONS

In consideration of the premium, and in reliance upon the **application**, we agree to provide you with the following coverage subject to the terms and conditions of this policy:

### I. PREFACE

A Coverage Part is included within this policy and affords coverage only if the Coverage Part is purchased as indicated by a corresponding limit of liability in the respective Coverage Part Declarations.

The terms and conditions in each Coverage Part apply only to such Coverage Part and will not apply to any other Coverage Part.

If any provision in the General Terms and Conditions is inconsistent with the terms and conditions of any applicable Coverage Part, the terms and conditions of such Coverage Part will control.

Bolded terms in the policy will have the special meaning set forth in the definitions. The terms "we", "us", and "our" mean the Insurer named on the General Terms and Conditions Declarations; the terms "you", "your", and "yours" mean any **insured**.

### II. SUPPLEMENTARY BENEFITS

A. Mediation Retention Reduction

If, prior to, or within sixty (60) days of the service of suit or the institution of arbitration proceedings, we and the **named insured** agree to use a non-binding alternative dispute resolution process to resolve any **claim** reported to us, and such **claim** is entirely resolved through such process, then we will reduce the Retention applicable to such **claim** by the lesser amount of fifty percent (50%) of such Retention or ten thousand ($10,000) dollars.

B. Proceeding Expenses Reimbursement

If we request an **insured person's** presence at a trial, hearing, deposition, mediation, or arbitration, we will pay up to $250.00 per day, per **insured person** for reimbursement of costs and expenses incurred in connection with such presence, subject to a maximum of $2,500 per **claim**, per **policy period**. Such payment will be in addition to the applicable limit of liability and no Retention will apply.

C. Pre-Claim Expenses

In the event a **noticed matter** later gives rise to a covered **claim**, then we will credit the **pre-claim expenses** that you have paid up to ten percent (10%) of the applicable Retention for such **claim**.

### III. DEFINITIONS

Any defined word not defined in the General Terms and Conditions will have the meaning assigned to it in the applicable Coverage Part.

**Application** means any signed application, including its warranty and attachments, whether ours or that of another insurance carrier, together with any other materials and representations provided to us in connection with the underwriting and negotiating of the terms and conditions of this policy or any other policy of which this policy is an indirect or direct renewal.

**Bodily injury** means any actual or alleged bodily injury, sickness, disease, death, emotional distress or mental anguish of any natural person.

| | |
|---|---|
| Form No: CNA92840XX (01-2019) | Policy No: 6052060736 |
| Policy Conditions; Page: 1 of 7 | Policy Effective Date: 12/18/2024 |
| Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 | Policy Page: 7 of 138 |

© Copyright CNA All Rights Reserved.

**Change of control** means when: (i) the **named insured** merges into another entity and is no longer the surviving entity; (ii) another person(s) or entity(ies) acquires such an ownership interest in the **named insured** to exercise **management control**; or (iii) the **named insured** emerges from bankruptcy.

**Clean-up costs** mean any fees, costs, or expenses, including legal and professional fees, incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying, or assessing the effects of **pollutants**.

**Extended reporting period** means the additional period of reporting time purchased by an **insured** after termination, cancellation, or non-renewal of this policy within which to report a **claim** subject to the provisions of Section V Extended Reporting Period for Liability Coverage Parts Only.

**Financial insolvency** means: (i) the appointment by a federal, state or local agency or court of a receiver, conservator, liquidator, trustee, rehabilitator, or similar official, to take control of, supervise, manage, or liquidate an **insured entity** or **outside entity**; (ii) an **insured entity** becoming a debtor in possession under United States bankruptcy law or any equivalent foreign bankruptcy law; or (iii) when an **insured entity** can establish affirmatively it is unable at the present time, or in the future, to pay its debts in the ordinary course of business.

**Independent contractor** means any natural person working for an **insured entity** in the ordinary course of such **insured entity's** business, and in the capacity of an independent contractor, pursuant to a written agreement for services between such **insured entity** and either (i) such natural person; or (ii) any other entity acting on behalf of such natural person.

**Insured entity** means the **named insured** or any **subsidiary**, including any such entity as a debtor in possession under United States bankruptcy law.

**Insured person** will having the meaning designated in the respective Coverage Part.

With respect to any **liability coverage part**, **insured person** will also include: (i) assigns, estates, heir, legal representatives, or assigns of any **insured person** in their capacity as such, provided such **insured person** is deceased or legally incompetent; or (ii) a spouse or domestic partner of an **insured person** in their capacity as such, or due to legal ownership of property identified as potential recovery relief. There will be no coverage afforded under this policy for any act, error or omission of an estate, heir, legal representative, assign, spouse or domestic partner.

**Liability coverage part** means those Coverage Parts set forth in Item 5 of the General Terms and Conditions Declarations.

**Management control** means:

(i)    owning or controlling more than fifty-percent (50%) of the outstanding securities, shares or equity ownership representing the right to control an entity as evidenced by the present power to elect, designate or appoint the majority of the board of directors, management committee members or management board members; or

(ii)   having the present right, pursuant to written contract or an organizational document, to elect, designate or appoint the majority of the board of directors, management committee members or management board members of an entity.

**Named insured** means the entity set forth in Item 1 of the General Terms and Conditions Declarations.

**Non-liability coverage part** means those Coverage Parts set forth in Item 5 of the General Terms and Conditions Declarations.

**Noticed matter** means any written notice of circumstance which we have accepted under a **liability coverage part**.

© Copyright CNA All Rights Reserved.

**Policy period** means the time period from the inception date to the expiration date of this policy set forth in Item 2 of the General Terms and Conditions Declarations, or any such earlier termination or cancellation date. **Policy period** will also include the **extended reporting period**, if purchased.

**Pollutants** mean any actual or alleged: (i) solid, liquid, gaseous, thermal or radioactive irritant or contaminant, acids, alkalis, chemicals, fumes, smoke, soot, vapor, waste or waste materials to be recycled, reclaimed or reconditioned, or disposed; or (ii) air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, or any noise.

**Pollution** means any actual, or threat of, discharge, emission, release, dispersal, escape of, or treatment, removal or disposal of any **pollutants**. **Pollution** also includes any regulation, order, direction, or request to test, monitor, clean up, remove contain, treat or detoxify or neutralize any **pollutants**.

**Pre-claim expenses** mean the reasonable and necessary fees, costs, and expenses incurred by an **insured** in responding to or defending a **noticed matter**, on or after the date we accepted the notice of circumstances and prior to the date the **noticed matter** became a **claim**. **Pre-claim expenses** will not include **overhead expenses**, **demand response costs** or any fees, costs, or expenses incurred by an insured as a result of any **routine examination** or **anti-bribery** investigation, examination, or request. We have the right to determine the reasonableness, necessity, and allocation of the **pre-claim expenses** (including the right to apply any applicable **claim** exclusions to the **pre-claim expenses**).

**Property damage** means any actual or alleged damage to, or destruction of, any tangible property including loss of use or diminution of value.

**Related claims** mean all **claims** that are based upon, arising from, or are logically or causally connected by the same, or any related or common, or a series of related or common, facts, circumstances, transactions, or **wrongful acts**.

**Responsible person** means the Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, the General Counsel, the Risk Manager or such functionally equivalent positions of the **named insured**.

**Routine examination** means any routine examination, routine inspection, sweep examination, general requests for information, or any other similar reviews, inquiries, or investigations.

**Subsidiary** means any: (i) entity while under the **management control** of an **insured entity**; or (ii) charitable trust, political action committee or foundation while such entity is controlled by the **named insured**.

## IV. LIMIT OF LIABILITY, SUBLIMITS AND RETENTIONS

If Item 6 of the General Terms and Conditions Declarations is elected then the amount indicated in item 6 will be the maximum aggregate amount we will pay for all **loss** regardless of the number of **claims**, parties or requests for coverage under all **liability coverage parts** combined.

If Item 6 of the General Terms and Conditions Declarations is not elected then the amount indicated in Item 2 of the respective **liability coverage part** Declarations will be the maximum aggregate amount we will pay for all **loss** regardless of the number of **claims**, parties or requests for coverage in such Coverage Part.

**Defense costs** are part of and not in addition to the limit of liability set forth in Item 6 of the General Terms and Conditions Declarations or Item 2 of the respective **liability coverage part** Declarations. Our payment of any **defense costs** will erode and may exhaust the limit of liability.

The respective Declarations for the **non-liability coverage parts** will reflect the maximum amount we will pay for such non-liability coverage.

Coverage Part Declarations will also identify the applicable Retention, if any. Any Retention will be uninsured and your responsibility to pay. If there are two Retentions that apply to the same **claim**, we will only apply the higher Retention.

Any **defense costs** or any sublimited coverage will be part of, and not in addition to, the aggregate limit of liability of that Coverage Part or the combined maximum aggregate limit of the policy.

Form No: CNA92840XX (01-2019)
Policy Conditions; Page: 3 of 7
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 9 of 138

© Copyright CNA All Rights Reserved.



All premiums, limits, Retentions, **loss** and other amounts under this policy are expressed and payable in United States of America currency unless the parties agree in writing otherwise.

### V.  EXTENDED REPORTING PERIOD FOR LIABILITY COVERAGE PARTS ONLY

If this policy is terminated, cancelled or non-renewed for any reason other than non-payment of premium or a **change of control**, you have the right to elect an **extended reporting period** for **liability coverage parts** for the additional period(s) and additional premium set forth in Item 4 of the General Terms and Conditions Declarations.

You must notify us in writing of this election within sixty (60) days after the non-renewal, cancellation, or termination. If you do not elect within this time frame, you will have waived your right to purchase the **extended reporting period**.

A purchased **extended reporting period** will extend to selected Coverage Parts coverage for a period of time but only to **claims** that are:

(i)   first made during the **extended reporting period**;

(ii)  reported to us according to this policy's notice and reporting requirements; and

(iii) for **wrongful acts** that occurred prior to the date of such termination, cancellation or non-renewal.

The purchased **extended reporting period** becomes part of the **policy period**. Any premium for an **extended reporting period** will be deemed fully earned at the beginning of the **extended reporting period**. There will be no additional limit of liability for the **extended reporting period**.

### VI. NOTICE AND REPORTING

A.  Reporting a Claim in any **Liability Coverage Part**

As a condition precedent to our policy obligations, you must provide written notice of a **claim** as soon as practicable after a **responsible person** first becomes aware of such **claim**.

(i)   If the policy has been renewed with us, we will not assert that the notice of a **claim** is untimely unless we have been prejudiced by such late notice.

(ii)  If the policy has not been renewed with us, you must at the very latest, submit written notice of a **claim** no later than:

(a)   ninety (90) days after the **policy period** terminates or expires, if there is no extended reporting period; or

(b)   the expiration date of the purchased **extended reporting period**.

B.  Reporting a Notice of Circumstances in any **Liability Coverage Part**

(i)   If during the **policy period** you first become aware of circumstances that may give rise to a **claim**, you may elect to submit a written notice of circumstance to us. Such written notice must contain a description of the circumstances, the nature of the **wrongful act**, persons involved and the nature of the relief sought.

(ii)  Any subsequent **claim** that is based upon or arises out of a **noticed matter** will be deemed to have first been made in the **policy period** in which we accepted the notice of circumstances.

C.  **Non-liability coverage parts** will have their own reporting provisions.

D.  Except with respect to any applicable **pre-claim expenses** described in Section II Supplementary Benefits paragraph C we will not provide coverage for fees, costs, or expenses incurred prior to the time a **claim** is noticed, even if such fees, costs, or expenses benefit the defense of a covered **claim**.

---

© Copyright CNA All Rights Reserved.

E.   Notice Mailing

Written notices of a **claim** or circumstance should be directed to us at the mailing address or email address indicated in Item 3 of the General Terms and Conditions Declarations. A notice on one Coverage Part will be deemed notice to all Coverage Parts.  All other notices should be sent to us at the address or email set forth in Item 3 of the General Terms and Conditions Declarations.

We will send all correspondence to you at the address set forth in Item 1 of the General Terms and Conditions Declarations.

We will consider the effective date of notice to be the date of mailing with sufficient proof of mailing.

## VII. RELATED CLAIMS

All **related claims** will be treated as one **claim** first made on the date the first of such **related claims** was first made or deemed made according to the provisions of the applicable Coverage Part of this policy.

## VIII.  COOPERATION AND CONSENT

You agree:

(i)   to provide us full cooperation, assistance, and any information we may reasonably request when seeking coverage under this policy;

(ii)  to do nothing that may increase our liabilities or prejudice our potential or actual rights of recovery or subrogation;

(iii) not to incur any **loss**, or any other costs or expenses for which you are seeking coverage under this policy, or admit any liability or assume any contractual obligation, without our prior written consent; and

(iv) not to accept or consent to any settlement, or make any offer of settlement, or stipulate to any judgment, without our prior written consent; however, our consent will not be required if you can settle the **claim**, including all **related claims** and **loss** (including **defense costs**) for an aggregate amount that does not exceed the Retention.

We will:

(a)  have the right to make any reasonable investigation into any **claim** or **noticed matter** that we deem necessary or appropriate;

(b)  make any settlement of any **claim** that we deem reasonable, provided such settlement is made with your consent;

(c)  not withhold written consent unreasonably; and

(d)  not be liable for any **loss**, or any other costs or expenses for which you are seeking coverage under this policy, or admission of liability, or any contractual obligation unless we have provided prior written consent.

## IX. APPLICATION

We have relied upon the truthfulness and accuracy of the statements, representations, and information in the **application**, which is incorporated into this policy.

If the **application's** statements, representations, and information contain any actual or knowing misrepresentations or omissions which materially affect our acceptance of the risk or the hazard assumed by us under this policy, then we will not cover **loss** in connection with any **claim**:

(i)   against an **insured person** based upon or arising out such misrepresentations or omissions if that **insured person** had actual knowledge of such misrepresentations or omissions;

Form No: CNA92840XX (01-2019)
Policy Conditions; Page: 5 of 7
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 11 of 138

© Copyright CNA All Rights Reserved.

(ii) against an **insured entity** based upon or arising out such misrepresentations or omissions if the Chief Executive Officer, Chief Financial Officer or such functionally equivalent positions of the **named insured** had actual knowledge of such misrepresentations or omissions.

The **application** will be considered a separate request for coverage by each **insured person**. We will not rescind or void this policy with respect to any **insured**.

## X.  CHANGE OF CONTROL

With respect to any **liability coverage part**:

In the event of a **change of control**, the premium will become fully earned as of the effective date. We will not be liable for any **wrongful act** committed, attempted, or allegedly committed or attempted by any **insured** after the effective date of a **change of control**. We will however, continue to provide coverage until the policy is otherwise cancelled, terminated, or expires, but only for **wrongful acts** by any **insureds** prior to the date of a **change of control**. The extended reporting provision in Section V will not apply to a **change of control** event.

If you notify us in writing at least sixty (60) days prior to the **change of control**, we will provide you with proposed additional terms and conditions for run-off coverage subject to an additional premium and payment by you.

**Non-liability coverage parts** will have specific change of control provisions applicable to such Coverage Part.

## XI.  SUBSIDIARY

With respect to any **liability coverage part**:

A **subsidiary** and its **insureds** acquired or created before or during the **policy period** will be afforded coverage for a **claim** arising from **wrongful acts** which occur while that **subsidiary** is under the **management control** of an **insured entity**. There will be no acquisition threshold with respect to any **subsidiary**.

If an **insured entity** ceases **management control** of a **subsidiary** during the **policy period**, coverage will continue until the policy is otherwise terminated or cancelled, but coverage will apply to such **subsidiary** and its **insureds** only for **claims** for **wrongful acts** which occurred prior to such cessation.

## XII. CANCELLATION OR TERMINATION

This policy may only be cancelled or terminated by one of the following events:

(i) by us, for nonpayment of premium, in which event we will send you a written notice twenty (20) days prior to the effective date of such cancellation;

(ii) by the **named insured** for any reason if we receive written notice twenty (20) days prior to the date the policy should be cancelled; or

(iii) the expiration of the **policy period**.

Any returned premium will be computed on a pro rata basis.

## XIII.  SUBROGATION AND RECOUPMENT

If we pay any **loss** or other similar cost or expense under this policy, we reserve all rights to subrogation. We will not subrogate against you. You agree that we have the right to recoup any amount paid to you, or on your behalf, if such amount was not owed under this policy.

Any amounts recovered by subrogation or recoupment, less costs expended for the recovery, will be applied to the limit of liability of the applicable Coverage Part.

© Copyright CNA All Rights Reserved.

## XIV. GENERAL POLICY PROVISIONS

The **named insured** agrees to act on behalf of all **insureds** with respect to:

(i)  providing or receiving any notice;

(ii)  the payment of any premiums;

(iii) receiving any applicable return premiums; and

(iv) agreeing to and acceptance of any endorsements.

This policy, including the **application**, constitutes the entire contract existing between you and us or any of our agents relating to this insurance.

The provisions of this policy cannot be waived or changed except by written endorsement issued to form a part of this policy. We will not be bound by any assignment of interest under this policy unless this assignment is specifically endorsed to the policy.

## XV. REFERENCE TO LAW

Any reference to United States law will also include United States federal, state and local statutory law, and any rules, regulations and amendments of such law or any such equivalent foreign law.

## XVI. FINANCIAL INSOLVENCY

**Financial insolvency** will not impact our obligations, rights or defenses under this policy. We will not object to your efforts to obtain relief or stay from any injunction issued as a result of **financial insolvency**.

## XVII. ACTION AGAINST THE COMPANY

No action may be taken against us unless, as a condition precedent, there has been full compliance with all the terms and conditions of this policy. Further, no person or entity will have any right under this policy to join us as a party to any action against any **insured** to determine such **insured's** liability, nor can we be impleaded by the **insured** or legal representatives of such **insured**.

## XVIII. STATE AMENDATORY INCONSISTENCY STATEMENT

In the event that there is an inconsistency between the terms and conditions of this policy and any state amendatory endorsement, where permitted by law, we will apply the terms and conditions that are most favorable for you.

## XIX. TERRITORY

Coverage will apply worldwide. This policy does not provide coverage for any **insured**, transaction, that part of **loss**, or other similar cost or expense that is uninsurable under the laws or regulations of the United States concerning trade or economic sanctions.

IN WITNESS WHEREOF, we have caused this policy to be executed by our Chairman and Secretary, but this policy shall not be binding upon us unless completed by the attachment of the Declarations.

Chairman

Secretary

Form No: CNA92840XX (01-2019)                                    Policy No: 6052060736
Policy Conditions; Page: 7 of 7                                    Policy Effective Date: 12/18/2024
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 Policy Page: 13 of 138

© Copyright CNA All Rights Reserved.

## DIRECTORS AND OFFICERS AND ENTITY LIABILITY COVERAGE PART DECLARATIONS

### NOTICE:

THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY

Item 1.      **Named Insured**: CaaStle Inc.

Item 2.      Aggregate Limit of Liability (including **defense costs**): $2,000,000

Item 3.      Side A Additional Limit of Liability: $1,000,000

Item 4.      Coverage Extensions Sublimits of Liability
A.  **demand response costs**         $250,000
B.  **crisis event expenses**         $25,000

Item 5.      Retentions:
A.  Insuring Agreement Side B:      $25,000 per **claim**
B.  Insuring Agreement Side C:      $25,000 per **claim**

Item 6.      Pending or Prior Litigation Date: 09/18/2014

These Declarations, along with the completed and signed **application**, and the policy shall constitute the contract between the **insureds** and the Insurer.

Authorized Representative:

Date: 03/25/2025

© Copyright CNA All Rights Reserved.

 

| | |
|---|---|
| **DIRECTORS AND OFFICERS AND ENTITY LIABILITY COVERAGE PART** | |

In consideration of the premium and subject to the Declarations and the General Terms and Conditions, the parties agree as follows:

## I. INSURING AGREEMENTS

### A. Side A

We will pay **non-indemnifiable loss** on behalf of an **insured person** arising from a **claim** against such **insured person** first made during the **policy period**.

### B. Side B

We will pay **loss** on behalf of an **insured entity** arising from a **claim** against an **insured person** first made during the **policy period** but only to the extent the **insured entity** has indemnified the **insured person** for such **loss**.

### C. Side C

We will pay **loss** on behalf of an **insured entity** arising from a **claim** against such **insured entity** first made during the **policy period**.

## II. COVERAGE EXTENSIONS

The following coverage extensions, if subject to a sublimit, are part of, and not in addition to, the aggregate limit of liability set forth in Item 2 of this Coverage Part Declarations.

### A. Sublimited Demand Response Costs

We will pay **demand response costs** on behalf of an **insured entity** for all **demands** first received by the **insured entity** during the **policy period**. The total amount that we will pay for **demand response costs** will be the sublimit of liability set forth in Item 4A of this Coverage Part Declarations.

### B. Sublimited Crisis Event Expenses

We will pay **crisis event expenses** on behalf of an **insured entity** arising from any **crisis event** first occurring during the **policy period**. The total amount that we will pay for **crisis event expenses** will be the sublimit of liability set forth in Item 4B of this Coverage Part Declarations.

### C. Side A Additional Limit of Liability

Solely with respect to **non-indemnifiable loss**, we will pay an additional limit of liability for **executives** in the amount set forth in Item 3, Side A Additional Limit of Liability of this Coverage Part Declarations, which will be in addition to and not part of the aggregate limit of liability set forth in Item 2 of this Coverage Part Declarations. The Side A Additional Limit of Liability will be excess of any other insurance specifically written as excess of the aggregate limit of liability in Item 2 of this Coverage Part Declarations.

### D. Side A Extended Reporting Period Option

In the event that an **insured entity** does not purchase an **extended reporting period** prior to the expiration of the time frame indicated in Section V Extended Reporting Period for Liability Coverage Parts Only of the General Terms and Conditions, then the **insured person(s)** will have the right to purchase an **extended reporting period**. The **insured person(s)** must notify us of this election in writing within thirty (30) days after such expiration. Any **extended reporting period** purchased by any **insured person(s)** will apply only to **claims** made against such **insured person(s)** under the Side A Insuring

Form No: CNA92842XX (01-2019)
Coverage Part; Page: 1 of 9
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 15 of 138

© Copyright CNA All Rights Reserved.

Agreement. All other terms and conditions of Section V Extended Reporting Period for Liability Coverage Parts Only will apply to the **extended reporting period** for such **insured person(s)**. There will not be a separate or additional limit of liability for such **extended reporting period**.

## III. DEFINITIONS

Any defined word not defined in this Coverage Part will have the meaning assigned to it in the General Terms and Conditions.

**Anti-bribery** means any United States law which prohibits direct or indirect bribery or corruption.

**Antitrust** means any actual or alleged violation of any United States law which prohibits anti-trust, price fixing or price discrimination, restraint of trade or competition, monopolization, or predatory pricing.

**Books and records demand** means a written request by, or on behalf of, an **insured entity's** securityholder to inspect the **insured entity's** books, records, and stock ledgers pursuant to a statutory right of inspection.

**Claim** means any:

(i) written demand (excluding a subpoena) for monetary, non-monetary, injunctive, or declaratory relief including a request for alternative dispute resolution, **extradition**, or request to toll or waive a statute of limitations;

(ii) civil or criminal proceeding commenced by the earlier of: (a) the return of service of a complaint or indictment upon an **insured**; (b) the filing of an indictment or information with respect to an **insured**; or (c) the arrest or detainment of an **insured**; or

(iii) a formal administrative or regulatory proceeding evidenced by a formal notice of charges or a formal notice of investigation,

against such **insured** for a **wrongful act**, including any appeal therefrom. **Claim** will also include any **inquiry**. **Claim** will not include a **books and records demand** or any **securityholder derivative demand**.

Unless specifically stated elsewhere in this Coverage Part, a **claim** will be deemed first made on the earliest of the date on which the **claim** is served upon, or first received by, any **insured**, or the applicable notice or order is filed or entered.

**Conduct** means the: (i) gaining of profit or other advantage to which the **insured** was not legally entitled; or (ii) commission of a deliberate crime, deliberate fraud, or a deliberate dishonest act or omission, or willful violation of any law or regulation, provided such conduct is established by a final non-appealable adjudication (excluding a declaratory action or proceeding by, or against us) in the underlying action.

**Contractual liability** means your actual or alleged liability voluntarily undertaken by you in any contract or agreement. **Contractual liability** does not include liability that would be imposed upon you in the absence of such contract or agreement.

**Crisis event** means the:

(i) death, incapacity, or criminal indictment of the Chief Executive Officer, Chief Financial Officer or such functionally equivalent position of the **named insured**;

(ii) public announcement that an **insured entity** intends to file for bankruptcy protection; or

(iii) public announcement of an impending governmental, regulatory, or criminal proceeding against an **insured entity**.

**Crisis event** does not include any **anti-bribery** investigation, examination, or request, or any **routine examination**.

**Crisis event expenses** mean the reasonable and necessary fees, costs, and expenses that are incurred by an **insured entity** to minimize potential economic harm in response to a **crisis event**. Such **crisis event expenses** include fees, costs, and expenses to:

Form No: CNA92842XX (01-2019)
Coverage Part; Page: 2 of 9
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 16 of 138

© Copyright CNA All Rights Reserved.

(i)   retain an outside law firm, public relations firm, or crisis management firm, to advise the **insured entity**;

(ii)  manage press coverage, publicity and press relationships, advertising and mailing of materials.

**Crisis event expenses** do not include **overhead expenses**, expenses incurred prior to any notice submitted to us, or expenses incurred after one hundred and eighty (180) days from the date the **crisis event** was noticed to us.

**Defense costs** mean the reasonable and necessary fees, costs, and expenses, incurred by an **insured** in the investigation, defense, or appeal of any covered **claim**, including the premium for appeal, attachment, or similar bonds arising out of a covered judgment. **Defense costs** do not include **demand response costs** or **overhead expenses**.

**Demand** means any **books and records demand** or any **securityholder derivative demand**.

**Demand response costs** mean the reasonable and necessary fees, costs, and expenses incurred by an **insured entity** in responding to: (i) a **books and records demand**; or (ii) in connection with the investigation of a **securityholder derivative demand**. **Demand response costs** do not include **overhead expenses**.

**Discrimination/harassment** means any actual or alleged discrimination against, or harassment of, a third party by an **insured**.

**Employee** means any natural person, who is a past, present, or future full-time, part-time, seasonal or temporary worker, or volunteer of an **insured entity**. **Employee** does not include any **executive** or independent contractor.

**Employment related** means any matter relating to the responsibilities, obligations or duties of an employer to any **employee**, or prospective employee, including **wage and hour**, as imposed by United States law or common law.

**ERISA** means any actual or alleged violation of the Employee Retirement Income Security Act of 1974, (including the Consolidated Omnibus Budget Reconciliation Act of 1985)(COBRA).

**Executive** means any:

(i)   past, present, or future duly elected or appointed director (including a shadow or de facto director), trustee (excluding a bankruptcy or litigation trustee), advisory board member, officer, governor, or managing member of a management committee of an **insured entity**;

(ii)  past, present, or future In-House General Counsel or Risk Manager, or such functionally equivalent position, of the **named insured**;

(iii) holder of such functionally equivalent position to those included in paragraph (i) in an **insured entity** organized and operated outside of the United States of America, its territories or possessions; or

(iv) holder of such functionally equivalent position to those included in paragraph (i) above in an **outside entity** while serving at an **insured entity's** specific request or direction.

**Executive** does not include any **employee**.

**Extradition** means the formal process by which an **executive** outside of the United States is surrendered, or requested to surrender, to another country to respond to a criminal accusation. An **extradition** is commenced by an arrest, detainment, or incarceration of the **executive** by any foreign jurisdiction law enforcement authority.

**Inadequate consideration** means an allegation that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets, shares or securities of an entity by an **insured**, or of an **insured entity**, is inadequate.

© Copyright CNA All Rights Reserved.

**Inquiry** means any:

(i)    investigation against an **insured person** for a **wrongful act**, evidenced by a search warrant, subpoena, or target letter, or similar investigatory document; or

(ii)   written request by an **insured entity** of an **insured person** for an interview, meeting, sworn testimony, or documents in connection with a **securityholder derivative demand**.

**Inquiry** will not include any **anti-bribery** investigation, examination, or request or any **routine examination**.

**Insured** means any **insured person** or any **insured entity**.

**Insured person** means any **employee** or **executive**.

**Intellectual property** means any actual or alleged misappropriation, violation or infringement of: ideas, confidential information, trade secrets, copyright, trademark, patent, or other intellectual property right.

**Loss** means the amount you are legally obligated to pay as a result of a **claim** including compensatory damages, settlements, judgments, pre-judgment and post-judgment interest, claimants' attorney fees and costs attributable to the covered portion of a settlement or imposed as a result of a covered judgment, and **defense costs**. **Loss** will include **crisis event expenses**, **pre-claim expenses** and **demand response costs**.

**Loss** will also include:

(i)    punitive, exemplary, or multiplied damages if such damages are insurable under the law in the jurisdiction which is most favorable to you, provided that such jurisdiction has a substantial relationship to us, you, or to the **claim** giving rise to such **loss**;

(ii)   civil fines or penalties assessed against an **insured person** for an unintentional and non-willful violation of law that are insurable under the law to which this policy is construed, including civil fines or penalties assessed pursuant to 15 U.S.C. §78dd-2(g)(2)(B) (the Foreign Corrupt Practices Act);

(iii)  solely with respect to coverage afforded by the Side A Insuring Agreement, any tax imposed upon an **insured person** in his/her capacity as such in connection with the **financial insolvency** of an **insured entity**.

**Loss** does not include:

(a)   costs to comply with any order or agreement to provide non-monetary or injunctive relief;

(b)   taxes, fines, or penalties (other than those referenced in (i), (ii) or (iii) above);

(c)   **clean-up costs**;

(d)   amounts not insurable under the law to which this policy is construed; or

(e)   any amount for which an **insured** is absolved from payment by reason of any covenant, agreement, or court order.

**Non-indemnifiable loss** means any **loss** incurred by an **insured person** that an **insured entity** fails or refuses to pay, advance, or indemnify:

(i)    due to **financial insolvency**; or

(ii)   because such indemnification is not permitted pursuant to law.

