## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                                    : Chapter 7

CaaStle, Inc.                                             : Case No. 25-11187-BLS

                         Debtor.               :

GEORGE L. MILLER, solely in his capacity as              :
chapter 7 trustee for the bankruptcy estate of           :
CaaStle, Inc.,                                           :
                                                         :
                         Plaintiff,           :
      v.                                                 :
                                                         :
KSV CAASTLE HOLDINGS L.P., KSV                           : Adv. Pro. No.:
CAASTLE HOLDINGS II L.P, and P180, Inc.,                 :
                                                         :
                       Defendants.           x

- - - - - - - - - - - - - - - - - - - - - - - - - - - - 

## CHAPTER 7 TRUSTEE'S VERIFIED COMPLAINT FOR DECLARATORY RELIEF UNDER SECTION 362(A) OF THE BANKRUPTCY CODE, INJUNCTIVE RELIEF UNDER SECTIONS 105(A) AND 362(A) OF THE BANKRUPTCY CODE, AND A PRELIMINARY INJUNCTION UNDER RULE 7065 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Plaintiff George L. Miller (the "Plaintiff" or the "Trustee"), solely in his capacity as the

Chapter 7 Trustee of the bankruptcy estate of CaaStle Inc. (the "Debtor"), by and through

undersigned counsel, hereby submits this Verified Complaint for Declaratory and Injunctive Relief

(the "Complaint") against Defendants KSV CaaStle Holdings L.P. ("KSV I") and KSV CaaStle

Holdings II L.P. ("KSV II" and, with KSV I, the "KSV Defendants') and P180, Inc. ("P180" and,

with the KSV Defendants, the "Defendants"), pursuant to Rules 7001 and 7065 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and sections 105(a) and 362(a) of title

11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and avers as

follows:

**Background**

1.      The Debtor is a Delaware corporation that operated a full-service online platform that enabled rental subscription and e-commerce services for women's apparel brands.

2.      The Debtor filed a Chapter 7 voluntary petition on June 20, 2025.

3.      Christine Hunsicker ("Hunsicker") was the founder the Debtor and is a former CEO and board member of the Debtor.

4.      On July 17, 2025, the United States Attorney for the Southern District of New York filed an indictment (the "Indictment") charging Hunsicker with one count of wire fraud, two counts of securities fraud, and one count of money laundering.  A true and correct copy of the Indictment is attached hereto as **Exhibit A**.

5.      The Indictment alleges that:

a.      From February 2019 through March 2025 Hunsicker solicited investments in the Debtor from prominent venture capitalists and presented the Debtor's value at more than $1.4 billion.  See Ex. A ⁋⁋ 4-5.

b.      In truth, Hunsicker knew the Debtor was in financial distress and presented investors with false statements, misleading claims, and fabricated documents.  Id.

c.      These false documents included inflated income statements, fake audited financial statements, fictitious bank account records, and sham corporate records.  Id. at ⁋ 6.

d.      In 2023, Hunsicker presented potential investors with a falsified financial statement of the Debtor which reported an operating profit of nearly $24 million in the second quarter of 2023 while the Debtor's actual operating profit for that period was less than $30,000; transmitted to an investor audits which she altered to inflate the Debtor's revenue by more than $100 million; and transmitted to an investor a digitally-altered screenshot of the Debtor's bank

#125192239v4

accounts which inflated the Debtor's available cash by $50 million.  Id. at ¶¶ 6-8.

       e.       In 2024, Hunsicker provided an investor with a digitally-altered screenshot of the Debtor's bank accounts which inflated the Debtor's available cash by $200 million; provided a fake draft audit to an investor; and presented an investor with falsified documents to make it appear as though the board had authorized a stock option grant.  Id. at ¶¶ 11-13.

       f.       In total, Hunsicker raised more than $275 million of investments in the Debtor through false and fraudulent statements and representations.  Id. at ¶ 14.  Hunsicker used the same false statements and fictitious documents to obtain and keep the proceeds of a personal loan backed by the Debtor's assets.  Id. at ¶ 15.

