**EXHIBIT C**

[KSV v Hunsicker Complaint]

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

KSV CAASTLE HOLDINGS L.P. and
KSV CAASTLE II HOLDINGS L.P.,

      Plaintiffs,

v.

CHRISTINE HUNSICKER,

      Defendant.

CASE NO.

/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs KSV CaaStle Holdings LP ("KSV-I") and KSV CaaStle Holdings II LP ("KSV-II," and together with "KSV-I," "KSV" or "Plaintiffs") have been left with no recourse other than to sue Defendant Christine Hunsicker ("Hunsicker" or "Defendant") and allege:

## INTRODUCTION

1.      KSV unwittingly and unfortunately finds itself a victim in the highly publicized and still unraveling multi-million-dollar fraud perpetrated by Hunsicker on investors in CaaStle Inc. ("CaaStle"), a fashion rental subscription service company she co-founded in 2011 as Gwynnie Bee and rebranded in 2018 to capture industry leading brands and retailers.

2.      "CaaStle ha[s] raised over $530 million in venture capital, and its investors appear to be wiped out, in what would be one of the biggest startup frauds ever." Dan Primack, *Scoop: Fashion startup accuses founder of misconduct, after raising $534 million*, Axios (March 31, 2025), https://www.axios.com/2025/03/31/scoop-caastle-founder-hunsicker-misconduct.

3.      Plaintiffs were misled and then embroiled in Hunsicker's fraud when she induced KSV to invest in CaaStle by, among other things, misrepresenting the financial condition of CaaStle: Hunsicker falsified financial records that overstated revenue by as much as 33-fold,

NOT A CERTIFIED COPY

misrepresented EBITDA as being close to positive nine-figures when CaaStle's EBITDA was actually in the negative nine-figures, and falsely claimed CaaStle had hundreds of millions of dollars in liquidity when, in reality, it had less than $1 million in cash.  As a result of these egregious and material misrepresentations and omissions, KSV invested in CaaStle in exchange for shares that today are worthless.  KSV did not invest in a risky new company—it was misled through false financials and doctored reports into believing CaaStle was a powerhouse for growth.

4.      This action seeks to remedy Hunsicker's deceitful and fraudulent acts against KSV and includes claims for fraud in the inducement and breaches of her fiduciary duty and other misconduct which have caused KSV significant damages, as well as reputational and other harms.

## PARTIES

5.      Plaintiff KSV-I is, and was at all relevant times, a Delaware limited partnership with a principal place of business in Palm Beach County, Florida.  At least one of KSV-I's limited partners is a New York domiciliary and at least one of KSV-I's limited partners is a New Jersey domiciliary.

6.      Plaintiff KSV-II is, and was at all relevant times, a Delaware limited partnership with a principal place of business in Palm Beach County, Florida.  At least one of KSV-II's limited partners is a New York domiciliary and at least one of KSV-II's limited partners is a New Jersey domiciliary.

7.      Defendant Hunsicker is an individual and resident of New York, New York and/or LaFayette, New Jersey.

2

**JURISDICTION AND VENUE**

8. This Court has jurisdiction. This claim seeks damages in excess of $50,000.00, exclusive of interest, costs, and attorneys' fees.

9. This Court has personal jurisdiction over Hunsicker under Section 48.193, Florida Statutes, because she committed tortious acts in Florida, including making material misrepresentations to Plaintiffs in Florida, owed fiduciary duties to KSV as CaaStle shareholders in Florida, sent communications to KSV in furtherance of her tortious acts which were received by KSV in Florida, and lastly, as a result of her conduct, caused KSV to suffer harm and the consequences of Hunsicker's tortious acts in Florida.

10. Venue is proper in this circuit because the causes of action set forth below arose in Palm Beach County. As well, in addition to the facts giving rise to personal jurisdiction, venue is proper in this circuit because most of the relevant documents and other evidence are here.

11. All conditions precedent to filing this lawsuit have been performed, occurred, waived, or otherwise satisfied.

**FACTUAL ALLEGATIONS**

A.   **KSV's Investments in CaaStle.**

12. Hunsicker presented herself as a seasoned American retail executive with a proven track record in the fashion industry, including through the founding of successful ecommerce companies.

13. Hunsicker formed CaaStle in 2018, as a data technology and logistics company meant to enable retail clothing customers to optimize their inventory monetization through ecommerce and rental capabilities. At all relevant times, Hunsicker was the CEO and a board member of CaaStle.

