IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| In re:<br><br>CaaStle, Inc.<br><br><br>Debtor. | Chapter 7<br>Case No. 25-11187-BLS<br><br>**RE: D.I. 109**<br><br>**Hearing: November 19, 2025 at 11:00 a.m. (ET)** |

---

### OBJECTION BY CHRISTINE HUNSICKER TO MOTION OF KSV CAASTLE HOLDINGS LP AND KSV CAASTLE HOLDINGS II LP FOR ORDER LIFTING AUTOMATIC STAY TO COLLECT AGAINST APPLICABLE INSURANCE PROCEEDS

**NOW COMES** Christine Hunsicker ("Hunsicker"), and hereby submits this Response in Opposition (the "Opposition") to the *Motion of KSV CaaStle Holdings LP and KSV CaaStle Holdings II LP for Order Lifting Automatic Stay to Collect against Applicable Insurance Proceeds* (the "Motion") [D.I. 110]. In support of this Opposition, Hunsicker states the following:

**Background**

1. On or about June 20, 2025 (the "Petition Date"), the Debtor filed for voluntary relief under Chapter 7 of the Bankruptcy Code.

2. Hunsicker is the founder of the Debtor. Prior to the Petition Date, she served as the Chief Executive Officer and a member of the Debtor's Board of Directors.

3. On July 18, 2025, the United States Attorney for the Southern District of New York charged Hunsicker with wire fraud, securities fraud, money laundering, making false statements to a financial institution, and aggravated identity theft for actions alleged to have occurred in connection with operating and raising funds for the Debtor.

4. Also on July 18, 2025, the Securities and Exchange Commission alleged that Hunsicker created and disseminated false financial statements and audit reports to investors of the Debtor. The SEC action has been stayed pending resolution of the criminal action.

**The Policies**

5. The Debtor held a directors' and officers' insurance policy through Continental Casualty Company ("CNA") bearing policy number 6052060736 (the "D & O Policy"). *See* Mot. at ¶¶ 11-13.

6. The D & O Policy went into effect on March 25, 2025. *See* Mot., Ex. A at p. 4.

7. The D & O Policy has an aggregate limit of liability of $2,000,000.00, with an additional Side A limit of liability of $1,000,000.00. *See* Mot., Ex. A at p. 14.

8. The Debtor also holds an excess insurance policy issued by Zurich American Insurance Company ("Zurich") bearing policy number 6052060736 (the "Excess Policy" and, together with the D & O Policy, the "Policies"). *See* Mot, ¶ 12. The aggregate limit of the Excess Policy is $2,000,000.00. *Id.* Coverage from the Excess Policy applies only after the D & O Policy has been exhausted. *Id.*

**The Current Motion Before the Court**

9. On November 5, 2025, KSV CaaStle Holdings LP ("KSV I") and KSV CaaStle Holdings II LP ("KSV II" and, with KSV I, "KSV") filed the Motion seeking access to proceeds under the Policies (the "Insurance Proceeds").

10. In support of the Motion, KSV alleged that:

    a. On April 18, 2025, KSV CaaStle Holdings LP and KSV CaaStle Holdings II LP (collectively, "KSV") filed an action against Hunsicker in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the "Florida Action). *See* Mot., ¶ 2. The Florida Action sought to recover for Hunsicker's "deceitful and fraudulent acts against KSV" including "fraud in the inducement and breaches of her fiduciary duty and other misconduct." *Id.*

      b.      On August 19, 2025, KSV obtained a default judgment (the "Default Judgment") against Hunsicker in the non-final amount of: $10,511,064.52, plus prejudgment interest in the amount of $1,161,448.49 with such interest continuing to accrue at a rate of $2,682.33 per day for KSV I; and $36,864,763.77, plus prejudgment interest in the amount of $2,915,003.78 with such interest continuing to accrue at a rate of $9,558.78 per day for KSV II. *Id.* at ¶ 3.

      c.      On October 3, 2025, this Court entered an Order which lifted the stay so that CNA was authorized to pay the reasonable and necessary defense costs of Hunsicker with respect to certain actions, including the Florida Action. *Id.* at ¶¶ 8-9.

**The Palm Beach County Florida Circuit Court Matter is In Active Litigation – The Judgment Is Not Final and Is Being Appealed**

11.    The Law Firm of Kaufman Dolowich, LLP ("KD") was assigned by CNA to defend Hunsicker in KSV's Palm Beach County Circuit Court action, Case No. 50-2025-CA-003703-MB.

