**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CaaStle, Inc.<br><br>Debtor. | Chapter 7<br><br>Case No. 25-11187-BLS |
| GEORGE L. MILLER, solely in his capacity as chapter 7 trustee for the bankruptcy estate of CaaStle, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Georgiy Goldenberg a/k/a George Goldenberg, John Doe 1, in his capacity as Trustee of the Goldenberg Revocable Trust, and John Does 2-10,<br><br>Defendants. | Adv. Pro. No.: |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 544, 548 AND 550 AND APPLICABLE STATE LAW, AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Plaintiff George L. Miller (the "Plaintiff" or the "Trustee"), solely in his capacity as the Chapter 7 Trustee of the bankruptcy estate of CaaStle Inc. ("CaaStle" or the "Debtor"), by and through undersigned counsel, hereby submits this Complaint to avoid and recover transfers (the "Complaint") against Defendant Georgiy Goldenberg a/k/a George Goldenberg ("Defendant Goldenberg") John Doe 1, in his capacity as the Trustee of the Goldenberg Family Trust (the "Goldenberg Trust"), and John Does 2-10 (together with Defendant Goldenberg and the Goldenberg Trust, the "Defendants"), pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), sections 502, 544, 548, and 550 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and applicable state law, and avers as follows:

**Background**

1. On June 20, 2025 (the "Petition Date"), the Debtor filed for voluntary relief under Chapter 7 of the Bankruptcy Code. The Trustee has been appointed as the Chapter 7 Trustee for the Debtor's bankruptcy estate.

2. The Debtor is a Delaware corporation that operated a full-service online platform that enabled rental subscription and e-commerce services for women's apparel brands.

3. Christine Hunsicker ("Hunsicker") founded CaaStle and served as both a member of its Board of Directors (the "Board") and its Chief Executive Officer ("CEO") from CaaStle's inception until her resignation as a member of the Board on December 15, 2024, and her resignation as CEO on March 23, 2025.

4. CaaStle is a privately held company. On information and belief, it has in excess of 900 shareholders.

5. According to the July 18, 2025 indictment of Christine Hunsicker filed by the United States Attorney for the Southern District of New York (the "Indictment") and the Complaint filed on July 18, 2025 against Hunsicker by the Securities and Exchange Commission (the "SEC Complaint"):

a. Beginning no later than February 2019 until her indictment in March 2025, CaaStle's CEO Christine Hunsicker knowingly, deliberately, and repeatedly falsified financial statements and audit documents. *See* Indictment at ⁋⁋ 3-15, 20-25; SEC Compl. at ⁋⁋ 33-94;

b. Hunsicker shared doctored financial documents with investors, prospective investors, and the Board of Directors which significantly inflated CaaStle's financial metrics. *See* Indictment at ⁋⁋ 3-15, 20-25; SEC Compl. at ⁋⁋ 33-94; and

c. Rather than informing investors of Hunsicker's fraud, CaaStle executives allowed Hunsicker to remain as CaaStle's CEO and continue to solicit investors for capital while the Board conducted an internal review on Hunsicker. *See* SEC Compl. at ¶¶ 109-120.

6. The Indictment included 6 counts. On March 4, 2026, Hunsicker pleaded guilty to Count 2 of the Indictment, fraud in the purchase and sale of securities. Sentencing has been scheduled for August 2026.

7. CaaStle's revenue never reached a level sufficient to support CaaStle's operations; and despite substantial equity investments, CaaStle's operational performance significantly deteriorated beginning in 2019.

8. According to the Debtor's records,

a. despite being an 8-year-old company as of 2019, CaaStle did not make a profit in any of the years from 2019 to 2024, and revenues declined year-to-year in each of the years over that period. Indeed, substantial operating losses occurred in each of those years;

b. for the Debtor's fiscal year ending September 30, 2023, CaaStle had net losses in excess of $80 million, and for the Debtor's fiscal year ending September 30, 2024, CaaStle had net losses in excess of $71 million; and

c. as of September 30, 2023, the Debtor had unrestricted cash of less than $1 million and current liabilities exceeding $13 million, while as of September 30, 2024, the Debtor had total cash of $4.3 million and current liabilities exceeding $21 million.

9. As a result, from at least 2019 forward, it was clear that CaaStle was not profitable as a business, and survived only by finding new investors to provide capital to the company.

10. At all times relevant hereto, CaaStle was insolvent.

11. At all times relevant hereto, CaaStle's actual balance sheet included as the most valuable asset of the company "Intangible assets, net of accumulated amortization". For example, as of September 30, 2023 such intangible assets were described in the company's actual balance sheet as having a value in excess of $14 million.

