# <u>EXHIBIT A</u>

[Fee Agreement]



DIRECT DIAL NUMBER:
215-575-7282

Peter C. Hughes
phughes@dilworthlaw.com

September 19, 2025

George L. Miller, Chapter 7 Trustee
8 Penn Center, Suite 950
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103

Re: Engagement Letter- CaaStle Inc Contingency Matters

Dear George:

Dilworth Paxson LLP (the "Firm") is currently representing you in your capacity as the Chapter 7 Trustee for CaaStle Inc., in bankruptcy proceedings pending in the United States Bankruptcy Court for the District of Delaware. In addition to that representation, you have asked the Firm to serve as legal counsel to you in connection with certain adversary actions to be commenced on your behalf as Trustee relating to the CaaStle Inc. bankruptcy case (hereinafter referred to as the "Contingent Actions" or "cases"). The purpose of this letter is to set forth the financial arrangements regarding our engagement for the Contingent Actions and to verify our mutual agreement to the following, all of which is subject to approval by the Bankruptcy Court for the District of Delaware:

1.      Scope of Engagement.

This retention letter is limited to the Contingent Actions, and unless specifically agreed between us, the terms and conditions set forth herein will be limited to those matters. The Contingent Actions shall include those adversary proceedings relating to:

(1)     Avoidance actions commenced to recover preferential payments under 11 U.S.C. 547, 550, or related statutes or theories, whether under state or federal law;

(2)     Avoidance actions commenced to recover fraudulent or otherwise avoidable transfers under 11 U.S.C. 548, 550, or related statutes or theories, whether under state or federal law;

#125170710v1

(3)     Actions against directors and officers and other parties for breach of fiduciary duty, negligence, and/or related causes of action;

(4)     Actions against auditors of the Debtor for negligence, professional malpractice, or related causes of action.

Unless specifically requested, our engagement will not include advice regarding insurance coverage that is or may be available to address the matters for which you have asked us to represent you.

2.     Billing and Contingent Fee Arrangement.

The Firm has agreed to accept the engagement referred to in paragraph 1 above under the following terms and conditions:

(a) if the case is settled prior to trial, the Firm shall be paid a fee equal to THIRTY PERCENT (30%) on the gross amount, if any, recovered; and

(b) if the case proceeds to trial, the Firm shall be paid a fee equal to FORTY PERCENT (40%) on the gross amount, if any, recovered. Notwithstanding this subparagraph, nothing in this Agreement shall be read to require the Firm to continue your representation in the event of an appeal or retrial. Any decision of the Firm not to continue your representation in the event of an appeal or retrial will not affect its entitlement to compensation under this subparagraph.

3.     Costs and Expenses.

The performance of legal services involves costs and expenses, some of which must be paid to third parties. These expenses may include, but are not limited to, filing fees, court reporters, deposition fees, travel costs, messenger services, document hosting services, computerized research expenses and expenses of experts whom we deem appropriate to assist in our representation of you in this matter.

The Firm has agreed to advance the costs and expenses for the cases with the understanding and agreement that those costs and expenses may be periodically submitted to the Bankruptcy Court for approval and payment as administrative expenses of the estates. In the event that (1) funds are available in the estate to pay expenses relating to the cases, (2) the Court has approved payment of such expenses, and (3) you approve the payment of such expenses in your discretion, then expenses relating to a particular Contingent Action may be paid prior to the resolution of such Contingent Action.

4.      Withdrawal from Representation.

The attorney/client relationship is one of mutual trust and confidence. If you have any questions at all about the provisions of this engagement, we invite inquiries. We encourage our clients to inquire about any matter relating to our engagement. Conversely, any failure on your part to meet your obligations under this agreement will constitute authorization for the Firm to withdraw from representing you and to reveal this agreement and any other necessary documents to any court or agency if the same should prove necessary to effect withdrawal.

This engagement is also subject to termination by either party at its sole discretion, subject to the Rules of Professional Conduct and any applicable court rules. Upon such termination, however, you acknowledge that the Firm would be entitled to a quantum meruit recovery for its work on the Contingent Actions which the Firm could seek as an administrative expense of the estates.

5.      Privacy.

In the course of providing you with legal services, we may receive significant nonpublic personal financial information from you or from other financial advisors at your specific instruction. All information that we receive from you or from others at your direction will be held in confidence and not released to people outside the Firm, except as required in the performance of our services, as agreed to by you, or as required under an applicable law. In order to protect your nonpublic personal information we maintain physical, electronic and procedural safeguards. We consider all information relating to representation of our clients to be confidential, and it is treated accordingly, as required by the Rules of Professional Conduct.

6.      Communications.

The Firm regularly communicates with its clients and with third parties, on behalf of its clients, through the use of landline, digital and cellular telephones, wireless email devices, unencrypted e-mail and telecopier machines. Each of these means of communication is practically and technologically susceptible to varying risks of interception by (or misdelivery to) unintended recipients. By executing this agreement, you consent to the Firm's utilization of the above-referenced means of communication.

If you are not fully versed in the risks inherent in each of the aforementioned means of communication, please contact the undersigned to discuss them before executing this agreement. If you would prefer that the Firm refrain from using one or more of the above-referenced means of communication please refrain from executing this agreement, communicate that preference to us in writing, and we will revise this agreement accordingly.

#125170710v1

7.      Acknowledgement of Terms and Court Approval.

If this letter correctly sets forth your understanding of the scope of the services to be rendered to you by the Firm, and if the terms of the engagement are satisfactory, please execute the enclosed copy of this letter and return it to us. If the scope of the services described is incorrect or if the terms of the engagement set forth in this letter are not satisfactory to you, please let us know in writing in order that we can discuss either aspect.

