## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | x Chapter 7 |
| CaaStle, Inc. | Case No. 25-11187-BLS |
| Debtor. | |
| GEORGE L. MILLER, solely in his capacity as chapter 7 trustee for the bankruptcy estate of CaaStle, Inc., | |
| Plaintiff, | |
| v. | |
| South Main Holdings LLC, Cava Capital LLC, Cava Capital SPV XVI-A LLC, John Robert Geiman, Kevin M. Lynch, Geoff Schneider, and John Does 1-10, | Adv. Pro. No.: |
| | x |

## COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 544, 548 AND 550 AND APPLICABLE STATE LAW, AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502

Plaintiff George L. Miller (the "Plaintiff" or the "Trustee"), solely in his capacity as the Chapter 7 Trustee of the bankruptcy estate of CaaStle Inc. ("CaaStle" or the "Debtor"), by and through undersigned counsel, hereby submits this Complaint to avoid and recover transfers (the "Complaint") against Defendants South Main Holdings LLC ("South Main"), Cava Capital LLC ("Cava"), Cava Capital SPV XVI-A LLC ("Cava SPV"), John Robert Geiman, also known as J. Robert Geiman ("Geiman"), Kevin M. Lynch ("Lynch"), Geoff Schneider ("Schneider") and John Does 1-10 (together with South Main, Cava, Cava SPV, Geiman, Lynch, and Schneider, the "Defendants"), pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), sections 502, 544, 548, and 550 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and applicable state law, and avers as follows:

**Background**

1.      On June 20, 2025 (the "Petition Date"), the Debtor filed for voluntary relief under Chapter 7 of the Bankruptcy Code.  The Trustee has been appointed as the Chapter 7 Trustee for the Debtor's bankruptcy estate.

2.      The Debtor is a Delaware corporation that operated a full-service online platform that enabled rental subscription and e-commerce services for women's apparel brands.

3.      Christine Hunsicker ("Hunsicker") founded CaaStle and served as both a member of its Board of Directors (the "Board") and its Chief Executive Officer ("CEO") from CaaStle's inception until her resignation as a member of the Board on December 15, 2024, and her resignation as CEO on March 23, 2025.

4.      CaaStle is a privately held company.  On information and belief, it has in excess of 900 shareholders.

5.      According to the July 18, 2025 indictment of Christine Hunsicker filed by the United States Attorney for the Southern District of New York (the "Indictment") and the complaint filed on July 18, 2025 against Hunsicker by the Securities and Exchange Commission (the "SEC Complaint"):

a.      Beginning no later than February 2019 until her indictment in March 2025, CaaStle's CEO Christine Hunsicker knowingly, deliberately, and repeatedly falsified financial statements and audit documents. *See* Indictment at ¶¶ 3-15, 20-25; SEC Compl. at ¶¶ 33-94;

b.      Hunsicker shared doctored financial documents with investors, prospective investors, and the Board of Directors which significantly inflated CaaStle's financial metrics. *See* Indictment at ¶¶ 3-15, 20-25; SEC Compl. at ¶¶ 33-94; and

2

c.    Rather than informing investors of Hunsicker's fraud, CaaStle executives allowed Hunsicker to remain as CaaStle's CEO and continue to solicit investors for capital while the Board conducted an internal review on Hunsicker.  *See* SEC Compl. at ¶¶ 109-120.

6.    The Indictment included 6 counts.  On March 4, 2026, Hunsicker pleaded guilty to Count 2 of the Indictment, fraud in the purchase and sale of securities.  Sentencing has been scheduled for August 20, 2026.

7.    CaaStle's revenue never reached a level sufficient to support CaaStle's operations; and despite substantial equity investments, CaaStle's operational performance significantly deteriorated beginning in 2019.

8.    According to the Debtor's records,

a.    despite being an 8-year-old company as of 2019, CaaStle did not make a profit in any of the years from 2019 to 2024, and revenues declined year-to-year in each of the years over that period.  Indeed, substantial operating losses occurred in each of those years;

b.     for the Debtor's fiscal year ending September 30, 2023, CaaStle had net losses in excess of $80 million, and for the Debtor's fiscal year ending September 30, 2024, CaaStle had net losses in excess of $71 million; and

c.    as of September 30, 2023, the Debtor had unrestricted cash of less than $1 million and current liabilities exceeding $13 million, while as of September 30, 2024, the Debtor had total cash of $4.3 million and current liabilities exceeding $21 million.

