**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| CaaStle, Inc., | Case No. 25-11187 (BLS) |
| Debtor. | |

**MOTION OF P180, INC. FOR (I) LIMITED DISCOVERY**
**IN CONNECTION WITH THE TRUSTEE'S RULE 9019 MOTION**
**AND (II) A CONTINUANCE OF THE HEARING THEREON**

P180, Inc. ("P180"), by and through its undersigned counsel, respectfully moves (the "Motion") this Court for an order (i) permitting P180 to conduct limited discovery in connection with the Trustee's Motion for Approval of Settlement Agreement [D.I. 241] (the "9019 Motion"), and (ii) continuing the hearing on the 9019 Motion, currently scheduled for September 30, 2026, until such discovery is complete. In support of this Motion, P180 states as follows:

## PRELIMINARY STATEMENT

1. The Trustee seeks court approval, pursuant to Federal Rule of Bankruptcy Procedure 9019, of a settlement that would release claims that the Adversary Complaint in *Miller v. Hunsicker, et al.,* Adv. Pro. No. 26-50225 (the "D&O Action") values at approximately $300 million for total consideration of $3.5 million—approximately one cent on the dollar. It seeks approval without providing creditors or the Court with the underlying documents needed to evaluate that compromise.

2. P180 is entitled to test the Trustee's claim that this low recovery is the best that the estate can do. ***First***, P180 must be permitted to test the Trustee's assertion that the settlement is in the best interest of creditors. P180 has substantial doubts. The record does not support it, indeed the Trustee has given little more than his say-so on the settlement's reasonableness,

without explaining why a strong and persuasive Adversary Complaint filed just months ago should be compromised for 1% of its value despite deep-pocketed, solvent defendants. ***Second***, if the Trustee will not pursue the claims, P180 may. Litigation claims are an asset of the estate, and a settlement that will result in minimal recoveries for creditors should not be approved when there are parties interested in purchasing the claims. P180 may be willing to bid higher than the insurance proceeds—but it needs documents to assess the value of the claim in order to do so.

3. Before seeking this relief from the Court, counsel for P180 conferred with counsel for the Trustee. Counsel for P180 described the general documents that are requested below and their importance to assessing the claims. When counsel for the Trustee expressed concern regarding CaaStle's millions of documents, counsel for P180 acknowledged the challenge and made clear that P180 is presently looking for documents that have already been assembled—whether to produce the complaint or assess the claims or analyze settlement—and that anything beyond that is likely very limited.

4. Discovery will only benefit this proceeding. Either the Court will develop a more fulsome record, by way of party presentation, regarding the reasonableness of the Trustee's settlement, or a creditor (perhaps even P180) will acquire the claims at a higher price.

5. This benefits the Court, which must independently canvass the *Martin* factors—(1) the probability of success in litigation, (2) the likely difficulties in collection, (3) the complexity and expense of the litigation, and (4) the paramount interest of creditors—and determine whether the settlement falls within the range of reasonableness before approving any compromise. *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). That inquiry should not be conducted on a

"largely conclusory record." *In re Spansion, Inc.*, No. 09-10690 (KJC), 2009 WL 1531788, at *9 (Bankr. D. Del. June 2, 2009).

6. It also benefits the Estate, as the claims are likely worth more than $3.5 million and independent bidding may demonstrate as much.

7. There is also little burden of this discovery. The requests below are targeted to helping P180 (and any other interested party) assess the reasonableness of the settlement and the value of the claims for its bid. The Trustee has likely already compiled most, if not all, of them in order to build its complaint and assess the value of the settlement. Moreover, the Trustee has already agreed to produce some of this to P180 in a separate but related litigation.

8. P180 and the Court need these documents to determine whether $3.5 million falls within the range of reasonableness for claims the Trustee's own Adversary Complaint values at approximately $300 million. Accordingly, P180 respectfully requests an order directing the Trustee to produce narrowly defined categories of documents within five (5) days and in no event less than three (3) business days before the hearing on the Trustee's motion to approve the settlement. Additionally, P180 requests that the Court continue the September 30, 2026 hearing until that discovery is complete. There is time to conduct this basic diligence on the settlement before the Trustee's self-imposed 60-day deadline in the settlement agreement and, in any event, the fact that the Trustee agreed to a self-imposed deadline to receive Court approval does not constrain this Court, particularly when the Trustee has not sought to determine if there is any serious prospect that the Defendants would withdraw from a highly defendant-friendly settlement even if that period passed.