**Outside entity** means any entity exempt from federal income tax pursuant to Sections 501(c)(3),(4),(6),(7), and (10) of the United States Internal Revenue Code, as amended; provided such entity is not an **insured entity**.

**Overhead expenses** mean the salaries, wages, fees, overhead, or benefit expenses associated with any **insured**.

© Copyright CNA All Rights Reserved.

**Pending or prior litigation** means any action, proceeding, investigation, inquiry, or written demand commenced against you pending on or prior to the date set forth in Item 6 of this Coverage Part Declarations.

**Personal injury** means any actual or alleged:

(i)   wrongful entry or eviction, or other invasion of the right of private occupancy;

(ii)  libel, slander, or defamation of any person;

(iii) violation of any person's right of privacy;

(iv) false arrest or false imprisonment;

(v)  malicious prosecution, malicious use or abuse of process; or

(vi) violation of any United States law which regulates or governs commercial solicitation, messaging, automatic contract renewals, or anti-spam (including commercial emails and spam, telemarketing, texts, and electronic commerce).

**Prior notice** means any matter, fact, circumstance, situation, transaction, event, or **wrongful act** that has been the subject of any notice accepted under any directors and officers liability policy or comparable policy, coverage section or coverage part of which this Coverage Part is a direct or indirect renewal or replacement.

**Product defect** means, with respect to any goods or products manufactured, produced, processed, packaged, sold, marketed, distributed, or developed by, or on behalf of, any **insured entity**, any actual or alleged:

(i)   failure, malfunction, or performance failure of such goods or products; or

(ii)  false labeling, false advertising, or misrepresentation in advertising of such goods or products.

**Professional services** mean the performance of, or failure to perform, services for others for a fee or other remuneration.

**Publicly traded securities** mean any registered debt or equity securities of an **insured entity** or an **outside entity** that are offered for purchase or sale to the public. **Publicly traded securities** will not include any: (i) unregistered securities; (ii) securities related to a failed undertaking of, or failure to complete, an initial public offering; or (iii) preparation for a public offering, including any road show presentation to potential investors.

**Securityholder claim** means any **claim** by any owner(s) of an **insured entity's** equity or debt securities brought in such capacity. **Securityholder claim** includes a **securityholder derivative suit**.

**Securityholder derivative demand** means any written demand by one or more securityholders of an **insured entity** upon the board of directors (or such functionally equivalent management body) of such **insured entity** to commence an investigation or to bring a **securityholder derivative suit**.

**Securityholder derivative suit** means a lawsuit brought derivatively on behalf of an **insured entity** by one or more securityholders of such **insured entity** against: (i) one or more **executives** of such **insured entity**; or (ii) the **insured entity** as a nominal defendant.

**Unfair trade practices** mean any actual or alleged violation of United States law or common law which prohibits unfair or deceptive trade or business practices.

**Wage and hour** means any actual or alleged violation of any United States law or common law which regulates or governs employment wage, pay, or labor requirements or standards, including but not limited to:

Form No: CNA92842XX (01-2019)
Coverage Part; Page: 5 of 9
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 19 of 138

© Copyright CNA All Rights Reserved.

(i)   the calculation, recordkeeping, timing or manner of payment of minimum wages, prevailing pay rates, overtime pay, or other compensation alleged to be due and owing, including the failure to compensate for any unpaid vacation pay, off the clock or remote work, or for employer sponsored activities;

(ii)  failure to provide or enforce legally required meal or rest break periods;

(iii) the classification of any entity or person for wage and hour purposes;

(iv)  garnishments, withholdings, or other deductions from wages;

(v)   use of federal or state tip credits or maintenance and distribution of tip pools; or

(vi)  reimbursement of work-related expenses or tools to any person providing services or labor to or on behalf of an **insured entity**,

or any such similar practices, policies, or procedures.

**Whistleblower Activity** means the lawful activity of an **insured person**, with respect to any alleged wrongdoing by an **insured**, who causes information to be provided to the attention of, or otherwise assists in an investigation by, a governmental or law enforcement agency, provided such activities are protected by statute with rights and remedies for retaliation recognized under United States law.

**Wrongful act** means any:

(i)   error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted or allegedly committed, or attempted, by:

(a)  an **insured person** in his/her capacity as such; or

(b)  an **insured entity**; or

(ii)  matter claimed against an **insured person** solely by reason of his/her status as such.

## IV. COVERAGE PART EXCLUSIONS

We will not cover **loss** in connection with any **claim**:

A.  based upon or arising from:

(i)   **conduct**;

(ii)  **prior notice**;

(iii) **pending or prior litigation**;

(iv)  **discrimination/harassment**;

(v)   **publicly traded securities**;

(vi)  **employment related**; provided this exclusion (vi) will not apply to any **claim** (other than a **wage and hour claim**) against an **insured person**; or

(vii) **pollution**; provided this exclusion (vii) will not apply to any:

(a)  **claim** for **non-indemnifiable loss**; or

(b)  **securityholder claim**.

B.  against an **insured entity** that is based upon or arising from:

(i)   **antitrust**;

(ii)  **contractual liability**;

(iii) **unfair trade practices**;

(iv)  **intellectual property**;

Form No: CNA92842XX (01-2019)
Coverage Part; Page: 6 of 9
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 20 of 138

© Copyright CNA All Rights Reserved.

(v) **personal injury**;

(vi) **product defect**; or

(vii) **professional services**,

provided these exclusions B will not apply to any **securityholder claim**.

C. for:

(i) **property damage**;

(ii) **ERISA**;

(iii) **inadequate consideration**; provided this exclusion (iii) will not apply to **defense costs**; or

(iv) **bodily injury**; provided this exclusion (iv) will not apply to any:

(a) any **claim** for **non-indemnifiable** loss;

(b) any **securityholder claim**;

(c) any actual or alleged emotional distress, mental anguish or humiliation made in connection with any **employment related claim** against an **insured person**; or

(d) **defense costs** incurred by an **executive** in the defense of a **claim** for any actual or alleged violation of a corporate manslaughter statute by such **executive**.

D. brought by, or on behalf of, any **insured** in any capacity against any **insured**, or an **outside entity** against any **insured**, unless such **claim** is:

(i) a **securityholder derivative suit** or a derivative action brought on behalf of an **outside entity** against an **insured person** in his/her capacity for such **outside entity**;

(ii) brought while the **insured entity** or **outside entity** is in **financial insolvency**;

(iii) brought by an **executive** who has not been in his/her insured capacity for at least one (1) year;

(iv) for contribution or indemnity arising from a **claim** otherwise covered under this policy;

(v) brought against an **insured person** by another **insured person** actively engaged in **whistleblower activity**;

(vi) an **employment related claim** against an **insured person**; or

(vii) brought in a common law jurisdiction other than the United States or Canada, their territories or possessions.

## V.   SPECIFIC LIMIT OF LIABILITY, SUBLIMITS AND RETENTIONS

The most we will pay for all **loss** arising from all **claims**, **demands**, and **crisis events** is the aggregate limit of liability set forth in Item 2 of this Coverage Part Declarations.

A single Retention will apply to each **claim**. There will be no Retention applicable to **demand response costs**, **crisis events**, or coverage afforded under the Side A Insuring Agreement.

Item 4 of this Coverage Part Declarations sets forth the maximum amount we will pay for sublimits of liability for **demand response costs** and **crisis event expenses**.

## VI.   REQUEST FOR OPTIONAL SPECIFIC COVERAGES

If you choose to request coverage for **demand response costs** or **crisis event expenses** you must submit a written notice to the address located in Item 3 of the General Terms and Conditions Declarations.

With respect to the **demand response costs**, the notice must include the date the **demand** was first received, the parties involved, the nature of the **demand** and the relief sought.

© Copyright CNA All Rights Reserved.



With respect to **crisis event expenses**, the notice must be sent within sixty (60) days of the **crisis event** and include the date the **crisis event** first occurred, the nature of the **crisis event** and the expenses requested or anticipated.

Should there be a subsequent **claim** that is based upon or arises out of this noticed **demand** or **crisis event** we will consider that **claim** to have first been made during the **policy period** in which we received your first written notice.

## VII. INDEMNIFICATION

It is agreed that an **insured entity** will indemnify its **insured person** to the fullest extent permitted by law.

## VIII. DEFENSE COSTS AND ADVANCEMENT

We will pay **defense costs** on a current basis, but no later than ninety (90) days after we have received any invoice or bill, as well as any additional supporting documentation that we have reasonably requested.

If an **insured person** makes a written request for indemnification from an **insured entity** and within sixty (60) days of such request the **insured entity** fails to respond, or refuses to indemnify the **insured person**, then we will pay **defense costs** on behalf of the **insured person** after receipt of the **claim** in accordance with the above paragraph. We will continue to pay such **defense costs** until the **insured entity** fulfills its indemnification obligations, or the applicable limit of liability has been exhausted whichever occurs first.

We reserve all rights to recoup or recover from an **insured entity** any amount paid on behalf of an **insured person** in the event we pay **loss** that is an indemnification obligation within the Retention.

## IX. DEFENSE OF CLAIMS

Subject to the following paragraph, we will have the right and duty to defend any **claim** even if the allegations in the **claim** are groundless, false, or fraudulent. Our duty to defend any **claim** will end, and we will have no further obligation to defend any **claim**, upon the exhaustion of the applicable limit of liability.

Solely with respect to any **employment related claim** you will have the duty to defend.

## X. ALLOCATION

If we have the duty to defend a **claim** that incurs covered **loss** and uncovered loss because such **claim** includes covered and uncovered parties, or covered and uncovered matters, then the following will apply:

(i) one hundred percent (100%) of **defense costs** incurred by such **insured** will be considered covered **loss**; and

(ii) with respect to any loss other than **defense costs** you and we will use our best efforts to determine an allocation between covered **loss** and uncovered loss based on the relative legal and financial exposures of the parties to such matters.

Alternatively, if you have the duty to defend a **claim**, you and we will use our best efforts to determine an allocation between covered **loss** and uncovered loss based on the relative legal and financial exposures of the parties to such matters.

## XI. OTHER INSURANCE

This Coverage Part will be excess of, and will not contribute with any valid and collectible insurance policy or Coverage Part that provides coverage or indemnifies **loss** for which this Coverage Part also provides coverage, unless such other insurance is written specifically as excess of the limit of liability of this Coverage Part.

This Coverage Part will be specifically excess of any valid and collectible insurance policy: (i) for environmental liability, cyber liability, professional services liability or employment practices liability; or (ii)

Form No: CNA92842XX (01-2019)
Coverage Part; Page: 8 of 9
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 22 of 138

© Copyright CNA All Rights Reserved.

written on a duty to defend basis unless such other insurance is written specifically as excess of the limit of liability of this Coverage Part.

With respect to an **executive** serving in his/her capacity as such for an **outside entity,** this Coverage Part will be excess of any insurance or indemnity available to such **insured person** by or on behalf of an **outside entity**.

Notwithstanding the above, this Coverage Part will apply as primary with respect to any personal umbrella or personal directorship liability insurance purchased by an **insured person**.

## XII. IMPUTATION

We will only impute the conduct or knowledge of any past, present, or future Chief Executive Officer, Chief Financial Officer, or such functionally equivalent positions of the **named insured** to any **insured entity**.

We will not impute:

(i)    the conduct of any **insured person** with respect to **conduct** exclusion IV A(i) of this Coverage Part;

(ii)   the knowledge possessed by any **executive** with respect to any statements, representations, or information in the **application**; or

(iii)  the failure to provide us with full cooperation, assistance, or information as required,

to any other **insured person**, nor will (i), (ii) or (iii) above impair the rights of any other **insured person** under this Coverage Part.

## XIII. PRIORITY OF PAYMENTS

The coverage under this Coverage Part is intended principally to benefit the **insured person**. In the event that **loss** under the Side A Insuring Agreement, and any other insuring agreement or coverage extension are due simultaneously, then we will first pay **non-indemnifiable loss** on behalf of the **insured person**. In all other instances we will pay **loss** as it becomes due.

© Copyright CNA All Rights Reserved.

 

**Epack 3**
Coverage Part Endorsement



## AMEND EXCLUSION D ENDORSEMENT

In consideration of the premium, Exclusion D set forth in Section IV, Coverage Part Exclusions, of the Directors and Officers and Entity Liability Coverage Part is deleted and replaced with the following:

D.   brought by, or on behalf of, any **insured** in any capacity against any **insured**, or an **outside entity** against any "outside entity executive" in his/her capacity as such for such **outside entity**, unless such **claim** is:

(i)   a **securityholder derivative suit** or a derivative action brought on behalf of an **outside entity** against an "outside entity executive" in his/her capacity for such **outside entity**;

(ii)   brought while the **insured entity** or **outside entity** is in **financial insolvency**;

(iii)   brought by an **executive** who has not been in his/her insured capacity for at least one (1) year;

(iv)   for contribution or indemnity arising from a **claim** otherwise covered under this policy;

(v)   brought against an **insured person** by another **insured person** actively engaged in **whistleblower activity**;

(vi)   an **employment related claim** against an **insured person**; or

(vii) brought in a common law jurisdiction other than the United States or Canada, their territories or possessions.

For the purpose of this exclusion "outside entity executive" means an **executive** as defined in subparagraph (iv) of the definition of **executive**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

| | |
|---|---|
| Form No: CNA107359XX (11-2023) | Policy No: 6052060736 |
| Endorsement Effective Date:          Endorsement Expiration Date: | Policy Effective Date: 12/18/2024 |
| Endorsement No: 1 ; Page: 1 of 1 | Policy Page: 24 of 138 |
| Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 | |

© Copyright CNA All Rights Reserved.

 



| | |
|---|---|
| **SPECIFIC LITIGATION EXCLUSION ENDORSEMENT**<br>**(Coverage Part Only)** | |

In consideration of the premium, the Directors and Officers and Entity Liability Coverage Part, Section IV, Coverage Part Exclusions is amended by adding the following exclusion:

We will not cover **loss** in connection with any **claim** based upon or arising out of Lisa Gathers or any matter, fact, circumstance, situation, transaction, or event underlying, alleged in or related to such lawsuit.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA92880XX (01-2019)                                                    Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:          Policy Effective Date: 12/18/2024
Endorsement No: 2 ; Page: 1 of 1                                                  Policy Page: 25 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.



## BOARD OBSERVER ENDORSEMENT

In consideration of the premium, solely with respect to Insuring Agreement A and B of the Directors and Officers and Entity Liability Coverage Part, Section III, Definitions of the policy is amended as follows:

A. **Executive** is amended as follows:

**Executive** also means a **board observer**, solely in his/her capacity as such, but only for **claims** made and continuously maintained against such **board observer** and against any other **insured** for a **wrongful act** committed by any **insured** other than the **board observer**.

B. The following definitions added:

**Board observer** means any natural person non-voting observer attending the **insured entity's** board of directors meetings at the request of the **insured entity**; provided that such person shall be indemnified by the **insured entity** to the same extent as any director or officer of the **insured entity.**

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA92929XX (01-2019)                                             Policy No: 6052060736
Endorsement Effective Date:           Endorsement Expiration Date:           Policy Effective Date: 12/18/2024
Endorsement No: 3 ; Page: 1 of 1                                   Policy Page: 26 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.





## AMEND LOSS ENDORSEMENT (SOX 304/Dodd-Frank 954 Costs)

In consideration of the premium, solely with respect to the D&O coverage part, Section III, Definitions of the policy is amended as follows:

I.   **Loss** will also include **SOX 304/Dodd-Frank 954 costs**.

II.   The following definition is added:

**SOX 304/Dodd-Frank 954 costs** means the reasonable and necessary fees, costs and expenses (including the premiums or origination fee for a loan or bond) consented to by the Insurer, and incurred by a past or present chief executive officer or chief financial officer of the **insured entity** in connection with a covered **claim**; provided such fees, costs and expenses were incurred solely to facilitate the return of amounts required to be repaid by such past or present chief executive officer or chief financial officer pursuant to Section 302(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Act of 2010. **SOX 304/Dodd Frank 954 costs** do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such past or present chief executive officer or chief financial officer pursuant to Section 304(a) Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Act of 2010.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA92935XX (01-2019)                                                    Policy No: 6052060736
Endorsement Effective Date:            Endorsement Expiration Date:             Policy Effective Date: 12/18/2024
Endorsement No: 4 ; Page: 1 of 1                                                 Policy Page: 27 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.




## ASSET PROTECTION EXPENSES ENDORSEMENT

In consideration of the premium, solely with respect to the Directors and Officers and Entity Liability Coverage Part, the policy is amended as follows:

I.   Section II, Coverage Extensions is amended by adding the following:

Asset Protection Expenses Sublimited Coverage

We will pay **asset protection expenses** on behalf of an **executive** incurred by such **executive** in response to an **asset protection order** first imposed upon such **executive** during the **policy period**. The total amount that we will pay for all **asset protection expenses** for all **asset protection orders** will be $25,000 regardless of the number of **executives** or **asset protection orders**. This sublimit of liability is part of, and not in addition to, the Aggregate Limit of Liability set forth in Item 2 of the Declarations for this Coverage Part.

We reserve all rights to recoupment of such **asset protection expenses** from the **executive** in the event that a final non-appealable adjudication establishes that the **executive** committed a deliberate fraudulent or deliberate criminal act, and such act gave rise to the **asset protection order**.

II.  Section III, Definitions is amended as follows:

A.   The following definitions are added:

**Asset protection expenses** mean the reasonable and necessary fees, costs and expenses consented to by us and incurred by or on behalf of any **executive** in: (i) opposing an **asset protection order**, or (ii) seeking to obtain a discharge or revocation of an **asset protection order**.

**Asset protection order** means any means any order issued by a law enforcement agency or a regulatory authority against an **executive** in such capacity to seize or enjoin the personal assets or real property of such **executive**.

B.   The following definitions are amended:

**Claim** does not include an **asset protection order**.

**Loss** will also include **asset protection expenses**.

III. Section VI, Request for Optional Specific Coverages is amended by adding the following:

In the event that an **executive** seeks coverage for **asset protection expenses**, the **executive** must submit a written notice to us as soon as practicable but in no event later than sixty (60) days after the end of the **policy period**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA92941XX (01-2019)                                           Policy No: 6052060736
Endorsement Effective Date:        Endorsement Expiration Date:         Policy Effective Date: 12/18/2024
Endorsement No: 5 ; Page: 1 of 1                                        Policy Page: 28 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.

 


**REGULATORY CLAIM COVERAGE ENDORSEMENT**
(Defense Costs Coverage - Sublimit/Retention/Coinsurance)

In consideration of the premium, the Directors and Officers and Entity Liability Coverage Part is amended as follows:

I.   Section III Definitions is amended by adding the following definitions:

**Government entity** means any federal, state, or local governmental agency, regulatory or administrative agency or entity, or any such foreign equivalent.

**Regulatory claim** means a **claim** brought by, or on behalf of, a **government entity** arising out of a **regulatory wrongful act**. **Regulatory claim** does not include any criminal proceeding or any **routine examinations**.

**Regulatory wrongful act** means a **wrongful act** arising out of any **insured's** alleged or actual violation of the Federal False Claims Act or any similar common law, or any federal, state or local anti-kickback, self-referral or healthcare fraud and abuse law and any rules, regulations and amendments of such law.

II.  Section IV Coverage Part Exclusions is amended as follows:

A.   Exclusion D(v) is deleted and replaced with the following:

(v)  brought against an **insured person** by another **insured person** actively engaged in **whistleblower activity**, provided this carveback will not apply to any **regulatory claim**;

B.   The following exclusion is added:

We will not cover **loss** based upon or arising out of a **regulatory claim**, provided that this exclusion will not apply to **defense costs**.

III. Section V Specific Limit of Liability, Sublimits and Retentions is amended by adding the following:

A.   The most we will pay for all **defense costs** arising from all **regulatory claims** is $100,000, such sublimited coverage will be part of, and not in addition to, the aggregate limit of liability set forth in Item 2 of this Coverage Part.

B.   A separate Retention of $25,000 will apply to each **regulatory claim**.

C.   A separate coinsurance percentage of 0% will apply to all **defense costs** for each **regulatory claim.** The coinsurance percentage will apply in excess of any Retention and will be uninsured and your responsibility to pay. Our liability will apply only to the remaining percent of all such **defense costs**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA92943XX (09-2019)                                         Policy No: 6052060736
Endorsement Effective Date:        Endorsement Expiration Date:       Policy Effective Date: 12/18/2024
Endorsement No: 6 ; Page: 1 of 1                                     Policy Page: 29 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.



**Epack 3**
Coverage Part Endorsement

## EMPLOYED LAWYERS ENDORSEMENT
### (Add Sublimit)

In consideration of the premium, the Directors & Officers and Entity Liability Coverage Part is amended as follows:

I.   Section I, Insuring Agreements is amended by adding the following:

Employed Lawyers

We will pay **loss** on behalf of an **insured entity** arising from a **claim** against an **employed lawyer** only to the extent:

(i)   the **insured entity** has indemnified the **employed lawyer** for such **loss** as permitted or required by law; and

(ii)  there is no other valid and collectible insurance, including lawyers professional insurance, legal malpractice or errors and omissions insurance, affording coverage to such **employed lawyer**.

II.  Section III, Definitions is amended as follows:

A.   The definition of **wrongful act** is amended by the addition of the following:

Solely with respect to the Employed Lawyers Insuring Agreement, **wrongful act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted or allegedly committed or attempted by an **employed lawyer**, in the rendering or failure to render professional legal services for an **insured entity** solely in his/her capacity as such.

B.   The following new definition is added:

**Employed lawyer** means those natural persons who are or were at the time of the alleged **wrongful act** employed as a lawyer full-time and salaried by an **insured entity** and admitted to the practice of law.

III. Solely with respect to the Employed Lawyers Insuring Agreement Section IV, Coverage Part Exclusions is amended by adding the following exclusions in addition to those in this Section:

We will not cover **loss** in connection with any **claim** against any **insured** or **employed lawyer** based upon or arising from any:

- activities by an **employed lawyer** which are: (i) not related to an **employed lawyer's** employment with an **insured entity**; (ii) not rendered on the behalf of you and at your request; or (iii) performed by an **employed lawyer** for others;

- **wrongful act** occurring at a time when the **employed lawyer** was not employed as a lawyer by the **insured entity**;

- **wrongful act**, if as of 09/18/2004, an **employed lawyer** knew or could have reasonably foreseen that such **wrongful act** could give rise to a **claim**;

- activities by an **employed lawyer** as an officer or director of any entity other than an **insured entity**.

IV. Section V, Specific Limit of Liability, Sublimits and Retentions is amended by adding the following:

A.   The most we will pay for all **loss** arising from **claims** under the Employed Lawyers Insuring Agreement is $1,000,000 such sublimited coverage will be part of, and not in addition to, the Aggregate Limit of Liability set forth in Item 2 of this Coverage Part.

---

Form No: CNA92946XX (03-2023)                                      Policy No: 6052060736
Endorsement Effective Date:              Endorsement Expiration Date:          Policy Effective Date: 12/18/2024
Endorsement No: 7 ; Page: 1 of 2                                   Policy Page: 30 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.



   B.  The Retention amount applicable for each **claim** under the Employed Lawyers Insuring Agreement will be the same as those applicable to Insuring Agreements A and B of the Directors and Officers and Entity Liability Coverage Part.

V.  It is understood and agreed that the coverage afforded by this endorsement will not be construed to reduce or negate coverage otherwise available to an **employed lawyer** who is also an **executive**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA92946XX (03-2023)                                                                Policy No: 6052060736
Endorsement Effective Date:            Endorsement Expiration Date:            Policy Effective Date: 12/18/2024
Endorsement No: 7 ; Page: 2 of 2                                                     Policy Page: 31 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.

 
## PROFESSIONAL SERVICES EXCLUSION
### (Management Carveback)

In consideration of the premium, Exclusion B(vii) **professional services** set forth in Section IV, Coverage Part Exclusions of the Directors and Officers and Entity Liability Coverage Part is deleted and replaced with the following:

We will not cover **loss** in connection with any **claim** against an **insured entity** that is based upon or arising from **professional services**; provided that this exclusion (vii) will not apply to any:

(a) **securityholder claim**; or

(b) **claim** which alleges that an **executive** in such capacity failed to supervise those who performed such **professional services**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA92954XX (01-2019)                                          Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:          Policy Effective Date: 12/18/2024
Endorsement No: 8 ; Page: 1 of 1                                         Policy Page: 32 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.





**AMEND DEFINITION OF EMPLOYEE**
**(Contractual Employee Coverage - D&O)**

In consideration of the premium, the Directors and Officers and Entity Liability Coverage Part of the policy is amended as follows:

I.   Section III, Definitions is amended to include the following:

**Contractual employee** means any contracted or leased natural person employee while in the ordinary course of regular service to any **insured entity's** business pursuant to a written contract for services, provided you indemnify such person to the fullest extent permitted by law to the same extent as any director or officer of any **insured entity**.

**Employee** also means a **contractual employee**.

**Independent contractor**, as used in this Coverage Part, will not include a **contractual employee**.

II.  Exclusion B(vii) **professional services** set forth in Section IV, Coverage Part Exclusions is deleted and replaced with the following:

We will not cover **loss** in connection with any **claim** against an **insured entity** that is based upon or arising from **professional services**; provided that this exclusion (vii) will not apply to any:

(a)  **securityholder claim**; or

(b)  **claim** which alleges that an **executive** in such capacity failed to supervise those who performed such **professional services**.

III. Solely with respect to the coverage afforded to any **contractual employee** under this endorsement, Section XI, Other Insurance is amended to include the following:

No coverage will be available for any **loss** until after any or all coverage available under any policy providing professional liability or errors and omissions coverage has been exhausted.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA92955XX (01-2019)                                                     Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:                 Policy Effective Date: 12/18/2024
Endorsement No: 9 ; Page: 1 of 1                                                  Policy Page: 33 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.



**AMEND DEFINITION OF WRONGFUL ACT ENDORSEMENT**
**(Controlling Person/ Selling Shareholder)**

In consideration of the premium, Section III, Definitions of the Directors and Officers and Entity Liability Coverage Part is amended as follows:

I.   The following definitions are added:

**Controlling person** means any past, present or future director or officer of an **insured entity**, who is deemed to be a controlling person of such **insured entity** within the meaning of Section 15 of the Securities Act of 1933 or Section 20(a) of the Securities Exchange Act of 1934.

**Selling shareholder** means any past, present or future director or officer of an **insured entity**, who offers to sell, or sells, securities issued by such **insured entity**.

II.  Subparagraph (a) of the definition of **wrongful act** is deleted and replaced with the following:

(a)  an **insured person** in his/her capacity:

(1)  as such;

(2)  as a **controlling person**; or

(3)  as a **selling shareholder**; or

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA92963XX (01-2019)                                                       Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:          Policy Effective Date: 12/18/2024
Endorsement No: 10 ; Page: 1 of 1                                                    Policy Page: 34 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.





## JOBS ACT EXCLUSION ENDORSEMENT

In consideration of the premium, the Directors and Officers and Entity Liability Coverage Part of the policy is amended as follows:

I.   Section III, Definitions is amended to include the following definition:

**JOBS Act Offering** means any conduct that is governed by the Jumpstart Our Business Startups Act of 2012, including any actual or alleged advertisement, solicitation, crowdfunding, offering, distribution, issuance, sale, purchase, or transaction of securities.

II.  Section IV, Coverage Part Exclusions is amended to include the following exclusion:

We will not cover **loss** in connection with any **claim** based upon or arising from any **JOBS Act Offering**; provided this exclusion will not apply to any **claim** involving: (i) securities related to a failed undertaking of, or failure to complete, an initial public offering; or (ii) preparation for a public offering, including any road show presentation to potential investors.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA92966XX (01-2019)                                      Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:        Policy Effective Date: 12/18/2024
Endorsement No: 11 ; Page: 1 of 1                                  Policy Page: 35 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.

**CNA**

---

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT - OHIO

---

### SCHEDULE

Directors and Officers and Entity Liability

Solely with respect to any Coverage Part set forth in the Schedule, it is understood and agreed as follows:

Whenever used in this endorsement, 1) "we" means the insurer listed on the Declarations or the Certificate of Insurance, as applicable; and 2) "you" means the first person or entity named on the Declarations or the Certificate of Insurance, as applicable. Notwithstanding the definitions set forth in this Policyholder Notice of Terrorism Coverage, Certified Acts of Terrorism coverage to all new applicants and existing insureds shall be provided under the same amounts, terms and conditions applicable to losses arising from events other than acts of terrorism, pursuant to the *Terrorism Risk Insurance Act, 15 U.S.C 6701, Section 103(c)*.

**A.  Cap on Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the Terrorism Risk Insurance Act, as extended and reauthorized (the "Act"). The criteria contained in the Act for a "certified act of terrorism" include the following:

**1.**  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.**  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.  Application of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy.

All other terms and conditions of the policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

---

Form No: CNA92970OH (04-2019)
Endorsement Effective Date:              Endorsement Expiration Date:
Endorsement No: 12 ; Page: 1 of 1
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 36 of 138

© Copyright CNA All Rights Reserved.





| **AMEND EXECUTIVE ENDORSEMENT**<br>**(Specific Title/Position)** |
|---|

In consideration of the premium, the definition of **executive** in Section III, Definitions of the Directors and Officers and Entity Liability Coverage Part is amended to also include any past, present or future Chief Compliance Office, Controller of an **insured entity**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA96395XX (08-2019)                                      Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:          Policy Effective Date: 12/18/2024
Endorsement No: 13 ; Page: 1 of 1                                 Policy Page: 37 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.



**Epack 3**
Coverage Part Endorsement



**AMEND DEFINITION OF LOSS ENDORSEMENT**
**(Section 11, 12 or 15 of the Securities Act of 1933)**

In consideration of the premium, the definition of **loss** in Section III, Definitions of the Directors and Officers and Entity Liability Coverage Part is amended to add the following after the last paragraph:

Notwithstanding the above, we will not assert that any amount for which an **insured** is legally obligated to pay arising from any actual or alleged violation of Section 11, 12 or 15 of the Securities Act of 1933, as amended, is uninsurable.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA96396XX (08-2019)                                                         Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:          Policy Effective Date: 12/18/2024
Endorsement No: 14 ; Page: 1 of 1                                                      Policy Page: 38 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.