       g.       Hunsicker founded P180 and touted it publicly as a business that would acquire ownership interests in clothing brands and revitalize their e-commerce business through the Debtor's technology.  Id. at ¶ 16.  However, Hunsicker intended to sell P180 securities to existing investors of the Debtor and then funnel that money to the Debtor disguised as payments for the use of the Debtor's technology.  Id. at ¶ 17.  Hunsicker again used false statements and fictitious documents of the Debtor to solicit approximately $30 million of investments in P180.  Id. at ¶¶ 18-19.  During this time, Hunsicker used $6 million in investor funds obtained through fraud to purchase shares in the Debtor from her close associate and former co-founder of the Debtor.  Id. at ¶ 19.

       h.       Hunsicker's fraud continued until her resignation as CEO in 2025, as she: (1) sold $8 million of her shares in the Debtor to an investor while failing to disclose material information regarding the Debtor's true financial condition; (2) sold more than $5 million in P180 convertible notes to several investors of the Debtor while failing to disclose material information regarding the Debtor's true financial condition; and (3) provided fake draft audited statements to

#125192239v4

an investor in an attempt to sell $19 million of her shares in the Debtor.  Id. at ¶¶ 20-21.

6.    The Indictment charges Hunsicker with:

a.    wire fraud through her engagement in a scheme to obtain money from investors by means of false and misleading statements about the Debtor's financial condition.  Id. at ¶ 23;

b.    fraud in the purchase and sale of the Debtor's and P180's securities through her engagement in a scheme to defraud by submitting false and fabricated financial statements about the Debtor and P180 to prospective and current investors in connection with the acquisition of equity shares, options, and warrants of the Debtor.  Id. at ¶¶ 25, 27;

c.    making false statements to a financial institution through her transmission of false statements regarding the revenue and available cash of the Debtor to maintain her personal loan.  Id. at ¶ 29;

d.    engaging in a monetary transaction in property derived from specified unlawful activity through her transfer of millions of dollars to her close associate and P180 consisting of the proceeds from her wire fraud and securities fraud.  Id. at ¶ 31; and

e.    aggravated identity theft through her creation of falsified documents of the Debtor's board reflecting the fake authorization of stock options.  Id. at ¶ 33.

7.    The Indictment paints the picture of a years-long scheme through which Hunsicker defrauded investors of hundreds of millions of dollars.  Investors and creditors have brought, and likely will continue to bring, suits to recover on the same or similar theories targeted at Hunsicker, other officers and directors of the Debtor, and third parties based on this widespread and systematic fraud.

8.    For these actions, Hunsicker has been sued in two separate actions by:

#125192239v4

a.      the KSV Defendants in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida for claims of fraudulent inducement, negligent misrepresentation, and breaches of fiduciary duty (the "Florida Litigation"); and

b.      P180 in the United States District Court for the Southern District of New York for claims of RICO, conversion, unjust enrichment, breach of fiduciary duty, civil conspiracy, and negligent misrepresentation (the "New York Litigation"). The New York Litigation also names Jaswinder Pal Singh, George Goldenberg, Scott Callon, Chirag Jain, and Does 1-50 as defendants.

### The D& O Policies

9.      The Trustee is aware of the following insurance policies which may provide coverage with respect to claims against officers and directors of the Debtor:

a.      Policy issued by Continental Casualty Company/CNA in the amount of $2 million (the "CNA Policy")

b.      Excess policy issued by Zurich American Insurance Company in the amount of $3 million (the "Zurich Policy", and together with the CNA Policy, the "D & O Policies"). *See* Affidavit of George L. Miller, attached hereto as **Exhibit B.**

10.     On information and belief, the policy limits for the D & O Policies are inclusive of defense costs, so that the expenditure of funds to defend suits against officers and directors of the Debtor will reduce the funds available to pay any settlement with, or judgment against, those parties.

11.     This Court should enjoin investors and creditors from racing to recover from the same pool of limited money- whether insurance proceeds or assets of potential defendants - that should instead be collected and distributed to all similarly situated creditors.