NOT A CERTIFIED COPY

3

14.     Through a series of meetings in 2024, Hunsicker approached KSV, which is located in Palm Beach County, Florida, seeking to secure funding for CaaStle in several investment rounds.

15.     At and following those meetings, Hunsicker shared with KSV "audited" financial statements for 2022 and 2023 and projections for 2024 and 2025 that showed CaaStle to be incredibly profitable, flush with cash, and on an upward trajectory.  She shared those financial statements and other materials related to CaaStle with KSV through a shared data room and via emails at various intervals, starting around March 12, 2024, and continuing through March 2025.

16.     For example, on April 22, 2024, Hunsicker shared through email falsified financials of Q1 2024 results.  On August 20, 2024, she did the same thing for Q█████.

17.     On September 24, 2024, Hunsicker represented through what she described as audited consolidated financial statements that CaaStle's fiscal 2022 revenue was $238 million and 2023 revenue was $439 million.  Hunsicker also represented that CaaStle's EBITDA was $91 million for 2023 and projected that CaaStle's revenue for 2024 and 2025 would be $793 million and around $1 billion, respectively.

18.     Relying on Hunsicker's purported track record in the fashion and ecommerce industries, CaaStle's alleged audited financial records, and other representations Hunsicker shared with KSV, including Hunsicker's representations regarding the profitability of each of CaaStle's lines of business, KSV saw an investment in CaaStle as a low-risk and lucrative opportunity.

19.     Ultimately, KSV invested significant funds in CaaStle through one investment made by KSV-I in May 2024 and two investments made by KSV-II in September and October 2024.  Both KSV-I and KSV-II were issued stock in CaaStle in exchange for the investments.

4

20.     Before Hunsicker's ploy unraveled, she continued to solicit additional investments from unsuspecting KSV by making blatantly false representations to KSV.  For example, on a video call in December 2024 between Hunsicker and KSV (the "Video Pitch"), Hunsicker walked KSV through CaaStle's business model and represented that all of CaaStle's lines of business (enterprise rental, branded affiliates, and ecommerce optimization) were profitable.  On that Video Pitch, Hunsicker represented that CaaStle's "balance sheet had a lot of cash on it, and very little of everything else . . .  [CaaStle] is stockpiling cash. . . . [CaaStle] ha[s] several hundred million in the bank."  These statements are consistent with prior representations Hunsicker had made to KSV in May 2024 prior to the initial investments.

21.     Moreover, after KSV's May and September 2024 investments and to induce the October 2024 investment, Hunsicker represented to KSV that its further investment would be used to buy out the common shares of Hunsicker's co-founder, JP Singh.  The net result, a reduction in CaaStle's total common shares, was particularly enticing to KSV.

22.     Because of her positions as the CEO and a board member of CaaStle, Hunsicker owed fiduciary duties to KSV as a shareholder of CaaStle.  Hunsicker breached her duties to KSV, both misrepresenting and concealing material information and misleading KSV both before and after it placed its investments in her hands.

**B.     The March 29, 2025 CaaStle Shareholder Letter.**

23.     With no notice, on March 29, 2025, the floor dropped from under KSV's investments.  KSV received a letter from CaaStle's board (the "Shareholder Letter") stating that Hunsicker provided "investors with misstated financial statements and falsified audit opinions, as well as capitalization information that understated the number of [CaaStle] shares outstanding."

24. The Shareholder Letter also informed shareholders that Hunsicker was being investigated by law enforcement authorities in connection with providing certain investors with falsified financial and capitalization information.

25. The Shareholder Letter went on to state that Hunsicker had resigned from her position as CEO of CaaStle earlier in the week of March 24, 2025, and had also stepped down from CaaStle's board.

26. The Shareholder Letter warned investors that they could not rely on any financial or capitalization information received from Hunsicker in the past—it was all falsified.

27. And, notwithstanding Hunsicker's representations that CaaStle was sitting on "hundreds" of millions of dollars in cash, the Shareholder Letter warned that CaaStle was facing "a severe and immediate liquidity problem" and the board was "evaluating . . . a possible wind down, liquidation, or strategic transaction."

## C. Hunsicker's Lies.

28. The Shareholder Letter appended to it what was referred to as "actual audited results for fiscal years 2023 and 2022" (the "Audited Financials"). The Audited Financials show the scope of Hunsicker's lies.

29. For fiscal year 2022, the Audited Financials show that CaaStle's revenue was not $238 million, as Hunsicker previously had represented to KSV, but rather $19.7 million.