12.    On June 27, 2025 at 12:23 p.m., Kaufman Dolowich ("KD") provided written notice to counsel for KSV that they represent Hunsicker in the Palm Beach County action.

13.    On July 1, 2025, KD participated in a Zoom video conference with counsel for KSV.

14.    On July 18, 2025, KSV filed a Motion for Clerk's Default against Hunsicker, without providing proper notice to KD despite being aware of KD's representation of Hunsicker in that matter.

15. On July 29, 2025, KSV filed a second Motion for Clerk's Default and again intentionally elected to avoid providing notice to Hunsicker's counsel with the underhanded aim of avoiding any response in opposition. (Palm Beach D.E. #34) [1]

16. On August 2, 2025, the Florida court entered a Default against Hunsicker. (Palm Beach D.E. #35).

17. On August 8, 2025, KSV filed a Motion for Entry of Final Judgment after Default with the court, along with a Notice of Hearing thereon for August 19, 2025, again continuing their pattern of neglecting to, or intentionally choosing to avoid, noticing Hunsicker's counsel. (Palm Beach D.E. #37).

18. On August 19, 2025, the Florida court held a hearing on the Motion for Final Judgment and improperly entered a Final Judgment after Default against Hunsicker in the principal amount of $51,452,280.60. (Palm Beach D.E. #39).

19. Hunsicker's attorneys were sent neither notice of KSV's Motion for Clerk's Default, the Court's entry of the Default, Plaintiff's Motion for Entry of Final Judgment after Default, nor the entry of the Final Judgment after Default.

20. On August 25 and 26, 2025, Plaintiffs filed, and the court granted, various Writs of Garnishment against Hunsicker's financial accounts, which were issued by the court on August 26, 2025. (Palm Beach D.E. #41-47).

21. After learning what had occurred, and about KSV's improper conduct, on September 24, 2025, KD filed a Notice of Appearance in the Florida case for Hunsicker and filed a Motion to Reopen Case, Vacate Default and Final Default Judgment, and Quash Service of Process with the court. A proposed Answer and Affirmative Defenses was filed the following day

---

[1] The Court has an open docket available to the public.

on September 25, 2025 to supplement to the proposed Answer and Affirmative Defenses. (Palm Beach D.E. #52, 54, 57).

22. On October 8, 2025, KD filed a Request for Judicial Notice with requesting the Court to take judicial notice of *National Union Fire Insurance Company of Pittsburgh, P.A. v. McWilliams*, 799 So.2d 378 (Fla. 4th DCA 2001). (*See* Exhibit "A") hereto. A copy of the Request for Judicial Notice was also sent to Judge's Chambers. (Palm Beach D.E. #64).

23. On October 14, 2025, a hearing on Hunsicker's Motion to Reopen Case, Vacate Default and Final Default Judgment and Quash Service of Process occurred as scheduled via Zoom before the Honorable Bradley Harper of the Palm Beach Circuit Court in the presence of a court reporter. Defendant Hunsicker was also in attendance via Zoom. At the very beginning of the hearing, counsel for Hunsicker inquired of Judge Harper whether the Court had reviewed the Request for Judicial Notice Request of *McWilliams*, to which the Court replied "No", despite the fact that the Request for Judicial Notice had been filed with the Court some *six (6) days* previous, and a copy was provided to the Judge's Chambers.

24. On October 24, 2025, Judge Harper issued its Order Denying Defendant's Motion to Reopen Case, Vacate Default and Final Default Judgment and Quash Service of Process.

25. The court's October 24, 2025 Order is wholly bereft of any discussion, analysis or *even a passing reference* to the October 8, 2025 Request for Judicial Notice of *McWilliams*, completely overlooking the crucial and binding precedential authority by the Florida Fourth District Court of Appeal therein that the Palm Beach Circuit Court, as a trial court in that District, is required to follow.

26. Also on October 24, 2025, the Court issued an Order unilaterally scheduling an evidentiary hearing on Hunsicker's previously filed Claims of Exemption from Garnishment, said evidentiary hearing to occur on November 3, 2025, at 9:00 a.m. via Zoom.