12. The company's intangible assets consisted primarily of internally developed software related to the rental apparel business and related patents. CaaStle spent millions of dollars on employee payroll and related costs developing such software and spent over $1 million with respect to its patents, but the actual value of such software and patents was far below the amounts invested by the company.

13. For several years prior to the redemptions which are the subject of this avoidance action, Hunsicker had grossly overstated to investors the financial results of the company. For example, according to the Indictment, falsified reports indicated (a) that the company's operating profit in the second quarter of 2023 was nearly $24 million, while the actual operating profit was less than $30,000; (b) that the company's revenue for 2021 was more than $100 million higher than the actual result; and (c) that the company's net revenue for 2022 was $230 million while the actual net revenue did not exceed $20 million. *See* Indictment at ¶¶ 6-7.

14. Accordingly, at all times relevant hereto, investors in CaaStle held claims against the company based on the gross misrepresentation of financial performance.

15. Not surprisingly, such claims of investors were not reflected in the company's balance sheet. Such claims contributed to the insolvency of the Debtor, but at all times relevant hereto CaaStle was insolvent even without taking such investor claims into account.

16. Further, at all times relevant hereto, CaaStle had inadequate levels of cash, especially in light of its staggering levels of operating losses. Accordingly, CaaStle was engaged

in a business for which the remaining assets of the Debtor were unreasonably small in relation to the business.

17. Further, at all times relevant hereto, in light of CaaStle's sustained inability to make a profit and its staggering operating losses, it is clear that CaaStle intended to incur, or believed or should have believed that the Debtor would incur debts beyond the Debtor's ability to pay as they came due.

18. Despite the staggering operating losses and inadequate cash reserves, a select few shareholders enjoyed the benefit of cashing out their CaaStle stock.

19. Of the more than 900 CaaStle shareholders, approximately 15 individuals, entities, or affiliated entities received payments from CaaStle for redemption of shares in CaaStle. Of these 15 parties, 4 were officers and/or directors of the Debtor and therefore insiders on the basis of their positions as officers and/or directors.

20. Some shareholders were able to redeem their CaaStle stock by threatening to expose the massive fraud Hunsicker orchestrated, and were required to agree to confidentiality provisions in order to redeem their stock.

21. The transfers by CaaStle for the benefit of Defendant Goldenberg were made with actual intent to hinder, delay, or defraud creditors based, <u>inter alia</u>, on the following factors:

a. The transfers were made in furtherance of a scheme to grossly and fraudulently misrepresent the financial performance of the company to investors, and upon information and belief, upon discovery of the scheme to silence certain investors by paying them and requiring them to keep the facts relating to the fraud confidential. The scheme to grossly and fraudulently misrepresent the financial performance of the company to investors was one of the bases for Count 2 of the Indictment, to which Hunsicker has pled guilty;

b. The transfers were made to an insider;

c. The transfers were concealed by requiring Defendant Goldenberg to keep the terms of the transfers confidential and to refrain from disparaging CaaStle;

d. Before the transfers were made, the Debtor had been threatened with the disclosure of the scheme, and threatened with suit regarding such scheme;

e. At the time the transfers were made, the amounts transferred were a substantial portion of the company's cash assets;

f. The transfers enabled the Defendants to receive far more than they would in a liquidation of the Debtor's assets;

g. The value of the consideration received by the Debtor for the transfers were not reasonably equivalent to the value of the assets transferred;

h. The Debtor was insolvent or became insolvent shortly after the transfers were made;

i. No effort was made by the Debtor to value the shares at the time of the redemptions; and

j. The redemptions were made with funds that otherwise could have been made available to pay creditors (thereby hindering, delaying and defrauding them) in order to continue the fraudulent scheme and hide the true financial condition of the Debtor.

22. The Trustee commences this action to recover for the Debtor's estate the sum of at least $3,000,000 (the "Redemption Amount") from Defendant Goldenberg as the party for whose benefit the transfers were made; from the Goldenberg Trust as the initial transferee of the Redemption Amount, and from any immediate or mediate transferee of the initial transferee of the

Redemption Amount, plus, as appropriate and as set forth in more detail below, interest, costs, and attorneys' fees.

**Jurisdiction and Venue**

23. This Court has jurisdiction over the claims raised in this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157 and the Amended Standing Order of Reference issued by the United States District Court for the District of Delaware on February 29, 2012.