By executing this agreement, you acknowledge that there is uncertainty concerning the outcome of this matter and that the Firm and the undersigned attorneys have made no guarantees as to the disposition of any phase of this matter. Any representation or expression relative to the outcome of this matter is only an expression of opinion and does not constitute a guarantee. The Firm shall not be responsible for the performance of any legal service under this agreement until such agreement is returned to the Firm, and this arrangement is approved by the Bankruptcy Court.

We look forward to working with you and thank you again for the opportunity to serve you.

Very truly yours,

/s/ *Peter C. Hughes*

Peter C. Hughes

Accepted and acknowledged:

BY: _Aerych Mller_

DATE:_____9/19/2025_____

#125170710v1

# DILWORTH PAXSON LLP

## Standard Terms and Conditions of Engagement

Dilworth Paxson LLP (the "Firm") bills for reasonable charges and disbursements incurred in connection with an engagement. Clients are billed for external charges at the actual cost billed by the vendor except in the few cases noted below.

I.  Overview.  These Standard Terms and Conditions of Engagement ("Standard Terms"), along with the Engagement Letter ("Letter"), comprise the Engagement Agreement between you and the Firm and explain the terms under which the Firm will provide legal services.  Any defined term in the Letter shall have the same definition in the Standard Terms.  In the event of a conflict, the provisions of the Letter shall control.

II.  Affiliations by Client.  Client agrees and acknowledges that, unless specifically stated otherwise in the Letter, the Firm has not been engaged to represent any of client's affiliates, subsidiaries, constituents, parents or related individuals, officers, directors, partners, members, shareholders or employees (collectively, "Affiliates").  Client agrees that the Firm's representation of client does not give rise to an attorney-client relationship between the Firm and any of client's Affiliates and will not give rise to any conflict of interest in the event other clients of the Firm are adverse to any of client's Affiliates.

III.  Research Services.  Use of on-line computerized research (primarily Westlaw) and use of outside research services are billed either at the supplier's standard charges for such services, or, if we purchase them through fixed fee arrangements, we will charge you a rate we reasonably apportion to you.

IV.  Travel-Related Expenses.  Travel expenses are billed at cost and include air or rail travel, lodging, car rental, taxis or car service, tips and other reasonable miscellaneous items associated with travel.

V.  Reproduction.  Photocopying performed in-house is charged at 23 cents per page.  Photocopying projects performed by outside vendors are billed at the actual invoice amount.  Special arrangements can be made for unusually large projects.

VI.  Special Services, Items and Equipment.  If, due to the nature of a client's legal needs, special services, items or equipment are purchased and/or used, such as case-specific software or computer equipment, the costs thereof may be charged to the client; provided, however, prior to incurring such costs the client will be notified of the need for and cost of such items.

VII.  Postage and Courier Services.  Outside messenger and express carrier services are charged at the actual vendor invoice amount which frequently involves discounts negotiated by the Firm.  For bulk mailings, registered and/or certified mail, postage is charged at actual U.S. mail rates.  On certain occasions, internal staff may be required to act as messengers; a standard rate is charged for their time.

VIII.  Meals.  Business meals with a client are charged at actual cost.  Breakfast, lunch and dinner meetings with the client at the Firm are charged based on the actual costs of such meals.  Beverage and snack services at the Firm's offices are not charged.

When overtime, weekend or holiday work is required, clients are charged for the actual, reasonable cost of meals for the attorneys and staff who so work specifically for the client.

IX.  Staff Overtime.  Non-attorney staff are paid time and one-half for every hour of overtime worked on weekdays, and double time on weekends and holidays, when such staff are required to work overtime specifically for the client.

X.  Fee and Cost Estimates.  If requested, we will provide our best estimate of anticipated fees and costs related to our engagement, and we will gladly update those estimates at any time.  However, unless we explicitly state otherwise, any such estimates are based only on our assumptions at the time and do not represent either a minimum or a maximum of the amount you will be required to pay.  We do not undertake any obligation to provide you with an estimate or an update of a previous estimate unless you so request.

XI.  File Retention.  Our firm generally maintains its files electronically, and therefore we retain the tangible copy of only certain original documents.  We retain such tangible copies as long as needed for our representation and will return them upon request.  We are able to provide electronic copies of your electronic client file upon request.  Unless you request otherwise, we normally retain files and corporate records for seven years.  After that time, we will dispose of the file content unless you have informed us that you wish to make the file's contents available to you at the end of that period.

XII.  Direct Payment by Clients of Other Disbursements.  Other major disbursements incurred in connection with an engagement will be paid directly by the client.  (Those which are incurred and paid by the Firm will be charged to the client at the actual vendor's invoice amount).  Examples of such major disbursements that clients will pay directly include:

- Professional Fees (including disbursements for outside professional services such as local counsel, accountants, expert witness and other professionals).
- Filing/Court Fees (including disbursements for agency fees for filing documents, standard witness fees, juror fees).
- Transcription Fees (including disbursements for outside transcribing agencies and courtroom stenographer transcripts).
- Transactional and Due Diligence Fees (including recording charges, search fees, good standing certificates and service fees).
- Other Disbursements (including any other required out-of-pocket expenses).
- ESI Hosting Costs (The current expense for hosting electronically stored information on our Casepoint platform is $7 per GB, subject to periodic adjustment.  If another third-party E-Discovery platform is chosen, costs will be based on their current rates).

#125170710v1