9.    As a result, from at least 2019 forward, it was clear that CaaStle was not profitable as a business, and survived only by finding new investors to provide capital to the company.

10.    At all times relevant hereto, CaaStle was insolvent.

3

11.     At all times relevant hereto, CaaStle's actual balance sheet included as the most valuable asset of the company "Intangible assets, net of accumulated amortization".  For example, as of September 30, 2023 such intangible assets were described in the company's actual balance sheet as having a value in excess of $14 million.

12.     The company's intangible assets consisted primarily of internally developed software related to the rental apparel business and related patents.  CaaStle spent millions of dollars in employee payroll and related costs developing such software and spent over $1 million with respect to its patents, but the actual value of such software and patents was far below the amounts invested by the company.

13.     For several years prior to the redemptions which are the subject of this avoidance action, Hunsicker had grossly overstated to investors the financial results of the company.  For example, according to the Indictment, falsified reports indicated (a) that the company's operating profit in the second quarter of 2023 was nearly $24 million, while the actual operating profit was less than $30,000; (b) that the company's revenue for 2021 was more than $100 million higher than the actual result; and (c) that the company's net revenue for 2022 was $230 million while the actual net revenue did not exceed $20 million.  *See* Indictment at ¶¶ 6-7.

14.     Accordingly, at all times relevant hereto, investors in CaaStle held claims against the company based on the gross misrepresentation of financial performance.

15.     Not surprisingly, such claims of investors were not reflected in the company's balance sheet.  Such claims contributed to the insolvency of the Debtor, but at all times relevant hereto CaaStle was insolvent even without taking such investor claims into account.

16.     Further, at all times relevant hereto, CaaStle had inadequate levels of cash, especially in light of its staggering levels of operating losses.  Accordingly, CaaStle was engaged

in a business for which the remaining assets of the Debtor were unreasonably small in relation to the business.

17.     Further, at all times relevant hereto, in light of CaaStle's sustained inability to make a profit and its staggering operating losses, it is clear that CaaStle intended to incur, or believed or should have believed that the Debtor would incur debts beyond the Debtor's ability to pay as they came due.

18.     Despite the staggering operating losses and inadequate cash reserves, a select few shareholders enjoyed the benefit of cashing out their CaaStle stock.

19.     Of the more than 900 CaaStle shareholders, approximately 15 individuals, entities, or affiliated entities received payments from CaaStle for redemption of shares in CaaStle.  Of these 15 parties, 4 were officers and/or directors of the Debtor and therefore insiders on the basis of their positions as officers and/or directors.

20.     Some shareholders were able to redeem their CaaStle stock by threatening to expose the massive fraud Hunsicker orchestrated, and were required to agree to confidentiality provisions in order to redeem their stock.

21.     The Trustee files this action to recover certain transfers made by CaaStle totaling $9,250,000 (the "Redemption Amount").  The Trustee seeks recovery from (a) the initial transferee of the transfers, (b) the parties for whose benefit such transfers were made, and (c) the subsequent transferees of such funds.

22.     The transfers by CaaStle of funds in the total amount of the Redemption Amount were made with actual intent to hinder, delay, or defraud creditors based, inter alia, on the following factors:

#125771413v1

a.      The transfers were made in furtherance of a scheme to grossly and fraudulently misrepresent the financial performance of the company to investors, and upon information and belief, upon discovery of the scheme to silence certain investors by paying them and requiring them to keep the facts relating to the fraud confidential.  The scheme to grossly and fraudulently misrepresent the financial performance of the company to investors was one of the bases for Count 2 of the Indictment, to which Hunsicker has pled guilty;

b.      Certain of the  transfers were made for the benefit of an insider of CaaStle, or a party which held itself out as an insider of CaaStle, as in marketing materials prepared by one or more of the Defendants, CaaStle was described  as a "Cava Capital, LLC Portfolio Company";

c.       The Trustee has obtained a draft redemption agreement with respect to certain of the transfers; the Trustee has not yet determined whether such an agreement was actually executed.  In the event such an agreement was executed, then the transfers were concealed by requiring one or more of the Defendants to keep the terms of the transfers confidential and to refrain from disparaging CaaStle;

d.      Before the transfers were made, the Debtor had been threatened with the disclosure of the scheme, and threatened with suit regarding such scheme;

e.      At the time the transfers were made, the amount transferred was a substantial portion of the company's cash assets;

f.      The transfers enabled the Defendants to receive far more than they would in a liquidation of the Debtor's assets;

g.      The value of the consideration received by the Debtor for the transfers was not reasonably equivalent to the value of the assets transferred;

#125771413v1

h.      The Debtor was insolvent or became insolvent shortly after the transfers were made;

i.      No effort was made by the Debtor to value the shares at the time of the redemptions; and

j.      The redemptions were made with funds that otherwise could have been made available to pay creditors (thereby hindering, delaying and defrauding them) in order to continue the fraudulent scheme and hide the true financial condition of the Debtor.

23.     The Trustee commences this action to recover for the Debtor's estate the sum of at least the Redemption Amount of $9,250,000 plus, as appropriate and as set forth in more detail below, interest, costs, and attorneys' fees.

### Jurisdiction and Venue

24.     This Court has jurisdiction over the claims raised in this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157 and the Amended Standing Order of Reference issued by the United States District Court for the District of Delaware on February 29, 2012.

25.     This adversary proceeding arises under Title 11 and is commenced pursuant to sections 502(d), 548, 550, and 551 of the Bankruptcy Code and Bankruptcy Rules 7001 and 7008.

26.     This is a core proceeding pursuant to 28 U.S.C. § 157(b) such that the Court may enter a final order consistent with Article III of the United States Constitution. Pursuant to Rule 7012-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Plaintiff consents to the entry of a final order by the Court in connection with this Complaint to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

#125771413v1

27.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### The Parties

28.     Plaintiff is the duly appointed Chapter 7 Trustee for the Debtor's Estate.

29.     At all times relevant hereto, CaaStle was a Delaware corporation with a principal place of business in New York, NY.

30.     Defendant South Main is a Delaware limited liability company with an address of 679 Post Road, Darien CT 06820.

31.     Defendant Cava is a Delaware limited liability company with a mailing address of 50 Washington Street, Ste 403W, Norwalk, CT 06854 and a principal place of business at 679 Post Road, Darien CT 06820.

32.     Cava describes itself on its website as a development and early-stage investor.

33.     Defendant Cava SPV is a Delaware limited liability company with an address of 679 Post Road, Darien CT 06820.

34.     Defendant Geiman is an adult individual with a business address of 679 Post Road, Darien CT 06820.

35.     Defendant Lynch is an adult individual with a business address of 679 Post Road, Darien CT 06820.

36.     Defendant Schneider is an adult individual residing at 16 Hearthstone Lane, Wilton, CT 06897-2901 and having a business address at 679 Post Road, Darien CT 06820.

37.     On information and belief, Geiman, Lynch, and Schneider are principals of Cava, South Main, and/or Cava SPV.

#125771413v1

38.    John Does 1-10 are natural persons and/or entities which subsequently received all or a portion of the Redemption Amount directly or indirectly from South Main.

### Factual Background

39.    On the dates set forth below, CaaStle transferred by wire a total of $9,250,000. Each transfer was made to South Main as initial transferee in connection with redemption of shares of CaaStle stock (the "Share Redemptions") as follows:

| Transferee | Transfer Date | Amount |
|---|---|---|
| South Main | 04/26/2024 | $2,500,000.00 |
| South Main | 06/04/2024 | $3,750,000.00 |
| South Main | 10/10/2024 | $3,000,000.00 |
| Total: | | $9,250,000.00 |