## BACKGROUND

9. P180 incorporates herein the background section from its concurrently-filed Objection to the Trustee's motion to approve settlement agreement. It provides the following as context particularly for this Motion.

### A. The 9019 Motion and Proposed Settlement

10. On September 9, 2026, the Chapter 7 Trustee filed a 9019 Motion [D.I. 241] seeking approval of a settlement agreement with five former officers and directors of CaaStle, Inc. (collectively, the "Management Defendants"). The settlement would release all claims against the Management Defendants in exchange for aggregate consideration of $3.5 million. D.I. 241 ¶ 17.

11. The claims being released are the subject of D&O Acion in which the Trustee's complaint (the "Adversary Complaint") alleges damages of approximately $300 million arising from the Management Defendants' alleged breach of fiduciary duties, mismanagement, and waste of corporate assets. Adversary Complaint ¶¶ 1, 16, 241, 261–296, 312–332, 333–360.

12. The Trustee's motion is currently set for hearing on September 30, 2026 at 11:00 a.m.

### B. P180's Interest and Standing

13. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334, which has been referred to this Court pursuant to the Amended Standing Order of Reference of the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Pursuant to Local Rule 9013-1(f), P180 consents to the entry by this Court of a final order in connection with this Motion.

14. The predicates for the relief requested in this Motion are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 7026 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 7026-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

15. Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), P180 consents to the entry of a final judgment or order with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**C. P180's Interest and Standing**

16. P180 is a creditor of the Estate. P180 filed Proof of Claim No. 89, which it values in excess of $55 million. Proof of Claim of P180, Inc., In re CaaStle Inc., No. 25-11187 (BLS) (Bankr. D. Del. Sept. 28, 2025), Claim No. 89, Attachment 1 at ¶ 6. As a creditor and party in interest, P180 is entitled to an opportunity to be heard on the 9019 Motion and has standing to seek discovery in connection with it. *See* 11 U.S.C. § 1109(b); Fed. R. Bankr. P. 2002(a)(3), 9014(c)(1), 9019(a).

**D. The Prior Subpoena in Another Case and the Trustee's Agreement to Produce**

17. On August 19, 2026, P180 served a subpoena pursuant to Federal Rule of Civil Procedure 45 on Trustee George L. Miller in connection with P180's case pending New York, *P180, Inc. v. Singh, et al.*, (S.D.N.Y. No. 25-cv-4432) (the "SDNY Action"). The subpoena sought production of various categories of documents, including some relevant to the 9019 Motion, such as CaaStle's board minutes and meeting materials, documents quoted or cited in the Adversary Complaint, communications with and between the Management Defendants, and others.

18. On September 8, 2026, the Trustee, through his counsel, served written Responses and Objections to P180's subpoena. Attached as Exhibit A to the *Declaration of Conor Tucker* filed contemporaneously. While the Trustee asserted various objections, he agreed to produce certain documents, including: CaaStle board minutes and materials provided to board members (Ex. A, Request No. 37); documents concerning the appointment, resignation, and tenure of CaaStle's directors and officers, including Hennessy's December 6, 2024 resignation letter (Ex. A, Request No. 43); and documents underlying specific allegations against the Management Defendants in the Adversary Complaint, including those concerning the auditor and alleged falsified audit reports (Ex. A, Request No. 39) and CaaStle's reported financial condition (Ex. A, Request Nos. 40–42).[1]

19. P180 does not seek to resolve the Trustee's objections, or its challenges thereto, in this Motion. P180 references this merely to point out that the Trustee has already agreed to produce much of what P180 seeks below. Given the pending 9019 Motion, expedited production of those documents is warranted.