**AMEND DEMAND RESPONSE COSTS ENDORSEMENT**
**(Add Class Certification Event Study Expenses)**

In consideration of the premium, Section III, Definitions of the Directors and Officers and Entity Liability Coverage Part is amended as follows:

I.    The definition of **demand response costs** is amended to also include **class certification event study expenses**.

II.   The following definition is added:

    **Class certification event study expenses** mean reasonable and necessary fees, costs, and expenses of any expert incurred by an **insured** to conduct an event study used to oppose class certification in a **securityholder claim**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

| | |
|---|---|
| Form No: CNA96397XX (08-2019) | Policy No: 6052060736 |
| Endorsement Effective Date:            Endorsement Expiration Date: | Policy Effective Date: 12/18/2024 |
| Endorsement No: 15 ; Page: 1 of 1 | Policy Page: 39 of 138 |
| Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 | |

© Copyright CNA All Rights Reserved.



## AMEND POLLUTION EXCLUSION ENDORSEMENT
**(From Absolute to For)**

In consideration of the premium, Section IV, Coverage Part Exclusions of the Directors and Officers and Entity Liability Coverage Part, is amended as follows:

I.  Exclusion A(vii) **pollution** is deleted.

II. The following exclusion is added to Exclusion C:

We will not cover **loss** in connection with any **claim** for **pollution**; provided this exclusion will not apply to any:

**(a)  claim** for **non-indemnifiable loss**; or

**(b)  securityholder claim**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA96398XX (08-2019)                                             Policy No: 6052060736
Endorsement Effective Date:            Endorsement Expiration Date:        Policy Effective Date: 12/18/2024
Endorsement No: 16 ; Page: 1 of 1                                         Policy Page: 40 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.



> **AMEND LIMIT OF LIABILITY, SUBLIMITS AND RETENTIONS ENDORSEMENT**
> **(Recognition of DIC payment in Retention)**

In consideration of the premium, solely with respect to the Directors and Officers and Entity Liability Coverage Part Section IV, Limit of Liability, Sublimits and Retentions of the General Terms and Conditions policy is amended by adding the following paragraph:

Notwithstanding the above, if applicable, we will recognize payment by a Difference in Conditions policy of any **loss** for which this Coverage Part also provides coverage, and will apply such payment to erode the outstanding Retention, if any.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA96399XX (08-2019)                                                   Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:              Policy Effective Date: 12/18/2024
Endorsement No: 17 ; Page: 1 of 1                                               Policy Page: 41 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.





**AMEND EXECUTIVE ENDORSEMENT**
**(Partner - D&O or NFP D&O Coverage Part)**

In consideration of the premium, the Directors and Officers and Entity Liability Coverage Part is amended as follows:

I.   The definition of **executive** in Section III, Definitions is amended as follows:

**Executive** will also include any past, present or future natural person general partner or managing partner of an **insured entity**, or such functionally equivalent position.

II.  The following exclusion is added to Section IV, Coverage Part Exclusions:

We will not cover **loss** in connection with any **claim** based upon or arising from the actual or alleged imputed joint, or joint and several, liability of any **executive** based solely upon such **executive's** status as a general partner or managing partner of an **insured entity**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA96418XX (08-2019)                                                    Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:        Policy Effective Date: 12/18/2024
Endorsement No: 18 ; Page: 1 of 1                                                 Policy Page: 42 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.





| | **AMEND DEFINTION OF LOSS ENDORSEMENT**<br>(Directors and Officers and Entity Liability Coverage Part; UK Bribery Act Penalties With Sublimit) |
|---|---|

In consideration of the premium, the Directors and Officers and Entity Liability Coverage Part is amended as follows:

I.   Section III, Definitions is amended as follows:

   A.   Paragraph (ii) of the definition of **Loss** is deleted and replaced with the following:

   (ii)   civil fines or penalties assessed against an **insured person** for an unintentional and non-willful violation of law that are insurable under the law to which this policy is construed, including civil fines or penalties assessed pursuant to 15 U.S.C. §78dd-2(g)(2)(B) (the Foreign Corrupt Practices Act) and **UK Bribery Act penalties**;

   B.   The following definition is added:

   **UK Bribery Act penalties** mean those civil penalties assessed pursuant to Section 7 of the UK  Bribery Act.

II.   Section V, Specific Limit of Liability, Sublimits and Retentions is amended to add the following:

   The most we will pay for all **UK Bribery Act penalties** arising from all **claims** is $100,000, such sublimited coverage will be part of, and not in addition to, the aggregate limit of liability set forth in Item 2 of this Coverage Part Declarations

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

| | | |
|---|---|---|
| Form No: CNA97686XX (01-2020) | | Policy No: 6052060736 |
| Endorsement Effective Date: | Endorsement Expiration Date: | Policy Effective Date: 12/18/2024 |
| Endorsement No: 19 ; Page: 1 of 1 | | Policy Page: 43 of 138 |
| Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 | | |

© Copyright CNA All Rights Reserved.





| FIDUCIARY LIABILITY DECLARATIONS |
|---|

### NOTICE:

THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY

Item 1.   **Named Insured**: CaaStle Inc.

Item 2.   Aggregate Limit of Liability (including **defense costs**): $1,000,000

Item 3.   Coverage Extensions Sublimits of Liability

| | |
|---|---|
| A.  **voluntary compliance costs** | $250,000 |
| B.  **covered penalties**: | |
| (i)  Section 502 (c) of ERISA | $250,000 |
| (ii)  Pension Protection Act of 2006 | $250,000 |
| (iii) Health Insurance Portability and Accountability Act of 1996 | $1,000,000 |
| (iv) Section 4975 of the Internal Revenue Code of 1986 | $250,000 |
| (v)  Patient Protection and Affordable Care Act or the Health Care and Education Reconciliation Act of 2010 | $250,000 |

Item 4.   Retention: $0 per **claim**

Item 5.   Pending or Prior Litigation Date: 12/18/2022

These Declarations, along with the completed and signed **application**, and the policy shall constitute the contract between the **insureds** and the Insurer.

Authorized Representative:

Date: 03/25/2025

Form No: CNA92845XX (01-2019)
Coverage Part Declarations; Page: 1 of 1
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 44 of 138

© Copyright CNA All Rights Reserved.

 


## FIDUCIARY LIABILITY COVERAGE PART

In consideration of the premium and subject to the Declarations and the General Terms and Conditions, the parties agree as follows:

### I.   INSURING AGREEMENT

We will pay **loss** on behalf of an **insured** arising from a **claim** against such **insured** first made during the **policy period**.

### II.   COVERAGE EXTENSIONS

The following coverage extensions, if subject to a sublimit, are part of, and not in addition to, the aggregate limit of liability set forth in Item 2 of this Coverage Part Declarations.

A.   Sublimited Voluntary Compliance Costs

We will reimburse you for **voluntary compliance costs** incurred by you in connection with a **voluntary compliance program** that is first noticed to us during the **policy period**, provided that you enter into such **voluntary compliance program** during the **policy period**. The total amount that we will pay for **voluntary compliance costs** will be the sublimit of liability set forth in Item 3A of this Coverage Part Declarations.

B.   Sublimited Covered Penalties

The total amount that we will pay for each of the following **covered penalties** will be the sublimits of liability set forth in Item 3B of this Coverage Part Declarations:

(i)   those civil fines and penalties imposed upon an **insured** under Section 502 (c) of **ERISA**;

(ii)   those civil fines and penalties imposed upon an **insured** under the Pension Protection Act of 2006;

(iii)   those civil fines and penalties imposed upon an **insured** under the Health Insurance Portability and Accountability Act of 1996;

(iv)   the fifteen percent (15%) or less tax penalty imposed upon an **insured** under Section 4975 of the Internal Revenue Code of 1986; and

(v)   those civil fines and penalties imposed upon an **insured** for an inadvertent violation of the Patient Protection and Affordable Care Act or the Health Care and Education Reconciliation Act of 2010.

### III.   DEFINITIONS

Any defined word not defined in this Coverage Part will have the meaning assigned to it in the General Terms and Conditions.

**Administration** means: (i) the advising, counseling, or providing notice to employees, beneficiaries, or **plan** participants with respect to any **plan**; (ii) providing interpretations with respect to any **plan**; (iii) the handling of records in connection with any **plan**; or (iv) the enrollment, termination, or cancellation, of participants or beneficiaries under any **plan**.

**Assumed liability** means your voluntary assumption of the liability of others undertaken by you in any oral or written contract or agreement, unless such liability would have attached to you in the absence of such contract or agreement. **Assumed liability** does not include liability assumed in accordance with or under the trust instrument or equivalent documents governing the assets of the **plan**.

Form No: CNA92846XX (01-2019)                                Policy No: 6052060736
Coverage Part; Page: 1 of 9                                      Policy Effective Date: 12/18/2024
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 Policy Page: 45 of 138

© Copyright CNA All Rights Reserved.

**Benefits due** mean those benefits that are or allegedly are due or become due under any **plan** if such **plan** complied with all applicable laws. **Benefits due** do not include:

(i)  benefits an **insured person** is legally obligated to pay as a personal obligation where the recovery of such benefits is based upon a covered **wrongful act**; or

(ii)  amounts related to a **claim** alleging a loss to a **plan**, or loss in the actual accounts of **plan** participants, due to a change in value of the **plan's** investments, including the securities of the **insured entity**, regardless of whether the amounts sought in such **claim** have been characterized by claimants as benefits or determined by a court of law to be benefits.

**Claim** means any

(i)  written demand (excluding a subpoena) for monetary, non-monetary, injunctive, or declaratory relief including a request for alternative dispute resolution, **extradition**, or request to toll or waive a statute of limitations;

(ii)  civil or criminal proceeding commenced by the earlier of: (a) the return of service of a complaint or indictment upon an **insured**; (b) the filing of an indictment or information with respect to an **insured**; or (c)  the arrest or detainment of an **insured person**;

(iii)  **fact-finding investigation** commenced by the **insured's** receipt of a target letter or formal investigative order; or

(iv)  **enforcement unit investigation**,

against such **insured** for a **wrongful act**, including any appeal therefrom.

**Claim** will also include a **pre-claim investigation** or **internal appeal**; provided that a **pre-claim investigation** or **internal appeal** will only be deemed a **claim** if the **insured** requests coverage by written notice pursuant to Section VI Request for Optional Specific Coverages and such notice is accepted by us.

Unless specifically stated elsewhere in this Coverage Part, a **claim** will be deemed first made on the earliest of the date on which the **claim** is served upon, or first received by, any **insured**, or the applicable notice or order is filed or entered.

**Committee** means any employee benefit committee comprised entirely of **insured persons**, including any plan investment or administration committee, provided such committee is established by an **insured entity** or **plan**.

**Conduct** means the: (i) gaining of profit or other advantage to which the **insured** was not legally entitled; or (ii) commission of a deliberate crime, deliberate fraud, or a deliberate dishonest act or omission, or willful violation of any law or regulation, provided such conduct is established in a final non-appealable adjudication (excluding a declaratory action or proceeding by, or against us) in the underlying action.

**Consulting fees** mean the reasonable and necessary fees, costs, and expenses incurred by the **insured** in connection with a **voluntary compliance program** resulting solely from the correction of actual or alleged inadvertent non-compliance by a **plan** with any statute, rule, or regulation. **Consulting fees** include the fees charged by a third party actuary, benefits consultant, accountant, or legal counsel. **Consulting fees** will not include fees, costs, or expenses relating to a **plan** audit or relating to finding, assessing, or identifying any violation of a statute, rule, or regulation.

**Covered penalties** mean the following fines and penalties:

(i)  those fines and penalties set forth in paragraphs (i) through (v) in Section II B of this Coverage Part;

(ii)  the five percent (5%) or less penalty imposed upon an **insured** as a fiduciary under Section 502(i) of **ERISA**;

(iii)  the twenty percent (20%) or less penalty imposed upon an **insured** as a fiduciary under Section 502(l) of **ERISA**;

© Copyright CNA All Rights Reserved.

(iv) the civil penalties imposed by the Pension Ombudsman or the Pensions Regulator or any successor thereto, pursuant to the Pension Scheme Act 1993, the Pensions Act 1995, the Pensions Act 2004, or rules or regulations thereunder; or the civil penalties imposed by Ireland's Pension Board or Pensions Ombudsman.

**Defense costs** mean the reasonable and necessary fees, costs, and expenses, incurred by an **insured** in the investigation, defense, or appeal of any covered **claim**, including the premium for appeal, attachment, or similar bond arising out of a covered judgment. **Defense costs** do not include **overhead expenses**.

**Employee** means any natural person, who is a past, present, or future full-time, part-time, seasonal, or temporary worker, or volunteer of an **insured entity**. **Employee** does not include any **executive** or independent contractor.

**Enforcement unit** means any federal, state, local, or foreign law enforcement or governmental authority (including, the U.S. Department of Justice, the U.S. Securities and Exchange Commission, and any attorney general) or the enforcement unit of any securities exchange or similar self-regulatory body. **Enforcement unit** does not include the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or by the United Kingdom Occupational Pensions Regulatory Authority or any successor thereto.

**Enforcement unit investigation** means any investigation by an **enforcement unit** of an **insured person** solely in his/her fiduciary capacity of any **plan** commenced by the **insured person's** receipt of a written document (including a Wells Notice, target letter, or search warrant) identifying such **insured person** as the target of an investigation.

**ERISA** means the Employee Retirement Income Security Act of 1974, (including the Consolidated Omnibus Budget Reconciliation Act of 1985)(COBRA), as amended, any similar state law, or any such equivalent foreign law.

**Executive** means any:

(i)    past, present, or future duly elected or appointed director, trustee (excluding a bankruptcy or litigation trustee), officer, governor, advisory board member or member of a management committee of an **insured entity**;

(ii)   past, present, or future In-House General Counsel, Risk Manager, or such functionally equivalent position, of the **named insured**; or

(iii)  holder of such functionally equivalent position to those included in paragraph (i) in an **insured entity** that is organized outside of the United States, its territories, or possessions.

**Executive** does not include any **employee**.

**Extradition** means the formal process by which an **executive** outside of the United States is surrendered, or requested to surrender, to another country to respond to a criminal accusation. An **extradition** is commenced by an arrest, detainment, or incarceration of the **executive** by any foreign jurisdiction law enforcement authority.

**Fact-finding investigation** means a fact finding investigation of an **insured** in its fiduciary capacity with respect to any **plan**, such investigation conducted by the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions, or by the United Kingdom Occupational Pensions Regulatory Authority, or any successor thereto.

**Fiduciary fees** means the reasonable and necessary fees and expenses of an independent fiduciary retained by an **insured** to review a proposed settlement of a covered **claim** (including reasonable and necessary fees and expenses of any law firm hired by such independent fiduciary to facilitate a review of such proposed settlement).

© Copyright CNA All Rights Reserved.

**Healthcare exchange** means any public, private, or government-sponsored or controlled entity established to facilitate the purchase of health insurance in accordance with the Patient Protection and Affordable Care Act and the Health Care and Education Reconciliation Act of 2011.

**Insured** means any **insured entity**, **plan**, **committee**, **insured person**, or any entity formed and operating outside the United States that has been established by an **insured entity** and duly appointed to act as a trustee of any **plan**.

**Insured person** means any:

(i)   **employee** or **executive**;

(ii)  employee of a **plan**; or

(iii) past, present, or future natural person trustee of an **insured entity** or **plan**.

**Internal appeal** means an appeal by an **employee** of an adverse benefits determination by an **insured** pursuant to the U.S. Department of Labor's claim procedure regulation 29 C.F.R. Section 2560.503-1 (h) or any similar claim procedures pursuant to applicable law.

**Loss** means the amount that you are legally obligated to pay as a result of a **claim** including compensatory damages, settlements, judgments, pre-judgment and post-judgment interest, claimants' attorney fees and costs attributable to the covered portion of a settlement or imposed as a result of a covered judgment, and **defense costs**. **Loss** will include **voluntary compliance costs** and **pre-claim expenses**.

**Loss** will also include:

(i)   **covered penalties**;

(ii)  punitive, exemplary, or multiplied damages if such damages are insurable under the law in the jurisdiction which is most favorable to you; provided that such jurisdiction has a substantial relationship to us, you, or to the **claim** giving rise to such **loss**;

(iii) **fiduciary fees**.

**Loss** does not include:

(a)  costs to comply with any order or agreement to provide non-monetary or injunctive relief;

(b)  taxes, fines, or penalties (other than those referenced in (i) and (ii) above);

(c)  **clean-up costs**;

(d)  amounts not insurable under the law to which this policy is construed;

(e)  any amount for which an **insured** is absolved from payment by reason of any covenant, agreement, or court order;

(f)  **benefits due**; or

(g)  an employer's contributions owed to a **plan** and other amounts for which the **insureds** are legally obligated to pay by reason of the failure to collect such contributions, unless such failure is due to the **insured's** negligence.

**Managed care services administrator** means an administrator or manager of a health care plan utilizing cost control mechanisms, including but not limited to utilization review, case management, disease management, or the use of a preferred provider network. **Managed care services administrator** does not include:

(i)   any provider of services provided by a **self-administered plan**; or

(ii)  any provider of medical services.

---

Form No: CNA92846XX (01-2019)                                      Policy No: 6052060736
Coverage Part; Page: 4 of 9                                        Policy Effective Date: 12/18/2024
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 Policy Page: 48 of 138

© Copyright CNA All Rights Reserved.

**Non-indemnifiable loss** means any **loss** incurred by an **insured person** that an **insured entity** fails or refuses to pay, advance, or indemnify:

(i)   due to **financial insolvency**; or

(ii)  because such indemnification is not permitted pursuant to law.

**Overhead expenses** mean the salaries, wages, fees, overhead, or benefit expenses associated with any **insured**.

**Pending or prior litigation** means any action, proceeding, investigation, inquiry, or written demand commenced against you on or prior to the date set forth in Item 5 of this Coverage Part Declarations.

**Plan** means any:

(i)   employee benefit plan, pension benefit plan or welfare benefit plan, as each is defined under **ERISA**, sponsored solely by an **insured entity** or sponsored jointly by an **insured entity** and a labor organization, for the benefit of the **employees**;

(ii)  other employee benefit plan or program not subject to **ERISA** which is sponsored solely by an **insured entity** for the benefit of the **employees**;

(iii) employee benefit plan or program otherwise described in paragraphs (i) or (ii) above while such plan or program is being actively developed, formed or proposed by any **insured entity** prior to the formal creation of such plan or program;

(iv)  government-mandated insurance program for workers' compensation, unemployment, social security or disability benefits for **employees**; or

(v)   Voluntary Employee's Beneficiary Association as defined under Section 501(c)(9) of the Internal Revenue Code of 1986, for which the purpose is to provide life, sickness, accident, or other benefits for voluntary members who are **employees** (including their dependents or designated beneficiaries).

**Plan** will not include any multi-employer plan as defined in **ERISA** or an employee stock ownership plan or qualified retirement plan that combines an employee stock ownership plan with a qualified 401(k) retirement plan.

**Pre-claim investigation** means any **fact-finding investigation** which does not contain an allegation of a **wrongful act**. **Pre-claim investigation** will not include any **routine examination.**

**Prior notice** means any matter, fact, circumstance, situation, transaction, event, or **wrongful act** that has been the subject of any notice accepted under any fiduciary liability policy or comparable policy, coverage section or coverage part of which this Coverage Part is a direct or indirect renewal or replacement.

**Responsible Person** will also mean the Director of Benefits or such functionally equivalent position of the **named insured**.

**Self-administered plan** means a **plan** administered by an **insured** in which the employer or plan sponsor (as defined under **ERISA**) retains the right to make the final benefit determination.

**Specified legislation** means any actual or alleged violation of any United States law governing workers' compensation, unemployment insurance, social security, or disability benefits, exclusive of COBRA or the Health Insurance Portability and Accountability Act of 1996.

**Voluntary compliance costs** mean:

(i)   **consulting fees**; or

(ii)  any fines, penalties or sanctions paid by an **insured** to a governmental authority pursuant to a **voluntary compliance program**, for the actual or alleged inadvertent non-compliance by a **plan** with any statute, rule or regulation.

© Copyright CNA All Rights Reserved.

 
**Voluntary compliance costs** do not include:

(a) any **consulting fees** or fines, penalties or sanctions set forth in (ii) above relating to a **plan** which, as of the earlier of the inception of this policy or inception of the first policy in an uninterrupted series of policies issued by us of which this policy is a direct or indirect renewal or replacement, any **insured person** knew to be actually or allegedly non-compliant;

(b) costs to correct any non-compliance;

(c) fees, costs, or expenses relating to a **plan** audit or relating to finding, assessing, or identifying any such violation; or

(d) **overhead expenses.**

**Voluntary compliance program** means any voluntary compliance resolution program or similar voluntary settlement program administered by the U.S. Internal Revenue Service, the U.S. Department of Labor, or any such equivalent foreign administrative or regulatory agency.

**Wage and hour** means any actual or alleged violation of any United States law or common law which regulates or governs employment wage, pay, or labor requirements or standards, including but not limited to:

(i) the calculation, recordkeeping, timing, or manner of payment of minimum wages, prevailing pay rates, overtime pay, or other compensation alleged to be due and owing, including the failure to compensate for any unpaid vacation pay, off the clock or remote work, or for employer sponsored activities;

(ii) failure to provide or enforce legally required meal or rest break periods;

(iii) the classification of any entity or person for wage and hour purposes;

(iv) garnishments, withholdings, or other deductions from wages;

(v) use of federal or state tip credits or maintenance and distribution of tip pools; or

(vi) reimbursement of work-related expenses or tools to any person providing services or labor to or on behalf of an **insured entity**,

or any such similar practices, policies, or procedures.

**Wrongful act** means any:

(i) breach of the performance of fiduciary duties committed, attempted, or allegedly committed or attempted, by an **insured** while acting in the capacity as a fiduciary of any **plan**;

(ii) actual or alleged act, error, or omission by an **insured** in the **administration** of a **plan**;

(iii) actual or alleged act, error, or omission solely by reason of the **insured's** capacity as a settlor of a **plan**;

(iv) breach of fiduciary duties committed, attempted, or allegedly committed or attempted, by an **insured** in connection with the actual or attempted purchase of insurance through a       **healthcare exchange**; or

(v) matter claimed against an **insured** solely by reason of the **insured's** status as a fiduciary of a **plan**.

## IV. COVERAGE PART EXCLUSIONS

We will not cover **loss** in connection with any **claim:**

A. based upon or arising from:

    (i) **conduct**;

    (ii) **prior notice**;

    (iii) **pending or prior litigation**;

© Copyright CNA All Rights Reserved.

(iv) **wage and hour**; or

(v) **assumed liability**.

B. for:

(i) **property damage**;

(ii) **specified legislation**;

(iii) **bodily injury**; provided this exclusion (iii) will not apply to any:

(a) **claim** for any actual or alleged bodily injury, sickness, disease, death, emotional distress or mental anguish of any natural person  resulting from the negligent selection of any **managed care services administrator**;

(b) improper denial or delay of any benefit under a health care plan, other than a **self-administered plan**; or

(c) **defense costs** incurred in the defense of a **claim** for a violation of **ERISA** by an **insured**.

## V. SPECIFIC LIMIT OF LIABILITY, SUBLIMITS, AND RETENTIONS

The most we will pay for all **loss** arising from **claims** and **voluntary compliance programs** is the aggregate limit of liability set forth in Item 2 of this Coverage Part Declarations.

A single Retention will apply to each **claim**. There will be no Retention applicable to **voluntary compliance costs** or to **non-indemnifiable loss**. Unless stated otherwise, no Retention will apply to a sublimited **covered penalty**.

Item 3 of this Coverage Part Declarations sets forth the maximum amount we will pay for any sublimited coverage.

## VI. REQUEST FOR OPTIONAL SPECIFIC COVERAGES

If you choose to request coverage for a **voluntary compliance program**, **pre-claim investigation**, or **internal appeal** you must submit a written notice to the address located in Item 3 of the General Terms and Conditions Declarations.

With respect to a **voluntary compliance program**, the notice must include the violation(s) of the statute, rule, or regulation, when and by what authority the violation(s) were issued, and the specific **voluntary compliance program** the **insured** is planning to enter.

With respect to a **pre-claim investigation**, the notice must include the governmental entity conducting such investigation, a copy of all documents received from such governmental entity, and the date such documents were first received by the **insured**.

With respect to an **internal appeal**, the notice must include the nature of the appeal, the date the initial benefits determination was made by the **insured**, the date the appeal was first filed, the date upon which you first learned of the appeal, and copies of the determination and the appeal.

## VII. DEFENSE COSTS

We will pay **defense costs** on a current basis, but no later than ninety (90) days after we have received any invoice or bill, as well as any additional supporting documentation that we have reasonably requested.

## VIII. DEFENSE OF CLAIMS

Subject to the following paragraph, we will have the right and duty to defend any **claim** even if the allegations in the **claim** are groundless, false, or fraudulent. Our duty to defend any **claim** will end, and we will have no further obligation to defend any **claim** upon the exhaustion of the applicable limit of liability.

Solely with respect to any **claim** alleging a **wage and hour** violation you will have the duty to defend.

Form No: CNA92846XX (01-2019)
Coverage Part; Page: 7 of 9
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 51 of 138

© Copyright CNA All Rights Reserved.

## IX. ALLOCATION

If we have the duty to defend a **claim** that incurs covered **loss** and uncovered loss because such **claim** includes covered and uncovered parties, or covered and uncovered matters, then the following will apply:

(i)   one hundred percent (100%) of **defense costs** incurred by such **insured** will be considered covered **loss**; and

(ii)  with respect to any loss other than **defense costs** you and we will use our best efforts to determine an allocation between covered **loss** and uncovered loss based on the relative legal and financial exposures of the parties to such matters.

Alternatively, if you have the duty to defend a **claim**, you and we will use our best efforts to determine an allocation between covered **loss** and uncovered loss based on the relative legal and financial exposures of the parties to such matters.

## X. ACQUISITION, CREATION, CESSATION, OR TRANSFER OF A PLAN

A **plan** and its **insureds** acquired or created before or during the **policy period** will automatically be afforded coverage, provided such coverage will apply only to **claims** for **wrongful acts** which occur after such acquisition or creation.

If before or during the **policy period** a **plan** is terminated or transferred so that an **insured entity** is no longer the sole employer sponsor of such **plan**, coverage for such **plan** and its **insureds** will  apply to such **plan** and its **insured**s but only with respect to **claims** for **wrongful acts** which occurred prior to such termination or transfer.

## XI. OTHER INSURANCE

This Coverage Part will be excess of, and will not contribute with any valid and collectible insurance which applies to **loss** covered under this Coverage Part, unless such other insurance is written specifically as excess of the limit of liability of this Coverage Part.

## XII. IMPUTATION

We will only impute the conduct or knowledge of any past, present, or future Chief Executive Officer, Chief Financial Officer, or such functionally equivalent positions of the **named insured** to any **insured entity**.

We will not impute:

(i)   the conduct of any **insured person** with respect to **conduct** exclusion IV A(i) of this Coverage Part;

(ii)  the knowledge possessed by any **executive** with respect to any statements, representations, or information in the **application**; or

(iii) the failure to provide us with full cooperation, assistance, or information as required,

to any other **insured person**, nor will (i), (ii) or (iii) above impair the rights of any other **insured person** under this Coverage Part.

## XIII.  PRIORITY OF PAYMENTS

If the amount of any covered **loss** which is otherwise due and owing by us exceeds the then remaining limit of liability, we will pay such **loss** (subject to such limit of liability) as follows:

(i)   on behalf of any **insured person**; then

(ii)  on behalf of any **plan**; then

(iii) on behalf of any **insured entity**.

---

Form No: CNA92846XX (01-2019)                                    Policy No: 6052060736
Coverage Part; Page: 8 of 9                                       Policy Effective Date: 12/18/2024
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 Policy Page: 52 of 138

© Copyright CNA All Rights Reserved.


## XIV. WAIVER OF RECOURSE PROVISION

If the applicable premium for this Coverage Part has been paid by an **insured entity** or an **insured person** then, pursuant to Section 410(b)(1) of **ERISA**, we will waive our right of recourse against any such **insured**.

© Copyright CNA All Rights Reserved.





**ADMINISTRATION COVERAGE FOR MULTI-EMPLOYER PLANS ENDORSEMENT**

In consideration of the premium, section III, Definitions of the Fiduciary Liability Coverage Part is amended as follows:

I.  The definition of **Administration** is deleted and replaced with the following:

> **Administration** means: (i) the advising, counseling, or providing notice to employees, beneficiaries, or **plan** or **multi-employer plan** participants with respect to any **plan** or **multi-employer plan**; (ii) providing interpretations with respect to any **plan** or **multi-employer plan**; (iii) the handling of records in connection with any **plan** or **multi-employer plan**; or (iv) the enrollment, termination, or cancellation of participants or beneficiaries under any **plan** or **multi-employer plan**.

II. Paragraph (ii) of the definition of **Wrongful act** is deleted and replaced with the following:

> (ii)  actual or alleged act, error, or omission by an **insured** in the **administration** of a **plan** or **multiemployer plan**;

III. The following new definition is added:

> **Multi-employer plan** means any employee benefit plan as defined by **ERISA** which is sponsored jointly by an **insured entity** and a labor organization for the benefit of the **employees** of the **insured entity**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

| | |
|---|---|
| Form No: CNA93051XX (01-2019) | Policy No: 6052060736 |
| Endorsement Effective Date:          Endorsement Expiration Date: | Policy Effective Date: 12/18/2024 |
| Endorsement No: 20 ; Page: 1 of 1 | Policy Page: 54 of 138 |
| Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 | |

© Copyright CNA All Rights Reserved.





| E-DISCOVERY CONSULTANT COSTS ENDORSEMENT |
| --- |

In consideration of the premium, the Fiduciary Liability Coverage Part is amended as follows:

I. Section III, Definitions is amended as follows:

    A. The definition of **Defense costs** is amended to add the following:

       **Defense costs** also include **e-discovery consultant costs**.

    B. The following new definition is added:

       **E-discovery consultant costs** means the reasonable and necessary costs associated with the services of an e-consultant firm retained by the **insured** (after consent by us), at hourly rates to assist in the collection, processing, review, analysis, and production of an **insured's** electronically stored information, as well as for such other services provided and approved by us prior to engagement by such e-consultant firm.