#125192239v4

12.      Accordingly, the Trustee seeks entry of a judgment: (1) declaring that the automatic stay enjoins the Florida Litigation and the New York Litigation to the extent such lawsuits assert claims that are the property of the Debtor's estate; (2) entry of an order enjoining the Florida Litigation and the New York Litigation under sections 105 and 362 of the Bankruptcy Code; and (3) entry of an order enjoining any further litigation filed against the Debtor's directors or officers or auditors for the same or similar causes of action, or causes of action based on different legal theories but arising from the same or similar operative facts.

13.      To the extent that the Florida Litigation and New York Litigation assert claims which belong to the Estate, they violate the automatic stay imposed by section 362(a) of the Bankruptcy Code.

14.      The Defendants should not be permitted to accomplish an end-run around an orderly and supervised process by obtaining a larger payout than other similarly situated creditors and gaining an advantage by having their cases heard first.  If Defendants and other similarly situated parties are permitted to do so, they will directly and imminently threaten proceeds of the D & O Policies, and reduce the potential recovery for the Estate from the D & O Policies and from other assets of the directors, officers, and third parties.

**Jurisdiction and Venue**

15.      On June 20, 2025 (the "Petition Date"), the Debtor filed for voluntary relief under Chapter 7 of the Bankruptcy Code. The Trustee has been appointed as the Chapter 7 trustee for the Debtor's bankruptcy estate.

16.      This Court has jurisdiction over the claims raised in this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157 and the Amended Standing Order of Reference issued by the United States District Court for the District of Delaware on February 29, 2012.

6

17.     This is a core proceeding pursuant to 28 U.S.C. § 157(b) such that the Court may enter a final order consistent with Article III of the United States Constitution. Pursuant to Rule 7012-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Plaintiff consents to the entry of a final order by the Court in connection with this Complaint to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

18.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

19.     This is an adversary proceeding brought pursuant to Rule 7001 of the Bankruptcy Rules.

20.     There exists a substantial controversy between Plaintiff and Defendants of sufficient immediacy and reality to warrant the requested relief.

### The Parties

21.     Plaintiff is the duly appointed Chapter 7 Trustee for the Debtor's Estate.

22.     The Debtor is a Delaware corporation.  Prior to the Petition Date, the Debtor operated a full-service platform to enable rental subscription and e-commerce services for women's apparel brands.

23.     KSV I is a Delaware limited partnership with its principal place of business in Palm Beach County, Florida.

24.     KSV II is a Delaware limited partnership with its principal place of business in Palm Beach County, Florida.

25.     KSV Defendants were investors of the Debtor prior to the commencement of this bankruptcy proceeding.

7

26.     P180 is a Delaware corporation with its principal place of business in New York, New York.

## Factual Background

### The Florida Litigation

27.     On or around April 18, 2025, KSV Defendants filed the KSV Complaint against Hunsicker, commencing the Florida Litigation.  A true and correct copy of the KSV Complaint against Hunsicker is attached hereto as **Exhibit C**.

28.     The KSV Complaint alleges claims of fraudulent inducement, negligent misrepresentation, and breaches of fiduciary duty.  Ex. C.

29.     The fiduciary duty claims brought in the Florida Litigation are general to all Chapter 7 Creditors, not particularized to KSV Defendants, and are therefore property of the Estate.  See Ex. B at ¶ 16.

30.     KSV Defendants base their claims against Hunsicker on allegations that she presented falsified financials of the Debtor to induce KSV Defendants' investment in the Debtor. See Ex. C, ¶¶ 12-22, 28-34.

31.     KSV Defendants further allege that Hunsicker breached her fiduciary duties as CEO and a board member of the Debtor by using funds from KSV Defendants' investments for personal transactions.  Id. at ¶¶ 36, 64-78.

32.     The KSV Defendants bring breach of fiduciary duty claims that are generalized to all Chapter 7 Creditors and are not particular to KSV.  See Ex. B at ¶ 16.

33.     Thus, the Florida Litigation violates the automatic stay imposed by section 362(a) of the Bankruptcy Code.

34.     The other claims brought by the KSV Defendants threaten the limited resources belonging to Hunsicker and the D & O Policies, which the Trustee intends to pursue for the benefit

of all creditors. *Id.* at ¶ 17.