30. For fiscal year 2023, the Audited Financials show that CaaStle's revenue was not $439 million, as Hunsicker previously had represented to KSV, but rather $15.7 million.

31. While Hunsicker represented that CaaStle's EBITDA was flat for 2022 and $91 million for 2023, the Audited Financials show this was impossible because there was a combined net loss of $136 million for 2022 and 2023.

6

32.     While Hunsicker represented to KSV that CaaStle had "hundreds of millions of dollars in cash," the Audited Financials show that it ended its fiscal year 2023 with less than $1 million in cash and only just $3 million in total current assets.

33.     After receiving the Shareholder Letter, KSV learned that Hunsicker not only had falsified the figures in the various financial statements she had shared with KSV, but she also falsified the fact the financial statements had been prepared and audited by BDO USA P.C. ("BDO"), going as far as forging BDO's letterhead and including a fictitious BDO "Independent Auditor's Report."

34.     Moreover, while Hunsicker told KSV that all of CaaStle's lines of business were profitable, CaaStle represented during the investor meetings that followed the Shareholder Letter that *only one* of CaaStle's lines of business was profitable—its ecommerce optimization line—the others were hemorrhaging money.

35.     Also, Hunsicker never used KSV's October 2024 investment funds to buy out JP Singh's common shares.  Upon information and belief, JP Singh still holds some or all of his common shares in CaaStle.

36.     Finally, Hunsicker used some or all of the funds from KSV's investments in CaaStle in personal transactions, including transactions involving other companies in which she had a financial interest in, including P180, Inc., a company she cofounded and on whose board she sat.  This was not a case of business missteps—it was a meticulously orchestrated deception, engineered to attract funding and inflate valuation at the expense of truth and fiduciary responsibility.

## COUNT I
### (Fraudulent Inducement)

37.     KSV re-alleges and incorporates paragraphs 1 through 36 as if fully set forth herein.

NOT A CERTIFIED COPY

38.     Hunsicker both stated to KSV and represented to KSV in falsified financial records that (1) CaaStle's revenue for 2022 was $238 million; (2) that CaaStle's revenue for 2023 was $439 million; (3) that CaaStle was projecting revenue of $793 million and around $1 billion for 2024 and 2025, respectively; (4) that CaaStle's EBITDA was $91 million for 2023 and flat for 2022; (5) that CaaStle had "hundreds of millions of dollars in cash"; and (6) that these financial records were "audited" financial statements.

39.     Hunsicker falsified financial documents shared with KSV, including those shared on September 24, 2024, and during various meetings and calls with KSV, starting on March 12, 2024, through March 2025, with the intent to materially misrepresent the financial success of CaaStle and induce KSV to invest.

40.     Hunsicker's representations to KSV were false when made because none of the financial metrics stated above is accurate:  (1) CaaStle's revenue for 2022 was $19.7 million; (2) CaaStle's revenue for 2023 was $15.7 million; (3) no projection contemplated CaaStle's revenue to be $793 million and around $1 billion for 2024 and 2025, respectively; (4) CaaStle's EBITDA could not be $91 million for 2023 and flat for 2022 because there was a combined net loss of $135 million for 2022 and 2023; and (5) CaaStle ended its fiscal year 2023 with less than $1 million in cash and only just $3 million in total assets.

41.     Moreover, to induce KSV's October 2024 investment, Hunsicker knowingly misrepresented that she was going to use KSV's investment to buy out JP Singh's common shares—Hunsicker never did.  She also knowingly misrepresented the accuracy of the purported CaaStle financial statements she presented to KSV claiming they were audited by a neutral auditor when they were not.

8

42.    Hunsicker's misrepresentations were material because they were the factors subject to which KSV decided to invest in CaaStle.  Neither KSV nor a reasonable person would have entered into this transaction and invested in CaaStle if Hunsicker had not made the misrepresentations and presented the actual financial condition of the business.

43.    When Hunsicker made the misrepresentations to KSV, she knew each of these representations was false.  Indeed, she had falsified the financial records herself.

44.    When Hunsicker made the misrepresentations, her intent was to induce KSV into investing substantial sums of money in CaaStle.

45.    KSV relied on Hunsicker's misrepresentations in deciding whether to invest in CaaStle and chose to invest as a direct and immediate result of the falsified financial figures and other information Hunsicker shared with KSV.