27. On October 30, 2025, Hunsicker filed a Motion for Reconsideration of Order Denying Motion to Reopen Case, Vacate Default and Default Final Judgment. (Palm Beach D.E. # 77). A copy of the Motion for Reconsideration of Order Denying Motion to Reopen Case, Vacate Default and Default Final Judgment was also sent to Judge Bradley Harper's Chambers. The Motion for Reconsideration contained a substantive argument along with exhibits and caselaw, and is total of <u>thirty-three (33) pages in length</u>.

28. On November 3, 2025, the Court convened an evidentiary hearing on the previously filed Claims of Exemption from Garnishment's filed by Hunsicker before the Honorable Bradley Harper of the Palm Beach Circuit Court in the presence of a court reporter. Defendant Hunsicker was also in attendance via Zoom. The hearing was delayed slightly, and began at approximately 9:05 a.m. EST. At the very beginning of the hearing, counsel for Hunsicker inquired of Judge Harper whether the Court had reviewed the Motion for Reconsideration of Order Denying Motion to Reopen Case, Vacate Default and Default Final Judgment, to which Judge Harper replied that he had not yet seen it, despite the fact that the Motion for Reconsideration of Order Denying Motion to Reopen Case, Vacate Default and Default Final Judgment had been filed with the Court some <u>three (3) days</u> previous, and a copy specifically sent to the Judge's Chambers.

29. At that time, Hunsicker's counsel again informed the Court that the Motion for Reconsideration of Order Denying Motion to Reopen Case, Vacate Default and Default Final Judgment had been filed and a copy sent to the Judge's Chambers, to which Judge Harper replied with words to the effect of 'I see it now'. The evidentiary hearing then proceeded for approximately the next thirty (30) minutes.

30. <u>*At 9:33 a.m. on November 3*</u>, while the evidentiary hearing on Hunsicker's Claims of Exemption from Garnishment *was still proceeding or had just concluded*, the Court issued an Order Denying the Motion for Reconsideration from email: CAD-Division AE CAD-

DivisionAE@pbcgov.org, containing a generic, computer-generated Order Denying the Motion for Reconsideration, without any analysis or explanation.

31. Based on the above, on November 11, 2025, Hunsicker filed a Motion for Recusal and Reassignment of Judicial Division and Judge Harper on the basis that he had an objective and well–grounded belief that the Judge has or might have a preconceived personal bias and prejudice concerning Hunsicker and/or this case, and that as a result, Ms. Hunsicker will not receive fair proceedings at the hands of the Judge in the future. . .", relying on, in part, *Nunez v. Backman*, 645 So.2d 1063, 1064 (Fla. 4th DCA 1994). (A motion to recuse must be granted if the facts alleged would prompt a reasonably prudent person to fear that he could not get a fair and impartial trial from the judge).

32. On November 12, 2025, Judge Harper issued an Order Denying Motion for Recusal and Reassignment of Judicial Division and Judge Bradley Harper.

33. Having exhausted all reasonable efforts to have the Default and Final Default Final Judgment with the trial court, Hunsicker will be filing a Notice of Appeal with the Florida Fourth District Court of Appeal the morning of November 13, 2025 so that the Fourth District Court of Appeal can consider and rule on the Order Denying Motion to Vacate Default and Default Final Judgment, the Order Denying Claims of Exemption, the Order Denying Motion for Reconsideration, and the Order Denying Motion for Recusal and Reassignment of Judicial Division and Judge Bradley Harper.

34. As such, the Palm Beach County Circuit Court matter is not final, and this Court should not lift the Automatic Stay on this basis.

35. Further, KSV failed to follow this Court's procedural Rule 4000-1 by again failing to provide notice of its Motion in this matter to Hunsicker's counsel in the Florida Action.

**Objection**[1]

36.     Hunsicker files this Opposition on the grounds that: (i) the Insurance Proceeds are property of the estate because the Policies offer direct coverage to the Debtor and depletion of the Insurance Proceeds would have an adverse effect on her and her defense of the many pending legal matters against her because some or all of the polices are eroding policy and she needs those funds to defend herself; (ii) the Court should ensure the Insurance Proceeds are equitably distributed among all claimants for the Insurance Proceeds to protect Hunsicker; (iii) KSV has failed to demonstrate that it is entitled to relief from stay for cause pursuant to section 362(d)(1) or under the requisite three prong test used by this Court; (iv) the Florida appeal has a strong likelihood of success on the merits such that the judgment will be undone and the case will proceed on its merits thereby mooting KSV's motion and this issue and lifting the stay to release monies on a judgment that is not final could lead to an absurd result, more litigation, confusion, and waste, (v) KSV is not similarly situated to Hunsicker and does not require the stay be lifted to fund its defense costs as Hunsicker did and as was agreed upon by Hunsicker and the Trustee, and (vi) the Trustee has brought an adversary proceeding seeking an injunction against KSV from proceeding in its action, and if granted then KSV's Motion should be denied. D.I. 83.