24. This adversary proceeding arises under Title 11 and is commenced pursuant to sections 502(d), 548, 550, and 551 of the Bankruptcy Code and Bankruptcy Rules 7001 and 7008.

25. This is a core proceeding pursuant to 28 U.S.C. § 157(b) such that the Court may enter a final order consistent with Article III of the United States Constitution. Pursuant to Rule 7012-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Plaintiff consents to the entry of a final order by the Court in connection with this Complaint to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

26. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**The Parties**

27. Plaintiff is the duly appointed Chapter 7 Trustee for the Debtor's Estate.

28. At all times relevant hereto, CaaStle was a Delaware corporation with a principal place of business in New York, NY.

29. Defendant Goldenberg is a natural person with an address of 21161 Lockhaven Circle, Huntington Beach, CA 92646.

30. Defendant Goldenberg was the Chief Operating Officer of CaaStle from on or about October 12, 2022 until he was appointed as Chief Executive Officer in or about March 2025. Defendant Goldenberg has been a director of CaaStle since on or about January 10, 2025. Defendant Goldenberg was also a stockholder in CaaStle.

31. John Doe 1 is the trustee of the Goldenberg Trust. His or her identity and address are unknown to the Plaintiff. John Doe 1 is named in this Complaint solely in his capacity as a trustee of the Goldenberg Trust.

32. At all times relevant hereto, Defendant Goldenberg was an insider and person in control of the Debtor as those terms are defined in 11 U.S.C. § 101(31).

33. John Does 2-10 are natural persons and/or entities which subsequently received all or a portion of the Redemption Amount from Defendant Goldenberg or the Goldenberg Trust.

**Factual Background**

34. On or about November 7, 2024, CaaStle redeemed 1,395,350 shares of common stock held by Defendant Goldenberg, which stock had been issued on December 30, 2011. Goldenberg received payment for such stock through two transfers: $1,000 transferred on November 7, 2024, and $2,999,000 transferred on November 8, 2024.

35. CaaStle's transfers of the Redemption Amount to the Goldenberg Trust for the benefit of Defendant Goldenberg were made by wire transfer in connection with the repurchase of CaaStle's shares (the "Share Redemption").

36. Defendant Goldenberg was a member of a select group of shareholders of CaaStle who were offered repurchases or redemptions of their shares. The vast majority of CaaStle shareholders were not offered any redemption or repurchase and, as such, did not receive the benefit of a repurchase of their shares.

37. Further, certain shareholders became aware of Hunsicker's fraud and demanded their shares be repurchased in exchange for their silence.

38. At the time the Redemption Amount was paid,

a. CaaStle was insolvent or became insolvent as a result of the transfers, insofar as the fair value of its liabilities exceeded the fair value of its assets;

b. CaaStle was engaged in a business for which the property remaining with CaaStle was unreasonably small capital. For example, according to the Debtor's records, the Debtor's unrestricted cash at the end of fiscal year 2023 was less than $1 million, at a time when its current liabilities exceeded $13 million, and after suffering a net loss in excess of $80 million in fiscal year 2023; and the Debtor's total cash at the end of fiscal year 2024 was $4.3 million, at a time when its current liabilities exceeded $21 million, and after suffering a net loss in excess of $71 million in fiscal year 2024; and

c. CaaStle intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

39. The payment of the Redemption Amount provided little or no value to CaaStle in that in exchange for substantial amounts of money, CaaStle received its own stock, which was effectively worthless or close to worthless.

40. On information and belief, the amounts paid for the redemptions of stock were based not on the then-current actual value of the stock, but rather on the amount originally invested, and/or other factors unrelated to the stock's actual value as of the date of the redemptions.

41. The value received by CaaStle in exchange for the transfers of the Redemption Amount was therefore less than reasonably equivalent value.

42. In connection with the redemption of stock, CaaStle and Defendant Goldenberg executed an agreement (the "Repurchase Agreement") dated November 8, 2024. Pursuant to the terms of the Repurchase Agreement, CaaStle required that Defendant Goldenberg keep the terms of the Repurchase Agreement confidential and that Defendant Goldenberg not disparage CaaStle.