40.    According to an email from Lynch, the transfers made on April 26, 2024 and June 4, 2024 were made for the benefit of the following individuals and entities as shareholders of CaaStle stock:

| Transfer Date | For the Benefit of: | Amount |
|---|---|---|
| 04/26/2024 | Geiman | $1,200,000.00 |
| 04/26/2024 | Cava | $1,200,000.00 |
| 04/26/2024 | Lynch | $   100,000.00 |
| 06/04/2024 | Geiman | $1,800,000.00 |
| 06/04/2024 | Cava | $1,800,000.00 |
| 06/04/2024 | Lynch | $   150,000.00 |
| Total: | | $6,250,000.00 |

41.    On information and belief, based on a draft redemption agreement prepared with respect to the October 10, 2024 Share Redemption of $3,000,000, such Share Redemption was made for the benefit of Cava SPV as a shareholder of CaaStle stock.

42.    Subsequent to the transfers described in Paragraph 39 above to initial transferee South Main, South Main transferred funds as follows:

#125771413v1

| Initial Transfer Date | Subsequent Transfer Date | Recipient | Amount |
|---|---|---|---|
| 04/26/2024 | 04/26/2024 | Geiman | $2,250,000.00 |
| 04/26/2024 | 04/29/2024 | Geiman | $  122,397.26 |
| 06/04/2024 | 06/04/2024 | Geiman | $1,806,465.75 |
| 06/04/2024 | 06/04/2024 | Cava | $1,796,465.75 |
| 06/04/2024 | 06/04/2024 | Lynch | $  149,671.23 |
| 10/10/2024 | 10/10/2024 | Geiman | $2,010,000.00 |
| 10/10/2024 | 10/11/2024 | Schneider | $  945,000.00 |

43.     The shareholders who received transfers based on redemption of their shares were members of a select group of shareholders of CaaStle who were offered repurchases or redemptions of their shares.  The vast majority of CaaStle shareholders were not offered any redemption or repurchase and, as such, did not receive the benefit of a repurchase of their shares.

44.     Further, certain shareholders became aware of Hunsicker's fraud and demanded their shares be repurchased in exchange for their silence.

45.     At the times the Redemption Amount was paid,

a.     CaaStle was insolvent or became insolvent as a result of the transfers, insofar as the fair value of its liabilities exceeded the fair value of its assets;

b.     CaaStle was engaged in a business for which the property remaining with CaaStle was unreasonably small capital.  For example, according to the Debtor's records, the Debtor's unrestricted cash at the end of fiscal year 2023 was less than $1 million, at a time when its current liabilities exceeded $13 million, and after suffering a net loss in excess of $80 million in fiscal year 2023; and the Debtor's total cash at the end of fiscal year 2024 was $4.3 million, at a time when its current liabilities exceeded $21 million, and after suffering a net loss in excess of $71 million in fiscal year 2024; and

c.     CaaStle intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

10

#125771413v1

46.    The payment of the Redemption Amount provided little or no value to CaaStle in that in exchange for substantial amounts of money, CaaStle received its own stock, which was effectively worthless or close to worthless.

47.    On information and belief, the amount paid for the redemption of stock was based not on the then-current actual value of the stock, but rather on the amount originally invested, and/or other factors unrelated to the stock's actual value as of the date of the redemption.

48.    The value received by CaaStle in exchange for the transfers of the Redemption Amount was therefore less than reasonably equivalent value.

**COUNT I**
**(v. All Defendants)**
**Avoidance of Fraudulent Transfer– 11 U.S.C. §§ 544, 548**
**(Actual Intent)**

49.    Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

50.    The transfers totaling the Redemption Amount were transfers of interests of the Debtor in property.

51.    The Share Redemptions are avoidable transfers under section 548 of the Bankruptcy Code because they were made on or within two years before the Petition Date and CaaStle made the Share Redemptions with actual intent to hinder, delay, or defraud any entity to which CaaStle was or became indebted to on or after the date the transfers were made;

52.    Accordingly, Plaintiff seeks avoidance of the transfers totaling the Redemption Amount, and judgment providing for such avoidance and recovery from the Defendants in the amounts set forth in Count VII of the Complaint,  and with respect to each Defendant, interest and costs, and such other relief as the Court deems appropriate.