### E. The Expert-Fee Motion

20. On September 18, 2026, the Trustee filed a Motion to Authorize Payment of Expert Witness Fees and Costs (the "Expert-Fee Motion") pursuant to 11 U.S.C. §§ 105(a) and 363(b) (D.I. 246). The Expert-Fee Motion confirms that the Trustee has engaged expert witnesses whose reports and professional opinions bear directly on the value and merits of the claims being released under the proposed settlement.

[1] P180 does not seek to litigate the subpoena here. It is in the process of reviewing those responses and conferring with the Trustee. But P180 notes this here because the Trustee's own agreement to produce some of these materials supports directing their production in connection with the 9019 Motion so that the Court has an adequate record.

## ARGUMENT

### I. P180 IS ENTITLED TO DISCOVERY IN CONNECTION WITH THE 9019 MOTION

21. P180 is entitled to discovery in connection with a 9019 motion for two related reasons.

22. ***First***, P180 is entitled to test the reasonableness of the proposed settlement.

23. Federal Rule of Bankruptcy Procedure 9019(a) requires the Court to determine that a proposed settlement is "fair, reasonable, and in the interest of the estate" before granting approval. *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997); *In re Key3Media Grp., Inc.,* 336 B.R. 87, 92 (Bankr. D. Del. 2005). The Court "cannot simply rubber stamp the agreement or merely rely upon the [Trustee's] word that the settlement is reasonable." *In re Woodberry*, 629 B.R. 239, 243–44 (Bankr. E.D. Mich. 2021). Rather, it "is charged with an affirmative obligation to apprise itself of the underlying facts and to make an independent judgment as to whether the compromise is fair and equitable." *Ibid.*; *accord In re Key3Media Grp., Inc.*, 336 B.R. at 93.

24. In determining reasonableness, the Court must assess each of the *Martin* factors: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors, with proper deference to their reasonable views. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). These factors are do not require the Court to "have a 'mini-trial' on the merits," but the Court must still "canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *In re Key3Media Grp., Inc.*, 336 B.R. at 92 (quotation omitted). The Trustee "carr[ies] a burden of persuasion to provide the court with sufficient information to conclude that the compromise falls within the reasonable range of litigation possibilities." *Id.* at 93.

25. The Trustee's motion and declaration primarily focus on the complexity of the litigation involved and the length of time it will take to obtain a judgment. *See* D.I. 241 ¶¶ 23–25, 29; D.I. 245 ¶¶ 10–12. Very little is said about the probability of success in the litigation; and what is said about collectability of the award is difficult to reconcile with the fact that several of the Management Defendants are individuals with substantial assets. *Cf.* D.I. 245 ¶ 12.

26. P180 seeks to test the Trustee's belief that $3.5 million is within the "reasonable" range of litigation possibilities. The Trustee's Adversary Complaint fulsomely documents breaches of duties by the Management Defendants for years, including hundreds of millions of dollars raised on false pretenses that would have been exposed by even rudimentary corporate governance acts such as asking for audited financial statements. Adv. Compl. ¶¶ 19, 93–95, 97, 241. But mere months after filing the Adversary Complaint claiming nearly $300,000,000 in damages, the Trustee now proposes to accept roughly 1% of the claims' pleaded value.

27. In order to appraise the settlement, P180 needs to see the documents referenced in the Adversary Complaint, any expert analyses commissioned, board minutes, and communications with the Management Defendants in order to understand why—before any discovery has been taken—the Trustee has determined that the very strong case he laid out in the Adversary complaint has all but vanished.

28. ***Second***, P180—or another creditor—may want to purchase these claims. It is entirely possible that a creditor values these claims at more, or much more, than $3.5 million and is willing to undertake the litigation work (while the Trustee apparently is not) to obtain that recovery.

29. "[T]he disposition by way of 'compromise' of a claim that is an asset of the estate is the equivalent of a sale of the intangible property represented by the claim," implicating both

Section 363 and Rule 9019(a). *In re Mickey Thompson Ent. Grp., Inc.*, 292 B.R. 415, 421 (B.A.P. 9th Cir. 2003); *accord Martin*, 91 F.3d at 394–95; *Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350 (3d Cir. 1999). The Estate must thus maximize the value of that asset and the Court "is obliged to consider, as part of the 'fair and equitable' analysis, whether any property of the estate that would be disposed of in connection with the settlement might draw a higher price through a competitive process and be the proper subject of a section 363 sale." *Mickey Thompson,* 292 B.R. at 421–22. That inquiry is impossible in an information vacuum. "[T]he possibility that someone else may be willing to pay a higher price triggers the prospect of an auction that could yield an even higher price." *Id.* at 422.