II. Section V, Specific Limit of Liability, Sublimits, and Retentions is amended to add the following to the second paragraph:

    No retention applies to the first $25,000 incurred for **e-discovery consultant costs** for any **claim**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

| | |
| --- | --- |
| Form No: CNA93053XX (01-2019) | Policy No: 6052060736 |
| Endorsement Effective Date:          Endorsement Expiration Date: | Policy Effective Date: 12/18/2024 |
| Endorsement No: 21 ; Page: 1 of 1 | Policy Page: 55 of 138 |
| Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 | |

© Copyright CNA All Rights Reserved.




| EMPLOYMENT PRACTICES AND THIRD PARTY LIABILITY COVERAGE PART DECLARATIONS |
| --- |

### NOTICE:

THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY

Item 1.     **Named Insured**: CaaStle Inc.

Item 2.     Aggregate Limit of Liability (including **defense costs**): $2,000,000

Item 3.     Retention: $75,000 per **claim**

Item 4.     Pending or Prior Litigation Date: 09/18/2014

Item 5.

| Duty to Defend | X | Non Duty to Defend | |
| --- | --- | --- | --- |

These Declarations, along with the completed and signed **application**, and the policy shall constitute the contract between the **insureds** and the Insurer.

Authorized Representative:

Date: 03/25/2025

Form No: CNA92843XX (01-2019)
Coverage Part Declarations; Page: 1 of 1
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 56 of 138

© Copyright CNA All Rights Reserved.



<table>
<tr><td>

**EMPLOYMENT PRACTICES AND
THIRD PARTY LIABILITY COVERAGE PART**

</td></tr>
</table>

In consideration of the premium and subject to the Declarations and the General Terms and Conditions, the parties agree as follows:

## I.   INSURING AGREEMENT

We will pay **loss** on behalf of the **insureds** arising from a **claim** against such **insureds** first made during the **policy period**.

## II.   SETTLEMENT RETENTION CREDIT

With respect to the settlement of a **claim**, if you and the claimant consent to the initial settlement offer, as recommended by us, within thirty (30) days of being made aware of such offer by us, we will reduce the applicable Retention for such **claim** by the lesser amount of ten percent (10%) of the Retention or ten thousand dollars ($10,000) provided the settlement exceeds the Retention and such Retention has been met by the **insured**.

In the event that one **claim** is eligible for both this Settlement Retention Credit and the Mediation Retention Reduction found in Section II A Supplementary Benefits of the General Terms and Conditions, then the **insured entity** will receive only one such benefit.

## III.   DEFINITIONS

Any defined word not defined in this Coverage Part will have the meaning assigned to it in the General Terms and Conditions.

**Antitrust** means any actual or alleged violation of any United States law which prohibits antitrust, price fixing or price discrimination, restraint of trade or competition, monopolization, or predatory pricing, including horizontal or other price fixing of wages, hours, salaries, compensation, benefits, or any other terms or conditions of employment.

**Applicant** means any applicant or prospective applicant for employment with an **insured entity**.

**Assumed liability** means your voluntary assumption of the liability of others undertaken by you in any oral or written contract or agreement, unless such liability would have attached to you in the absence of such contract or agreement.

**Breach** means an intentional unauthorized access, intrusion, or control over an **insured's** computer system or network by a third party for some illicit purpose.

**Claim** means any:

(i)   written demand (excluding a subpoena) for monetary, non-monetary, injunctive, or declaratory relief, including a request to toll or waive a statute of limitations;

(ii)  written request for arbitration, mediation, or other alternative dispute resolution; or

(iii) civil, administrative, or regulatory proceeding (excluding an audit), including an **EEOC proceeding** or proceeding by the Office of Federal Contract Compliance Programs,

by or on behalf of an **employee**, **applicant**, or **third party**, in their capacity as such, against an **insured** for a **wrongful act**.

**Claim** will not include any criminal proceeding, criminal administrative or regulatory proceeding, criminal investigation, or labor or grievance arbitration or proceeding pursuant to a collective bargaining agreement or similar agreement.

Form No: CNA92844XX (01-2019)
Coverage Part; Page: 1 of 7
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 57 of 138

© Copyright CNA All Rights Reserved.

Unless specifically stated elsewhere in this Coverage Part, a **claim** will be deemed first made on the earliest of the date on which the **claim** is served upon, or first received by, any **insured**.

**Defense costs** mean the reasonable and necessary fees, costs, and expenses, including the cost of expert consultants and witnesses, incurred by an **insured** in the investigation, defense, or appeal of any covered **claim**, including the premium for appeal, attachment, or similar bonds arising out of a covered judgment. **Defense costs** include **diversity sensitivity training costs**. **Defense costs** do not include **overhead expenses**.

**Discrimination** means any alleged or actual violation of any United States law or common law which prohibits discrimination.

**Diversity sensitivity training costs** mean the reasonable and necessary costs incurred by an **insured entity** for any training, reeducation, sensitivity, or protected class development programs which the **insured entity** is obligated to establish by reason of a judgment, settlement, or alternative dispute resolution process in a covered **claim**.

**EEOC proceeding** means any investigative proceeding before the Equal Employment Opportunity Commission, or an adjudicatory or investigative proceeding before any similar federal, state, or local government body whose purpose is to address any **wrongful employment practice**.

**Employee** means any natural person, who is a past, present, or future full-time, part-time, seasonal or temporary worker, volunteer, intern, or **independent contractor** of an **insured entity**.

**Employment related benefits** mean perquisites, fringe benefits, deferred compensation, or payments (including insurance premiums and benefit claim payments) in connection with an employee benefit plan, **stock benefits** (or the equivalent value thereof), and any other payment to or for the benefit of an **employee** arising out of the employment relationship. **Employment related benefits** will not include salary, wages, commissions, or non-deferred cash incentive compensation.

**ERISA** means any actual or alleged violation of the Employee Retirement Income Security Act of 1974, (including the Consolidated Omnibus Budget Reconciliation Act of 1985)(COBRA).

**Executive** means any:

(i)   past, present, or future duly elected or appointed director, trustee (excluding a bankruptcy or litigation trustee), officer, governor, or managing member of a management committee of an **insured entity**;

(ii)  past, present, or future In-House General Counsel, Risk Manager, or Director of Human Resources, or such functionally equivalent position, of the **named insured**; or

(iii) holder of such functionally equivalent position to those included in paragraphs (i) and (ii) above in any **insured entity** formed or organized outside of the United States, its territories or possessions.

**Executive** does not include any **employee**.

**Harassment** means any actual or alleged sexual harassment or other unlawful harassment, including bullying, quid pro quo sexual harassment, or hostile work environment.

**Insured** means any **insured person** or any **insured entity**.

**Insured person** means any **executive** or **employee**.

**Invasion of privacy** means any actual or alleged failure by an **insured** to secure an **employee's personal information** from unauthorized use or disclosure resulting in injury to such **employee**; provided **invasion of privacy** does not include unauthorized use or disclosure caused by a **breach**.

**Loss** means the amount that you are legally obligated to pay as a result of a **claim** including awards, settlements, compensatory damages (including back pay and front pay), judgments, pre-judgment and post-judgment interest, and claimants' attorney fees and costs attributable to the covered portion of a settlement or imposed as a result of a covered judgment, and **defense costs**.

Form No: CNA92844XX (01-2019)
Coverage Part; Page: 2 of 7
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 58 of 138

© Copyright CNA All Rights Reserved.

**Loss** will also include:

(i)   punitive, exemplary, or multiplied damages if such damages are insurable under the law in the jurisdiction which is most favorable to you; provided that such jurisdiction has a substantial relationship to us, you, or to the **claim** giving rise to such **loss**;

(ii)  liquidated damages awarded pursuant to the Age Discrimination in Employment Act, the Family Medical Leave Act, or the Equal Pay Act;

(iii) **pre-claim expenses**.

**Loss** does not include:

(a)   costs to comply with any order or agreement to provide non-monetary relief or injunctive relief, or any accommodation under any United States law or common law which prohibits discrimination based on disability;

(b)   taxes, fines or penalties (other than those referenced in (i) above);

(c)   **clean-up costs**;

(d)   compensation earned by the claimant in the course of employment but unpaid by the **insured**, including salary, wages, commissions, severance, bonus, carried interest, or incentive compensation;

(e)   amounts not insurable under the law to which this policy is construed;

(f)   any amount for which an **insured** is absolved from payment by reason of any covenant, agreement, or court order;

(g)   future salary, wages, or commissions of a claimant who is hired, promoted, or reinstated to employment pursuant to a settlement of, order in, or other resolution of any **claim**; or

(h)   **employment related benefits**.

**NLRA** means any actual or alleged violation of the National Labor Relations Act, or similar law governing employees' rights and employers' duties with respect to unions, bargaining, strikes, boycotts, picketing, lockouts, or collective activities.

**OSHA** means any actual or alleged violation of the Occupational Safety and Health Act of 1970, or similar law governing workplace safety and health.

**Overhead expenses** mean the salaries, wages, fees, overhead, or benefit expenses associated with any **insured**.

**Pending or prior litigation** means any action, proceeding, investigation, inquiry, or written demand commenced against you pending on or prior to the date set forth in Item 4 of this Coverage Part Declarations.

**Personal information** means any nonpublic personal information relating to an identified or identifiable natural person.

**Prior notice** means any matter, fact, circumstance, situation, transaction, event, or **wrongful act** that has been the subject of any notice accepted under any employment practices liability policy or comparable policy, coverage section, or coverage part of which this Coverage Part is a direct or indirect renewal or replacement.

**Responsible person** will also mean the Director of Human Resources or such functionally equivalent position of the **named insured**.

**Retaliation** means any actual or alleged retaliatory act by an **insured** against an **employee** arising from such **employee's**:

(i)   **whistleblower activity**;

---

Form No: CNA92844XX (01-2019)
Coverage Part; Page: 3 of 7
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 59 of 138

© Copyright CNA All Rights Reserved.

(ii) participation, assistance, testimony, or cooperation in any internal or external proceeding or investigation regarding violations of law by an **insured**; or

(iii) exercise of his/her rights, refusal to violate any law, or opposition to any unlawful practice or activity.

**Stock benefits** mean any:

(i) offering, plan, or agreement between an **insured entity** and any **employee** which grants stock, stock warrants, or stock options of an **insured entity** to any such **employee**, including grants of stock options, restricted stock, stock warrants, performance stock shares, or any other compensation or incentive granted in the form of securities of the **insured entity**; or

(ii) payment or instrument in the amount or value of which is derived from the value of securities of the **insured entity**, including stock appreciation rights or phantom stock plans or arrangements.

**Stock benefits** will not include employee stock ownership plans or employee stock purchase plans.

**Third party** means any natural person who is not an **employee** or **executive**.

**Third party wrongful act** means any **discrimination** or **harassment** of a **third party** committed, attempted, or allegedly committed or attempted by an **insured** in such capacity.

**Wage and hour** means any actual or alleged violation of any United States law which regulates or governs employment wage, pay, or labor requirements or standards (except for the Equal Pay Act) including but not limited to:

(i) the calculation, recordkeeping, timing or manner of payment of minimum wages, prevailing pay rates, overtime pay or other compensation alleged to be due and owing, including the failure to compensate for any unpaid vacation pay, off the clock or remote work, or for employer sponsored activities;

(ii) failure to provide or enforce legally required meal or rest break periods;

(iii) the classification of any entity or person for wage and hour purposes;

(iv) garnishments, withholdings, or other deductions from wages;

(v) use of federal or state tip credits or maintenance and distribution of tip pools; or

(vi) reimbursement of work-related expense or tools to any person providing services or labor to or on behalf of an **insured entity**,

or any such similar practices, policies or procedures.

**WARN** means any actual or alleged violation of the Workers' Adjustment and Retraining Notification Act, or similar law governing employer notice requirements in advance of lay-offs or facility closings.

**Whistleblower activity** means the lawful activity by an **employee**, with respect to any alleged wrongdoing by an **insured**, who causes information to be provided to the attention of, or otherwise assists in an investigation by, a governmental or law enforcement agency, provided such activities are protected by statute with rights and remedies for retaliation recognized under United States law.

**Worker benefits** mean any actual or alleged violation of any United States law governing workers' compensation, unemployment insurance, social security, or disability benefits.

**Workplace tort** means any:

(i) negligent hiring, training, supervision, or evaluation of **employees**;

(ii) failure to adopt or enforce adequate workplace or employment policies and procedures;

(iii) false imprisonment, false arrest, detention, or malicious prosecution;

(iv) libel, slander, defamation, or humiliation;

---

© Copyright CNA All Rights Reserved.

(v) **invasion of privacy**; or

(vi) wrongful infliction of emotional distress.

**Wrongful act** means: (i) any **wrongful employment practice** but only with respect to any **employee** or any **applicant**; or (ii) any **third party wrongful act** but only with respect to any **third party**. A **wrongful act** includes any actual or alleged conduct that takes place via electronic communication, including social media and internet websites.

**Wrongful employment decision** means any:

(i)   actual or constructive wrongful dismissal, discharge, or termination of employment;

(ii)  wrongful deprivation of career opportunity, demotion, failure to grant tenure, failure to train, failure to employ or promote, or failure to advance to the status of partner or equity partner;

(iii) employment related misrepresentation, including inducement to become or remain employed based on an erroneous job description; or

(iv) wrongful discipline of **employees**.

**Wrongful employment practice** means any employment related:

(i)   breach of any written employment contract or agreement, including any written contract or agreement concerning severance payments or contractual obligation arising out of any employee handbook, personnel manual, policy statement, or other representation;

(ii)  **discrimination**;

(iii) **harassment**;

(iv) **retaliation**;

(v)  **workplace tort**; or

(vi) **wrongful employment decision**,

committed, attempted, or allegedly committed or attempted by an **insured** in such capacity.

## IV. COVERAGE PART EXCLUSIONS

We will not cover **loss** in connection with any **claim**:

A.  based upon or arising from:

   (i)   **assumed liability**;

   (ii)  **prior notice**;

   (iii) **pending or prior litigation**;

   (iv) **wage and hour**; provided this exclusion (iv) will not apply to any **claim** on account of **retaliation**;

   (v)  **antitrust**; provided this exclusion (v) will not apply to any **claim** on account of **retaliation**; or

   (vi) **pollution**; provided this exclusion (vi) will not apply to any **claim** on account of **retaliation**.

B.  for:

   (i)   **property damage**;

   (ii)  **bodily injury**; provided this exclusion (ii) will not apply to any actual or alleged emotional distress, mental anguish or humiliation when made in connection with any **claim**;

   (iii) **worker benefits**, **ERISA** (except for Section 510), **OSHA**, **WARN**, or **NLRA**; provided these exclusions (iii) will not apply to any **claim** on account of **retaliation**; or

Form No: CNA92844XX (01-2019)                                    Policy No: 6052060736
Coverage Part; Page: 5 of 7                                       Policy Effective Date: 12/18/2024
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606  Policy Page: 61 of 138

© Copyright CNA All Rights Reserved.

(iv) any breach of any written employment contract or agreement, including any severance agreement or golden parachute agreement, or any compensation agreement payable upon the termination of any **employee**; provided this exclusion (iv) will not apply to:

(a) **defense costs**, or

(b) liability that would be imposed in the absence of such employment contract or agreement.

## V.   SPECIFIC LIMIT OF LIABILITY, SUBLIMITS AND RETENTIONS

The most we will pay for all **loss** arising from all **claims** is the aggregate limit of liability set forth in Item 2 of this Coverage Part Declarations

A single Retention will apply to each **claim**.

## VI.  DEFENSE COSTS

We will pay **defense costs** on a current basis, but no later than ninety (90) days after we have received any invoice or bill, as well as any additional supporting documentation that we have reasonably requested.

## VII. DEFENSE OF CLAIMS

A.   <u>Duty to Defend Coverage</u>

If you have elected duty to defend coverage as indicated in Item 5 of the Declarations for this Coverage Part, then we will have the right and duty to defend any **claim** even if the allegations in the **claim** are groundless, false, or fraudulent. Our duty to defend any **claim** will end, and we will have no further obligation to defend any **claim** upon the exhaustion of the applicable limit of liability.

B.   <u>Non-Duty to Defend Coverage</u>

If you have elected non-duty to defend coverage as indicated in Item 5 of the Declarations for this Coverage Part, then you will have the duty to defend any **claim** covered under this Coverage Part.

C.   Regardless of your Item 5 election you will have the duty to defend any **claim** alleging a **wage and hour** violation, or any **claim** alleging both a **wage and hour** violation and a **wrongful employment practice**.

## VIII. ALLOCATION

If we have the duty to defend a **claim** that incurs covered **loss** and uncovered loss because such **claim** includes covered and uncovered parties, or covered and uncovered matters, then the following will apply:

(i)   one hundred percent (100%) of **defense costs** incurred by such **insured** will be considered covered **loss**; and

(ii)  with respect to any loss other than **defense costs** you and we will use our best efforts to determine an allocation between covered **loss** and uncovered loss based on the relative legal and financial exposures of the parties to such matters.

Alternatively, if you have the duty to defend a **claim**, you and we will use our best efforts to determine an allocation between covered **loss** and uncovered loss based on the relative legal and financial exposures of the parties to such matters.

## IX. OTHER INSURANCE

A.   This Coverage Part will be excess of, and will not contribute with any valid and collectible insurance policy that provides coverage or indemnifies **loss** for which this Coverage Part also provides coverage, unless such other insurance is written specifically as excess of the limit of liability of this Coverage Part.

Form No: CNA92844XX (01-2019)
Coverage Part; Page: 6 of 7
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 62 of 138

© Copyright CNA All Rights Reserved.

B. Coordination of Coverage Provision

Any **loss** otherwise covered by both this policy and any employment practices liability policy or Coverage Part issued by us or any affiliate ("EPL Coverage") will be covered first under such EPL Coverage subject to such EPL Coverage limit of liability, retention and coinsurance percentage. Any remaining **loss** otherwise covered by this policy that is not paid under such EPL Coverage will then be covered under this policy subject to the applicable Limit of Liability and Retention. Provided, however, that the Retention applicable to such **loss** under this policy will be reduced by the amount of **loss** otherwise covered by this policy that is paid by an **insured** as the retention under such EPL Coverage.

## X. IMPUTATION

We will only impute the conduct or knowledge of any past, present, or future Chief Executive Officer, Chief Financial Officer, Director of Human Resources, or such functionally equivalent positions of the **named insured** to any **insured entity**.

We will not impute:

(i)   the knowledge possessed by any **executive** with respect to any statements, representations, or information in the **application**; or

(ii)  the failure to provide us with full cooperation, assistance, or information as required,

to any other **insured person**, nor will (i) or (ii) above impair the rights of any other **insured person** under this Coverage Part.

---

Form No: CNA92844XX (01-2019)                                        Policy No: 6052060736
Coverage Part; Page: 7 of 7                                          Policy Effective Date: 12/18/2024
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 Policy Page: 63 of 138

© Copyright CNA All Rights Reserved.




**SPECIFIC LITIGATION EXCLUSION ENDORSEMENT**
**(Coverage Part Only)**

In consideration of the premium, the Employment Practices and Third Party Liability Coverage Part, Section IV, Coverage Part Exclusions is amended by adding the following exclusion:

> We will not cover **loss** in connection with any **claim** based upon or arising out of Lisa Gathers or any matter, fact, circumstance, situation, transaction, or event underlying, alleged in or related to such lawsuit.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA92880XX (01-2019)                                          Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:       Policy Effective Date: 12/18/2024
Endorsement No: 22 ; Page: 1 of 1                                       Policy Page: 64 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.


## CHOSEN COUNSEL ENDORSEMENT

In consideration of the premium, solely with respect to the Employment Practices and Third Party Liability Coverage Part, the Defense of Claims Section of the policy is amended to add the following:

Chosen Counsel

Solely with respect to any **claim** for which we have the right and duty to defend you may request the engagement of:

(i)   Greenberg Trauring at the following hourly rates:

Partner: $300 per hour;

Associate: $325 per hour;

Paralegal: $200 per hour; or

(ii)  any law firm not set forth in (i) above subject to our written consent (such consent will not be unreasonably withheld), provided that the hourly rates for such law firm will not exceed the highest hourly rates set forth in (i) above,

(all such law firms referenced in (i) and (ii) above are hereafter referred to as "chosen counsel") to provide a defense for such **claim**; provided, however, that any attorney from chosen counsel involved in the defense of any **claim** must be a member in good standing of the bar in the jurisdiction where such **claim** is pending.

We will provide a copy of our defense and billing guidelines (hereafter "guidelines") to chosen counsel. The guidelines contain reasonable and necessary billing and reporting procedures to be followed by chosen counsel, including the joint development of a litigation plan and budget. As a condition precedent to any payment by us to chosen counsel for **defense costs**, you will obtain from chosen counsel a signed statement in which chosen counsel agrees to comply with our guidelines. If chosen counsel fails to provide such signed statement, we will not make any payment to such counsel for **defense costs**, and we will appoint defense counsel of our own choosing to replace chosen counsel.

You further agree that chosen counsel will work closely and communicate regularly with our assigned claims professionals in coordinating the defense effort.

Any fees, costs, and expenses billed by chosen counsel which are not reasonable or necessary, which do not comply with our guidelines, or which are in excess of the billing rates set forth above will not erode the Retention. Such fees, costs and expenses will be paid by you. We will not be responsible for any billing disputes between you and chosen counsel.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

© Copyright CNA All Rights Reserved.




## WAGE AND HOUR DEFENSE COSTS SUBLIMITED COVERAGE ENDORSEMENT

In consideration of the premium, solely with respect to the Employment Practices and Third Party Liability Coverage Part, the policy is amended as follows:

I.  Exclusion A (iv) set forth in Section IV, Coverage Part Exclusions is deleted and replaced with the following:

(iv) **wage and hour**; provided this exclusion (iv) will not apply to:

(a) any **claim** on account of **retaliation**; or

(b) **defense costs** subject to the sublimit of liability set forth in paragraph II of this endorsement.

II. Section V, Specific Limit of Liability, Sublimits and Retentions is amended to include the following:

Defense Costs Only Sublimit of Liability for Wage and Hour Claims

A.  The most we will pay for all **defense costs** for all **claims** alleging **wage and hour** is $100,000, such sublimited coverage will be part of, and not in addition to, the Aggregate Limit of Liability set forth in Item 2 of this Coverage Part Declarations.

B.  The Retention set forth in Item 3 of this Coverage Part Declarations shall apply to each such **claim** alleging **wage and hour**.

III. Notwithstanding anything to the contrary herein, there will be no coverage for **defense costs** under this Coverage Part for any **claim** alleging **wage and hour** if, prior to the inception date of this policy or the first such policy issued by us in a series of uninterrupted policies, whichever is earlier, any director, officer, supervisory **employee** or an **employee** within the Human Resources or Risk Management was aware of such **wage and hour** issue.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA92988XX (01-2019)                              Policy No: 6052060736
Endorsement Effective Date:        Endorsement Expiration Date:        Policy Effective Date: 12/18/2024
Endorsement No: 24 ; Page: 1 of 1                          Policy Page: 66 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.




## WORKPLACE VIOLENCE ACT EXPENSES SUBLIMITED COVERAGE ENDORSEMENT

In consideration of the premium, solely with respect to the Employment Practices and Third Party Liability Coverage Part, the policy is amended as follows:

I.   Section I, Insuring Agreement is amended to add the following Insuring Agreement:

Workplace Violence Act Expenses

We will pay **workplace violence act expenses** on behalf of an **insured entity** resulting from any **workplace violence act** first occurring during the **policy period**. The total amount that we will pay for **workplace violence act expenses** will be the sublimit of liability set forth in paragraph IV of this endorsement.

II.   Section III, Definitions is amended as follows:

A.   The definition of **loss** is amended as follows:

Solely with respect to the coverage provided by this endorsement, **loss** will also include **workplace violence act expenses**.

B.   The following definitions are added:

**Workplace violence act** means any actual, alleged or threatened, intentional or unlawful deadly force or physical violence by use of a lethal weapon which: (i) occurs on or in the **insured entity's** workplace; and (ii) causes, or could cause, bodily injury or death to an **insured person**.

**Workplace violence act expenses** means the reasonable and necessary fees and expenses (other than **overhead expenses**) incurred by an **insured entity** in connection with a **workplace violence act**. Such **workplace violence act expenses** include:

1.   an independent security consultant for the first ninety (90) days after the **workplace violence act** occurred;

2.   an independent public relations consultant for the first ninety (90) days after the **workplace violence act** occurred;

3.   a counseling seminar for all **employees** of the **insured entity** conducted by an independent consultant within the first ninety (90) days after the **workplace violence act** occurred;

4.   an independent security guard service for the first fifteen (15) days after the **workplace violence act** occurred; and

5.   an independent forensic analyst for the first ninety (90) days after the **workplace violence act** occurred.

III.   Section IV, Coverage Part Exclusions is amended to include the following exclusions:

A.   We will not cover **loss** in connection with any **claim** based upon or arising from any **workplace violence act**.

B.   We will not be liable to pay any **workplace violence act expenses** resulting from any **workplace violence act** which:

1.   takes place in or at any location other than your workplace;

2.   is based upon or arises out of declared or undeclared war, civil war, insurrection, civil commotion, insurrection, rebellion, revolution, military action, invasion, riot, government intervention, expropriation or nationalization; or

Form No: CNA92989XXC (09-2023)                                    Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:          Policy Effective Date: 12/18/2024
Endorsement No: 25 ; Page: 1 of 2                                  Policy Page: 67 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.

3. is based upon or arises out of the use or threat of force or violence occurring for the purpose of demanding money, securities or property.

IV. Section V, Specific Limit of Liability, Sublimits and Retentions is amended to include the following:

Workplace Violence Act Expenses Sublimit of Liability

A. The most we will pay for all **workplace violence act expenses** for all **workplace violence acts** is $250,000, such sublimited coverage will be part of, and not in addition to, the Aggregate Limit of Liability set forth in Item 2. of this Coverage Part Declarations.

B. No Retention will apply to **workplace violence act expenses**.

V. The following new section will be added to this Coverage Part:

Request for Coverage for Workplace Violence Act Expenses

If you choose to request coverage for **workplace violence act expenses** you must submit a written notice at the address located in Item 3 of the General Terms and Conditions Declarations. The notice must be sent within sixty (60) days of the **workplace violence act** and include the nature and description of the act, the date the act first occurred, and the expenses requested or anticipated.

Should there be a subsequent **claim** that is based upon or arises out of this noticed **workplace violence act** we will consider that **claim** to have first been made during the **policy period** in which we accepted your first written notice.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA92989XXC (09-2023)                                      Policy No: 6052060736
Endorsement Effective Date:        Endorsement Expiration Date:     Policy Effective Date: 12/18/2024
Endorsement No: 25 ; Page: 2 of 2                                   Policy Page: 68 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.




## IMMIGRATION CLAIM DEFENSE COSTS SUBLIMITED COVERAGE ENDORSEMENT

In consideration of the premium, solely with respect to the Employment Practices and Third Party Liability Coverage Part, the policy is amended as follows:

I.  Section III, Definitions is amended as follows:

    A.  The definition of **claim** is amended as follows:

        (i)  **Claim** will also include an **immigration claim**.

        (ii)  The sentence "**Claim** will not include any criminal proceeding, criminal administrative or regulatory proceeding, criminal investigation, or labor or grievance arbitration or proceeding pursuant to a collective bargaining agreement or similar agreement." is deleted and replaced with the following:

        **Claim** will not include any criminal proceeding, criminal administrative or regulatory proceeding, criminal investigation, (other than an **immigration claim**), or labor or grievance arbitration or proceeding pursuant to a collective bargaining agreement or similar agreement.

    B.  The following new definitions are added:

    **Immigration claim** means any:

        (i)  criminal proceeding commenced by the earlier of: (a) the return of service of a criminal complaint or indictment upon an **insured**; (b) the filing of an indictment or information with respect to an **insured**; or (c) the arrest or detainment of an **insured**; or

        (ii)  a criminal investigation of an **insured person**,

    against such **insured** for an **immigration wrongful act**, provided such criminal investigation or proceeding is based upon or arising out of an actual or alleged violation of the Federal Immigration and Nationality Act, 8 U.S.C., Section 1101.

    **Immigration wrongful act** means any actual or alleged hiring, harboring, employment or attempted employment of illegal aliens or potential illegal aliens committed or attempted by an **insured person** in his/her capacity as such, or by an **insured entity**.

II.  Section IV, Coverage Part Exclusions is amended to include the following exclusion:

    We will not cover **loss** in connection with any **immigration claim**, provided that this exclusion will not apply to **defense costs**.

III.  Section V, Specific Limit of Liability, Sublimits and Retentions is amended to include the following:

    Immigration Claims Defense Costs Only Sublimit of Liability

    A.  The most we will pay for all **defense costs** from all **immigration claims** is $100,000, such sublimited coverage will be part of, and not in addition to, the Aggregate Limit of Liability set forth in Item 2 of this Coverage Part Declarations.

    B.  The Retention set forth in Item 3 of this Coverage Part Declarations will apply to each **immigration claim**.

Form No: CNA92990XX (01-2019)
Endorsement Effective Date:           Endorsement Expiration Date:           Policy No: 6052060736
Endorsement No: 26 ; Page: 1 of 2                                            Policy Effective Date: 12/18/2024
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606           Policy Page: 69 of 138

© Copyright CNA All Rights Reserved.

All other terms and conditions of the policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

---

Form No: CNA92990XX (01-2019)                                          Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:       Policy Effective Date: 12/18/2024
Endorsement No: 26 ; Page: 2 of 2                                       Policy Page: 70 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.

 


## CRISIS EVENT EXPENSES SUBLIMITED COVERAGE ENDORSEMENT

In consideration of the premium, solely with respect to the Employment Practices and Third Party Liability Coverage Part, the policy is amended as follows:

I.   Section I, Insuring Agreement is amended to include the following:

Crisis Event Expenses Sublimited Coverage

We will pay **crisis event expenses** on behalf of an **insured entity** arising from any **crisis event** first occurring during the **policy period**. The total amount that we will pay for **crisis event expenses** will be the sublimit of liability set forth in paragraph III of this endorsement.