35.    Thus, the Florida Litigation threatens the same limited pool of money that the Trustee intends to pursue, which is in the possession of the same defendant the Trustee intends to pursue action against, as a result of the same acts performed by that defendant.  Further, allowing the Florida Litigation to continue would threaten to defeat or impair this Court's jurisdiction over the Debtor's estate by threatening the ability of the Trustee to adequately fulfill his duty to maximize recovery on behalf of all creditors.

36.    Accordingly, it is appropriate to enjoin the entirety of the Florida Litigation pursuant to section 105(a).

### The New York Litigation

37.    On or around May 27, 2025, P180 filed the P180 Complaint against Hunsicker, Jaswinder Pal Singh, George Goldenberg, Scott Callon, Chirag Jain, and Does 1-50, commencing the New York Litigation.  A true and correct copy of the P180 Complaint is attached hereto as **Exhibit D**.

38.    The P180 Complaint alleges claims of RICO, conversion, unjust enrichment, breach of fiduciary duty, fraud, and aiding and abetting fraud, aiding and abetting breach of fiduciary duty, civil conspiracy, and negligent misrepresentation, and was filed against Hunsicker, Jaswinder Pal Singh, George Goldenberg, Scott Callon, Chirag Jain, and Does 1-50.  Ex. D.

39.    P180 bases its claims against Hunsicker for her role in the "Hunsicker Enterprise" to obtain and control assets of P180 for her personal benefit and to perpetuate and conceal her fraudulent scheme at the Debtor.  See Ex. D at ¶¶ 41-46.

40.    P180 alleges that Hunsicker violated the Racketeering Influenced and Corrupt Organizations Act ("RICO") by committing multiple offenses of interstate wire fraud by making

#125192239v4

material misrepresentations regarding the Debtor's financial condition, subscriber base, and capabilities to continue her fraudulent scheme at the Debtor. Id. at ¶¶ 48-57, 62-68.

41.    P180 further alleges that Hunsicker violated RICO by committing multiple offenses of bank fraud through transferring money from P180's bank account to hide Hunsicker's fraudulent scheme at the Debtor, including transfers to Hunsicker's personal bank account. Id. at ¶¶ 58-62-68, 69-73.

42.    P180 alleges that Hunsicker breached fiduciary duties she owed as a board member of P180 through material misrepresentations of the Debtor's financial condition, subscriber base, and capabilities to conceal her financial fraud of the Debtor. Id. at ¶¶ 89-92, 94-97.

43.    P180 alleges that Hunsicker is liable for fraudulent inducement, fraudulent concealment, and constructive fraud for making material misrepresentations or omissions regarding the Debtor's financial condition, subscriber case, and capabilities.. Id. at ¶¶ 98-105.

44.    P180 alleges that Hunsicker led the conspiracy to exploit and steal P180's equity, capital, and investments through her fraudulent conduct, including self-dealing. Id. at ¶¶ 117-122.

45.    Finally, P180 alleges in the alternative that, if Hunsicker's statements and actions were not fraudulent, Hunsicker negligently misrepresented the Debtor's financial condition, subscriber base, and capabilities. Id. at ¶¶ 123-132.

46.    The claims brought by P180 threaten the limited resources belonging to Hunsicker and other defendants in that action and the D & O Policies, which the Trustee intends to pursue for the benefit of all creditors.

47.    Importantly, the facts underlying the P180 Complaint are the same facts underlying the KSV Complaint – Hunsicker committed material misrepresentations regarding the Debtor's financial condition, subscriber base, and capabilities to procure further investment into the Debtor

and hide her fraudulent scheme at the Debtor.

48.    Thus, the New York Litigation threatens the same limited pool of money that the Trustee intends to pursue, which is in the possession of the same parties the Trustee intends to pursue action against, as a result of the same acts performed by those parties.  Ex. B at ⁋ 21. Further, allowing the New York Litigation to continue would threaten to defeat or impair this Court's jurisdiction over the Debtor's estate by threatening the ability of the Trustee to adequately fulfill his duty to maximize recovery on behalf of all creditors.  *Id.* at ⁋ 22.