46.    KSV conducted its own reasonable due diligence into Hunsicker's statements, but, because CaaStle is a private company, KSV was limited in publicly available information and could only obtain its financial records directly from CaaStle, which Hunsicker provided and represented to be audited by an independent auditor, BDO.  And while having to rely on Hunsicker's disclosures, KSV had no other public means by which to test or question the financial information provided including when Hunsicker misrepresented that CaaStle's financial records had been prepared and audited by a neutral, reputable accounting firm when they in fact had not.

47.    At no point did KSV suspect that Hunsicker, a well-known and well-regarded retail executive whose startup had grown in notoriety, was falsely representing the financial state of CaaStle to lure investors, such as KSV, into making significant capital contributions.  Nor did KSV suspect that she had falsified the financial statements to give them the appearance of having been prepared, verified, and ratified by a neutral auditor.

48.     As a result of KSV's reliance on Hunsicker's misrepresentations inducing KSV into investing in CaaStle, KSV has suffered damages.

49.     Hunsicker's fraudulent inducement, inducing KSV reliance, was the direct and proximate cause of KSV's loss.

WHEREFORE, KSV demands judgment against Hunsicker for damages, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## COUNT II
### (Negligent Misrepresentation)

50.     KSV re-alleges and incorporates paragraphs 1 through 36 as if fully set forth herein.

51.     Hunsicker both stated to KSV and represented to KSV in falsified financial records that (1) CaaStle's revenue for 2022 was $238 million; (2) that CaaStle's revenue for 2023 was $439 million; (3) that CaaStle was projecting revenue of $793 million and around $1 billion for 2024 and 2025, respectively; (4) that CaaStle's EBITDA was $91 million for 2023 and flat for 2022; (5) that CaaStle had "hundreds of millions of dollars in cash" as of May 2024; and (6) that these financial records were "audited" financial records.

52.     Hunsicker made these representations through falsified financial records shared with KSV, including on September 24, 2024, and during various meetings and calls with KSV, starting on March 12, 2024, through March 2025.

53.     Hunsicker's representations were false when made, because none of the financial metrics stated above is accurate: (1) CaaStle's revenue for 2022 was $19.7 million; (2) CaaStle's revenue for 2023 was $15.7 million; (3) no projection contemplated CaaStle's revenue to be $793 million and around $1 billion for 2024 and 2025, respectively; (4) CaaStle's EBITDA could not be $91 million for 2023 and flat for 2022 because there was a combined net loss of $135 million

NOT A CERTIFIED COPY

for 2022 and 2023; (5) CaaStle ended its fiscal year 2023 with less than $1 million in cash and only just $3 million in total assets; and (6) the financial records were not audited.

54. Moreover, to induce KSV's October 2024 investment, Hunsicker knowingly misrepresented how she was going to use KSV's funds—to buy out JP Singh's common shares—and CaaStle's financial statements as having been audited by a neutral auditor when they were not.

55. Hunsicker's misrepresentations were material because they were the factors subject to which KSV decided to invest in CaaStle. Neither Plaintiffs nor a reasonable person would have entered into this transaction and invested in CaaStle if Hunsicker had not made the misrepresentations.

56. Hunsicker had a pecuniary interest in the transaction with KSV because she stood to personally profit from KSV's investment, either directly or indirectly.

57. Hunsicker was negligent in making the statement. Hunsicker knew that the misrepresentations were false when made.

58. KSV relied on Hunsicker's misrepresentations in deciding whether to invest in CaaStle and chose to invest as a direct and immediate result of the falsified financial figures and information Hunsicker shared with KSV.

59. KSV conducted its own due diligence into Hunsicker's statements, but, because CaaStle is a private company, KSV was limited in publicly available information and could only obtain its financial records directly from CaaStle, which Hunsicker provided. And while having to rely on Hunsicker's disclosures, KSV had no other means by which to test or question the financial information provided including when Hunsicker misrepresented that CaaStle's financial records had been audited by a neutral accounting firm when they in fact had not.

11

60.     At no point did KSV suspect that Hunsicker, a well-known and well-regarded retail executive whose startup had grown in notoriety, was falsely representing the financial state of CaaStle to lure investors, such as KSV, into making significant capital contributions.

61.     Hunsicker intended to induce KSV to rely on her misrepresentations, which KSV did rely upon to make its investment decisions in CaaStle.

62.      As a result of KSV's reliance on the Hunsicker's misrepresentations, KSV was induced to invest in CaaStle due to the Hunsicker's misrepresentation, as a result of which, KSV suffered significant damages.