**Additional Bases for Relief**

37.     When the insurance policy provides direct coverage to both the debtor and the entity's directors and officers, the proceeds are considered property of the debtor's estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy protects the estate's other assets from diminution. *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004).

---

[1] Pursuant to Local Rule 9013-1(h) the filing party does or does not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

38. Here, the D & O Policy provides coverage both to insured individual directors and officers, such as Hunsicker, and the Debtor as an entity. *See* Mot., Ex. A at p. 15. Specifically, Side A of the D & O Policy provides coverage to insured persons such as Hunsicker, and Side C provides coverage to the Debtor as the insured entity. *Id.* Side C coverage for the Estate could be used for claims against the Debtor, including but not limited to claims against the Debtor stemming from Hunsicker's alleged fraudulent conduct.

39. The D & O Policy has an aggregate limit of liability, inclusive of defense costs, of $2,000,000.00, with an additional $1,000,000.00 limit of liability for Side A coverage. *See* Mot., Ex. A at p. 14.

40. The Excess Policy offers an additional $2,000,000.00 limit once the D & O Policy has been exhausted. *See* Mot. ¶ 12.

41. A depletion of the Insurance Proceeds would have an adverse effect on the Hunsicker because the Policies are protecting Hunsicker and Estate assets from diminution relating to claims asserted against the Debtor, and Hunsicker's defense of those claims.

42. The Insurance Proceeds are property of the Estate because depletion of the Insurance Proceeds would have an adverse effect on the Estate and Hunsicker.

43. The Motion is premature because the judgment upon which KSV seeks to collect is not final.

44. KSV asserts it's entitled to relief from the Stay like Hunsicker, but Hunsicker's defense costs are actual and realized whereas the judgment KSV seeks to collect upon by having the stay lifted is speculative and non-final. (D.I. 93). Further, KSV is a plaintiff in the Florida Action and has no defense costs, unlike Hunsicker.

### KSV Has Failed to Demonstrate that It is Entitled to Relief From Stay for Cause Pursuant to Section 362(d).

45. Section 362(d)(1) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest…

46. Courts conduct a "fact-intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re Downey Fin. Corp.*, 428 B.R. 595, 608-09 (Bankr. D. Del. 2010) (citations omitted).

47. This Court uses a three-prong test to determine whether to grant relief from the stay: (1) whether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay; (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits. *Id.* at 609.

48. KSV must meet their burden of proof "on the issue of the debtor's equity in property," while the opposing parties have the burden of proof on all other issues. *Id.* KSV has to show great prejudice, and they fail to do so. Weighing these prongs favors the insured, Hunsicker.

49. Hunsicker is an insured person under the D & O Policy. *See* Mot., Ex. A, p. 18 ("Insured person means any employee or executive."). Accordingly, she has a right to access the coverage available under Side A of the D & O Policy. KSV, as a creditor seeking to satisfy the Default Judgment, does not have such an interest. *In re W.R. Grace & Co.*, 475 B.R. 34, 82-83 (Bankr. D. Del. 2012) (noting that objecting insurance claimants have no vested right to insurance proceeds because claimants were not listed as named insureds under the policy and not involved

in negotiations for and purchasing of the insurance policies).  But even if they did have a similar interest, their interest is not ripe yet because the judgment is not final or binding and is being appealed.

50.     KSV, as the movant, bears the burden of establishing that it is entitled to stay relief.  KSV did not engage with the Third Circuit's three-prong test or otherwise assert why there is cause to lift the automatic stay, other than its conclusory assertion that it is entitled to the same relief as Hunsicker. Further, KSV comes to this Court with unclean hands, seeking to profit from its misconduct in the Court in Florida as outlined above.