**COUNT I**

**(v. Defendant Goldenberg, John Doe 1 in his capacity as the trustee of the Goldenberg Trust, and Goldenberg Trust)**
**Avoidance of Fraudulent Transfer– 11 U.S.C. §§ 544, 548**
**(Actual Intent)**

43. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

44. The transfers of the Redemption Amount were transfers of an interest of the Debtor in property.

45. The Share Redemption is an avoidable transfer under section 548 of the Bankruptcy Code because it was made on or within two years before the Petition Date and CaaStle made the Share Redemption with actual intent to hinder, delay, or defraud any entity to which CaaStle was or became indebted to on or after the date the transfer was made;

46. Accordingly, Plaintiff seeks avoidance of the transfers of the Redemption Amount and judgment against Defendant Goldenberg, John Doe 1 in his capacity as the trustee of the Goldenberg Trust, and the Goldenberg Trust in the amount of at least the Redemption Amount of $3,000,000, plus interest and costs, and for such other relief as the Court deems appropriate.

**COUNT II**
**(v. Defendant Goldenberg, John Doe 1 in his capacity as the trustee of the Goldenberg Trust, and Goldenberg Trust)**
**Avoidance of Fraudulent Transfer– 11 U.S.C. §§ 544, 548**
**(Less than Reasonably Equivalent Value)**

47. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

48. The transfers of the Redemption Amount were transfers of an interest of the Debtor in property.

49. CaaStle was insolvent at the time of the transfers of the Redemption Amount because the sum of its debts was greater than the value of all of its property, at a fair valuation, exclusive of (a) property transferred, concealed or removed with intent to hinder, delay, or defraud its creditors, and (b) property that may be exempted from property of the estate under 11 U.S.C § 522.

50. The Share Redemption is an avoidable transfer under section 548 of the Bankruptcy Code because it was made on or within two years before the Petition Date, CaaStle received less than a reasonably equivalent value in exchange for the Share Redemption, and:

i. CaaStle was insolvent on the date the Share Redemption was made or became insolvent as a result of the Share Redemption;

ii. CaaStle was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with CaaStle was unreasonably small capital; or

iii. CaaStle intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

51. Accordingly, Plaintiff seeks avoidance of the transfers of the Redemption Amount and judgment against Defendant Goldenberg, John Doe 1 in his capacity as the trustee of the Goldenberg Trust, and the Goldenberg Trust in the amount of at least the Redemption Amount of $3,000,000, plus interest and costs, and for such other relief as the Court deems appropriate.

**COUNT III**
**(v. Defendant Goldenberg, John Doe 1 in his capacity as the trustee of the Goldenberg Trust, and Goldenberg Trust)**
**Avoidance of Fraudulent Transfer– 6 Del. C. §§ 1304 and 1307**
**(Actual Intent)**

52. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

53. Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding a claim that is allowable under 11 U.S.C. § 502.

54. The Share Redemption is an avoidable transfer under Delaware law because it was made on or within four years before the Petition Date and CaaStle made the Share Redemption with actual intent to hinder, delay, or defraud creditors of CaaStle.

55. Accordingly, Plaintiff seeks avoidance of the transfers of the Redemption Amount and judgment against Defendant Goldenberg, John Doe 1 in his capacity as the trustee of the Goldenberg Trust, and the Goldenberg Trust in the amount of at least the Redemption Amount of $3,000,000, plus interest and costs, and for such other relief as the Court deems appropriate.

**<u>COUNT IV</u>**
**(v. Defendant Goldenberg, John Doe 1 in his capacity as the trustee of the Goldenberg Trust, and Goldenberg Trust)**
**Avoidance of Fraudulent Transfer– 6 Del. C. §§ 1304, 1305 and 1307**
**(Less than Reasonably Equivalent Value)**

56. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

57. Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding a claim that is allowable under 11 U.S.C. § 502.

58. CaaStle was insolvent at the time of the transfers of the Redemption Amount because at a fair valuation, the sum of its debts was greater than the sum of all of its assets.

59. The Share Redemption is an avoidable transfer under Delaware law because it was made or incurred on or within four years before the Petition Date and:

a. CaaStle received less than a reasonably equivalent value in exchange for the Share Redemption, and:

i. Pursuant to 11 U.S.C. § 544(b)(1), the Trustee stands in the shoes of one or more creditors whose claim arose before the transfers were made, and CaaStle was insolvent on the date the Share Redemption was made or became insolvent as a result of the Share Redemption;

ii. CaaStle was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or



#125494297v2

iii. CaaStle intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as such debts became due.

60. Accordingly, Plaintiff seeks avoidance of the transfers of the Redemption Amount and judgment against Defendant Goldenberg, John Doe 1 in his capacity as the trustee of the Goldenberg Trust, and the Goldenberg Trust in the amount of at least the Redemption Amount of $3,000,000, plus interest and costs, and for such other relief as the Court deems appropriate.