11

## COUNT II
### (v. All Defendants)
### Avoidance of Fraudulent Transfer– 11 U.S.C. §§ 544, 548
### (Less than Reasonably Equivalent Value)

53.     Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

54.     The transfers in the total amount of the Redemption Amount were transfers of interests of the Debtor in property.

55.     CaaStle was insolvent at the time of the transfers of the Redemption Amount because the sum of its debts was greater than the value of all of its property, at a fair valuation, exclusive of (a) property transferred, concealed or removed with intent to hinder, delay, or defraud its creditors, and (b) property that may be exempted from property of the estate under 11 U.S.C § 522.

56.     The Share Redemptions are avoidable transfers under section 548 of the Bankruptcy Code because they were made on or within two years before the Petition Date, CaaStle received less than a reasonably equivalent value in exchange for the Share Redemptions, and:

> i.     CaaStle was insolvent on the date the Share Redemptions were made or became insolvent as a result of the Share Redemptions;

> ii.     CaaStle was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with CaaStle was unreasonably small capital; or

> iii.     CaaStle intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

57.     Accordingly, Plaintiff seeks avoidance of the transfers totaling the Redemption Amount, and judgment providing for such avoidance and recovery from the Defendants in the

#125771413v1

amounts set forth in Count VII of the Complaint, and with respect to each Defendant, interest and costs, and such other relief as the Court deems appropriate.

## COUNT III
### (v. All Defendants)
### Avoidance of Fraudulent Transfer– 6 Del. C. §§ 1304 and 1307
### (Actual Intent)

58.     Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

59.     Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding a claim that is allowable under 11 U.S.C. § 502.

60.     The Share Redemptions are avoidable transfers under Delaware law because they were made on or within four years before the Petition Date and CaaStle made the Share Redemptions with actual intent to hinder, delay, or defraud creditors of CaaStle.

61.     Accordingly, Plaintiff seeks avoidance of the transfers totaling the Redemption Amount, and judgment providing for such avoidance and recovery from the Defendants in the amounts set forth in Count VII of the Complaint, and with respect to each Defendant, interest and costs, and such other relief as the Court deems appropriate.

## COUNT IV
### (v. All Defendants)
### Avoidance of Fraudulent Transfer– 6 Del. C. §§ 1304, 1305 and 1307
### (Less than Reasonably Equivalent Value)

62.     Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

63.     Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding a claim that is allowable under 11 U.S.C. § 502.

13

64. CaaStle was insolvent at the time of the transfers of the Redemption Amount because at a fair valuation, the sum of its debts was greater than the sum of all of its assets.

65. The Share Redemptions are avoidable transfers under Delaware law because they were made or incurred on or within four years before the Petition Date and:

a. CaaStle received less than a reasonably equivalent value in exchange for the Share Redemptions, and:

i. Pursuant to 11 U.S.C. § 544(b)(1), the Trustee stands in the shoes of one or more creditors whose claim arose before the transfers were made, and CaaStle was insolvent on the dates the Share Redemptions were made or became insolvent as a result of the Share Redemptions;

ii. CaaStle was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or

iii. CaaStle intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as such debts became due.

66. Accordingly, Plaintiff seeks avoidance of the transfers totaling the Redemption Amount, and judgment providing for such avoidance and recovery from the Defendants in the amounts set forth in Count VII of the Complaint, and with respect to each Defendant, interest and costs, and such other relief as the Court deems appropriate.

#125771413v1

## COUNT V
### (v. All Defendants)
### Avoidance of Voidable Transfer – N.Y. Debt. Cred. L. §§ 273 and 276
### (Actual Intent)

67.     Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

68.     In the alternative to Count III, should the Court find that New York law, and not Delaware law, is the applicable state law, Plaintiff brings this claim under the New York Uniform Voidable Transactions Act.

69.     Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding a claim that is allowable under 11 U.S.C. § 502.

70.     The Share Redemptions are avoidable transfers under New York law because they were made or incurred on or within four years before the Petition Date and CaaStle made the Share Redemptions with actual intent to hinder, delay, or defraud any entity to which CaaStle was or became indebted to on or after the dates the transfers was made.