30. But no prospective purchaser can price the D&O claims, and no market test can be meaningful, without the board minutes, communications, transaction records, and expert analyses that establish what the claims are worth. *Cf. Spansion*, 2009 WL 1531788, at *5 (settlement value could not be evaluated where the record lacked the information necessary to value the underlying claims). Consistent with the value-maximization duty, the estate's representative "has an obligation to present all relevant facts to the court, including whether there is a more attractive solution than that which the trustee has negotiated." *Mickey Thompson*, 292 B.R. at 421.

31. P180 seeks the information necessary to make an informed bid, so that any disposition of the D&O claims, whether through the proposed settlement or through sale to the highest bidder, proceeds on a fully-informed basis.

32. Whichever path the estate ultimately follows, the predicate is the same: the disposition must be informed, and P180 is entitled to the discovery that would make it so.

33. ***Moreover***, there is little burden to the Estate to provide the materials requested. Most of the materials were collected and reviewed to create the Complaint; the remainder to assess the settlement's prospects. Moreover, basic documents like Board materials presumably must have been collected and considered previously; it is difficult to imagine a fiduciary duty action being filed or settled without them having been collected or reviewed.

34. On top of that, the Trustee has already agreed to provide some of this discovery to P180. In August, P180 served a subpoena under Federal Rule of Civil Procedure 45 on Trustee George L. Miller. That subpoena was issued in litigation in the Southern District of New York, *P180, Inc. v. Singh et al.*, No. 25-cv-4432 (S.D.N.Y. May 27, 2025) that P180 has brought against individuals (including P180's former directors and officers, some of whom were also CaaStle's directors and officers). Some documents responsive to those requests overlap with documents responsive to the requests here. On September 8, 2026 the Trustee served written Responses and Objections. The Trustee agreed to produce responsive, non-privileged documents as to some of the subjects at issue here, including documents concerning CaaStle's board meetings and minutes and documents underlying specific allegations against the Management Defendants in the adversary complaint. But none have been produced yet.

## II. A SHORT CONTINUANCE OF THE HEARING IS WARRANTED

35. The current September 30, 2026 hearing date does not afford sufficient time to conduct even targeted, limited discovery. The documents at issue are in the Trustee's possession but they have not yet been produced, reviewed, or evaluated. A short continuance is necessary to allow time for that production and for P180 and the Court to review and consider the materials.

36. A short continuance is also necessary to allow P180 and potentially other creditors to assess the discovery responses in connection with making offers to the Trustee to purchase the D&O claims.

37. A brief continuance will not prejudice the bankruptcy estate or the Management Defendants. The settlement agreement purports to require a final order from this Court by the end of October, but the hearing is currently scheduled for the end of September. Settlement Agreement § 1(a)–(c), D.I. 241, Ex. A. P180 submits that the Court should not permit the presumably arbitrary deadline to dictate the outcome here without a fulsome review of the settlement, particularly absent evidence that the defendants would genuinely prefer continued litigation to a very defense-friendly settlement seemingly covered by insurance, making it highly unlikely they would insist on this self-induced deadline condition. But, even if considered, the Court could still grant up to two additional weeks for discovery without an issue.

38. Conversely, the prejudice to creditors from proceeding on the current schedule is severe and irreversible. If the Court approves a $3.5 million settlement of claims the Trustee's own complaint asserts are worth hundreds of millions of dollars without an adequate factual record, that order will become final and creditors will have permanently lost the ability to challenge the adequacy of the settlement consideration or purchase the D&O claims in an amount that would exceed the settlement consideration. The balance of harms strongly favors a brief continuance.

39. At a minimum, the hearing on the 9019 Motion should be adjourned until at least three business days after the Trustee's production of the documents described below, in order to afford P180 and, if necessary, the Court a meaningful opportunity to review the materials and present any supplemental submissions.