II.  Section III, Definitions is amended as follows:

A.   The definition of **loss** is amended by the addition of the following:

Solely with respect to the coverage provided by this endorsement, **loss** will also include **crisis event expenses**.

B.   The following definitions are added:

**Crisis event** means:

(i)   the public announcement in the media of allegations of **harassment** by an **executive**; or

(ii)  an **insured entity's** receipt of notice from a civil rights organization, public interest group, or similar group either investigating or distributing literature alleging **discrimination** or **harassment** by the **insureds**.

**Crisis event expenses** mean the reasonable and necessary fees, costs and expenses that are incurred by you to minimize potential economic harm in response to a **crisis event**. Such **crisis event expenses** include fees, costs and expenses to:

(i)   retain an outside law firm, public relations firm or crisis management firm, to advise you;

(ii)  manage press coverage, publicity and press relationships, including reasonable and necessary expenses for printing, advertising, mailing of materials and for travel by **executives**.

**Crisis event expenses** do not include **overhead expenses**, expenses incurred prior to any notice submitted to us, or expenses incurred after one hundred and eighty (180) days from the date the **crisis event** was noticed to us.

III. Section V, Specific Limit of Liability, Sublimits and Retentions is amended to include the following:

A.   Crisis Event Expenses Sublimit of Liability

The most we will pay for all **crisis event expenses** for all **crisis events** is $25,000, such sublimited coverage will be part of, and not in addition to, the Aggregate Limit of Liability set forth in Item 2 of the Declarations of this Coverage Part.

B.   No Retention will apply to **crisis event expenses**.

IV.  The following new section will be added to this Coverage Part:

Request for Coverage for Crisis Event Expenses

If you choose to request coverage for **crisis event expenses** you must submit a written notice at the address located in Item 3 of the General Terms and Conditions Declarations. The notice must be sent

Form No: CNA92991XX (01-2019)
Endorsement Effective Date:                     Endorsement Expiration Date:                     Policy No: 6052060736
Endorsement No: 27 ; Page: 1 of 2                                                                Policy Effective Date: 12/18/2024
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606        Policy Page: 71 of 138

© Copyright CNA All Rights Reserved.

within sixty (60) days of the **crisis event** and include the date the **crisis event** first occurred, the nature of the **crisis event** and the expenses requested or anticipated.

Should there be a subsequent **claim** that is based upon or arises out of this noticed **crisis event** we will consider that **claim** to have first been made during the **policy period** in which we accepted your first written notice.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA92991XX (01-2019)
Endorsement Effective Date:                    Endorsement Expiration Date:                    Policy No: 6052060736
Policy Effective Date: 12/18/2024
Endorsement No: 27 ; Page: 2 of 2                                                              Policy Page: 72 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.

 

**Epack 3**
Coverage Part Endorsement

## AMEND CLAIM DEFINITION TO ADD EXTRADITION ENDORSEMENT

In consideration of the premium, Section III, Definitions of the Employment Practices and Third Party Liability Coverage Part of the policy is amended as follows:

I.  The definition of **claim** is amended as follows:

   A.  The definition of **claim** is amended to include the following:

   **Claim** will also include an **extradition** against an **executive** for a **wrongful act**, including any appeal therefrom.

   B.  The sentence which begins with "**Claim** will not include…" is deleted and replaced with the following:

   **Claim** will not include any criminal proceeding, criminal administrative or regulatory proceeding, criminal investigation (other than an **extradition**), or labor or grievance arbitration or proceeding pursuant to a collective bargaining agreement or similar agreement.

II. The following definition is added:

   **Extradition** means the formal process by which an **executive** outside of the United States is surrendered, or requested to surrender, to another country to respond to a criminal accusation. An **extradition** is commenced by an arrest, detainment, or incarceration of the **executive** by any foreign jurisdiction law enforcement authority.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA93007XX (01-2019)
Endorsement Effective Date:          Endorsement Expiration Date:          Policy No: 6052060736
Endorsement No: 28 ; Page: 1 of 1          Policy Effective Date: 12/18/2024
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606          Policy Page: 73 of 138

© Copyright CNA All Rights Reserved.



**Epack 3**
Coverage Part Endorsement



## BIOMETRICS PRIVACY EXCLUSION ENDORSEMENT

In consideration of the premium, the Employment Practices and Third Party Liability Coverage Part is amended as follows:

I.   Section III, Definitions is amended to add the following definition:

**Biometrics privacy** means any actual or alleged violation of any United States law or any similar common law pertaining to biometric privacy that governs or relates to the collection, use, safeguarding, handling, storage, retention, or destruction of biometric identifiers, biometric data, or biometric information.

II.   Paragraph A of Section IV, Coverage Part Exclusions is amended to add the following exclusion:

We will not cover **loss** in connection with any **claim** based upon or arising from **biometrics privacy**; provided this exclusion will not apply to any **claim** on account of **retaliation**.


All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA96392XX (06-2020)                                                    Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:          Policy Effective Date: 12/18/2024
Endorsement No: 29 ; Page: 1 of 1                                          Policy Page: 74 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.





**AMEND EXECUTIVE ENDORSEMENT**
**(Partners)**

In consideration of the premium, the definition of **executive** in Section III, Definitions of the Employment Practices and Third Party Liability Coverage Part is amended as follows:

**Executive** will also include any past, present or future natural person general partner or managing partner of an **insured entity**, or such functionally equivalent position.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

| | | |
|---|---|---|
| Form No: CNA96394XX (08-2019) | | Policy No: 6052060736 |
| Endorsement Effective Date: | Endorsement Expiration Date: | Policy Effective Date: 12/18/2024 |
| Endorsement No: 30 ; Page: 1 of 1 | | Policy Page: 75 of 138 |
| Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 | | |

© Copyright CNA All Rights Reserved.





| | |
|---|---|
| **AMEND EXECUTIVE ENDORSEMENT**<br>**(Specific Title/Position)** | |

In consideration of the premium, the definition of **executive** in Section III, Definitions of the Employment Practices and Third Party Liability Coverage Part is amended to also include any past, present or future Chief Compliance Officer, Controller of an **insured entity**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

| | | |
|---|---|---|
| Form No: CNA96395XX (08-2019) | | Policy No: 6052060736 |
| Endorsement Effective Date: | Endorsement Expiration Date: | Policy Effective Date: 12/18/2024 |
| Endorsement No: 31 ; Page: 1 of 1 | | Policy Page: 76 of 138 |
| Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 | | |

© Copyright CNA All Rights Reserved.



| RISK MITIGATION RETENTION CREDIT AND PRE-CLAIM ENGAGEMENT OF COUNSEL RETENTION CREDIT ENDORSEMENT |
| --- |

In consideration of the premium, the Employment Practices and Third Party Liability Coverage Part is amended as follows:

I.   Section II, Settlement Retention Credit is deleted and replaced with the following:

   **RETENTION CREDITS**

   A.  Risk Mitigation Retention Credit

   In the event of a **claim**, we will reduce the Retention by the lesser amount of fifty percent (50%) of the Retention or ten thousand ($10,000) dollars, provided you can offer us satisfactory documentation of meeting the following three (3) conditions prior to the time such **claim** is first made:

   (i)   the **insured entity's** handbook or written employment-related policies, guidelines, or procedures were reviewed by outside counsel specializing in labor and employment law within the twenty-four (24) months prior to the time such **claim** is first made;

   (ii)  all **employees** have provided written acknowledgment of receipt of the **insured entity's** handbook or written employment-related policies, guidelines, or procedures; and

   (iii) all **employees** have attended harassment and discrimination prevention training within the twelve (12) months prior to the time such **claim** is first made.

   B.  Settlement Retention Credit

   With respect to the settlement of a **claim**, if you and the claimant consent to the initial settlement offer, as recommended by us, within thirty (30) days of being made aware of such offer by us, we will reduce the applicable Retention for such **claim** by the lesser amount of ten percent (10%) of the Retention or ten thousand dollars ($10,000), provided the settlement exceeds the Retention and such Retention has been paid by the **insured**.

   C.  Pre-Claim Engagement of Counsel Retention Credit

   If, prior to a **wrongful act** being committed, you utilize outside counsel specializing in labor and employment law for advice and counsel with respect to any of the following matters:

   (i)   **leave request**;

   (ii)  **proposed employee termination**; or

   (iii) **request for accommodation**,

   then we will reduce the Retention applying to a **claim** which arises from any such matter by fifty percent (50%), subject to a maximum of two thousand five hundred dollars ($2,500) per **claim**.

   In the event that one **claim** is eligible for the Risk Mitigation Retention Credit, the Settlement Retention Credit, the Pre-Claim Engagement of Counsel Retention Credit, or the Mediation Retention Reduction found in Section II A Supplementary Benefits of the General Terms and Conditions, then you will receive only one such benefit.

II.  Section III, Definitions is amended to add the following definitions:

| | |
| --- | --- |
| Form No: CNA96706XX (08-2019) | Policy No: 6052060736 |
| Endorsement Effective Date:          Endorsement Expiration Date: | Policy Effective Date: 12/18/2024 |
| Endorsement No: 32 ; Page: 1 of 2 | Policy Page: 77 of 138 |
| Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 | |

© Copyright CNA All Rights Reserved.



**Leave request** means a request by an **employee** for leave under the Americans with Disabilities Act, the Family Medical Leave Act, the Uniformed Services Employment and Reemployment Rights Act, or any other similar state or local law, statute or regulation.

**Proposed employee termination** means a plan to terminate the employment of one (1) or more **employees**, which is neither a "circumstance" as set forth in Section VI B Reporting a Notice of Circumstance in any Liability Coverage Part of the General Terms and Conditions, nor a **claim**. **Proposed employee termination** includes a planned reduction in force.

**Request for accommodation** means an **employee's** request for an accommodation for:

(i)   similar federal, state or local law, statute or regulation; or

(ii)  for religious beliefs under Title VII or any other similar federal, state or local law, statute or regulation.

All other terms and conditions of the policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

---

Form No: CNA96706XX (08-2019)                                                          Policy No: 6052060736
Endorsement Effective Date:              Endorsement Expiration Date:          Policy Effective Date: 12/18/2024
Endorsement No: 32 ; Page: 2 of 2                                              Policy Page: 78 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.




## KIDNAP RANSOM AND EXTORTION COVERAGE PART DECLARATIONS

Item 1.    **Named Insured**: CaaStle Inc.

Item 2.    Limits of Liability:

| Insuring Agreement: | Limits of Liability: |
|---|---|
| A.    Kidnap for Ransom (per **insured event**) | 1,000,000 |
| B.    Extortion for Ransom (per **insured event**) | 1,000,000 |
| C.    In Transit/Delivery (per **insured event**) | 1,000,000 |
| D.    Expenses (per **insured event**) | 1,000,000 |
| E.    Personal Injury (per **insured person**) | 250,000 |
| | Percentage of Limit per **insured person** |
| Loss of Sight | 100% |
| Loss of Extremity | 50% |
| Loss of Limb | 100% |
| Permanent Total Disablement | 100% |
| Death | 100% |
| Per **insured event** | 1,250,000 |

Item 3.    Coverage Extensions Limits of Liability:

| Coverage Extension | Limits of Liability |
|---|---|
| A.    Crisis Response Firm Expenses | Unlimited |
| B.    Legal Liability Costs (per **insured event**) | 1,000,000 |

Item 4.    **Crisis Response Firm:**    Crisis24, A GARDAWORLD Company
Telephone: USA 1-877-781-6192 UK 44-207-741-2081
Email: OTSsupport@crisis24.com

These Declarations, along with the completed and signed **application**, and the policy shall constitute the contract between the **insureds** and the Insurer.

Authorized Representative:

Date: 03/25/2025

---

Form No: CNA92849XXC (01-2019)                                      Policy No: 6052060736
Coverage Part Declarations; Page: 1 of 1                            Policy Effective Date: 12/18/2024
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 Policy Page: 79 of 138

© Copyright CNA All Rights Reserved.


| KIDNAP, RANSOM AND EXTORTION COVERAGE PART |
|---|

In consideration of the premium and subject to the Declarations and the General Terms and Conditions, the parties agree as follows:

## I.   INSURING AGREEMENTS

We will pay, in accordance with the following Insuring Agreements, loss or **expenses**, up to the applicable limit of liability, due to an **insured event**, provided such **insured event** first occurs during the **policy period**.

### A.   Kidnap for Ransom

We will reimburse the **insured entity** for **ransom** resulting directly from any actual or alleged **kidnapping**.

### B.   Extortion for Ransom

We will reimburse the **insured entity** for **ransom** resulting directly from:

(i)   **bodily injury extortion**;

(ii)   **property damage extortion**;

(iii)   **products extortion**;

(iv)   **trade secrets extortion**; or

(v)   **e-commerce extortion**.

### C.   In Transit/Delivery

We will reimburse the **insured entity** for destruction, disappearance, confiscation, or wrongful appropriation of **ransom**, while such **ransom** is being delivered by anyone who is duly authorized by the **insured entity** to have custody thereof; to persons demanding **ransom**, provided that the **kidnapping** or **extortion** that gives rise to the delivery is insured under this Coverage Part.

### D.   Expenses

We will reimburse the **insured entity** for **expenses** paid by the **insured entity** resulting directly from an **insured event**.

### E.   Personal Injury

We will pay those amounts set forth in Item 2 E of this Coverage Part Declarations due to **personal injury** resulting directly from a **kidnapping**, **extortion**, **detention**, **hijacking**, or **political threat**.

## II.   COVERAGE EXTENSIONS

We will pay, in accordance with the following Coverage Extensions, fees, expenses, or **legal liability costs** up to the applicable limit of liability, due to an **insured event**, provided such **insured event** first occurs during the **policy period**.

### A.   Crisis Response Firm Expenses

We will pay all reasonable fees and expenses incurred by the **crisis response firm**.

### B.   Legal Liability Costs

We will reimburse the **insured entity** for **legal liability costs**.

© Copyright CNA All Rights Reserved.

## III. DEFINITIONS

Any word not defined in this Coverage Part will have the meaning assigned to it in the General Terms and Conditions.

**Advisory** means a formal recommendation of the **appropriate authorities** that specifies the **insured person** leave a host country or generally that a class of persons which includes an **insured person** leave the host country.

**Appropriate authorities** means the United States Department of State, the Foreign Office of the United Kingdom, the Foreign Office of Canada or similar authority of the **insured's** country of residence.

**Bodily injury extortion** means any threat made against the **insured entity** or any **insured person**, to:

(i)   kill, physically injure or **kidnap** any **insured person**; or

(ii)  divulge any confidential, private or secret information unique to the **insured person**.

**Crisis response firm** means the entity selected by us, or by you with our prior written consent, to respond to any **insured event**.

**Death** means:

(i)   death, including clinical death, determined by a medical examiner or similar local governing medical authority; or

(ii)  declared dead by a court of competent jurisdiction.

**Denial of service attack** means an attack executed over one or more **networks** or the internet, which attack is designed and intended to disrupt the operation of one or more **networks** and render the **networks** inaccessible to authorized users.

**Detention** means the wrongful involuntary confinement of an **insured person** (other than **kidnapping** or **hijacking**) by a person or group, for a period of not less than six (6) hours.

**E-commerce extortion** means any threat made against an **insured**, by an individual other than an identifiable **employee** or **executive**, and expressing an intent to:

(i)   cause the **insured entity** to transfer, pay or deliver any funds or property using the **insured entity's network** without the permission, authorization, and consent of the **insured entity**;

(ii)  sell or disclose information about a customer of the **insured entity** which is unique to the relationship of the customer and the **insured** and is not otherwise publicly available, provided such information is stored in an electronic medium in the **insured entity's network** and is retrievable in a perceivable form;

(iii) alter, damage, or destroy **electronic data** or electronic computer instructions (that subset of electronic information that contains the instructions and directions that a computer system uses to manipulate or create **electronic data**) of the **insured entity** that are stored within the **insured entity's network**;

(iv)  maliciously or fraudulently introduce a set of unauthorized instructions, programmatic or otherwise, that propagate themselves through the **insured entity's network**, which instructions were designed to modify, alter, damage, destroy, delete, contaminate or degrade the integrity, quality, or performance of data, computer application software, or computer operating system and related software into the **insured entity's network** when such threat is premised upon actual or alleged unauthorized access to the **insured entity's network**; or

(v)   initiate an intentional attack on the **insured entity's network** that depletes network resources or impedes network access available through the Internet to authorized external users of the **insured entity's network**.

**E-commerce extortion** will not include a **denial of service attack** or **network extortion**.

© Copyright CNA All Rights Reserved.

**Electronic data** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media that is used with electronically controlled equipment.

**Employee** means all present full-time or part-time employees of the **insured entity**, including seasonal and temporary employees and employees leased or loaned to the **insured entity**. **Employee** will not include any volunteers or independent contractors.

**Executive** means any present:

(i)   duly elected or appointed director, officer, trustee, governor, or **manager** of the **insured entity**;

(ii)  management committee member if the **insured entity** is a joint venture; or,

(iii) official in the **insured entity** organized and operated in a **foreign jurisdiction** who is holding a position that is equivalent to an executive position listed in (i) or (ii) above.

**Expenses** mean:

(i)   reasonable and necessary fees, costs or expenses:

    (a)  of independent public relations consultants, interpreters, security consultants, or negotiators engaged by the **insured entity**;

    (b)  for legal services necessary to secure the release of any **insured person**;

    (c)  of independent forensic analysts engaged by the **insured entity**;

    (d)  for security guards temporarily retained solely and directly for the purpose of protecting any **insured person** or property during an **insured event**, subject to and in accordance with the specific recommendation of the **crisis response firm**;

    (e)  directly incurred by the **insured entity** or any **insured person**, for necessary medical services, psychiatric care, and cosmetic or plastic surgery which is medically required to correct any permanent disfigurement sustained by any **insured person**, required directly as a result of an **insured event** within thirty-six (36) months following their release;

    (f)  for communication or recording equipment incurred by the **insured entity**; or

    (g)  for advertising incurred by the **insured entity** solely and directly to obtain the release of any **insured person**;

(ii)  **reward**;

(iii) interest costs for a loan in a principal amount up to, but not exceeding, the applicable limit of liability stated in this Coverage Part Declarations, made to the **insured entity** for the purpose of paying **ransom** only, provided that the loan is taken out not more than thirty (30) days before the payment of **ransom** and repaid within seven (7) days of the **insured entity** receiving reimbursement of same from us; provided, that the interest rate applicable during the period of the loan will not exceed by more than two (2) percentage points of the discount rate of the Federal Reserve Bank of New York;

(iv) reasonable and necessary travel costs incurred:

    (a)  by the **insured entity** or any **insured person**;

    (b)  to return any **insured person** to their Resident Country (the country of which the **insured person** is a national or resident alien) upon the **insured person's** release from a **kidnapping**, **detention** or **hijacking**; or

Form No: CNA92850XX (01-2019)
Coverage Part; Page: 3 of 11
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 82 of 138

© Copyright CNA All Rights Reserved.

(c) for a replacement employee or such replacement employee's spouse, domestic partner, child, step-child, adopted child, adopted stepchild, foster child, spouse of married children, grandchild, sister, brother, parent, parent-in-law, step-parent, grandparent or grandparent-in-law,

provided, that these travel costs will apply only once per **insured person** per **insured event**;

(v) reasonable and necessary expenses incurred by the **insured entity** or **insured person** within six (6) months following the release of such **insured person** from a **kidnapping**, **detention** or **hijacking**, for up to thirty (30) days of rest and rehabilitation of such **insured person** and his or her spouse and children;

(vi) **salary**;

(vii) the costs incurred by the **insured entity** for the compensation of a person specifically designated to assist in negotiations associated with any **kidnapping**, **detention**, or **hijacking** plus all other reasonable expenses solely and directly incurred in connection with such negotiations, provided the **insured entity** forwards an itemized accounting of the time, services, and expenses to us;

(viii) actual personal financial loss suffered by any **insured person** as a result of an **insured event** and the resultant inability to attend to personal financial matters, including but not limited to failure to renew insurance contracts, failure to exercise stock options and failure to respond to margin or loan calls by financial institutions;

(ix) reasonable and necessary job retraining costs incurred by the **insured entity** or **insured person** following the release of such **insured person** from a **kidnapping**, **detention**, or **hijacking**; or

(x) all other reasonable and necessary expenses incurred by the **insured entity** or any **insured person** with our prior written consent, solely and directly resulting from a **kidnapping**, **detention**, or **hijacking,** within thirty-six (36) months following their release.

**Expenses** will not include any **recall expenses** or fees or expenses of the **crisis response firm**.

**Extortion** means:

(i) **bodily injury extortion**;

(ii) **property damage extortion**;

(iii) **products extortion**;

(iv) **trade secrets extortion**; or

(v) **E-commerce extortion**.

**Extortion** will not include **network extortion**.

**Foreign jurisdiction** means any jurisdiction, other than the United States or any of its territories or possessions.

**Guest** means any person visiting the **premises** or traveling with an **employee** or **executive** for social or business purposes, or any person traveling in a motor vehicle, aircraft or waterborne vessel owned, rented, or leased by the **insured entity**.

**Hijacking** means the unlawful detention of an **insured person** (other than **kidnapping** or **detention**) by violence or threat of violence by a person or group, where such unlawful detention occurs while traveling on or in an aircraft, watercraft, motor vehicle, or any other form of public or private transport for a period in excess of four hours.

**Informant** means any person, other than an **insured person**, providing information not otherwise obtainable, solely in return for a **reward** offered by you.

**Insured event** means a singular act of **kidnapping**, **extortion**, **detention**, **hijacking**, or **political threat** or a series of related or connected acts thereof. If it is evident that such **kidnappings**, **extortions**, **detentions**,

Form No: CNA92850XX (01-2019)
Coverage Part; Page: 4 of 11
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 83 of 138

© Copyright CNA All Rights Reserved.

**hijackings**, or **political threats** are or were carried out in furtherance of one another, or of a common scheme or plan, they will be deemed to be related or connected and to constitute a single **insured event**.

**Insured** means any **insured person** or **insured entity**.

**Insured person** means any **employee**, **executive**, **guest** or **relative**, resident or individual employed in the household of an **employee** or **executive**, or any person who is temporarily engaged by the **insured entity** or by the **crisis response firm** for the sole purpose of negotiating or delivering a **ransom**.

**Insured person suit** means a suit brought by an **insured person** (or the estate, heirs or legal representatives of such **insured person**) against such **insured entity** alleging negligence or incompetence in the:

(i) hostage retrieval operations or in any negotiations involving a **kidnapping**, **detention** or **hijacking** of such **insured person**; or

(ii) prevention of a **kidnapping**, **hijacking**, or **detention** of such **insured person**.

**Kidnap** or **kidnapping** means any actual or alleged event or related or connected series of events of seizing, detaining, abducting or carrying away by force or fraud, of one or more **insured persons** (except a minor by a parent thereof) by one (1) person or collaborating persons for the purpose of demanding **ransom**.

**Legal liability costs** means the reasonable and necessary defense costs incurred by an **insured entity** and damages, other than fines, penalties, punitive and exemplary damages and the multiplied portion of multiplied awards, which an **insured entity** becomes legally obligated to pay as a result of a judgment or settlement in any **insured person suit**.

**Manager** means any natural person manager, member of the management board or equivalent executive of an **insured entity** that is a limited liability company.

**Network** means a network owned or operated by or on behalf of or for the benefit of the **insured entity**. **Network** will not include the Internet, telephone company networks, electrical grids, or other public infrastructure network.

**Network extortion** means a third party demand to the **insured entity** for money or securities in exchange for:

(i) the return of, or refraining from disclosing, the **insured entity's** confidential information or the confidential information of others in the **insured entity's** care, custody or control;

(ii) not publicizing that the **insured entity's network** will be or has been impaired, compromised or destroyed; or

(iii) not impairing, altering, or destroying the **insured entity's network** or website,

provided that the **insured entity's executives** reasonably believe that the third party's demand is credible and that there is imminent and probable danger that the extortionist can execute on its demand.

**Personal injury** means injury sustained by an **insured person**, solely and directly as a result of an **insured event** or attempt thereat and results in any one of the following:

(i) Loss of Sight - the entire and irrevocable loss of vision of one or both eyes, as certified by a qualified practitioner specializing in ophthalmology and approved by us;

(ii) Loss of Extremity - the permanent physical separation or the total and irrecoverable loss of use of one or more fingers, toes, ears, nose or genital organs or parts thereof caused by deliberate mutilation;

(iii) Loss of Limb - the permanent loss by separation or the total and irrecoverable loss of use of one or both hands at or above the wrist or a foot or both feet at or above the ankle;

(iv) Permanent Total Disablement – bodily injury which is so disabling as to wholly prevent an **insured person** from attending to normal duties of daily life provided that such disability has existed

Form No: CNA92850XX (01-2019)
Coverage Part; Page: 5 of 11
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 84 of 138

© Copyright CNA All Rights Reserved.

continuously for not less than twelve (12) consecutive calendar months and is continuous, total and permanent; or

(v) **death** of an **insured person** or the disappearance, while this policy is in effect, of an **insured person**, where such **insured person's** body is not found within twelve (12) months after disappearance and evidence is produced sufficient for us to conclude, in its sole opinion, that the **insured person** sustained death solely and directly as a result of an **insured event**.

**Personal injury** will not include **personal/proprietary injury**.

**Personal/proprietary injury** means an injury arising out of one or more of the following:

(i)   false arrest, detention, or imprisonment, or malicious prosecution;

(ii)  wrongful entry or eviction, or other invasion of the right of private occupancy;

(iii) libel, slander, or other forms of defamation;

(iv) plagiarism, misappropriation of ideas (including advertising ideas), or breach of confidentiality;

(v)  invasion, infringement, or interference with the rights of privacy or publicity;

(vi) infringement of copyright, title, slogan, logo, trademark, trade name, trade dress, service mark, or service name;

(vii) infringement or misappropriation of a trade secret; or

(viii) infringement of software, computer code, and computer firmware but only with respect to a technology product.

**Political threat** means politically motivated threats made solely and directly against an **insured entity** to do bodily harm to an **employee**, **executive**, or **relative** by a person or group acting:

(i)   as an agent of or with tacit approval of any government or governmental entity; or

(ii)  or purporting to act on behalf of any political terrorist or insurgent party, organization or group.

All such threats:

(a) related by a common committed, attempted, or threatened act; or

(b) made contemporaneously against the same **employee**, **executive**, or **relative**,

will be deemed to constitute a single **political threat**.

**Premises** means that portion of any real property owned by or leased to the **insured entity** or for which the **insured entity** is legally liable or a residence occupied by any **employee** or **executive**.

**Products extortion** means any threat, made against the **insured entity** or **insured person**, or the production of publicity, that products of the **insured entity**, or goods which the **insured entity** handles, will be or have been contaminated, polluted, or rendered substandard.

**Property damage extortion** means any threat made against the **insured entity** or **insured person**, to cause loss of, or to physically damage, contaminate or pollute any **premises** including any fixtures, fittings, machinery, or equipment (fixed or mobile), works of art and other contents, watercraft or aircraft, bloodstock or livestock, owned or leased by the **insured entity** or for which it is legally liable.

**Ransom** means any cash, monetary instruments, bullion, or the fair market value of any securities, property or services which the **insured entity** or any **insured person** will have either paid, at the direction and demand of a person or persons committing or allegedly committing, a **kidnapping** or **extortion** covered under this Coverage Part, or lost solely and directly in the process of making or attempting to make such payment. The value of **ransom** will be determined as of the date such **ransom** is paid or lost.

© Copyright CNA All Rights Reserved.

**Recall expenses** means the **insured's** production fees, costs, and expenses, or the **insured entity's** fees, costs, and expenses of reprinting, recalling, recovering, shipping, mailing, correcting, reprocessing, restoring, repairing, replacing, or reproducing erroneous, damaged, or lost tangible property.

**Relative** means a spouse, domestic partner, child, step-child, adopted child, adopted stepchild, foster child, spouse of married children, grandchild, sister, brother, parent, parent-in-law, step-parent, grandparent, grandparent-in-law of any **employee** or **executive**.

**Reward** means a reasonable amount paid by the **insured entity** or any **insured person** to an **informant** for information directly leading to the return of any **insured person** or such **insured person's** remains or to the arrest and conviction of individuals responsible for any loss under this Coverage Part.

**Salary** means the amount of compensation paid by the **insured entity**, including hourly wages, bonuses, commissions, allowances, cost of living adjustments, foreign tax reimbursements, health and welfare and pension benefits (at the level in effect on the commencement date of the **kidnapping**, **detention**, or **hijacking**) which the **insured entity** agrees to pay any **insured person** for the duration of the **kidnapping**, **detention**, or **hijacking** of the **insured person**. **Salary** will be paid until the earliest of that period of time comprising:

(i)   the date of the release of, or escape by, the **insured person** from the kidnappers, detainers, or hijackers, and up to sixty (60) days thereafter;

(ii)  the date of discovery of the **death** of the **insured person**;

(iii) one hundred twenty (120) days after we receive the last credible evidence that the **insured person** is still alive; or

(iv) sixty (60) months after the commencement date of the **kidnapping**, **detention**, or **hijacking**.

**Salary** also means the amount of compensation paid by the **insured entity**, including hourly wages, bonuses, commissions, allowances, cost of living adjustments, foreign tax reimbursements, and health and welfare and pension benefits, for a  person other than an **employee** or **executive** who is temporarily engaged by the **insured entity** or by the **crisis response firm** for the sole purpose of negotiating or delivering a **ransom** or for a newly hired temporary replacement of any **insured person** for the duration of the **kidnapping**, **detention** or **hijacking** and sixty (60) days thereafter, up to but not exceeding the **insured person's** total **salary** on the commencement date of the **kidnapping**, **detention** or **hijacking**.

**Trade secrets extortion** means any threat, made against the **insured entity** or any **insured person**, to disseminate, utilize or divulge information including any formula, pattern, compilation of data, program, device, method, technique or process, or other proprietary information which is particular to the **insured entity** in the conduct of business, provided such **insured entity** makes constant and conscious efforts not to disclose such information to any unauthorized third party.