49.    Thus, it is appropriate to enjoin the entirety of the New York Litigation pursuant to section 105(a).

### The Trustee's Investigation

50.    The Trustee is investigating claims and pending the outcome of his investigation, intends to pursue related actions against Hunsicker, other officers and directors, and third parties, including the auditors for the Debtor  Id. at ⁋⁋ 9-10.

51.    The Trustee has not yet fully investigated potential claims against Hunsicker, other officers and directors, and third parties, but it appears from the Indictment and a complaint filed by the SEC that Hunsicker knowingly, deliberately, and repeatedly falsified financial statements and audit documents over a multi-year period; siloed the organization of the Debtor in such a way as to minimize cross-functional visibility and accountability; ensured the Debtor suffered from a profound and persistent breakdown of corporate governance at the Board level such that the Board failed in nearly every respect to discharge its fiduciary duties; and siphoned corporate funds directly to companies owned by Hunsicker and to satisfy her personal obligations.  Id. at ⁋ 10. Further, it appears that other officers and directors of the Debtor may be liable for breach of fiduciary duty and other causes of action.  *Id.*

11

52.     Because of the monetary damage caused by the actions of directors and officers, which exceeds the coverage available under the D & O Policies, the D & O Policies should be protected from further erosion to ensure a fair and equitable distribution to each of the similarly situated creditors.

53.     The Florida Litigation and New York Litigation directly and imminently threaten the Estate's ability to recover on the D & O Policies, because any spend down of the D & O Policies' proceeds in defense of litigation or in funding a judgment against or settlement with directors and officers will directly and negatively impact the recovery of the Estate with respect to such policies.

54.     Further, any direct recovery of assets by the plaintiffs in the Florida Litigation and New York Litigation from the directors and officers or third parties would reduce the pool of assets available to the Trustee and the Estate.

55.     The Florida Litigation and New York Litigation may also have a preclusive effect on the Trustee's prosecution of the fiduciary duty claims held by the Estate, should they be permitted to proceed, especially because the underlying facts of the complaints are the same facts which would underlie any action brought by the Trustee.  Id. at ¶ 23.

56.     The same risk of depletion of assets and preclusive effect exist for any future actions filed against Hunsicker, other directors and officers, and third parties pursuing the same or similar theories of recovery relying on the same or related facts.  Id. at ¶ 24.

**Discovery Requested by KSV Defendants and GB Members LLC**

57.     Prior to the Petition Date, the Debtor's board appointed Monica Blacker ("Blacker") as an independent director and charged her with the task of conducting an investigation into allegations of fraud and wrongdoing at the company.  The law firm of Raines Feldman Littrell

LLP (the "Raines Firm") prepared a report summarizing the results of that investigation.  In connection with the investigation, the Debtor made available to Blacker and the Raines Firm approximately 1.5 million documents.

58.     The KSV Defendants have requested that the Trustee produce to them the 1.5 million documents related to the investigation report.

59.     Further, counsel to GB Members LLC and other stockholders have requested in writing that the Trustee produce to them documents covering a period of over 7 years and encompassing 30 different broad categories of documents related to a potential action by stockholders.  The documents requested would encompass thousands and thousands of documents. It appears from the request by GB Members LLC that it intends to file an action similar to the Florida Litigation or the New York Litigation.

60.     Both the KSV Defendants and counsel to GB Members LLC have threatened the filing of a 2004 motion if the requested documents are not produced, but neither has filed such a motion to date.

61.     The Trustee has begun the process of gathering documents related to the case from the Debtor, and while the total volume of such documents is not yet known, it exceeds 1.5 million documents.   It could take thousands of hours to review such documents for production.

62.     The Debtor had approximately 963 shareholders.  Because Hunsicker's fraud is alleged in the Indictment to extend over a period of approximately 5 years, hundreds of investors may assert claims against directors, officers, and third parties if permitted to do so.

63.     At this time, there are no unencumbered funds in the Debtor's estate.

64.     If the Trustee is obligated to respond to discovery in actions brought by shareholders, there would be a severe burden on the Estate.