63.     Hunsicker's misrepresentations, inducing KSV's reliance, were the direct and proximate cause of the KSV's loss.

WHEREFORE, KSV demands judgment against Hunsicker for damages, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## COUNT III
### (Breaches of Fiduciary Duties Against Hunsicker as a Board Member)

64.     KSV re-alleges and incorporates paragraphs 1 through 36 as if fully set forth herein.

65.     Hunsicker, as a board member of CaaStle, owed a fiduciary duty of loyalty to KSV as a shareholder of CaaStle.

66.     Hunsicker breached her fiduciary duty of loyalty to KSV when she engaged in self-dealing.  Hunsicker used some or all the proceeds of KSV's investments in CaaStle almost immediately after receiving it in transactions involving other companies in which she had a financial interest and not for CaaStle.

67.     Hunsicker also breached her fiduciary duty of loyalty to KSV when she violated the law and committed fraud by falsifying financial records to induce KSV into making additional investments in CaaStle such that she could then divert KSV's funds into transactions aimed at

enriching herself and not directly related to CaaStle.

68.    Similarly, Hunsicker breached her fiduciary duty of disclosure when she knowingly, intentionally, and in bad faith lied to KSV regarding how KSV's October 2024 investment was going to be spent—to reduce the outstanding common shares—to induce KSV to invest additional funds so that Hunsicker could then use those funds for her self-interested purposes not directly related to CaaStle.

69.    The loss of the investments is a particularized and direct harm to KSV as the investment funds were not used for CaaStle but instead by Hunsicker for self-dealing and her personal gain, which is the direct and proximate cause of KSV's injury.

70.    As a result of Hunsicker's breaches of her fiduciary duty of loyalty and of disclosure, KSV has suffered and will suffer injury and is entitled to an award of damages.

WHEREFORE, KSV demands judgment against Hunsicker for damages, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## COUNT IV
**(Breaches of Fiduciary Duties Against Hunsicker as CEO)**

71.    KSV re-alleges and incorporates paragraphs 1 through 36 as if fully set forth herein.

72.    Hunsicker, as CEO of CaaStle, owed fiduciary duties of care and loyalty to KSV.

73.    Hunsicker breached her fiduciary duty of care to KSV when she failed to act as a reasonably prudent person and falsified financial records and misrepresented them to KSV and other investors and hid the fact that CaaStle was in financial distress.

74.    Hunsicker also breached her fiduciary duty of loyalty to KSV when she engaged in self-dealing.  Hunsicker used some or all the proceeds of KSV's investments in CaaStle almost immediately after receiving it in transactions involving other companies in which she had a financial interest in and not for CaaStle.

13

75.     Hunsicker also breached her fiduciary duty of loyalty to KSV when she violated the law and committed fraud by falsifying financial records to induce KSV into making additional investments in CaaStle such that she could then divert KSV's funds into transactions aimed at enriching herself and not directly related to CaaStle.

76.     Similarly, Hunsicker breached her fiduciary duty of disclosure when she knowingly, intentionally, and in bad faith lied to KSV regarding how KSV's October 2024 investment was going to be spent to induce KSV to invest additional funds so that Hunsicker could then use those funds for her self-interested purposes not directly related to CaaStle.

77.     The loss of the investments is a particularized and direct harm to KSV as the investment funds were not used for CaaStle but instead by Hunsicker for self-dealing and her personal gain, which is the direct and proximate cause of KSV's injury.

78.     As a result of Hunsicker's breaches of her fiduciary duties of care, loyalty, and disclosure, KSV has suffered and will suffer injury and is entitled to an award of damages.

WHEREFORE, KSV demands judgment against Hunsicker for damages, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## COUNT V
**(Violations of Sections 517.211 and 517.301, Florida Statute—Securities Fraud)**

79.     KSV re-alleges and incorporates paragraphs 1 through 36 as if fully set forth herein.

80.     When courting KSV to invest in CaaStle, Hunsicker both stated to KSV and represented to KSV in communications and falsified financial records that (1) CaaStle's revenue for 2022 was $238 million; (2) that CaaStle's revenue for 2023 was $439 million; (3) that CaaStle was projecting revenues of $793 million and around $1 billion for 2024 and 2025, respectively; (4) that CaaStle's EBITDA was $91 million for 2023, and flat for 2022; (5) that CaaStle had "hundreds of millions of dollars in cash" as of May 2024; and (6) that these financial records were

"audited" financial records.