51.     Here, as already detailed, Hunsicker and the Estate may face great prejudice if the Stay is lifted so that KSV can claim the $5,000,000.00 in available Insurance Proceeds while Hunsicker's appeal in the Florida Fourth District Court of Appeal is pending.  Hunsicker has a good faith belief that the Appeal will be successful for the above-stated reasons, chief among them that the Palm Beach Circuit Court did not follow binding, authoritative precedent from the Florida Fourth District Court of Appeal, the Appellate District within which the Palm Beach Circuit Court sits. <u>National Union Fire Insurance Company of Pittsburgh, P.A. v. McWilliams</u>, 799 So.2d 378 (Fla. 4th DCA 2001).

52.     To justify a lift of the stay, the hardship to KSV must considerably outweigh the hardship to the Debtor and to Hunsicker.  While KSV was allegedly harmed by Hunsicker, the merits of that allegation are unproven and instead, KSV seeks to profit through procedural gamesmanship as opposed to testing the merits of its allegations.

53.     KSV has not met its burden to establish that a lift of the stay is warranted.  KSV will suffer no prejudice if the stay is maintained because whether the stay is or is not lifted they will still be subjected to the appellate proceedings in the Florida Action and potentially a trial on the merits in the Florida Action if Hunsicker's Appeal is successful. Accordingly, KSV's Motion

should be denied.

### The Motion Should be Denied if the Trustee's Motion for Injunction is Granted as to KSV.

54. On September 18, 2025, the Trustee filed the *Chapter 7 Trustee's Verified Complaint for Declaratory Relief under Section 362(a) of the Bankruptcy Code, Injunctive Relief under Sections 105(a) and 362(a) of the Bankruptcy Code, and a Preliminary Injunction under Rule 7065 of the Federal Rules of Bankruptcy Procedure* and a related injunction motion (the "Injunction Motion") against KSV and P180, Inc. [Adv. Pro. No. 25-52349-BLS, D.I. 1,].

55. The Injunction Motion seeks, among other relief, to enjoin KSV from recovering on any property of the Estate, including the Policies. [Adv. Pro. No. 25-52349-BLS, D.I. 1, ¶¶ 66-85].

56. If the Trustee's Injunction Motion is granted, KSV will be stayed from proceeding in the Florida Action, including the collection of any Insurance Proceeds to satisfy the Default Judgment, which will be on appeal to the Florida Fourth District Court of Appeal.

57. Accordingly, there are at least two reasons why KSV's Motion is premature and ultimately potentially moot.

58. Accordingly, the Motion should be denied until the Injunction Motion is decided.

### Conclusion

**WHEREFORE**, HUNSICKER respectfully requests that this Court deny KSV's Motion.


Respectfully submitted,


Dated: November 12, 2025    **KAUFMAN DOLOWICH LLP**


**Counsel for Christine Hunsicker**

12

        */s/ Kristen Swift, Esq.*
        Kristen Swift (No. 6077)
        222 Delaware Ave, Suite 720
        Wilmington, Delaware 19801
        Direct: 302-482-8662
        Kristen.swift@kaufmandolowich.com
        *Attorney for Christine Hunsicker*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | Case No. 25-11187-BLS |
| CAASTLE INC., | : | |
| | : | |
| Debtor. | : | |

## CERTIFICATE OF SERVICE

I, Kristen S. Swift, hereby certify that on November 12, 2025, the *Objection of Christine Hunsicker to Motion Of KSV CaaStle Holdings LP and KSV CaaStle Holdings II LP for Order Lifting Automatic Stay to Collect Against Applicable Insurance Proceeds* (the "Objection") was filed on the docket in the above captioned bankruptcy case and served via the court's electronic CM/ECF service to all parties who have requested such service; and that the Motion was also served via first class mail upon all parties listed on the attached list.

Dated: November 12, 2025

/s/     *Kristen S. Swift*
Kristen S. Swift, Esquire

**SERVICE LIST**

| | |
|---|---|
| Brendan Joseph Schlaugh, Esq.<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801 | George L. Miller, Trustee<br>1628 John F. Kennedy Blvd.<br>Suite 950<br>Philadelphia, PA 19103-2110 |
| U.S. Trustee<br>Office of the United States Trustee<br>J. Caleb Boggs Federal Building<br>844 King Street, Suite 2207<br>Lockbox 35<br>Wilmington, DE 19801 | Loren R. Barron, Esq.<br>Kaufman Dolowich LLP<br>222 Delaware Avenue, Suite 720<br>Wilmington, DE 19801<br><br>Need KSV |