**COUNT V**
**(v. Defendant Goldenberg, John Doe 1 in his capacity as the trustee of the Goldenberg Trust, and Goldenberg Trust)**
**Avoidance of Voidable Transfer – N.Y. Debt. Cred. L. §§ 273 and 276**
**(Actual Intent)**

61. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

62. In the alternative to Count III, should the Court find that New York law, and not Delaware law, is the applicable state law, Plaintiff brings this claim under the New York Uniform Voidable Transactions Act.

63. Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding a claim that is allowable under 11 U.S.C. § 502.

64. The Share Redemption is an avoidable transfer under New York law because it was made or incurred on or within four years before the Petition Date and CaaStle made the Share Redemption with actual intent to hinder, delay, or defraud any entity to which CaaStle was or became indebted to on or after the date the transfer was made.

65. Accordingly, Plaintiff seeks avoidance of the transfers of the Redemption Amount,

and judgment against Defendant Goldenberg, John Doe 1 in his capacity as the trustee of the Goldenberg Trust, and the Goldenberg Trust in the amount of at least the Redemption Amount of $3,000,000, plus interest and costs, attorneys' fees pursuant to N.Y. Debt. Cred. L. § 276-A, and for such other relief as the Court deems appropriate.

**COUNT VI**
**(v. Defendant Goldenberg, John Doe 1 in his capacity as the trustee of the Goldenberg Trust, and Goldenberg Trust)**
**Avoidance of Voidable Transfer – N.Y. Debt. Cred. L. §§ 273, 274 and 276**
**(Less than Reasonably Equivalent Value)**

66. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

67. In the alternative to Count IV, should the Court find that New York law, and not Delaware law, is the applicable state law, Plaintiff brings this claim under the New York Uniform Voidable Transactions Act.

68. Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding a claim that is allowable under 11 U.S.C. § 502.

69. CaaStle was insolvent at the time of the transfers of the Redemption Amount because at a fair valuation, the sum of its debts was greater than the sum of all of its assets.

70. The Share Redemption is an avoidable transfer under New York law because it was made or incurred on or within four years before the Petition Date, CaaStle received less than a reasonably equivalent value in exchange for the Share Redemption, and:

a. Pursuant to 11 U.S.C. § 544(b)(1), the Trustee stands in the shoes of one or more creditors whose claim arose before the transfers were made, and CaaStle was insolvent on the date the Share Redemption was made or became insolvent as a result of the Share Redemption;

b. CaaStle was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which the remaining assets of CaaStle were unreasonably small in relation to the business or transaction; or

c. CaaStle intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay as such debts became due.

71. Accordingly, Plaintiff seeks avoidance of the transfers of the Redemption Amount, and judgment against Defendant Goldenberg, John Doe 1 in his capacity as the trustee of the Goldenberg Trust, and the Goldenberg Trust in the amount of at least the Redemption Amount of $3,000,000, plus interest and costs, attorneys' fees pursuant to N.Y. Debt. Cred. L. § 276-A, and for such other relief as the Court deems appropriate.

**COUNT VII**
**(v. all Defendants)**
**Recovery against Initial Transferee, the Entity For Whose Benefit the Transfer Was Made, Intermediate and Mediate Transferees – 11 U.S.C. § 550, 6 Del. C. § 1308, N.Y. Debt. Cred. L. §§ 276-A, 277**

72. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

73. The Share Redemption is a voidable transfer under § 550 of the Bankruptcy Code and applicable state law, including 6 Del. C. § 1308, or, as applicable, N.Y. Debt. Cred. L. § 277.

74. Defendant Goldenberg is the entity for whose benefit the transfers were made under 11 U.S.C. § 550(a) and applicable state law, and the Redemption Amount is recoverable from Defendant Goldenberg pursuant to 11 U.S.C. § 550 and applicable state law.

75. The Goldenberg Trust is the initial transferee of the Redemption Amount under 11 U.S.C. § 550(a) and applicable state law, and the Redemption Amount is recoverable from the Goldenberg Trust pursuant to 11 U.S.C. § 550 and applicable state law.

76. To the extent that some or all of the Redemption Amount was subsequently transferred to John Does 2-10, John Does 2-10 are immediate or mediate transferees under 11 U.S.C. § 550(a) and applicable state law, and all or a portion of the Redemption Amount is therefore recoverable from John Does 2-10 pursuant to 11 U.S.C. § 550 and applicable state law.