71.     Accordingly, Plaintiff seeks avoidance of the transfers totaling the Redemption Amount, and judgment providing for such avoidance and recovery from the Defendants in the amounts set forth in Count VII of the Complaint, and with respect to each Defendant, interest and costs, attorneys' fees pursuant to N.Y. Debt. Cred. L. § 276-A, and for such other relief as the Court deems appropriate.

## COUNT VI
### (v. All Defendants)
### Avoidance of Voidable Transfer – N.Y. Debt. Cred. L. §§ 273, 274 and 276
### (Less than Reasonably Equivalent Value)

72.     Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

15

#125771413v1

73.     In the alternative to Count IV, should the Court find that New York law, and not Delaware law, is the applicable state law, Plaintiff brings this claim under the New York Uniform Voidable Transactions Act.

74.     Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding a claim that is allowable under 11 U.S.C. § 502.

75.     CaaStle was insolvent at the time of the transfers of the Redemption Amount because at a fair valuation, the sum of its debts was greater than the sum of all of its assets.

76.     The Share Redemptions are avoidable transfers under New York law because they were made or incurred on or within four years before the Petition Date, CaaStle received less than a reasonably equivalent value in exchange for the Share Redemptions, and:

a.     Pursuant to 11 U.S.C. § 544(b)(1), the Trustee stands in the shoes of one or more creditors whose claim arose before the transfer was made, and CaaStle was insolvent on the date the Share Redemptions were made or became insolvent as a result of the Share Redemptions;

b.     CaaStle was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which the remaining assets of CaaStle were unreasonably small in relation to the business or transaction; or

c.     CaaStle intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay as such debts became due.

77.     Accordingly, Plaintiff seeks avoidance of the transfers totaling the Redemption Amount, and judgment providing for such avoidance and recovery from the Defendants in the amounts set forth in Count VII of the Complaint, and with respect to each defendant, interest and costs, attorneys' fees pursuant to N.Y. Debt. Cred. L. § 276-A, and such other relief as the Court

16

deems appropriate.

## COUNT VII
### (v. all Defendants)
**Recovery against Initial Transferee, the Entity For Whose Benefit the Transfer Was Made, Intermediate and Mediate Transferees – 11 U.S.C. § 550, 6 Del. C. § 1308, N.Y. Debt. Cred. L. §§ 276-A, 277**

78.    Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

79.    The Share Redemptions are voidable transfers under § 550 of the Bankruptcy Code and applicable state law, including 6 Del. C. § 1308, or, as applicable, N.Y. Debt. Cred. L. § 277.

80.    At set forth in paragraph 39 above, South Main was the initial transferee of each of the transfers totaling the Redemption Amount under 11 U.S.C. § 550(a) and applicable state law, and the Redemption Amount is therefore recoverable from South Main as the initial transferee pursuant to 11 U.S.C. § 550 and applicable state law.

81.    At set forth in paragraphs 40 and 41 above, the transfers totaling the Redemption Amount were made for the benefit of the following:

| Transfer Date | For the Benefit of: | Amount |
|---|---|---|
| 04/26/2024 | Geiman | $1,200,000.00 |
| 04/26/2024 | Cava | $1,200,000.00 |
| 04/26/2024 | Lynch | $   100,000.00 |
| 06/04/2024 | Geiman | $1,800,000.00 |
| 06/04/2024 | Cava | $1,800,000.00 |
| 06/04/2024 | Lynch | $   150,000.00 |
| 10/10/2024 | Cava SPV | $3,000,000.00 |
| Total: | | $9,250,000.00 |

The amounts set forth above in this paragraph are therefore recoverable from the respective Defendants above as parties for whose benefit the transfers were made pursuant to 11 U.S.C. § 550(a) and applicable state law.