**DISCOVERY REQUESTED**

40. P180 respectfully requests that the Court order the Trustee to produce, within five days, and in no event less than three business days before the hearing (whether as set or

reset), the following categories of documents specifically related to the claims being settled in the 9019 Motion:

1. All documents quoted, cited, referred to in, or relied upon or considered in creating, the Adversary Complaint (Adv. Pro. No. 26-50225) with respect to the Management Defendants.
2. All documents previously identified by the Trustee or the Trustee's counsel, experts, or other agents, that supports, contradicts, or otherwise relates to the allegations in the Adversary Complaint (Adv. Pro. No. 26-50225) or potential defenses thereto with respect to the Management Defendants.
3. All board materials and minutes of CaaStle, Inc., from January 1, 2017 to present.
4. All non-privileged documents that the Trustee considered in determining whether to settle the adversary proceeding (Adv. Pro. No. 26-50225) against the Management Defendants.
5. All non-privileged communications discussing, mentioning, or otherwise relating to any settlement of the adversary proceeding (Adv. Pro. No. 26-50225), including communications with the Management Defendants' counsel or insurers regarding potential settlement.
6. All communications with any potential buyer, assignee, or litigation funder discussing, mentioning, or otherwise relating to the adversary proceeding (Adv. Pro. No. 26-50225).
7. Any expert reports prepared by experts the Trustee seeks to compensate pursuant to the Motion to Authorize Payment of Expert Witness Fees and Costs [D.I. 246].

8. All communications where any of the Management Defendants is an author or recipient from January 1, 2017 to present, other than communications on which an attorney is a participant and no person who is not a director, officer, employee, or agent of CaaStle is a participant.

These requests are narrowly tailored to the core issues bearing on the settled claims, and as stated above, the Trustee has already agreed to produce much of what P180 seeks. In his Responses and Objections to P180's earlier subpoena, the Trustee agreed to produce documents concerning CaaStle's board meetings and minutes (Ex. A, Request No. 37, overlapping with Category 3 above); documents concerning the appointment, resignation, and tenure of CaaStle's directors and officers, including Hennessy's December 6, 2024 resignation letter (Ex. A, Request No. 43, overlapping in part with Categories 1, 2, and 8); and documents underlying the adversary complaint's allegations against the Management Defendants, including materials concerning the auditor and alleged falsified audit reports and CaaStle's reported financial condition (Ex. A, Request Nos. 39–42, overlapping with Categories 1 and 2). The Trustee, however, has not yet made any production. The present requests, at any rate, have been drafted with the goal of being defined sets of documents that either have already been collected by the trustee or that are readily identifiable and unlikely to present privilege concerns.

41. Because the Trustee has already separately agreed to produce some of what is requested here, ordering their production in connection with the 9019 Motion, even on an expedited basis, will not present an undue burden on the Trustee. The additional documents and information requested are equally central to the Court's evaluation and are uniquely within the Trustee's possession, so their collection and production should be ordered as well.

42. P180 also reserves the right to seek depositions of the Trustee and others in connection with the 9019 Motion.

**CONCLUSION**

WHEREFORE, P180, Inc. respectfully requests that the Court enter an order: (i) directing the Trustee to produce, within five (5) days, and in no event less than three (3) business days before the hearing (as set or reset), the documents described in categories 1 through 8 above; (ii) continuing the hearing on the 9019 Motion [D.I. 241] until such time as the Court-ordered discovery is complete; and (iii) granting P180 such other and further relief as the Court deems just and proper.

Dated: September 23, 2026
Wilmington, Delaware

**PASHMAN STEIN WALDER HAYDEN, P.C.**

*/s/ Richard Riley*
Richard Riley (DE Bar No. 4052)
824 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 592-6496
Email: rriley@pashmanstein.com

-and-

**STEPTOE LLP**
Thomas B. Watson (pro hac vice)
Joseph M. Sanderson (pro hac vice)
Conor Tucker (pro hac vice)
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Email: twatson@steptoe.com

and

1114 Avenue of the Americas
New York, NY 10036

*Counsel for P180, Inc.*