## IV. COVERAGE PART EXCLUSIONS

We will not be liable to reimburse or pay any amounts under this Coverage Part based upon or arising out of any actual or alleged:

A. Confiscation or Expropriation

confiscation or expropriation of any **reward** or **ransom** by any governmental authority, provided that this exclusion will not apply in a situation where the **crisis response firm** recommended the payment of such **reward** or **ransom**.

B. Dishonest, Fraudulent or Criminal Acts

fraudulent, dishonest or criminal acts of any **insured** or of any person acting on behalf any **insured**.

Form No: CNA92850XX (01-2019)                                     Policy No: 6052060736
Coverage Part; Page: 7 of 11                                        Policy Effective Date: 12/18/2024
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 Policy Page: 86 of 138

© Copyright CNA All Rights Reserved.

C.  Surrender

surrender of any **ransom**:

(i)  in any face to face encounter involving the use or threat of force or violence, unless surrendered by a person who, at the time of such surrender, is in possession of such **ransom** for the sole purpose of conveying it to pay a previously communicated demand for such **ransom**; or

(ii)  either at the location where the **kidnapping** of any **insured person** occurs or where the **extortion** demand is first made, unless such **ransom** is brought to such location after receipt of the **ransom** demand for the sole purpose of paying such **ransom** demand.

D.  Violation of Law/Maintenance of Documentation

**detention** or **political threat** due to:

(i)  any actual or alleged violation of the laws of the host country by an **insured**, or failure of an **insured person** to maintain and possess duly authorized and issued required documents and visas, unless we determine that such allegations were intentionally false, fraudulent and malicious and made solely to achieve a political propaganda or coercive effect upon or at the expense of the **insured person**;

(ii)  failure of an **insured person** to evacuate from the host country within ten (10) days after issuance of any **advisory** by the **appropriate authorities**;

(iii)  travel to any country after an **advisory** has been issued; or

(iv)  an **insured person's** active status as a member of any governmental organization, law enforcement, or military force.

## V.  LIMIT OF LIABILITY

The most we will pay under any applicable Insuring Agreement of this Coverage Part is the limit of liability for such applicable Insuring Agreement set forth in this Coverage Part Declarations.

Regardless of the number of years this coverage remains in effect and the total premium amounts due or paid, whether under this **policy period**, any prior **policy period** or any renewal or replacement of this policy, the limits of liability with respect to any loss, **expenses** or **legal liability costs** under this Coverage Part will not be cumulative from year to year or from **policy period** to **policy period**.

The fees and expenses of the **crisis response firm** will not erode any limit of liability under this Coverage Part and will be borne by us.

## VI.  CONDITIONS PRECEDENT TO COVERAGE

A.  Coverage Part

As a condition precedent to any obligation to you under this Coverage Part:

(i)  Notice

upon discovery of an **insured event**, you must:

(a)  give oral and written notice as soon as practicable to the **crisis response firm** and us at the phone numbers and addresses provided, respectively, in this Coverage Part Declarations; and

(b)  use all due diligence and do, and concur in doing, all things reasonably practicable to avoid or diminish any loss.

(ii)  Updates

you must provide us with periodic updates as reasonably practicable including but not limited to detailed reports of all significant events.

© Copyright CNA All Rights Reserved.

(iii) Nondisclosure

you must use all reasonable efforts not to disclose the existence of the insurance under this Coverage Part. This condition will also apply to any excess insurance or other insurance.

B.  Insuring Agreements A or B

As a condition precedent to any obligation to you under Insuring Agreement A Kidnap for Ransom or Insuring Agreement B Extortion for Ransom and prior to the payment of any **ransom**, you agree to:

(i)   make every reasonable effort to determine that the **kidnapping** or **extortion** has actually occurred;

(ii)  have approved the payment of any **ransom**; and

(iii) make every reasonable effort to notify the Federal Bureau of Investigation, or other law enforcement agency having jurisdiction thereof, of the demand for **ransom** and make every reasonable effort to comply with their recommendations and instructions, or allow the **crisis response firm** to so notify, while having regard for the personal safety of any **insured person**.

C.  Coverage Extension B

As a condition precedent to any obligation to you under Coverage Extension B Legal Liability Costs, you agree:

(i)   to notify us of any **insured person suit** at the earliest practicable time not to exceed sixty (60) days after your receipt of notice thereof, and at our request, promptly furnish it with copies of all pleadings and documentation associated with such **insured person suit**; and

(ii)  that you will defend any **insured person suit**. You have the duty to defend any such **insured person suit**.

## VII. ALLOCATION

If an **insured person suit** includes both covered and uncovered matters, it is agreed that there must be an allocation between covered and uncovered loss. The **insured entity** and we will use our best efforts to determine an allocation between covered loss and uncovered loss based on the relative legal and financial exposures of the parties to such matters. We will, on behalf of the **insured entity**, advance **legal liability costs** no later than ninety (90) days after our receipt of bills detailing the amounts owed. However, as a condition of any payment of such amounts, we may require a written undertaking on terms and conditions satisfactory to us guaranteeing the repayment of any **legal liability costs** paid to or on behalf of the **insured entity** if it is finally determined that any such amounts are not covered in this Coverage Part.

## VIII.  INSPECTION AND AUDIT

We may examine and audit the **insured entity's** business documents, relating to an **insured event**, until three (3) years after this policy has expired or has been cancelled. Any premium due for exposures which exist but were not reported to us will be determined by audit.

## IX. COOPERATION

Upon our request, you agree to:

(i)   attend hearings and trials and will assist in effecting settlements, securing and giving of evidence, obtaining the attendance of witnesses, and the conduct of suits and proceedings in connection with an **insured event**; and

(ii)  assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to any **insured** in connection with an **insured event**.

© Copyright CNA All Rights Reserved.

## X. CHANGES IN EXPOSURE

A. Acquisitions

If, during the **policy period**, the **insured entity** acquires or forms a **subsidiary**, this Coverage Part will provide coverage for such **subsidiary** and it's respective **insured persons**, subject to all other terms and conditions of this policy and this Coverage Part, provided written notice of such acquisition or formation has been given to us and specific application has been submitted on our form in use at the time, together with such documentation and information as we may require, all within ninety (90) days after the effective date of such acquisition or formation. Coverage for such **subsidiary** will not be afforded following such ninety (90) day period unless we have agreed, in writing, to provide such coverage, subject to any additional terms and conditions as we may require and the **named insured** has paid any additional premium as may be required by us.

The ninety (90) day notice requirement will not apply, provided:

(i) the assets of the acquired or formed **subsidiary** do not exceed ten percent (10%) of the total assets of the **insured entity** as reflected in the **insured entity's** most recent fiscal year-end financial statement; or

(ii) the acquisition or formation occurs less than ninety (90) days prior to the end of the **policy period**.

B. Consolidation, Merger or Purchase of Assets

If, during the **policy period**, the **insured entity** merges with, purchases, or acquires the assets or liabilities of another entity, this Coverage Part will provide coverage for that merged, purchased, or acquired entity, subject to all other terms and conditions herein, but only for  loss or **expenses** due to any **insured event** first occurring and first discovered after the effective date of such merger, purchase, or acquisition, provided, we receive written notice of such merger, purchase, or acquisition and specific application has been submitted on our form in use at the time, together with such documentation and information as we may require, all within ninety (90) days after the effective date of such merger, purchase, or acquisition. Coverage for the merged, purchased, or acquired entity will not be afforded following such ninety (90) day period unless we have agreed, in writing, to provide such coverage, subject to any additional terms and conditions as we may require and the **insured entity** has paid any additional premium as may be required by us.

The ninety (90) day notice requirement will not apply, provided:

(i) the assets of the merged, purchased, or acquired entity do not exceed ten percent (10%) of the total assets of the **insured entity** as reflected in the **insured entity's** most recent fiscal year-end financial statement; or

(ii) the merger, purchase, or acquisition occurs less than ninety (90) days prior to the end of the **policy period**.

C. Change of Control

In the event of a **change of control** during the **policy period**, this Coverage Part terminates and will not apply to any **insured event** first occurring after such acquisition or change of control takes place.

In the event this Coverage Part terminates for the **named insured** due to any **change of control**, we will refund the unearned premium computed on a pro rata basis.

## XI. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is null and void in case of fraud, concealment, or misrepresentation by an **insured person** of a material fact concerning:

(i) this insurance or the procurement thereof;

(ii) an **insured person**;

---

Form No: CNA92850XX (01-2019)
Coverage Part; Page: 10 of 11
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 89 of 138

© Copyright CNA All Rights Reserved.

(iii) the **insured entity's** interest in the **insured person**; or

(iv) any loss or **expense** or claim presented to us under this Coverage Part.

## XII. PERSONAL ASSETS

In the event of a **kidnapping**, **bodily injury extortion**, or **property damage extortion** for **ransom** directed against any **insured person** rather than against the **named insured**, cash or marketable goods or services surrendered or to be surrendered by or on behalf of the **insured person** and expenses of the **insured person** in connection therewith will be considered cash or marketable goods or services or expenses of the **named insured** provided the loss occurs directly as the result of the **insured person's** association with the **named insured** and not as the result of such person's association or position with any other entity.

## XIII. VALUATION

All premiums, limits of liability, loss, **expenses** or **legal liability costs** under this Coverage Part are expressed and payable in the currency of the United States of America.

In the case of marketable goods or services surrendered as **ransom**, we will pay the actual cash value thereof at the time of surrender.

Any loss of cash or marketable goods or services in payment of a **ransom** demand will be paid, at your option, in the money of the country in which the loss was sustained or in the United States of America dollar equivalent thereof determined at the rate of exchange published in The Wall Street Journal at the time of payment of such loss by you.

## XIV. OTHER INSURANCE

If any loss covered by this Coverage Part is insured under any other insurance policy, prior or current, then this coverage will cover such loss, subject to its limitations, conditions, provisions, and other terms, only to the extent that the amount of such loss is in excess of the amount of the applicable retention or deductible and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the limits of liability provided by this Coverage Part.

© Copyright CNA All Rights Reserved.




## THREAT RESPONSE ENDORSEMENT

In consideration of the premium, solely with respect to the Kidnap, Ransom and Extortion Coverage Part, the policy is amended as follows:

I.  Solely with respect to a **threat**, Paragraph A Crisis Response Firm Expenses set forth in Section II, Coverage Extensions is deleted and replaced with the following:

    Crisis Response Firm Expenses

    We will pay reasonable fees and expenses incurred by the **crisis response firm** in connection with the assessment of a **threat** and the temporary protection of an **insured person** or the **insured's** property for a period not to exceed 90 Days from the date such **threat** is received.

II. Section III, Definitions is amended as follows:

    A.  The following definition is added:

        **Threat** means the threat or threats made by a person or group (where such threat is not a **kidnapping**, **extortion**, **detention**, **hijacking** or **political threat**) without an accompanying **ransom** or **extortion** demand, to commit or attempt to:

        (i)   inflict bodily injury, wrongfully detain or abduct an **insured person**;

        (ii)  damage, destroy or contaminate an **insured person's** or the **insured entity's** property; or

        (iii) disseminate, divulge or utilize trade secrets or proprietary information, including any personal, private or confidential data of an **insured entity**.

    B.  The definitions of **crisis response firm** and **insured event** are amended to include the following:

        **Crisis response firm** also means the entity selected by us, or by you with our prior written consent, to assess a **threat**.

        **Insured event** also means a singular **threat** or a series of connected **threats**, which shall be deemed to be connected and to constitute a single **insured event**.

III. Solely with respect to the coverage afforded under this endorsement, and notwithstanding the Limits of Liability on this Coverage Part Declarations, the most we will pay for an **insured event** that is a **threat** is $75,000 for each **insured event**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

| | |
|---|---|
| Form No: CNA93170XX (01-2019) | Policy No: 6052060736 |
| Endorsement Effective Date:          Endorsement Expiration Date: | Policy Effective Date: 12/18/2024 |
| Endorsement No: 33 ; Page: 1 of 1 | Policy Page: 91 of 138 |
| Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 | |

© Copyright CNA All Rights Reserved.




| | CHILD ABDUCTION ENDORSEMENT |
|---|---|

In consideration of the premium, solely with respect to the Kidnap, Ransom and Extortion Coverage Part, the policy is amended as follows:

I.   Solely with respect to an **abduction**, Insuring Agreement D Expenses set forth in Section I Insuring Agreements is deleted and replace with the following:

Expenses

We will reimburse the **insured entity** for **expenses** paid by the **insured entity** resulting directly from an **abduction**.

II.  Solely with respect to an **abduction**, Coverage Extension A Crisis Response Firm Expenses set forth in Section II Coverage Extensions is deleted and replaced with the following:

We will pay all reasonable fees and expenses incurred by the **crisis response firm** from the date such **abduction** was first reported to or discovered by the **insured entity**.

III. Solely with respect to the coverage provided under this endorsement, Section III Definitions is amended as follows:

A.   The following definitions are included:

**Abduction** means the illegal seizing, detaining, abducting or carrying away by force or fraud, of a **covered child** from the **premises** without a demand for **ransom** provided that, at the time of such **abduction** the **covered child** was under the care, custody and control of the **insured entity** by virtue of being registered or enrolled in a program sponsored by the **insured entity** or by virtue of having been newly born on the **insured entity's premises**.

**Abduction** does not include any **kidnapping**, **detention**, **hijacking**, **extortion** or **political threat**.

**Covered child** means a child under ten (10) years of age at the time of the abduction.

**Parent** means the birth or adoptive father or mother, or step-mother or step-father, or foster mother or foster father of the **covered child**.

**Reward** means a reasonable and necessary amount paid by the **insured entity** or any **parent** to an **informant** for information directly leading to the return of the **covered child** or such **covered child's** remains or to the arrest and conviction of individuals responsible for the **abduction**.

B.   The definition of **expenses** is amended as follows:

1.   Paragraph (i)(a) is deleted and replaced with the following:

(a) of independent public relations consultants to assist in the location of the **covered child**;

2.   Paragraphs (i)(b), (i)(d), (i)(f), (vii), (viii) and (ix) are deleted.

3.   Paragraph (i)(e) is deleted and replaced with the following:

(e) fees for psychiatric care for the benefit of the **parent** or siblings of the **covered child** until the earliest of the following:

(1) up to three (3) months after the release or discovery of **death** of the **covered child**; or

(2) twelve (12) months after the date of the **abduction**.

Fees for psychiatric care for the benefit of the **covered child** beginning on the date of the recovery of the **covered child** and continuing up to twelve (12) months thereafter, and

Form No: CNA93179XX (02-2023)
Endorsement Effective Date:
Endorsement Expiration Date:
Endorsement No: 34 ; Page: 1 of 3
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 92 of 138

© Copyright CNA All Rights Reserved.



Medical services and hospitalization costs incurred for the **covered child** as the result of **abduction** beginning on the date of the recovery of the **covered child** and continuing up to twelve (12) months thereafter.

4. Paragraph (iv) is deleted replaced with the following:

(iv) reasonable and necessary travel costs incurred by the **insured entity** or any **parent** including travel to join the **covered child** provided that these travel costs shall apply only once per **insured person** per **insured event**;

5. Paragraph (v) is deleted and replaced with the following:

(v) reasonable and necessary expenses incurred by the **parent** and paid by the **insured entity** for up to thirty (30) days of rest and rehabilitation of the **covered child**, the **parent**, any person who has means a legal responsibility for the care and management of a **covered child** and the **covered child's** siblings following the release of the **covered child** from an **abduction** provided that no such person had any involvement with the **abduction**;

6. Paragraph (x) is deleted and replaced with the following:

(x) all other reasonable and necessary expenses incurred by the **insured entity** with our prior written consent, solely and directly resulting from an **abduction**;

7. The following paragraphs are added:

Funeral and burial expenses of a **covered child** in the event of **death** resulting from an **abduction**.

Except as otherwise set forth above, all **expenses** must be incurred during the earliest of that period of time comprising:

(i) up to fourteen (14) days after the release of the **covered child**; or

(ii) discovery of the **death** of the **covered child**; or

(iii) twelve (12) months after the date of the **abduction**.

C. The definition of **crisis response firm**, **premises** and **salary** are deleted and replaced as follows:

**Crisis response firm** means the entity selected by us, or by you with our prior written consent, to respond to or negotiate the resolution of any **abduction**.

**Premises** means that portion of any real property owned by or leased to the **insured entity** or for which the **insured entity** is legally liable.

**Salary** means one hundred percent (100%) of the **parent's** gross salary, including hourly wages, bonuses, commissions, allowances, cost of living adjustments, foreign tax reimbursements, health and welfare and pension benefits which were contractually due such **parent** (or the **parent** would have otherwise reasonably expected to earn based on past performance at the time the **abduction** occurred) if such **parent** leaves their employment in order to assist in the negotiations for the release of the **covered child**.

D. The definition of **insured event** is amended to include the following:

**Insured event** also means a singular act of **abduction** or a series of connected acts or a common scheme or plan, which shall be deemed to be connected and to constitute a single **insured event**.

IV. Solely for the purposes of the coverage afforded under this endorsement, Section VI Conditions Precedent to Coverage is amended to include the following:

● The **insured entity** must make every reasonable effort to determine an **abduction** has actually occurred prior to incurring costs.

Form No: CNA93179XX (02-2023)                                                    Policy No: 6052060736
Endorsement Effective Date:                    Endorsement Expiration Date:      Policy Effective Date: 12/18/2024
Endorsement No: 34 ; Page: 2 of 3                                                Policy Page: 93 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.

- The **insured entity** must inform us and the **crisis response firm** and provide whatever information is required as soon as practicable.

- The **insured entity** must inform or allow the **crisis response firm** to inform the appropriate authorities responsible for law enforcement in the country where the **abduction** occurred.

V.  Solely with respect to the coverage afforded under this endorsement, this Coverage Part Declarations is amended to include the following Limit of Liability:

The maximum Limit of Liability under the Insuring Agreement D Expenses will not exceed $1,000,000 per **insured event** that is an **abduction**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA93179XX (02-2023)                                           Policy No: 6052060736
Endorsement Effective Date:           Endorsement Expiration Date:          Policy Effective Date: 12/18/2024
Endorsement No: 34 ; Page: 3 of 3                                          Policy Page: 94 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.



| | EXPRESS KIDNAP ENDORSEMENT |
|---|---|

In consideration of the premium, solely with respect to the Kidnap, Ransom and Extortion Coverage Part, the policy is amended as follows:

I.  Solely with respect to an **express kidnap**, Insuring Agreements D Expenses and E Personal Injury, set forth in Section I Insuring Agreements are deleted and replaced with the following:

Expenses

We will reimburse the **insured entity** for **expenses** paid by the **insured entity** resulting directly from an **express kidnap**.

Personal Injury

We will pay those amounts set forth in Item 2 E of this Coverage Part Declarations due to **personal injury** resulting directly from an **express kidnap**.

II.  Solely for the purposes of the coverage provided by this endorsement, Section III Definitions is amended as follows:

A.  The following definitions are included:

**Express kidnap** means the unlawful detention of an **insured person** (other than **kidnapping**, **detention**, **hijacking**, **extortion**, **hostage crisis** or **political threat**) for the purpose of demanding a **ransom** and for a period of less than six hours by violence or threat of violence by a person or group where such unlawful detention occurs while traveling in or in close proximity to a motor vehicle.

**Hostage crisis** means the illegal detention, for more than an hour, of an **insured person** by one (1) party as security that specified terms will be met by another party provided that such other party is in the immediate proximity of the **insured person**. **Hostage crisis** does not include a **kidnapping**, **extortion**, **hijacking**, **political threat**, **express kidnap** or **detention**.

B.  The definition of **crisis response firm** is amended to include the following:

**Crisis response firm** also means the entity selected by us, or by you with our prior written consent, to respond to an **express kidnap**.

C.  The definition of **insured event** is amended to include the following:

**Insured event** also means a singular act of **express kidnap** or a series of connected acts thereof. If it is evident from the demand or the making of such demand that such **express kidnaps** are or were carried out in furtherance of one another, or of a common scheme or plan, they shall be deemed to be connected and to constitute a single **insured event**.

D.  The definition of **expenses**, subparagraphs (i)(d), (i)(f), (i)(g), (ii), (iii), (vii), (ix) and (x) are deleted and subparagraphs (iv) and (v) are deleted and replaced as follows:

(iv) reasonable and necessary travel costs incurred:

(a)  during the **express kidnap** and immediately thereafter by the **insured entity** or any **insured person**; or

(b)  to return any **insured person** to their Resident Country (the country of which the **insured person** is a national or resident alien) upon the **insured person's** release from a **kidnapping**, **detention**, **hijacking** or **express kidnap**;

Form No: CNA93182XX (01-2019)                                            Policy No: 6052060736
Endorsement Effective Date:            Endorsement Expiration Date:        Policy Effective Date: 12/18/2024
Endorsement No: 35 ; Page: 1 of 2                                         Policy Page: 95 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.

(c) during the **express kidnap** and immediately thereafter for a replacement employee, provided that these travel costs shall apply only once per **insured person** per **insured event**;

(v) reasonable expenses incurred by the **insured entity** or **insured person** within six (6) months following the release of such **insured person** from a **kidnapping**, **detention**, **hijacking** or **express kidnap** for up to thirty (30) days of rest and rehabilitation of such **insured person** and his/her spouse and children.

E. The definition of **ransom** is deleted replaced with the following:

**Ransom** means any cash, monetary instruments, bullion, or the fair market value of any securities, property or services which the **insured entity** or any **insured person** shall have either paid, at the direction and demand of a person or persons committing or allegedly committing, an **express kidnap** covered under this policy, or lost solely and directly in the process of making or attempting to make such payment. The value of **ransom** shall be determined as of the date such **ransom** is paid or lost.

F. The definition of **salary** is deleted replaced with the following:

**Salary** means the amount of compensation paid by the **insured entity** for the temporary replacement of an **insured person** who is the victim of an **express kidnap** for one hundred and eighty (180) days thereafter but not exceeding the level in effect on the commencement date of the **express kidnap** of the **insured person**.

III. Solely with respect to an **express kidnap**, Exclusion C Surrender set forth in Section IV, Coverage Part Exclusions is deleted.

IV. Solely with respect to the coverage afforded under this endorsement, this Coverage Part Declarations is amended by the addition of the following Limits of Liability:

The maximum Limit of Liability under the Expenses Insuring Agreement will not exceed $250,000 per **insured event** that is an **express kidnap**.

The maximum Limit of Liability under the Personal Injury Insuring Agreement will not exceed $0 per **insured event**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA93182XX (01-2019)
Endorsement Effective Date:            Endorsement Expiration Date:            Policy No: 6052060736
Endorsement No: 35 ; Page: 2 of 2                                             Policy Effective Date: 12/18/2024
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606            Policy Page: 96 of 138

© Copyright CNA All Rights Reserved.





| | DISAPPEARANCE ENDORSEMENT |
|---|---|

In consideration of the premium, solely with respect to the Kidnap, Ransom and Extortion Coverage Part, the policy is amended as follows:

I.  Solely with respect to a **disappearance**, Insuring Agreement D Expenses set forth in Section I Insuring Agreements is deleted and replaced with the following:

Expenses

We will reimburse the **insured entity** for **expenses** paid by the **insured entity** resulting directly from a **disappearance** for a period not to exceed the Indemnity Period set forth in paragraph VI of this endorsement.

II.  Solely with respect to a **disappearance**, Coverage Extension A Crisis Response Firm Expenses set forth in Section II Coverage Extensions is deleted and replaced with the following:

We will pay all reasonable fees and expenses incurred by the **crisis response firm** from the date such **disappearance** was first reported to or discovered by the **insured entity**.

III.  Solely with respect to the coverage provided under this endorsement, Section III Definitions is amended as follows:

A.  The following definition is added:

**Disappearance** means the unexpected and unexplained absences of an **insured person** from their place of residence or work for more than forty-eight (48) consecutive hours from the last confirmed contact with such **insured person** (where such disappearance is not a **kidnapping**, **detention**, **hijacking**, **extortion** or **political threat**). The **disappearance** of two (2) or more **insured persons** last seen or reported together will be treated as one (1) **disappearance**.

B.  The definition of **crisis response firm** is amended to include the following:

**Crisis response firm** also means the entity selected by us, or by you with our prior written consent, to respond to or negotiate the resolution of a **disappearance**.

C.  The definition of **expenses**, subparagraphs (i)(d), (i)(f), (i)(g), (iii), (v), (vii), (viii) and (ix) are deleted and subparagraphs (i)(b), (i)(e), (iv) and (x) are deleted and replaced as follows:

(i)(b)  for legal services, other than regarding a civil lawsuit, where such services are provided within thirty-six (36) months following a **disappearance**;

(i)(e)  for psychiatric costs for an **insured person** who is the victim of the **disappearance** and such **insured person's** immediate family, within six (6) months following such **disappearance**;

(iv)  reasonable and necessary travel costs incurred:

(a)  during the **disappearance** and immediately thereafter by the **insured entity** or any **insured person**; or

(b)  to return any **insured person** to their Resident Country (the country of which the **insured person** is a national or resident alien) upon the finding of such **insured person**;

(c)  during the **disappearance** and immediately thereafter for a newly hired replacement employee, provided that these travel costs will apply only once per **insured person** per **insured event**;

Form No: CNA93183XX (01-2019)
Endorsement Effective Date:                Endorsement Expiration Date:
Endorsement No: 36 ; Page: 1 of 2
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 97 of 138

© Copyright CNA All Rights Reserved.

(x)   all other reasonable expenses incurred by the **insured entity** or any **insured person** with our prior written consent, solely and directly resulting from a **disappearance** and incurred within the Indemnity Period set forth in paragraph VI of this endorsement.

D.   The definition of **insured event** is amended to include the following:

**Insured event** also means a singular act of **disappearance** or a series of connected acts thereof. If it is evident that such **disappearances** are or were carried out in furtherance of one another, or of a common scheme or plan, they will be deemed to be connected and to constitute a single **insured event**.

E.   The definition of **salary** is deleted and replaced with the following:

**Salary** means the amount of compensation paid by the **insured entity** for the temporary replacement of an **insured person** who is the victim of a **disappearance** for one hundred and eighty (180) days thereafter but not exceeding the level in effect on the commencement date of the **disappearance** of the **insured person**.

IV.   Solely with respect to the coverage afforded under this endorsement, Section IV Coverage Part Exclusion is amended as follows:

The following exclusions are added:

Storm and Other Natural Disasters

We will not be liable to reimburse or pay any amounts under this Coverage Part based upon or arising out of any actual or alleged **disappearance** of an **insured person** during or within twenty-four (24) hours of a storm (wind, rain, snow, sleet, hail, lightning, dust or sand), earthquake, flood, tsunami, volcanic eruption, wildfire or other similar natural disaster that results in severe and widespread damage and that caused the area in which the **insured person** was last located to be declared unsafe or a disaster by the local government and deemed to be uninhabitable or dangerous.

Transit by Air or Sea

We will not be liable to reimburse or pay any amounts under this Coverage Part based upon or arising out of any actual or alleged **disappearance** of an **insured person** while engaged in transit by air or sea.

V.   Solely with respect to the coverage afforded under this endorsement, this Coverage Part Declarations is amended to include the following Limit of Liability:

●   The maximum Limit of Liability under Insuring Agreement D Expenses will not exceed $50,000 per **insured event** that is a **disappearance**.

VI.   Indemnity Period: 90 Days

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA93183XX (01-2019)
Endorsement Effective Date:          Endorsement Expiration Date:
Endorsement No: 36 ; Page: 2 of 2
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 98 of 138

© Copyright CNA All Rights Reserved.

 

## HOSTAGE CRISIS ENDORSEMENT

In consideration of the premium, solely with respect to the Kidnap, Ransom and Extortion Coverage Part, the policy is amended as follows:

I.   Solely with respect to a **hostage crisis**, Insuring Agreement D Expenses and Insuring Agreement E Personal Injury set forth in Section I Insuring Agreements are deleted and replaced with the following:

Expenses

We will reimburse the **insured entity** for **expenses** paid by the **insured entity** resulting directly from a **hostage crisis**.

Personal Injury

We will pay those amounts set forth in Item 2 E of this Coverage Part Declarations due to **personal injury** resulting directly from a **hostage crisis**.

II.  Solely with respect to a **hostage crisis**, Coverage Extension B. Legal Liability Costs set forth in Section II Coverage Extensions is deleted and replaced with the following:

Legal Liability Costs

We will reimburse the **insured entity** for **legal liability costs** resulting directly from a **hostage crisis**.

III. Solely with respect to the coverage provided under this endorsement, Section III Definitions is amended as follows:

A.   The following definitions are included:

**Assault** means physical attack or assault committed with a **weapon** (where such physical attack or assault is not a **kidnapping**, **detention**, **hijacking**, **extortion** or **political threat**) and directly involving three (3) or more people and resulting in the serious injury or **death** of an **insured person** occurring on the **insured entity's premises** or during an activity sponsored by the **insured entity** that results in a general circulation print or televised media coverage within forty-eight (48) hours of the incident.

**Express kidnap** means the unlawful detention of an **insured person** (other than **kidnapping**, **detention**, **hijacking**, **extortion**, or **political threat**) for the purpose of demanding a **ransom** and for a period of less than six (6) hours by violence or threat of violence by a person or group where such unlawful detention occurs while traveling in or in close proximity to a motor vehicle.

**Hostage crisis** means the illegal detention, for more than an hour, of an **insured person** by one party as security that specified terms will be met by another party provided that such other party is in the immediate proximity of the **insured person**. **Hostage crisis** does not include a **kidnapping**, **extortion**, **hijacking**, **political threat**, **assault**, **express kidnap** or **detention**.

**Weapon** means a lethal instrument or tool capable of producing great bodily injury or **death** from the manner in which it is used or intended to be used.

B.   The definition of **crisis response firm** is amended to include the following:

**Crisis response firm** also means the entity selected by us, or by you with our prior written consent, to respond to a **hostage crisis**.

C.   The definition of **expenses**, subparagraph (i)(g), is deleted and subparagraphs (iv), (v), (vii), (ix) and (x) are deleted and replaced as follows:

(iv) reasonable and necessary travel costs incurred:

Form No: CNA93184XX (01-2019)
Endorsement Effective Date:
Endorsement No: 37 ; Page: 1 of 3
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Endorsement Expiration Date:

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 99 of 138

© Copyright CNA All Rights Reserved.