#125192239v4

65.    Instead of having shareholders and other potential plaintiffs attempting to recover funds from the same parties based on claims that arise from the same facts, the Trustee should pursue claims for the benefit of the Estate.

## COUNT I

### DECLARING THE AUTOMATIC STAY OF SECTION 362(A) ENJOINS THE FLORIDA LITIGATION AND NEW YORK LITIGATION AND ANY OTHER LITIGATION THAT SEEKS RECOVERIES THAT ARE PROPERTY OF THE ESTATE
**(Declaratory Relief)**

66.    Plaintiff realleges and incorporates all proceeding paragraphs as if fully set forth herein.

67.    Section 362(a) prohibits the commencement or continuation of any actions against a debtor that were or could have been commenced before the bankruptcy filing, or which seek to recover for any claim that arose prior to the commencement of the bankruptcy case, or which seek to obtain possession of or exercise control over property of the estate or from the estate, except in those cases specifically enumerated in section 362(b).

68.    None of the exceptions enumerated in section 362(b) apply to either the Florida Litigation or the New York Litigation.

69.    The fiduciary duty claims asserted in the Florida Litigation are generalized to all Chapter 7 Creditors, not particular to Defendants, and are therefore property of the Estate.

70.    The fiduciary duty claims asserted in the Florida Litigation existed before the Petition Date.

71.    The fiduciary duty claims asserted in the Florida Litigation constitute property of the Estate.

72.    Continued prosecution of the Florida Litigation and New York Litigation may have a preclusive effect on the Trustee's ability to pursue certain claims against Hunsicker and therefore

negatively impact other Chapter 7 Creditors.

73.    Allowing Defendants to assert claims that are property of the Estate and/or adversely affect property of the Estate would eviscerate the fundamental Bankruptcy Code policy of requiring similar situated creditors to be treated equally through a court-supervised process.

74.    For these reasons, the Florida Litigation and New York Litigation are barred by the automatic stay and should be enjoined pursuant to sections 105 and 362(a).  Any future actions pursuing similar claims of relief against officers or directors or other entities liable under similar theories should also be enjoined pursuant to sections 105 and 362(a).

75.    There exists a substantial controversy between the Trustee and Defendants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment under 28 U.S.C. § 2201. A prompt judicial determination of the respective rights and duties of the parties in these respects is necessary and appropriate.

## COUNT II

### ENJOINING THE FLORIDA  LITIGATION AND NEW YORK LITIGATION AND ANY OTHER LITIGATIONARISING FROM THE SAME FACTS PURSUANT TO SECTION 105(A), OR, ALTERNATIVELY, RULE 7065 OF THE BANKRUPTCY RULES
### (Injunctive Relief)

76.    Plaintiff realleges and incorporates all proceeding paragraphs as if fully set forth herein.

77.    The Court has the power to stay the Florida Litigation and New York Litigation and other litigation arising from the same or similar facts under section 105(a).  Section 105(a) provides, in relevant part, that the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  The authority granted by section 105(a) includes the power to issue injunctions staying litigation in other courts.

78.    Section 105 injunctions are governed by the well-known four factor inquiry

15

governing the entry of an injunction under Rule 65 of the Federal Rules of Civil Procedure, made applicable herein by Rule 7065 of the Bankruptcy Rules:

      a.     the likelihood of the plaintiff's success on the merits;

      b.     whether plaintiff will suffer irreparable injury without the injunction;

      c.     the harm to others which will occur if the injunction is granted; and

      d.     whether the injunction will serve the public interest.

79.     In the bankruptcy setting, these considerations should be balanced rather than viewed as prerequisites that require satisfaction.

80.     The facts overwhelmingly support the issuance of a preliminary injunction. First, the Trustee is likely to succeed on the merits. It is apparent from the face of the KSV and P180 Complaints that Defendants are pursuing certain claims that are generalized to all Chapter 7 Creditors and, therefore, are property of the Estate. Section 362(a) prohibits Defendants from pursuing these claims. Further, any claims asserted in the KSV and P180 Complaints or similar actions which are not property of the Estate arise from the same or related facts and, if allowed to proceed, threaten the Trustee's ability to recover from the same parties based on the same or related facts.