81. Hunsicker made these representations through falsified financial records shared with KSV, including on September 24, 2024, and during various meetings and calls with KSV, starting on March 12, 2024, through March 2025.

82. Hunsicker's representations were false because none of the financial metrics stated above is accurate: (1) CaaStle's revenue for 2022 was $19.7 million; (2) CaaStle's revenue for 2023 was $15.7 million; (3) no audited projection contemplated CaaStle's revenues to be $793 million and around $1 billion for 2024 and 2025, respectively; (4) CaaStle's EBITDA could not be $91 million for 2023 and flat for 2022 because there was a combined net loss of $135 million for 2022 and 2023; (5) CaaStle ended its fiscal year 2023 with less than $1 million in cash and only just $3 million in total assets; and (6) the financial records were not audited.

83. Moreover, to induce KSV's October 2024 investment, Hunsicker knowingly misrepresented how she was going to use KSV's funds—to buy out JP Singh's common shares—and CaaStle's financial statements as having been audited by a neutral auditor when they were not.

84. Hunsicker's misrepresentations were material because they were the factors subject to which KSV assessed the viability of its investments in CaaStle.

85. Hunsicker's misrepresentations were false statements of material fact that were made in connection with the offer and sale of an investment or security.

86. When Hunsicker made the misrepresentations, her intent was to induce KSV into investing substantial sums of money in CaaStle.

87. KSV relied on Hunsicker's misrepresentations in deciding whether to invest in CaaStle and chose to invest as a direct and immediate result of the falsified financial figures and other information Hunsicker shared with KSV.

NOT A CERTIFIED COPY

88.   As a result of Hunsicker's misrepresentations, KSV invested in CaaStle.

89.   In exchange for KSV's investments in CaaStle, KSV received securities in CaaStle—both preferred and common stock.  KSV's investments thus qualify as an "investment" or a "security" under Section 517.301(2), Florida Statutes.

90.   However, the securities received by KSV are valueless due to Hunsicker's misconduct.  Per the Shareholder Letter, CaaStle is facing "a severe and immediate liquidity problem" and the board is "evaluating . . . wind down, liquidation, or strategic transaction."

91.   Thus, Hunsicker has engaged in unlawful conduct and violated Section 517.301, Florida Statutes.

92.   Pursuant to Section 517.211, Florida Statutes, Hunsicker is liable to KSV for the recission of the sale of the securities or damages.

93.   KSV is also entitled to an award of its attorneys' fees under Section 517.211(7), Florida Statutes.

WHEREFORE, KSV demands judgment against Hunsicker for recission, damages, pre- and post-judgment interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

**COUNT VI**
**(Unjust Enrichment)**

94.   KSV re-alleges and incorporates paragraphs 1 through 36 as if fully set forth herein.

95.   KSV had no contractual relationship with Hunsicker.  Nonetheless, KSV conferred a benefit on Hunsicker through the funding of its investments when Hunsicker used those funds to personally benefit herself and not CaaStle.

96.   Indeed, following KSV's investments in CaaStle in May, September, and October of 2024, Hunsicker knowingly retained the proceeds of KSV's investments in CaaStle for personal

uses, including personal transactions and investments, not related to CaaStle.

97.     Hunsicker voluntarily accepted and knowingly retained the benefit that KSV conferred on Hunsicker, notably, by keeping for herself the proceeds of KSV's investments in CaaStle and/or spending it in self-interested transactions unrelated to CaaStle.

98.     Under the circumstances, it would thus be unjust and inequitable to permit Hunsicker to retain the benefit of the funds she misappropriated without compensating KSV for it.

WHEREFORE, KSV demands judgment against Hunsicker for damages, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

KSV demands a trial by jury of all issues so triable.

Dated: April 18, 2025.                    Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, FL 33131
Telephone: 305-579-0500
Facsimile:  305-579-0717

By*:   /s/ Joseph J. Mamounas*
JOSEPH J. MAMOUNAS
Florida Bar No. 41517
mamounasj@gtlaw.com
ADRIAN NUÑEZ
Florida Bar No. 48176
nuneza@gtlaw.com
KETAN M. GANASE
Florida Bar No. 1002331
ketan.ganase@gtlaw.com

*Attorneys for Plaintiffs* KSV CaaStle Holdings LP
and KSV CaaStle Holdings II LP

NOT A CERTIFIED COPY

17