77. Accordingly, Plaintiff seeks judgment against Defendant Goldenberg, John Doe 1 in his capacity as the trustee of the Goldenberg Trust, the Goldenberg Trust, and John Does 2-10 in the amount of at least $3,000,000, plus interest and costs, and for such other relief as the Court deems appropriate.

78. Further, to the extent that New York state law is applicable, Plaintiff seeks recovery of attorneys' fees pursuant to N.Y. Debt. Cred. L. § 276-A.

## COUNT VIII
## (v. all Defendants)
## Disallowance of Claims – 11 U.S.C. § 502(d)

79. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

80. Defendants are initial transferees, the entity for whose benefit the transfers were made, and/or immediate and mediate transferees of the Share Redemption avoidable under section 548 of the Bankruptcy Code, which is property recoverable under section 550 of the Bankruptcy Code.

81. Defendants have not paid the Redemption Amount, or turned over such property, for which Defendants are liable under section 550 of the Bankruptcy Code.

82. Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of Defendants against the Debtor's estate in this Chapter 7 Case must be disallowed until such time as Defendants pay to Plaintiff an amount equal to the Redemption Amount, plus interest thereon and costs.

**Reservation of Rights**

83. During the course of this proceeding, Plaintiff may learn through discovery or otherwise of additional transfers made to Defendant Goldenberg, the Goldenberg Trust, or John Does 2-10 prior to the Petition Date that may be avoidable under the Bankruptcy Code and/or applicable state law. It is Plaintiff's intention to avoid and recover all avoidable transfers of property made by Debtor to or for the benefit of the Defendants or any other transferee. Plaintiff reserves the right to amend this original Complaint to include, without limitation: (i) further information regarding the Share Redemption; (ii) additional transfers; (iii) modification of and/or revisions to Defendants' name; (iv) additional defendants; and/or (v) additional causes of action (collectively, the "Amendments") that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise. Any such Amendments shall relate back to this original Complaint.

**Requested Relief**

WHEREFORE, the Trustee respectfully demands judgment against Defendant Goldenberg, John Doe 1 in his capacity as the trustee of the Goldenberg Trust, the Goldenberg Trust, and John Does 2-10 as follows:

a. Avoiding the Share Redemption pursuant to section 548 of the Bankruptcy Code;

b. Avoiding the Share Redemption pursuant to sections 1304, 1305 and 1307 of the Delaware Code;

c. In the alternative, should the Court find the New York state law applies rather than Delaware state law, avoiding the Share Redemption pursuant to sections 273, 274 and 276 of the New York Debtor and Creditor Laws;

d. Recovery from Defendant Goldenberg as the entity for whose benefit such transfers were made, and from John Doe 1 in his capacity as the trustee of the Goldenberg Trust and the Goldenberg Trust as the initial transferee, of the monetary value of the Share Redemption, pursuant to section 550 of the Bankruptcy Code, section 1308 of the Delaware Code, and/or section 277 of the New York Debtor and Creditor Laws;

e. Recovery of the monetary value of the Share Redemption from any immediate or mediate transferees of the initial transferee, pursuant to section 550 of the Bankruptcy Code, section 1308 of the Delaware Code, and/or section 277 of the New York Debtor and Creditor Laws;

f. To the extent that New York state law is applicable, attorneys' fees pursuant to N.Y. Debt. Cred. L. § 276-A;

g. Disallowing any claims held by Defendants or John Does 1-10 against the Debtor's Estate until Defendants and John Does 1-10 return the value of the Share Redemption to Plaintiff pursuant to section 502 of the Bankruptcy Code;

h. Awarding Plaintiff interest as may be allowed by law;

i. Awarding Plaintiff costs of suit incurred herein; and

j. Such other and further relief as this Court may deem just and proper.

Dated: March 10, 2026

**DILWORTH PAXSON LLP**

*/s/ Peter C. Hughes*
Peter C. Hughes, Esq. (No. 4180)
800 N. King Street, Suite 202
Wilmington, DE 19801
Telephone: 302-571-9800
Facsimile: 302-571-8875
Email: phughes@dilworthlaw.com

and

Peter C. Hughes, Esq.
Jack Small, Esq.
One Liberty Place
1650 Market St., Suite 1200
Philadelphia, PA 19103
Telephone: (215) 575-7000
Facsimile: (215) 754-4603
Email: phughes@dilworthlaw.com
Email: jsmall@dilworthlaw.com

*Attorneys for George L. Miller, Chapter 7 Trustee*