17

#125771413v1

82.     As set forth in paragraph 42 above, the transfers totaling the Redemption Amount were subsequently transferred from South Main to the following:

| Initial Transfer Date | Subsequent Transfer Date | Recipient | Amount |
|---|---|---|---|
| 04/26/2024 | 04/26/2024 | Geiman | $2,250,000.00 |
| 04/26/2024 | 04/29/2024 | Geiman | $ 122,397.26 |
| 06/04/2024 | 06/04/2024 | Geiman | $1,806,465.75 |
| 06/04/2024 | 06/04/2024 | Cava | $1,796,465.75 |
| 06/04/2024 | 06/04/2024 | Lynch | $ 149,671.23 |
| 10/10/2024 | 10/10/2024 | Geiman | $2,010,000.00 |
| 10/10/2024 | 10/11/2024 | Schneider | $ 945,000.00 |

The amounts set forth above in this paragraph are therefore recoverable from the respective Defendants above as the parties to whom the Redemption Amount was subsequently transferred pursuant to 11 U.S.C. § 550(a) and applicable state law.

83.     To the extent that some or all of the Redemption Amount was subsequently transferred from South Main or the parties set forth in paragraph 82 above to John Does 1-10, John Does 1-10 are immediate or mediate transferees under 11 U.S.C. § 550(a) and applicable state law, and all or a portion of the Redemption Amount is therefore recoverable from John Does 1-10 pursuant to 11 U.S.C. § 550 and applicable state law.

84.     Accordingly, Plaintiff seeks judgment against the Defendants in at least the following amounts:

| Party | Total Amount | Basis |
|---|---|---|
| South Main | $ 9,250,000 | Initial Transferee of all transfers |
| Cava | $ 3,000,000 | $1,200,000 transferred for its benefit on 4/26/2024<br><br>$1,800,000 transferred for its benefit on 06/04/2024<br><br>$1,796,465.75 of the 06/04/2024 transfer was subsequently |

18

| | | |
|---|---|---|
| | | transferred to it<br><br>The Trustee therefore seeks to recover from Cava $1,200,000 with respect to the 4/26/2024 transfer by the Debtor, plus $1,800,000 with respect to the 6/4/2024 transfer by the Debtor, for a total of $3,000,000. |
| Cava SPV | $ 3,000,000 | $3,000,000 transferred for its benefit on 10/10/2024 |
| Geiman | $ 6,193,863.01 | $1,200,000 of the 4/26/2024 transfer was for his benefit and $2,377,397.26 of the 4/26/2024 transfer was subsequently transferred to him by the initial transferee<br><br>$1,800,000 of the 6/4/2024 transfer was for his benefit and $1,806,465.75 of the 6/4/2024 transfer was transferred to him by the initial transferee<br><br>$2,010,000 of 10/10/2024 transfer was transferred to him by the initial transferee<br><br>The Trustee therefore seeks to recover from Geiman $2,377,397.26 with respect to the 4/26/2024 transfer by the Debtor, plus $1,806,465.75 with respect to the 6/4/2024 transfer by the Debtor, plus $2,010,000 with respect to the 10/10/2024 transfer by the Debtor, for a total of $6,193,863.01 |
| Lynch | $ 250,000 | $100,000 of 4/26/2024 transfer was for his benefit<br><br>$150,000 of 6/4/2024 transfer was for his benefit and $149,71.23 of the 6/4/2024 transfer was transferred to him by the initial transferee |

19

| | | |
|---|---|---|
| | | The Trustee therefore seeks to recover from Lynch $100,000 with respect to the 4/26/2024 transfer by the Debtor, plus $150,000 with respect to the 6/4/2024 transfer by the Debtor, for a total of $250,000 |
| Schneider | $  945,000 | $945,000 of 10/10/2024 transfer was transferred to him by the initial transferee |

and judgment against John Does 1-10 in the amount transferred to each such Defendant, and with respect to each Defendant interest and costs, and such other relief as the Court deems appropriate.

85.    Further, to the extent that New York state law is applicable, Plaintiff seeks recovery of attorneys' fees pursuant to N.Y. Debt. Cred. L. § 276-A.

86.    The total of all amounts set forth in paragraph 84 above exceeds the total Redemption Amount of $9,250,000, but with respect to each of the Share Redemption transactions, the Trustee does not seek to recover in excess of the amount initially transferred by the Debtor; instead, the Trustee seeks only a single satisfaction with respect to each Share Redemption transaction, plus interest, costs, and attorneys fees as applicable.