(a) during the **hostage crisis** and immediately thereafter by the **insured entity** or any **insured person**; or

(b) to return any **insured person** to their Resident Country (the country of which the **insured person** is a national or resident alien) upon the **insured person's** release from a **hostage crisis**;

(c) during the **hostage crisis** and immediately thereafter for a replacement employee,

provided that these travel costs will apply only once per **insured** only for the duration of the **hostage crisis**;

(v) reasonable and necessary expenses incurred by the **insured entity** or an **insured person** within six (6) months following the release of such **insured person** from a **hostage crisis** for up to thirty (30) days of rest and rehabilitation of such **insured person** and his/her spouse and children;

(vii) the costs incurred by the **insured entity** for the compensation of a person specifically designated to assist in negotiations associated with a **hostage crisis** plus all other reasonable expenses solely and directly incurred in connection with such negotiations, provided the **insured entity** forwards an itemized accounting of the time, services and expenses to us;

(ix) reasonable and necessary job retraining costs incurred by the **insured entity** or **insured person** following the release of such **insured person** from a **hostage crisis**;

(x) all other reasonable expenses incurred by the **insured entity** or any **insured person** with the our prior written consent, solely and directly resulting from a **hostage crisis** within thirty-six (36) months following their release.

D. The definition of **insured event** is amended to add the following:

**Insured event** also means a singular act of a **hostage crisis** or a series of connected acts thereof. If it is evident from the demand or the making of such demand that such **hostage crises** are or were carried out in furtherance of one another, or of a common scheme or plan, they will be deemed to be connected and to constitute a single **insured event**.

E. The definition of **insured person** is amended to include following:

**Insured person** also means any customer of the **insured entity** while on the **premises**.

F. The definition of **insured person suit** is deleted and replaced with the following:

**Insured person suit** means a suit brought by an **insured person** (or the estate, heirs or legal representatives of such **insured person**) against such **insured entity** alleging negligence or legal incompetence:

(i) in the hostage retrieval operations or negotiations in a **hostage crisis** of such **insured person**; or

(ii) in the prevention of a **hostage crisis** of such **insured person**.

G. The definition of **salary** is deleted and replaced with the following:

**Salary** means the amount of compensation paid by the **insured entity**, including hourly wages, bonuses, commissions, allowances, cost of living adjustments, foreign tax reimbursements, health and welfare and pension benefits (at the level in effect on the commencement date of the **hostage crisis**) which the **insured entity** agrees to pay:

(i) any **insured person** who is a victim of the **hostage crisis** from the time the **insured person** becomes the victim of the **hostage crisis**;

(ii) any relative of an **insured person** who is a victim of the **hostage crisis** provided such relative leaves his or her employment in order to assist in the negotiations for the release of such **insured person**; and

---

Form No: CNA93184XX (01-2019)
Endorsement Effective Date:                Endorsement Expiration Date:
Endorsement No: 37 ; Page: 2 of 3
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 100 of 138

© Copyright CNA All Rights Reserved.



(iii) any newly hired temporary replacement of an **insured person** who is the victim of the **hostage crisis**.

All such amounts shall be paid until the date of the release of, or escape by, the **insured person** from, or the **death** of the **insured person** at the hands of the hostage takers, and up to sixty (60) days thereafter.

IV. Section IV, Coverage Part Exclusions is amended to delete Exclusion C Surrender and to replace it with the following:

Strikes

We will not be liable to reimburse or pay any amounts under this Coverage Part based upon or arising out of any actual or alleged union strike, labor strike or employment related strike.

V. Solely with respect to the coverage afforded under this endorsement this Coverage Part Declarations is amended to include the following Limits of Liability:

- The maximum Limit of Liability under Insuring Agreement D Expenses will not exceed $1,000,000 per **insured event** that is a **hostage crisis**.

- The maximum Limit of Liability under Coverage Extension B Legal Liability Costs will not exceed Full Policy Limit per **insured event** that is a **hostage crisis**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA93184XX (01-2019)                                                                    Policy No: 6052060736
Endorsement Effective Date:            Endorsement Expiration Date:            Policy Effective Date: 12/18/2024
Endorsement No: 37 ; Page: 3 of 3                                                            Policy Page: 101 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.




**BUSINESS INTERRUPTION LOSS ENDORSEMENT**
**(Exclude E-commerce Extortion Coverage)**

In consideration of the premium, solely with respect to the Kidnap, Ransom and Extortion Coverage Part, the policy is amended as follows:

I. Section I Insuring Agreements is amended to include the following Insuring Agreement:

Business Interruption Loss Insuring Agreement

We will reimburse the **insured entity** for **fees** and **business interruption loss** as determined by the Investigative Accountants set forth below, subject to the Indemnity Period specified below; provided that the temporary suspension, interruption or closure of all or part of the **insured entity's** business operations or activities exceeds the Waiting Period specified below.

II. Solely with respect to the coverage afforded under this endorsement, Section III Definitions is amended as follows:

A. The following definitions are added:

**Business interruption loss** means the net profit plus payroll expenses, taxes, interest, rents and other operating expenses unavoidably incurred by the **insured entity** during the temporary suspension, interruption or closure of all or part of the **insured entity's** business operations or activities as a direct result of an **insured event**.

**Business interruption loss** will not include:

(i) consequential damages including but not limited to damages attributable to loss of market share, harm to business reputation or loss of goodwill;

(ii) net profit plus payroll expenses, taxes, interest, rents and other operating expenses sustained after the resumption of business operations or activities by the **insured entity** or the expiration of the Indemnity Period, whichever first occurs;

(iii) net profit plus payroll expenses, taxes, interest, rents and other operating expenses arising out of cancellation, suspension, abrogation or breach of contract to which the **insured entity** is a party;

(iv) **ransom**.

**Contingent extortion** means the making of illegal threats to damage property contiguous to the **insured entity's premises** which results directly in the temporary suspension, interruption or closure of all or part of the **insured entity's premises** solely and directly as a result of an order of a civil authority to cease wholly or in part the **insured entity's** business operations or activities. **Contingent extortion** will not include **e-commerce extortion**.

**Fees** mean the fees and expenses of:

(i) the Investigative Accountants set forth below; and

(ii) all other reasonable expenses incurred by the **insured entity** with our prior written consent and incurred during the temporary suspension, interruption or closure of all or part of the **insured entity's** business operations or activities,

due to an **insured event**.

**Fees** will not include:

(i) fees or expenses sustained after the resumption of business operations or activities by the **insured entity** or the expiration of the Indemnity Period, whichever first occurs;

---

Form No: CNA93186XX (01-2019)
Endorsement Effective Date:
Endorsement No: 38 ; Page: 1 of 3
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Endorsement Expiration Date:

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 102 of 138

© Copyright CNA All Rights Reserved.



(ii)  fees or expenses arising out of cancellation, suspension, abrogation or breach of contract to which the **insured entity** is a party.

B.  The definition of **extortion** is deleted and replaced with the following:

**Extortion** means:

(i)  **bodily injury extortion**;

(ii)  **property damage extortion**;

(iii)  **products extortion**; or

(iv)  **trade secrets extortion**.

**Extortion** will not include **network extortion**.

C.  The definition of **insured event** is deleted and replaced with the following:

**Insured event** means a singular act of **extortion** or **contingent extortion** or a series of connected acts thereof. If it is evident from the **extortion** or **contingent extortion**, that the series of connected acts are or were carried out in furtherance of one another, or of a common scheme or plan, they will be deemed to be connected and to constitute a single **insured event**.

D.  The definition of **premises** is deleted and replaced with the following:

**Premises** mean that portion of any real property owned by or leased to the **insured entity**.

III.  Solely with respect to the coverage afforded under this endorsement, Section VI Conditions Precedent to Coverage is amended to include the following:

●  In the event of an **insured event**, any claims for payment will be made to us as soon as practicable and will be accompanied by a computation of loss, prepared by a recognized firm of accountants using standard accountancy procedures, which sets out in detail how the loss has been calculated and what assumptions have been made.

●  The Investigative Accountants specified below will review the **insured entity's** claim for payment and determine the amount of the **business interruption loss**, taking into account any savings or recoveries or offsetting of losses which have been made or which the **insured entity** could reasonably have been expected to make, and the ability of the **insured entity** to resume business operations or activities.

●  **Business interruption loss** for any period of the temporary suspension, interruption or closure will be arrived at by projection of earnings for the affected business operations or activities for the identical calendar period during the preceding two (2) years.

●  The **insured entity** will produce any documentary evidence, books or accounts, bills, invoices and other vouchers and copies of the same which the Investigative Accountants may require and will afford them every assistance in their investigations including reasonable access to the **insured entity's premises**.

●  In the event the Investigative Accountants declare that they are unable to act in this capacity for any reason including potential conflict of interest, we will appoint another firm of similar standing in the accountancy profession.

IV.  Solely with respect to the coverage afforded under this endorsement, Item 2 of this Coverage Part Declarations is amended to include the following:

The maximum Limit of Liability under the Business Interruption Loss Insuring Agreement will not exceed $1,000,000 per **insured event**.

The maximum Limit of Liability under the Business Interruption Loss Insuring Agreement will not exceed $1,000,000 in the aggregate.

Form No: CNA93186XX (01-2019)
Endorsement Effective Date:          Endorsement Expiration Date:
Endorsement No: 38 ; Page: 2 of 3
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 103 of 138

© Copyright CNA All Rights Reserved.

V. The following terms will apply:

- Indemnity Period: 120 Days

- Waiting Period: 6 Hours

- Investigative Accountants: 0

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA93186XX (01-2019)                                    Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:          Policy Effective Date: 12/18/2024
Endorsement No: 38 ; Page: 3 of 3                                Policy Page: 104 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.

**AMENDATORY ENDORSEMENT - OHIO**
**(Kidnap, Ransom and Extortion Coverage Part)**

In consideration of the premium, the Kidnap, Ransom and Extortion Coverage Part of the Policy is amended to add the following:

Notwithstanding anything to the contrary in this Coverage Part, there is no coverage provided under this Coverage Part for loss or **expenses** covered by the Ohio Workers' Compensation State Fund.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA93291OH (04-2019)                                                     Policy No: 6052060736
Endorsement Effective Date:              Endorsement Expiration Date:           Policy Effective Date: 12/18/2024
Endorsement No: 39 ; Page: 1 of 1                                               Policy Page: 105 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.


| | AMEND EXECUTIVE ENDORSEMENT |
|---|---|
| | (Partners) |

In consideration of the premium, the definition of **executive** in Section III, Definitions of the Kidnap, Ransom and Extortion Coverage Part is amended as follows:

**Executive** will also include any past, present or future natural person general partner or managing partner of an **insured entity**, or such functionally equivalent position.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

| | | |
|---|---|---|
| Form No: CNA96394XX (08-2019) | | Policy No: 6052060736 |
| Endorsement Effective Date: | Endorsement Expiration Date: | Policy Effective Date: 12/18/2024 |
| Endorsement No: 40 ; Page: 1 of 1 | | Policy Page: 106 of 138 |
| Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 | | |

© Copyright CNA All Rights Reserved.



| **AMEND EXECUTIVE ENDORSEMENT** |
| **(Specific Title/Position)** |

In consideration of the premium, the definition of **executive** in Section III, Definitions of the Kidnap, Ransom and Extortion Coverage Part is amended to also include any past, present or future Chief Compliance Officer, Controller of an **insured entity**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA96395XX (08-2019)                                                        Policy No: 6052060736
Endorsement Effective Date:              Endorsement Expiration Date:              Policy Effective Date: 12/18/2024
Endorsement No: 41 ; Page: 1 of 1                                                  Policy Page: 107 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.





| |
|---|
| **CYBER EXTORTION EXCLUSION ENDORSEMENT**<br>**(Kidnap, Ransom and Extortion Coverage Part)** |

In consideration of the premium, solely with respect to Insuring Agreement B, Extortion for Ransom the Kidnap, Ransom and Extortion Coverage Part is amended as follows:

I.  Insuring Agreement B, Extortion for Ransom of Section I, Insuring Agreements is deleted and replaced with the following:

Extortion for Ransom:

We will reimburse the **insured entity** for **ransom** resulting directly from:

(i)   **bodily injury extortion**;

(ii)  **property damage extortion**;

(iii) **products extortion**; or

(iv) **trade secrets extortion**.

II. Section III, Definitions is amended as follows:

A.  The definition of **Extortion** is deleted and replaced with the following:

**Extortion** means:

(i)   **bodily injury extortion**;

(ii)  **property damage extortion**;

(iii) **products extortion**; or

(iv) **trade secrets extortion**.

B.  The definitions **E-commerce extortion** and **network extortion** are deleted, and any and all references to these terms are deleted.

C.  The following definitions are added:

**Cyber extortion** means any threat, or series of threats, made against an **insured entity** demanding and expressing an intent to:

(i)   sell or disclose the **insured entity's** confidential information or the confidential information of others stored within the **insured entity's network**;

(ii)  alter, damage, or destroy **electronic data** or electronic computer instructions (that subset of electronic information that contains the instructions and directions that a computer system uses to manipulate or create **electronic data**) of the **insured entity** that are stored within the **insured entity's network**;

(iii) maliciously or fraudulently introduce a set of unauthorized instructions, programmatic or otherwise, that propagate themselves through the **insured entity's network**, which instructions were designed to modify, alter, damage, destroy, delete, contaminate or degrade the integrity, quality, or performance of data, computer application software, or computer operating system and related software into the **insured entity's network**;

(iv) initiate an intentional attack on the **insured entity's network** that depletes network resources or impedes network access available through the Internet to authorized external users of the **insured entity's network**;

Form No: CNA99101XX (07-2020)
Endorsement Effective Date:
Endorsement No: 42 ; Page: 1 of 2
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606
Endorsement Expiration Date:
Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 108 of 138

© Copyright CNA All Rights Reserved.

(v)  publicize that the **insured entity's network** will be or has been impaired, compromised, or destroyed;

(vi) impair, alter, or destroy the **insured entity's** website; or

(vii) disrupt, attack, deface, or cause a **security breach** (including ransomware) of an **insured entity's network** or data.

**Security breach** means: (i) access to an **insured entity's network** by an unauthorized person; (ii) use of an **insured entity's network** in an unauthorized manner; (iii) transmission of malicious code or virus to a an **insured entity's network**; or (iv) **denial of service attack**.

III.  Section IV, Coverage Part Exclusions is amended to add the following exclusion

We will not be liable to reimburse or pay any amounts under this Coverage Part based upon or arising out of any actual or alleged:

Cyber Extortion

**Cyber Extortion**.


All other terms and conditions of the policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

---

Form No: CNA99101XX (07-2020)
Endorsement Effective Date:            Endorsement Expiration Date:
Endorsement No: 42 ; Page: 2 of 2
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 109 of 138

© Copyright CNA All Rights Reserved.



| CRIME COVERAGE PART DECLARATIONS |
|---|

Item 1.   **Named Insured**: CaaStle Inc.

Item 2.   Limits of Liability and Retentions:

| Insuring Agreement: | Limits of Liability: | Retentions: |
|---|---:|---:|
| A.  Fidelity Coverage | | |
|      1.   Employee Theft | $5,000,000 | $25,000 |
|      2.   Client | N/A | N/A |
|      3.   ERISA Plan | $5,000,000 | NONE |
| B.  Forgery or Alteration Coverage | $5,000,000 | $25,000 |
| C.  Inside and Outside Premises Coverage | | |
|      1.   Money or Securities | $5,000,000 | $25,000 |
|      2.   Property | $5,000,000 | $25,000 |
|      3.   Damage | $5,000,000 | $25,000 |
| D.  Transfer Coverage | | |
|      1.   Computer | $5,000,000 | $25,000 |
|      2.   Funds | $5,000,000 | $25,000 |
|      3.   Social Engineering Fraud | $250,000 | $25,000 |
| E.  Counterfeit Coverage | $5,000,000 | $25,000 |

Item 3.   Coverage Extensions Limits of Liability:

| Coverage Extension | Sublimits of Liability |
|---|---:|
| A.  Proof of Loss Costs | $10,000 |
| B.  Computer Restoration Costs | $25,000 |
| C.  Record Recovery Costs | $25,000 |

© Copyright CNA All Rights Reserved.

These Declarations, along with the completed and signed **application**, and the policy shall constitute the contract between the **insureds** and the Insurer.

Authorized Representative:

Date: 03/25/2025

© Copyright CNA All Rights Reserved.


 **CRIME COVERAGE PART**

## I.  INSURING AGREEMENTS

Coverage provided under the following Insuring Agreements applies to loss or damage which is **discovered** during the **policy period** or during the period of time provided in Section XIII Discovery Period.

A.  Fidelity Coverage

We will pay for loss of or damage to **money**, **securities**, or **property** of:

1.  Employee Theft

an **insured entity** committed by an **employee**, whether identified or not, acting alone or in collusion with others, such loss or damage resulting directly from **theft** or **forgery**.

2.  Client

a **client** committed by an **employee**, whether identified or not, provided the **employee** was not acting in collusion with the **client** or its employees, such loss or damage resulting directly from **theft** or **forgery**.

3.  ERISA Plan

a **plan** committed by a **fiduciary**, whether identified or not, acting alone or in collusion with others, such loss or damage resulting directly from **theft** or **forgery**.

B.  Forgery or Alteration Coverage

We will pay for direct loss resulting from **forgery** or **alteration** of any **payment instrument**.

C.  Inside and Outside Premises Coverage

1.  Money or Securities

We will pay for loss of **money** or **securities**:

(i)   inside the **premises**; or

(ii)  **outside the premises**,

resulting directly from **theft**, actual destruction, or physical disappearance.

2.  Property

We will pay for loss of or damage to **property**:

(i)   inside the **premises**; or

(ii)  **outside the premises**,

resulting directly from an actual or attempted **robbery** or **safe burglary**.

3.  Damage

We will pay for damage to the **premises** or its exterior resulting directly from an actual or attempted **robbery** or **safe burglary** provided you own such **premises** or are liable for damage to the **premises**.

© Copyright CNA All Rights Reserved.

D.  Underline: Transfer Coverage

1.  Computer

    We will pay for loss of **money**, **securities**, or **property** resulting directly from **computer transfer fraud**.

2.  Funds

    We will pay for loss of **money** or **securities** resulting directly from **funds transfer fraud**.

3.  Social Engineering Fraud

    We will pay for loss of **money** or **securities** resulting directly from **social engineering fraud**.

E.  Counterfeit Coverage

    We will pay for direct loss resulting from **counterfeit fraud**.

## II.  COVERAGE EXTENSIONS

The following coverage extensions, if subject to a sublimit, are part of and not in addition to, the limit of liability set forth in Item 2 of this Coverage Part Declarations.

A.  Sublimited Proof of Loss Costs Extension

    We will pay **proof of loss costs** resulting directly from loss covered under any Insuring Agreement if such covered loss is in excess of the Retention applicable to such Insuring Agreement. The total amount that we will pay for **proof of loss costs** will be the sublimit of liability set forth in Item 3A of this Coverage Part Declarations.

B.  Sublimited Computer Restoration Costs Extension

    We will pay **computer restoration costs** resulting directly from loss covered under the Fidelity Coverage Insuring Agreements A or the Computer Transfer Coverage Insuring Agreement D1 if such covered loss is in excess of the Retention applicable to such Insuring Agreement. The total amount that we will pay for **computer restoration costs** will be the sublimit of liability set forth in Item 3B of this Coverage Part Declarations.

C.  Sublimited Record Recovery Costs Extension

    We will pay **record recovery costs** resulting directly from loss covered under the Fidelity Coverage Insuring Agreements A or the Inside and Outside Premises Coverage Insuring Agreements C if such covered loss is in excess of the Retention applicable to such Insuring Agreement. The total amount that we will pay for **record recovery costs** will be the sublimit of liability set forth in Item 3C of this Coverage Part Declarations.

D.  Legal Expense Costs

    In addition to the limit of liability set forth in this Coverage Part Declarations, we will pay **legal expense costs** resulting directly from loss covered under the Forgery or Alteration Insuring Agreement B.

## III.  DEFINITIONS

Any defined word not defined in this Coverage Part will have the meaning assigned to it in the General Terms and Conditions. When used in this Coverage Part, the terms "you", "your", and "yours" mean any **insured entity**.

**Alteration** means the material modification of an original document by a person acting without authority and with the intent to deceive.

**Client** means any customer of yours to whom you provide goods or for whom you perform services while under a written contract for a fee.

---

Form No: CNA92848XX (01-2019)                                        Policy No: 6052060736
Coverage Part; Page: 2 of 13                                         Policy Effective Date: 12/18/2024
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 Policy Page: 113 of 138

© Copyright CNA All Rights Reserved.

**Computer breach** means the unauthorized and intentional use of **corrupt code** by a **third party** without the knowledge, consent, or intervention of you or your **employees**.

**Computer restoration costs** mean reasonable expenses incurred by you to recover or restore your **data**, software or other computer programs from a **computer breach**. **Computer restoration costs** will not include any expenses for computer hardware, or expenses that develop, upgrade, or enhance your **data**, software, or other computer programs, or **overhead expenses**.

**Computer system** means:

(i)   computer hardware,

(ii)  software; and

(iii) all peripheral devices linked through a network,

that are operated by you and either owned or leased by you and are used to store, collect, transmit, process, maintain, or retrieve your **data**. **Computer system** will include off-line media libraries.

**Computer transfer fraud** means the unlawful taking of **money**, **securities**, or **property** resulting directly from a **computer breach**.

**Communication** means an electronic, telephone or written instruction received by the **insured entity** that directs an **employee** to:

(i)   pay, transfer, or deliver **money** or **securities**, or

(ii)  establish or change the method, destination, or account for payment or delivery of **money** or **securities**;

provided such instruction:

(a)   contains a misrepresentation of a material fact; and

(b)   is relied upon by an **employee** believing it to be true.

**Corrupt code** means any virus, malware, Trojan horse, worm or other code or software script used for the purpose of: (i) gaining or enabling unauthorized access to a **computer system**; or (ii) entering, deleting, or otherwise changing the instructions, program logic, or **data** of such **computer system**.

**Counterfeit Fraud** means any:

(i)   money order allegedly issued by a post office, express company or financial institution which has been exchanged by you in good faith for merchandise, **money**, or services and such money order is not honored or paid upon presentation; or

(ii)  official paper currency of any country that is counterfeit.

**Cryptocurrency** means any virtual or digital currency in which cryptography or other encryption security techniques are used to regulate the generation of units of currency and/or verify the transfer of funds, operating independently of a central bank.

**Custodian** means any natural person or entity duly authorized by you to have physical custody of **money**, **securities**, or **property**.

**Data** means information contained, processed, or stored in a **computer system**.

**Discovered** or **discovery** means when a **responsible person** acquired knowledge that would lead a reasonable person to believe a covered loss has occurred or will occur, whether or not the amount or details of such loss are known. **Discovery** or **discovered** will not include acquired knowledge of an **executive** participating in the **theft** or **forgery**, whether acting alone or in collusion with an **employee**.

**Employee** means any natural person while in your service (or within the first ninety (90) days immediately following termination of such service):

© Copyright CNA All Rights Reserved.

(i)   on a full-time, part-time, seasonal, leased, or temporary basis, whom you compensate directly by salary, wages, or commissions, and whose service you have the right to direct and control;

(ii)  as an **executive** serving in the scope of the usual duties of an **employee** defined in (i) above; or

(iii) as a student, intern, or volunteer.

**Employee** will also include:

(a)   former or retired **employees** defined in (i) or (ii) above retained as a consultant for an **insured entity** (as evidenced by written contract);

(b)   any **employee** defined in (i) or (ii) above while on medical, military leave, or any other business leave granted by you; or

(c)   any **independent contractor**.

**Employee** does not include any agent, broker, factor, commission merchant, consignee, contractor (other than an **independent contractor**), or other such representative of the same general character.

**ERISA** means the Employee Retirement Income Security Act of 1974, (including the Consolidated Omnibus Budget Reconciliation Act of 1985)(COBRA).

**Executive** means your directors, officers, governors, or managing members of a management committee, in-house General Counsel, Risk Manager, or any such functionally equivalent position.

**Forgery** means the actual signing of another person or organization's name with intent to deceive, but does not mean a signature that includes, in whole or in part, one's own name, signed with or without authority, in any capacity for any purpose. Mechanically or electronically produced or reproduced signatures will be treated the same as hand-written signatures.

**Fiduciary** means any natural person who is required to be bonded by the Employee Retirement Income Security Act of 1974 (ERISA).

**Financial Institution** means any bank, savings bank, credit union, or similar depository institution, trust company, stock brokerage firm, or investment firm in which a **transfer account** is maintained.

**Funds transfer fraud** means an unlawful instruction, other than **forgery**, purportedly issued by you, directing a **financial institution** to transfer, pay, or deliver **money** or **securities** from your **transfer account** without your knowledge or consent.

**Insured** means any **insured entity** or any **plan**.

**Legal expense costs** mean reasonable fees, costs, and expenses incurred by you in defending any civil proceeding seeking to enforce payment of any **payment instrument**. **Legal expense costs** do not include **overhead expenses**.

**Money** means currency, coins, bullion, or bank notes having a face value; or travelers' checks, register checks, or money orders held for sale to the public.

**Outside the premises** means being conveyed from one person or place to another by you within the custody of a **custodian**. Such conveyance will be deemed to begin immediately upon receipt by such **custodian** and cease immediately upon delivery.

**Overhead expenses** mean the salaries, wages, fees, overhead, or benefit expenses associated with any **insured**.

**Owner** means any natural person who has an ownership interest in an **insured entity**.

**Partner** means any natural person who:

(i)   has an ownership interest of ten percent (10%) or more in any **insured entity**, or

© Copyright CNA All Rights Reserved.

(ii)  is a partner of any **insured entity** formed as a partnership.

**Payment instrument** means any: (i) checks, drafts, or similar written promises, orders, or directions to pay a sum certain in **money**, that are made or drawn by or drawn upon by you, by anyone acting as your agent or purporting to have been so made or drawn; or (ii) written instrument required in connection with any credit or debit card issued to you or at your request to any **employee**.

**Personal information** means any nonpublic personal information relating to an identified or identifiable natural person.

**Plan** means any employee benefit plan, pension benefit plan, or welfare benefit plan, as each is defined under **ERISA**, sponsored solely by an **insured entity** or sponsored jointly by an **insured entity** and a labor organization, for the benefit of your employees. **Plan** does not include any multi-employer plan.

**Policy period** will not include any **extended reporting period**.

**Premises** means the interior portion of any: (i) building that you occupy in conducting your business; or (ii) building, including the night depository chute, occupied by a **financial institution**.

**Proof of loss costs** mean reasonable expenses, other than **overhead expenses**, incurred by you to establish the amount of a covered loss. **Proof of loss costs** do not include fees or expenses related to the filing of, defense of or proposed civil or criminal litigation or actions.

**Property** means any tangible property, other than **money** or **securities** that has intrinsic value. **Property** does not include computer programs or **data**.

**Record recovery costs** mean reasonable expenses, other than **overhead expenses**, incurred by you to reproduce information contained in any lost or damaged manuscripts, records, accounts, ledgers, or other similar recordkeeping methods that are lost or damaged for a reason other than a **computer breach**.

**Responsible person** will also mean the President, Director of Human Resources or such functionally equivalent positions of the **insured**, or the person responsible for the purchase and placement of your insurance.

**Robbery** means the unlawful taking of **money**, **securities**, or **property** from a **custodian** by a third party who: (i) causes or threatens physical harm to such **custodian**; or (ii) commits an unlawful act in the presence of such **custodian** or any other witness.

**Safe burglary** means the unlawful taking of **money**, **securities**, or **property** from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior. **Safe burglary** will also include the unlawful taking of a safe or vault from within the **premises**.

**Securities** mean negotiable and non-negotiable instruments or contracts representing either **money** or **property**. **Securities** include tokens, tickets, revenue, and other stamps in current use as well as evidences of debt issued in connection with credit or charge cards, which cards are not issued by you. **Securities** do not include **money**.

**Social engineering fraud** means the intentional misleading of an **employee** through the use of a **communication** by a person or entity who is not, but purports to be, an **owner**, **client**, **employee**, or **vendor**.

**Theft** means the unlawful taking of **money**, **securities**, or **property** to the deprivation of: (i) an **insured**; or (ii) solely with respect to the Client Fidelity Coverage Insuring Agreement A2, a **client**.

**Third party** means a natural person other than:

(i)  an **employee**; or

(ii)  a natural person acting in collusion with an **employee**.

**Trading** means any loss as a result of trading in a genuine or fictitious account.

---

Form No: CNA92848XX (01-2019)
Coverage Part; Page: 5 of 13
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 116 of 138

© Copyright CNA All Rights Reserved.

**Transfer account** means an account you maintain at a **financial institution** from which you can initiate the transfer, payment, or delivery of **money** or **securities**.

**Vendor** means any person or entity that has provided goods or services to you under a genuine, pre-existing arrangement or other written agreement. **Vendor** does not include any **financial institution**, asset manager, armored motor vehicle company, or such similar entity.

**War** means any: (i) war, including undeclared or civil war; (ii) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or (iii) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## IV. COVERAGE PART EXCLUSIONS

A. Exclusions applicable to all Insuring Agreements

1. This policy does not cover:

(a) Acts

loss or damage resulting from any fraudulent, dishonest or criminal act committed by:

(i) your **partners** whether acting alone or in collusion with others, provided this exclusion (i) will not apply to the ERISA Plan Fidelity Coverage Insuring Agreement A3;

(ii) an **employee**, whether acting alone or in collusion with others, except when covered under the Fidelity Coverage Insuring Agreements; or

(iii) an **employee** who had  committed any criminal, fraudulent or dishonest act prior to his/her employment with the **insured entity** involving any property valued at $25,000 or more, provided that you, or any of your **executives**, had knowledge of such act prior to the inception of this policy.

(b) Advantage

loss by any **insured** to the advantage of any other **insured**.

(c) Authority

loss or damage resulting from seizure or destruction of property by order of governmental authority.

(d) Confidential Information

loss or unauthorized use of confidential information of any kind including trade secrets, patents, processing methods, or customer lists, whether such confidential information is yours or others.