81.     Second, the Trustee and the Debtor will be irreparably harmed if Defendants are permitted to continue to pursue the Florida Litigation and New York Litigation or if other parties are permitted to pursue similar litigation. Among other reasons, the Florida Litigation and New York Litigation may cause the dissipation of the proceeds of the D & O Policies, which are assets of the Estate, and the dissipation of assets of the defendants in those actions. The Florida Litigation and New York Litigation base their claims upon Hunsicker's material misrepresentations of the Debtor's financial condition to facilitate her fraudulent scheme at the Debtor, which is the same

factual pattern underlying claims which will be brought by the Trustee against Hunsicker and any other culpable party.  Adjudication in the Florida Litigation and New York Litigation may have a preclusive effect on the Trustee's ability to pursue these claims, irreparably harming the Trustee's ability to recover funds for the benefit of all Chapter 7 Creditors.

82.    Third, enjoining the Florida Litigation and New York Litigation and similar litigation would not harm Defendants nor other stakeholders in this Chapter 7 proceeding.  To the contrary, Defendants would be treated in an identical fashion to other similarly situated parties.

83.    Fourth, an injunction would further the public interest because, at this point in time, it is critical to preserve all remaining Estate assets and the Trustee's ability to recover from the defendants in the Florida Litigation and New York Litigation for the benefit of all Chapter 7 creditors, and not those who won the race to the courthouse.

84.    Further, the Court has the power to enjoin proceedings in other courts if such proceedings would defeat or impair its jurisdiction over a case before it.  Here, continued litigation of the Florida Litigation and New York Litigation or similar litigation threaten the Trustee's ability to adequately fulfill his duty to maximize recovery on behalf of all creditors.

85.    Accordingly, to the extent that the Florida Litigation, New York Litigation and similar litigation are not enjoined by operation of the automatic stay, the Trustee requests that the Court enter an injunction enjoining those actions and any other actions which may be brought by other parties against the directors, officers, or auditors of the Debtor based on the same or similar facts pursuant to section 105(a).

### **Requested Relief**

WHEREFORE, the Trustee respectfully requests the following relief:

    a.    a declaration that the Florida Litigation and New York Litigation and any

#125192239v4

future litigation pursuing claims of breach of fiduciary duty or aiding and abetting a breach of fiduciary duty against directors or officers of the Debtor or other persons and entities connected to the Debtors are stayed pursuant to section 362(a) of the Bankruptcy Code;

   b.  an Order enjoining the continued prosecution of the Florida Litigation and New York Litigation and any other litigation pursuing the same or similar theories of recovery against directors or officers of the Debtor or theories of recovery against auditors of the Debtor based on facts related to those asserted in the Florida Litigation or New York Litigation pursuant to sections 105(a) and 362(a) of the Bankruptcy Code;

   c.  an Order enjoining the continued prosecution of the Florida Litigation and New York Litigation and any other litigation pursuing the same or similar theories of recovery against directors or officers or auditors of the Debtor or theories of recovery against auditors of the Debtor based on facts related to those asserted in the Florida Litigation or New York Litigation pursuant to Bankruptcy Rule 7065; and

   d.  any such other and further legal and equitable relief as this Court deems just and proper.

#125192239v4

Dated: September 18, 2025　　　　　**DILWORTH PAXSON LLP**

/s/ Peter C. Hughes
_____
Peter C. Hughes (No. 4180)
800 N. King Street, Suite 202
Wilmington, DE 19801
Telephone:　302-571-9800
Facsimile:　302-571-8875
Email:　　　phughes@dilworthlaw.com

　　　　　　and

Peter C. Hughes
Jack Small
1650 Market St., Suite 1200
Philadelphia, PA 19103
Telephone:　(215) 575-7000
Facsimile:　(215) 754-4603
Email:　　　phughes@dilworthlaw.com
Email:　　　jsmall@dilworthlaw.com

*Attorneys for George L. Miller, Chapter 7 Trustee*

#125192239v4