## COUNT VIII
### (v. all Defendants)
### Disallowance of Claims – 11 U.S.C. § 502(d)

86.    Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

87.    Defendants are initial transferees, the entity for whose benefit the transfer was made, and/or immediate and mediate transferees of the Share Redemptions avoidable under section 548 of the Bankruptcy Code, which is property recoverable under section 550 of the Bankruptcy Code.

20

#125771413v1

88.     Defendants have not paid the Redemption Amount, or turned over such property, for which Defendants are liable under section 550 of the Bankruptcy Code.

89.     Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of Defendants against the Debtor's estate in this Chapter 7 Case must be disallowed until such time as Defendants pay to Plaintiff an amount equal to the Redemption Amount, plus interest thereon and costs.

## Reservation of Rights

90.     During the course of this proceeding, Plaintiff may learn through discovery or otherwise of additional transfers made prior to the Petition Date that may be avoidable under the Bankruptcy Code and/or applicable state law.  It is Plaintiff's intention to avoid and recover all avoidable transfers of property made by Debtor to or for the benefit of the Defendants or any other transferee.  Plaintiff reserves the right to amend this original Complaint to include, without limitation: (i) further information regarding the Share Redemptions; (ii) additional transfers; (iii) modification of and/or revisions to Defendants' name; (iv) additional defendants; and/or (v) additional causes of action (collectively, the "Amendments") that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise.  Any such Amendments shall relate back to this original Complaint.

## Requested Relief

WHEREFORE, the Trustee respectfully demands judgment against Defendants as follows:

a.     Avoiding the Share Redemptions pursuant to section 548 of the Bankruptcy Code;

b.     Avoiding the Share Redemptions pursuant to sections 1304, 1305 and 1307 of the Delaware Code;

#125771413v1

c.      In the alternative, should the Court find the New York state law applies rather than Delaware state law, avoiding the Share Redemptions pursuant to sections 273, 274 and 276 of the New York Debtor and Creditor Laws;

d.      Recovery against the Defendants in at least the amounts set forth in paragraph 84 above, pursuant to section 550 of the Bankruptcy Code, section 1308 of the Delaware Code, and/or section 277 of the New York Debtor and Creditor Laws, as the initial transferee of the Share Redemptions, the party for whose benefit the Share Redemptions were made, or as transferees from the initial transferee, as applicable with respect to each of the transfers;

e.      Recovery against John Does 1-10 pursuant to section 550 of the Bankruptcy Code, section 1308 of the Delaware Code, and/or section 277 of the New York Debtor and Creditor Laws, as immediate or mediate transferees of the initial transferee of the Share Redemptions in the amount of such transfers;

f.      To the extent that New York state law is applicable, attorneys' fees pursuant to N.Y. Debt. Cred. L. § 276-A;

g.      Disallowing any claims held by Defendants or John Does 1-10 against the Debtor's Estate until Defendants and John Does 1-10 return the value of the Share Redemptions to Plaintiff pursuant to section 502 of the Bankruptcy Code;

h.      Awarding Plaintiff interest as may be allowed by law;

i.      Awarding Plaintiff costs of suit incurred herein; and

j.      Such other and further relief as this Court may deem just and proper.

Dated: August 12, 2026                          **DILWORTH PAXSON LLP**

                                                */s/ Peter C. Hughes*
                                                Peter C. Hughes, Esq. (No. 4180)
                                                800 N. King Street, Suite 202

#125771413v1

Wilmington, DE 19801
Telephone:      302-571-9800
Facsimile:      302-571-8875
Email:          phughes@dilworthlaw.com

                And

Peter C. Hughes, Esq.
Jack Small, Esq.
One Liberty Place
1650 Market St., Suite 1200
Philadelphia, PA 19103
Telephone:      (215) 575-7000
Facsimile:      (215) 754-4603
Email:          phughes@dilworthlaw.com
Email:          jsmall@dilworthlaw.com

*Attorneys for George L. Miller, Chapter 7 Trustee*

23

#125771413v1