(e) Cryptocurrency

loss of or damage to **cryptocurrency**.

(f) Custody

loss of or damage to **money**, **securities**, or **property** while in the custody of any **custodian**, unless the loss or damage is in excess of the amount you recover under any contract with or insurance carried by such **custodian**.

(g) Data Security Breach Expenses

loss arising from a data security breach including:

(i) forensic audit expenses;

Form No: CNA92848XX (01-2019)
Coverage Part; Page: 6 of 13
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 117 of 138

© Copyright CNA All Rights Reserved.

(ii) fines, penalties, or expenses to comply with Payment Card Industry Data Security Standard or such similar federal and state laws, statutes, or standards;

(iii) notification expenses to individuals whose **personal information** may have been stolen, accessed, downloaded or misappropriated while in the **insured entity's** care, custody or control.

(h) <u>Exchanges</u>

loss or damage resulting from the giving or surrendering of **money**, **securities**, or **property** in any exchange or purchase with a **third party**, provided that this exclusion (h) will not apply to otherwise covered loss under the Fidelity Coverage Insuring Agreements A, the Counterfeit Coverage Insuring Agreement E, or otherwise covered loss of **property** under the Computer Transfer Coverage Insuring Agreement D1.

(i) <u>Fire</u>

loss or damage resulting from fire, except loss of **money** or **securities**, or damage to any safe or vault in a **safe burglary**.

(j) <u>Indirect Loss</u>

loss that is indirect or consequential including:

(i) loss of income, profits or revenue;

(ii) fines or penalties;

(iii) payment of damages for which you are legally liable, except for compensatory damages arising directly from covered loss under this Coverage Part;

(iv) legal fees, costs or expenses incurred in defending or prosecuting any legal action, except for **legal expense costs**;

(v) fees, costs or expenses incurred in establishing the amount of a covered loss under this Coverage Part, except for **proof of loss costs**; or

(vi) costs to reproduce information contained in any lost or damaged property, except for **record recovery costs** or **computer restoration costs**.

(k) <u>Kidnap/Ransom or Extortion</u>

loss or damage as a result of kidnap, ransom or other extortion payment (except in a **robbery**) surrendered under threat of bodily harm, or damage to (including loss of use) property (including a **computer system**).

(l) <u>Known Loss</u>

loss or damage that an **insured discovered** prior to the inception of this policy.

(m) <u>Nuclear</u>

loss or damage resulting from nuclear reaction or radiation, or radioactive contamination, regardless of cause.

(n) <u>Trading</u>

loss resulting from any authorized or unauthorized **trading**, whether or not in your name and whether or not in a genuine or fictitious account, provided this exclusion (n) will not apply to direct losses caused by **theft** or **forgery**, committed by an **employee**, which result in improper financial gain to such **employee**.

© Copyright CNA All Rights Reserved.

(o) <u>War</u>

loss or damage resulting from **war**.

B. <u>Exclusions Applicable to Specific Insuring Agreements</u>

1. This policy does not cover loss or damage under the Inside and Outside Premises Insuring Agreements C:

   (a) <u>Accounting</u>

   resulting from accounting or arithmetical errors or omissions.

   (b) <u>Mail</u>

   while the **money** or **securities** is in the mail.

   (c) <u>Other Coverages</u>

   due to **forgery**, **computer transfer fraud**, **funds transfer fraud**, **social engineering fraud**, or **counterfeit fraud**.

2. This policy does not cover loss under the Forgery or Alteration Coverage Insuring Agreement B caused by or attributable to **computer transfer fraud**, **funds transfer fraud** or **social engineering fraud**.

3. This policy does not cover loss under the Computer Transfer Coverage Insuring Agreement D1 caused by or attributable to **funds transfer fraud** or **social engineering fraud**.

4. This policy does not cover loss under the Funds Transfer Coverage Insuring Agreement D2 caused by or attributable to **computer transfer fraud** or **social engineering fraud**.

5. This policy does not cover loss under the Social Engineering Fraud Transfer Coverage Insuring Agreement D3:

   (a) <u>Contract</u>

   due to the failure of any party to perform under any contract.

   (b) <u>Credit</u>

   due to the extension of any loan, credit, or similar promise to pay.

   (c) <u>Defect</u>

   due to failure, malfunction, inadequacy, or illegitimacy of any product or service.

   (d) <u>Gambling</u>

   due to any gambling, game of chance, lottery, or similar game.

   (e) <u>In Transit</u>

   or damage to **money** or **securities** while in the mail or in the custody of any carrier for hire including any armored vehicle company.

   (f) <u>Investment</u>

   due to investment in any **securities**, or ownership in any entity or real property or similar investment, whether or not such investment is genuine.

   (g) <u>Other Coverages</u>

   caused by or attributable to **computer transfer fraud**, **funds transfer fraud**, or **counterfeit fraud**.

© Copyright CNA All Rights Reserved.

(h) Payment Card

due to any party's use or acceptance of any credit card, debit card, or similar payment method, whether genuine or not.

## V. LIMITS OF LIABILITY, SINGLE LOSS AND RETENTIONS

### A. Maximum Limit

Subject to the following Section VI ERISA Plans:

(i) the most we will pay for each loss or damage regardless of the number of insureds or **plans** sustaining the loss or damage is the limit of liability set forth in Item 2 of this Coverage Part Declarations. In the event of more than one **insured** incurring loss or damage, the most we will pay will not exceed the amount we would be liable for if all losses or damages were incurred by one **insured**; and

(ii) if any loss or damage is covered under more than one Insuring Agreement or Coverage Extension (other than the Legal Expenses Costs Coverage Extension D), the most we will pay will not exceed the largest applicable limit of liability of any applicable Insuring Agreement.

(iii) if any loss is covered under the Forgery or Alteration Coverage Insuring Agreement B and the Legal Expenses Costs Coverage Extension D, the most we will pay for direct loss resulting from such **forgery** or **alteration** will not exceed the limit of liability set forth in Item 2B of this Coverage Part Declarations.

### B. Non-Accumulation of Limit

Our limit of liability will not be cumulative from **policy period** to **policy period** regardless of the number of years this coverage remains in effect or the premiums paid.

### C. Single Loss

All loss resulting from any single act, a number of acts, or a series of acts by any **employee(s)** or any other party or parties, and all loss whether such acts occurred before or during the **policy period**, will be treated as a single loss.

### D. Retention

We will only be liable for that part of loss or damage which exceeds the applicable Retention set forth in Item 2 of this Coverage Part Declarations.

In the event an **insured** receives payment for loss or damage, after applying a retention or deductible, under another policy or bond ("other insurance"), for loss or damage also covered under this Coverage Part, then the applicable Retention for such loss or damage under this Coverage Part will be reduced by the amount of such other retention or deductible paid by you under the other insurance.

## VI. ERISA PLANS

### A. Conditions

Solely with respect to loss incurred by a **plan** that is covered under the ERISA Plan Fidelity Coverage Insuring Agreement A3:

(i) payment for all covered loss will be to the **plan** incurring such loss;

(ii) if two or more **plans** are insured under this policy, any payment made by us for loss:

(a) sustained by two or more **plans**; or

(b) of commingled **money**, **securities** or **property** of two more **plans**,

will be shared by each **plan** sustaining the loss in the proportion that the amount of insurance

© Copyright CNA All Rights Reserved.

required for each such **plan** under **ERISA** bears to the total of such payments;

(iii) no Retention will apply to such loss;

(iv) if such payment is in excess of the amount of coverage required by **ERISA** for such **plan**, such excess will be held for the use and benefit of any other **plan** should such **plan** also discover loss recoverable under this Coverage Part; and

(v) the definition of **theft** set forth in Section II Definitions above is deleted and replaced with the following:

**Theft** means any fraudulent or dishonest act, including larceny, theft, embezzlement, misappropriation, wrongful abstraction, wrongful conversion, and willful misapplication.

B. Limit

If the limit of liability set forth in item A3 of this Coverage Part Declarations is less than or equal to the limit of insurance required under **ERISA** then the limit of liability will be deemed increased to the lesser amount to meet such requirement or:

(i) $500,000 if the **plan** does not have any qualified employer securities; or

(ii) $1,000,000 if the **plan** includes qualified employer securities.

## VII. NOTICE AND PROOF OF LOSS IN THE EVENT OF LOSS DISCOVERED

As a condition precedent to any obligation to you under this Coverage Part:

A. Requirements

upon **discovery** the **named insured** as soon as practicable but no later than one hundred and eighty (180) days after **discovery** must:

(i) provide written notice to us; and

(ii) provide written proof of loss or damage with full and sufficient details to establish the loss or damage.

B. Conditions

(i) upon our request the **insured** incurring the loss or damage will:

(a) maintain and preserve all records relevant to the loss to allow for verification of and proof;

(b) produce records relevant to the loss as reasonably requested by us;

(c) submit to an examination under oath;

(d) allow us access for examination and inspection of records or relevant other information.

(ii) you may offer an inventory computation in determining the value of loss claimed, but only where you have established, wholly apart from such computation, that you have sustained a covered loss, caused by an **employee**.

## VIII. OWNERSHIP INTERESTS AND PAYMENT OF LOSS

A. Covered loss or damage under this Coverage Part is limited to:

(i) **money**, **securities**, **property**, or **premises** an **insured entity** owns, leases, or holds for others;

(ii) **premises** an **insured entity** is legally liable for and was legally liable for prior to the date the loss or damage occurred; or

(iii) solely for the purposes of the Client Fidelity Coverage Insuring Agreement A2, **money**, **securities**, or **property** owned or held by a **client** for which you or your **client** are legally liable.

© Copyright CNA All Rights Reserved.

B.  Any coverage under this Coverage Part is for the benefit of the **named insured** only and provides no rights or benefits to any other person or organization.

C.  Any payment of loss or damage, other than with respect to a **plan**, under this Coverage Part will be to the **named insured**, or jointly to the **named insured** and any payee as directed by the **named insured**.

D.  In the event of payment of loss or damage by us, you agree to transfer to us all of your rights of recoveries against any person or entity.

## IX. CHANGE OF CONTROL

In the event of a **change of control** coverage under this Coverage Part will continue until the expiration of the **policy period** unless otherwise cancelled or terminated as described herein.

## X. SUBSIDIARY

A **subsidiary** and its **plans** acquired or created before or during the **policy period** will be afforded coverage for loss **discovered** during the **policy period**, subject to the following section XI Liability for Prior Losses or Damages. There will be no acquisition threshold with respect to any **subsidiary**.

## XI. LIABILITY FOR PRIOR LOSSES OR DAMAGES

Coverage for loss or damages incurred prior to the effective date:

(i)  of this Coverage Part;

(ii)  for any additional **insureds** (pursuant to section X Subsidiary above); or

(iii)  any coverage added by endorsement;

will be subject to the following:

(a)  if you or any of your predecessor(s) in interest carried a prior bond or policy that afforded coverage for a loss or damage incurred during the period of such prior bond or policy (the "former policy") and the former policy was not issued by us or any of our subsidiaries or affiliates and such loss or damage was first **discovered** before the expiration of the discovery period under the former policy, then no coverage will be available under this Coverage Part, unless the total amount of covered loss or damage exceeds the limit of liability of the former policy. Our limit of liability for any such loss or damage will be in excess of the limit of liability of the former policy and subject to all of the terms and conditions of this Coverage Part.

(b)  if you or any of your predecessor(s) in interest carried a prior bond or policy that afforded coverage for a loss or damage incurred during the period of such prior bond or policy (the "prior policy") and the prior policy was issued by us or any of our subsidiaries or affiliates, then the prior policy will terminate as of the inception of this policy and the prior policy will not cover any loss or damage not **discovered** and noticed to us prior to the inception of this policy. Our limit of liability for such loss or damage will be the applicable limit of liability set forth in Item 2 of this Coverage Part Declarations.

(c)  Section XVI Other Insurance will not apply in the event that paragraphs (a) or (b) directly above apply.

## XII. TERMINATION OF COVERAGE

A.  Employee

Coverage under this Coverage Part will terminate immediately with respect to any **employee** upon **discovery** of any unlawful taking of property or any criminal, fraudulent, or dishonest act, in excess of ($1,000) one-thousand dollars, committed by such **employee** while employed by the **insured entity**.

B.  Cessation of Subsidiary

Coverage under this Coverage Part will terminate immediately with respect to any **insured entity** on the date that such entity ceases to be a **subsidiary** of the **named insured**.

© Copyright CNA All Rights Reserved.

C.  Liquidation or Dissolution of the Named Insured

Coverage under this Coverage Part will terminate immediately for any loss or damage occurring after the **named insured's** liquidation or dissolution.

D.  Prior Bonds or Policies

Any prior bonds or policies issued by us or any of our subsidiaries or affiliates will terminate, if not already terminated, as of the inception of this policy.

## XIII. DISCOVERY PERIOD

If this policy is cancelled or terminated for reason other than non-payment, we will pay:

(i)  loss or damage to an **insured** if such loss or damaged is **discovered** within ninety (90) days after the effective date of cancellation or termination;

(ii)  loss to a **plan** if such loss is **discovered** within one (1) year after the effective date of cancellation or termination.

Provided, any discovery period referenced above will terminate immediately at the inception date of any other insurance policy replacing the insurance afforded under this Coverage Part, regardless of whether the replacement insurance policy provides coverage for such loss.

## XIV. LEGAL PROCEEDINGS

It is agreed that no action may be taken against us earlier than ninety (90) days after a proof of loss has been provided to us or later than two (2) years after **discovery**.

## XV. VALUATION

For purposes of determining valuation for covered loss or damages the following will apply:

A.  **Securities** valuation will be based upon the lesser of the actual market value of the lost damaged or destroyed **securities** on the day before the loss was **discovered**, or the cost of any lost instrument bond required to issue duplicate **securities**.

B.  **Money** valuation will be based upon the actual face value of the **money** on the date the loss was **discovered**. United States of America currency value of foreign currency will be based on the exchange rate published by the *Wall Street Journal* on the date the loss was **discovered**.

C.  **Property** valuation will be based upon the lesser of the following:

(i)  actual cash value of the **property** on the date the loss was **discovered**;

(ii)  cost to repair or replace the **property** (other than precious metals) with that of similar quality and value on the date the proof of loss was submitted;

(iii)  purchase price paid by you for the **property**.

D.  United States of America currency value of precious metals will be based on the rate published by the *Wall Street Journal* for precious metals on the date the loss was **discovered**.

## XVI. OTHER INSURANCE

This Coverage Part does not apply to loss or damage recoverable or recovered under any other bond, insurance or indemnity. However, if the limit of the other bond, insurance or indemnity is insufficient to cover the entire amount of the loss or damage, this Coverage Part, subject to all of its limits of liability, terms and conditions will apply to that part of the loss or damage in excess of the Retention, and the amount recoverable or received under such other bond, insurance or indemnity.

© Copyright CNA All Rights Reserved.

## XVII. RECOVERIES

Notwithstanding Section XIII Subrogation and Recoupment of the General Terms and Conditions, in the event that we make any recovery of loss or damage paid by us, such recovery will be distributed as follows:

(i)    to you, until you are fully reimbursed for any loss or damage that you sustain that exceeds the limit of liability and the Retention, if any;

(ii)   then to us, until we are reimbursed for any loss or damage paid by us; and

(iii)  then to you until you are reimbursed for that part of the loss or damage equal to the Retention, if any.

Any recovery to be distributed will not include amounts from:

(a)   insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(b)   original **securities** after duplicates of the **securities** have been issued.

© Copyright CNA All Rights Reserved.

 

| INCLUDE PERSONAL ACCOUNTS OF SPECIFIED PERSONS |
| --- |

In consideration of the premium, the definition of **payment instrument** set forth in Section III Definitions of the Crime Coverage Part is amended as follows:

**Payment instrument** will also include the checks, drafts, or similar written promises, order, or directions to pay a sum certain in money, that are made or drawn upon a personal account of a person scheduled below ("Scheduled Person"). Such personal accounts of each Scheduled Person will be included as a **payment instrument** subject to the following Limits of Insurance and Retentions.

| Name of Person | Limit of Insurance | Retention Amount |
| --- | --- | --- |
| Proprietor, Partners, Members and Officers of the Company | $5,000,000 | $25,000 |

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA93122XX (01-2019)
Endorsement Effective Date:          Endorsement Expiration Date:
Endorsement No: 43 ; Page: 1 of 1
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

Policy No: 6052060736
Policy Effective Date: 12/18/2024
Policy Page: 125 of 138

© Copyright CNA All Rights Reserved.

**Epack 3**
Coverage Part Endorsement

## AMEND EXECUTIVE ENDORSEMENT
### (Partners)

In consideration of the premium, the definition of **executive** in Section III, Definitions of the Crime Coverage Part is amended as follows:

**Executive** will also include any past, present or future natural person general partner or managing partner of an **insured entity**, or such functionally equivalent position.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

| | | |
|---|---|---|
| Form No: CNA96394XX (08-2019) | | Policy No: 6052060736 |
| Endorsement Effective Date: | Endorsement Expiration Date: | Policy Effective Date: 12/18/2024 |
| Endorsement No: 44 ; Page: 1 of 1 | | Policy Page: 126 of 138 |
| Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606 | | |

© Copyright CNA All Rights Reserved.



| | |
|---|---|
| **AMEND EXECUTIVE ENDORSEMENT**<br>**(Specific Title/Position)** | |

In consideration of the premium, the definition of **executive** in Section III, Definitions of the Crime Coverage Part is amended to also include any past, present or future Chief Compliance Officer, Controller of an **insured entity**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA96395XX (08-2019)                                           Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:          Policy Effective Date: 12/18/2024
Endorsement No: 45 ; Page: 1 of 1                                           Policy Page: 127 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.



## AMEND OTHER INSURANCE ENDORSEMENT
## (CRIME - PRIMARY AND NON-CONTRIBUTORY)

In consideration of the premium, Section XVI, Other Insurance of the Crime Coverage Part is amended by adding the following:

Notwithstanding the foregoing, in the event of loss or damage recoverable under this Coverage Part and any other bond, insurance or indemnity issued to a person or organization to whom or to which the **insured entity** is obligated by virtue of a written contract or agreement to provide insurance as afforded by this Coverage Part, this Coverage Part will apply as primary and non-contributory to such other bond, insurance or indemnity.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA98273XX (04-2020)                                                  Policy No: 6052060736
Endorsement Effective Date:        Endorsement Expiration Date:                Policy Effective Date: 12/18/2024
Endorsement No: 46 ; Page: 1 of 1                                              Policy Page: 128 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.





## CONDITIONAL RENEWAL ENDORSEMENT - OHIO

Wherever used in this endorsement: 1) Insurer means "we", "us", "our" or the "Company" as those terms are defined in the policy; and 2) Named Insured means the first person or entity named on the declarations page; and 3) "Insured(s)" means all persons or entities afforded coverage under the policy.

Any cancellation, non-renewal or termination provision(s) in the policy are amended to add the following:

**CONDITIONAL RENEWAL**

I.    The Insurer will mail or deliver to the Named Insured, at the last mailing address known to the Insurer, a thirty (30) day advance notice if the Insurer intends to renew the policy with an increase in premium rate. Should the Insurer fail to meet notice requirement, the coverage shall be extended for thirty (30) days beyond the date that notice is mailed. The Insured must pay pro rata premium unless the Insured advises the Insurer in writing that coverage is not sought beyond the expiration date.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA88892OH (06-2017)                                                      Policy No: 6052060736
Endorsement Effective Date:              Endorsement Expiration Date:             Policy Effective Date: 12/18/2024
Endorsement No: 47 ; Page: 1 of 1                                                 Policy Page: 129 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.



## AMENDATORY ENDORSEMENT - OHIO

In consideration of the premium, with respect to punitive, exemplary and multiplied damages, Section III, Definitions of any liability coverage purchased is amended as follows:

Notwithstanding anything to the contrary, any coverage of punitive, exemplary, or multiplied damages does not apply as coverage for such damages is not permitted in Ohio.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA93281OH (04-2019)                                                      Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:          Policy Effective Date: 12/18/2024
Endorsement No: 48 ; Page: 1 of 1                                             Policy Page: 130 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.



**Epack 3**
Policy Endorsement

## CANCELLATION ENDORSEMENT - OHIO



In consideration of the premium, Section XII, Cancellation or Termination of the General Terms and Conditions of the policy is deleted and replaced with the following:

### CANCELLATION OR TERMINATION

This policy may only be cancelled or terminated by one of the following events:

(i) by us, for nonpayment of premium, in which event we will send the **named insured** a written notice of such termination. This notice will contain an explanation of the reason for cancellation and will be sent to the **named insured** at last known address, and to its agent, and will be effective twenty (20) days after receipt;

(ii) by the **named insured,** for any reason, if we receive written notice stating when such cancellation shall be effective; or

(iii) we will issue an advance written nonrenewal notice that contains the expiration date of the **policy period** to the **named insured** at its last known address, and to its agent, at least thirty (30) days in advance of the expiration date of the policy.

Any returned premium shall be computed on a pro rata basis.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA93283OH (01-2019)
Endorsement Effective Date:          Endorsement Expiration Date:          Policy No: 6052060736
Endorsement No: 49 ; Page: 1 of 1                                          Policy Effective Date: 12/18/2024
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606          Policy Page: 131 of 138

© Copyright CNA All Rights Reserved.



| AMEND DEFINITION OF SUBSIDIARY ENDORSEMENT |
| (Add Subsidiary with Effective Date) |

In consideration of the premium, the definition of **subsidiary** set forth in Section III, Definitions of the General Terms and Conditions is amended to add the following:

**Subsidiary** also means the following entity as of the corresponding effective date:

| Entity Name | Effective Date |
|---|---|
| Gwynnie Bee Inc. | 12/18/2018 |

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA93307XX (01-2019)                                          Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:      Policy Effective Date: 12/18/2024
Endorsement No: 50 ; Page: 1 of 1                                     Policy Page: 132 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.

## AMEND DEFINITION OF APPLICATION ENDORSEMENT
### (12 Month Limit)

In consideration of the premium, the definition of **application** in Section III, Definitions of the General Terms and Conditions is deleted and replaced with the following:

**Application** means any signed application (completed within the twelve (12) months preceding this policy's inception date), including its warranty and attachments, whether ours or that of another insurance carrier, together with any other materials and representations provided to us in connection with the underwriting and negotiating of the terms and conditions of this policy or any other policy of which this policy is an indirect or direct renewal.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA96402XX (08-2019)                                   Policy No: 6052060736
Endorsement Effective Date:          Endorsement Expiration Date:          Policy Effective Date: 12/18/2024
Endorsement No: 51 ; Page: 1 of 1                               Policy Page: 133 of 138
Underwriting Company: Continental Casualty Company, 151 N Franklin St, Chicago, IL 60606

© Copyright CNA All Rights Reserved.





---

|   | PREMIUM NOTICE |   |
|---|---|---|

Insured: CaaStle Inc.
Date: 03/25/2025
Producer: NFP PROPERTY & CASUALTY SERVICES INC

Company: Continental Casualty Company

**THIS NOTICE IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.**

Policy Number: 6052060736
**Policy Period**: From 12/18/2024 to 12/18/2025

| PRODUCT | EFFECTIVE DATE | PREMIUM |
|---|---|---|
| Epack 3 | 12/18/2024 | REDACTED |

*The amount displayed includes taxes and fees, and surcharges (if applicable).

| TOTAL POLICY PREMIUM | REDACTED |
|---|---|

---

Thank you for purchasing EPL coverage from CNA. As a CNA Epack 3 policyholder, you are entitled to a package of services, offered **at no additional charge**, to help you manage your business risks.

**Beyond HR<sup>sm</sup>**

Beyond HR**<sup>sm</sup>** is an interactive, web-based platform that helps CNA policyholders train their employees on a variety of employment topics and develop employment policies, practices and procedures.

The Equal Employment Opportunity Commission, courts, and certain state laws have made it clear that employers must take all necessary steps, including periodic training, to prevent certain wrongful employment practices. To assist you in diminishing this risk to your company, CNA's Beyond HR<sup>sm</sup> provides complimentary training in areas such as preventing harassment, wrongful termination and retaliation. For companies with employees in states where the law requires employers to provide sexual harassment prevention training, Beyond HR<sup>sm</sup> can assist your company in meeting these requirements by providing training in an interactive web-based format, with the capability to track employee participation through an easy to use, online mechanism. Comparable training and materials may cost hundreds or thousands of dollars if purchased separately.

Beyond HR<sup>sm</sup> also offers a variety of other features to assist your company in mitigating employment practices risks, such as:

- A searchable database of articles and checklists on important workplace topics.
- Refresher bulletins to support the online training modules.
- A model employment handbook and model policies and forms.
- Webinars and Best practices minutes podcasts on various workplace topics such as disability accommodation, bullying, social media and cyber crime.

Registration is quick and easy. From your web browser, navigate to www.cnabeyondhr.com, click on the "How to Register" link, and follow the instructions. Your CNA policy number will be required to register for the first time.

## H.R. HELP LINE

Eligible CNA policyholders can receive human resources consulting advice through the H.R. Help Line, provided by Jackson Lewis, LLP, a national law firm that specializes in employment law. Simply have your human resources representative call the toll-free H. R. Help Line at 1-888-CNA-EPL1 (1-888-262-3751), identify your company as a CNA employment practices policyholder and provide your company's policy number. The H.R. Help Line is serviced by attorneys who do not act as legal counsel to callers, but rather as human resources consultants, providing information regarding risk control strategies. You can begin using the Help Line today by following the enclosed instructions.

We think you will find these services to be valuable to your business. For more details, please go to our website at http://www.cna.com/html/riskmanagement.html or contact your insurance representative.....and **Thank You for insuring with CNA.**

These services are available at no additional charge to most CNA employment practices liability policyholders.

The McCalmon Group, Inc. and Jackson Lewis, LLP are neither affiliates of CNA, nor an agent or broker. As such, information reported to them is not notice to CNA of any claim or potential claim. Please contact CNA or your insurance agent or broker to report claims or potential claims. Risk Management is your responsibility. H.R. Web Training is not intended to substitute for your own risk management and compliance programs.

CNA Employment Practices Liability policies are underwritten by one of the CNA member property and casualty companies. One or more of the CNA companies provide the products and/or services described. CNA accepts no responsibility for the accuracy or completeness of this material and recommends the consultation with competent legal counsel and/or other professional advisors before applying this material in any particular factual situations. This material is for illustrative purposes and is not intended to substitute for the guidance of retained legal or other professional advisors, or to constitute a contract. Please remember that only the relevant insurance policy can provide the actual terms, coverages, amounts, conditions and

exclusions for an insured. All products and services may not be available in all states and may be subject to change without notice. Any references to non-CNA Web sites are provided solely for convenience and CNA disclaims any responsibility with respect thereto. CNA is a registered trademark of CNA Financial Corporation. Copyright © 2013 CNA. All rights reserved.

## HOW TO ACCESS THE H.R. HELP LINE

CNA Epack 3 policyholders that purchase EPL receive the benefit of professional risk management consultation provided by Jackson Lewis, a national law firm that specializes in employment practices law.

CNA Epack 3 policyholders are entitled to human resources consulting advice for their Human Resources representative or senior managers, at no additional charge, through a toll-free number at **1-888-CNAEPL1 (1-888-262-3751).** They can receive proactive, effective information and strategies to help manage employment practices risks.

Policyholders who have accessed the H. R. Help Line find it to be a useful resource to properly understand and manage sensitive Human Resources issues. The service is of particular value to small businesses that may not have a dedicated Human Resources department. The following five areas appear to generate the most questions and discussions:

- Medical leave issues especially in regard to an employee who is currently on leave and may have a
- change in job status;
- Proper handling of a reduction in force – a common situation in today's economy;
- Allegations of unfair treatment or harassment;
- Handling employee disciplinary situations; and
- Unique circumstances that "textbooks" do not address.

The Jackson Lewis attorneys are first and foremost active listeners. They can offer valuable guidance on proper procedures (file documentation, best practices, etc), consideration of potential options, and development of a game plan.

For more information on CNA's Risk Control products and services, please visit http://www.cna.com/html/riskmanagement.html. The H.R. Help Line is not for advice concerning specific legal matters. For these types of issues, we encourage you to speak to your own employment attorney.

Jackson Lewis is neither an affiliate of CNA, nor an agent or broker. As such, information reported to Jackson Lewis is not notice to CNA of any claim or potential claim. Please contact your insurance agent or broker to report claims or potential claims.

These services are available only to CNA policyholders that have employment practices liability coverage with CNA.

CNA accepts no responsibility for the accuracy or completeness of the services described herein or the information supplied by the HR Help Line or Jackson Lewis and recommends the consultation with competent legal counsel and/or other professional advisors before applying the information obtained in any particular factual situations. This material is for illustrative purposes and is not intended to substitute for the guidance of retained legal or other professional advisors, or to constitute a contract. Please remember that only the relevant insurance policy can provide the actual terms, coverages, amounts, conditions and exclusions for an insured. All products and services may not be available in all states and may be subject to change without notice. CNA does not endorse, recommend, or make any representations or warranties as to the accuracy, completeness, effectiveness, suitability, or performance of any of the products, applications, software, or programs identified herein.

CNA is a registered trademark of CNA Financial Corporation. Copyright © 2013 CNA. All rights reserved.

# InitialActions



In the event of an actual or suspected incident, immediately contact the 24-hour Crisis Centre Hotline:

USA   +1 877 781 6192

UK     +44 207 741 2081

If possible, call from a secure telephone. State that you have an emergency.

Crisis24 will then contact you on the telephone number you have given within 20 minutes. The priority is to establish exactly what has occurred, while maintaining as much confidentiality as possible, and to agree on the level and type of response required. Please have as much of the following information as possible ready:

- The name(s) and details of any person(s) who have received the threats
- Their family status or position(s) within the company (as applicable)
- When the incident occurred
- Where the incident occurred
- How the threat was communicated
- Any perpetrator's details, if known
- Whether the authorities, the media or any other third party are aware of the incident
- Any response, communications or actions taken to date

Get in touch with our Operational Support Team to discuss our full service offering to find out how we can help you at OSTsupport@crisis24.com

Follow us on Twitter and LinkedIn

 

Crisis24 can assist with all aspects of prior planning and risk mitigation.

See Crisis24.com for information.